

17-8690

FILED
U.S. DISTRICT COURT
EASTERN DISTRICT **SECT. E  MAG. 1**

℅AO 241
(Rev. 10/07)

Page 2

WILLIAM W. BLEVINS
CLERK

## PETITION UNDER 28 U.S.C. § 2254 FOR WRIT OF
## HABEAS CORPUS BY A PERSON IN STATE CUSTODY

| **United States District Court** | District: Eastern District of Louisiana | |
|---|---|---|
| Name (under which you were convicted):  Gregory Reaux | | Docket or Case No.: |
| Place of Confinement :  Louisiana State Penitentiary | Prisoner No.:  574124 | |
| Petitioner (include the name under which you were convicted)  Gregory Reaux | Respondent (authorized person having custody of petitioner)  Burl Cain | |
| v. | | |
| The Attorney General of the State of  Louisiana | | |

### PETITION

1.  (a) Name and location of court that entered the judgment of conviction you are challenging:
    22nd Judicial District Court St. Tammany Parish, 601 N. Columbia St., Covington, LA. 70433

    (b) Criminal docket or case number (if you know):    471010

2.  (a) Date of the judgment of conviction (if you know): 7/30/2010

    (b) Date of sentencing:    9/12/2013

3.  Length of sentence:    50 years count one, 10 years, 10 years, 10 years, counts 2-4 consecutive

4.  In this case, were you convicted on more than one count or of more than one crime?    ☑ Yes      ☐  No

5.  Identify all crimes of which you were convicted and sentenced in this case:
    Count One: R.S. 14:64 Armed Robbery;
    Count Two: R.S. 14:64 Armed Robbery;
    Count Three: R.S. 14:64 Armed Robbery;
    Count Four: R.S. 14:27/64 Attempted Armed Robbery

6.  (a) What was your plea? (Check one)

    ☑ (1)    Not guilty      ☐   (3)    Nolo contendere (no contest)
    ☐ (2)    Guilty          ☐   (4)    Insanity plea

TENDERED FOR FILING

SEP - 5 2017

U.S. DISTRICT COURT
Eastern District of Louisiana
Deputy Clerk

X Fee 5.00
___ Process_____
X Dktd_____
___ CtRmDep_____
___ Doc. No._____

AO 241
(Rev. 10/07)

(b) If you entered a guilty plea to one count or charge and a not guilty plea to another count or charge, what did

you plead guilty to and what did you plead not guilty to?
N/A

(c) If you went to trial, what kind of trial did you have? (Check one)

☑ Jury   ☐ Judge only

7.   Did you testify at a pretrial hearing, trial, or a post-trial hearing?

☑ Yes   ☐ No

8.   Did you appeal from the judgment of conviction?

☑ Yes   ☐ No

9.   If you did appeal, answer the following:

(a) Name of court:   1st Circuit Court of Appeals

(b) Docket or case number (if you know):   2011 KA 0443 & 2014 KA 0330

(c) Result:   Affirmed

(d) Date of result (if you know):   9/14/2011

(e) Citation to the case (if you know):   90 So.3d 543

(f) Grounds raised:
Whether the trial court abused its discetion in denying Gregory J. Reaux's motion to quash
the multiple offender bill.

(g) Did you seek further review by a higher state court?   ☐ Yes   ☑ No

If yes, answer the following:

(1) Name of court:

(2) Docket or case number (if you know):

(3) Result:

(4) Date of result (if you know):

AO 241
(Rev. 10/07)

Page 4

(5) Citation to the case (if you know):

(6) Grounds raised:

(h) Did you file a petition for certiorari in the United States Supreme Court?   ☐ Yes   ☑ No

If yes, answer the following:

(1) Docket or case number (if you know):

(2) Result:

(3) Date of result (if you know):

(4) Citation to the case (if you know):

10.     Other than the direct appeals listed above, have you previously filed any other petitions, applications, or motions concerning this judgment of conviction in any state court?   ☑ Yes   ☐ No

11.     If your answer to Question 10 was "Yes," give the following information:

(a)     (1) Name of court:     22nd Judicial District Court, St. Tammany Parish

(2) Docket or case number (if you know):     471010

(3) Date of filing (if you know):     10/6/2014

(4) Nature of the proceeding:     Application of Post Conviction Relief

(5) Grounds raised:
Ineffective Assistance of Counsel on Appeal
Ineffective Assistance of Trial Counsel

(6) Did you receive a hearing where evidence was given on your petition, application, or motion?

☐ Yes   ☑ No

(7) Result:   Denied

(8) Date of result (if you know):     11/6/2014

AO 241
(Rev. 10/07)

Page 5

(b) If you filed any second petition, application, or motion, give the same information:

    (1) Name of court:    22nd Judicial District Court, St. Tammany Parish

    (2) Docket or case number (if you know):    471010

    (3) Date of filing (if you know):    11/6/2015

    (4) Nature of the proceeding:    Application for Post Conviction Relief

    (5) Grounds raised:
        Prosecutorial Misconduct - Affidavits were forged
        Ineffective Assistance of Counsel

    (6) Did you receive a hearing where evidence was given on your petition, application, or motion?

    ☐    Yes    ☑ No

    (7) Result:    Denied

    (8) Date of result (if you know):    1/7/2016

(c) If you filed any third petition, application, or motion, give the same information:

    (1) Name of court:    22nd Judicial District Court, St. Tammany Parish

    (2) Docket or case number (if you know):    471010

    (3) Date of filing (if you know):    6/8/2015

    (4) Nature of the proceeding:    Application for Post Conviction Relief

    (5) Grounds raised:
        Prosecutorial Misconduct - Affidavits were not signed by Judge

(6) Did you receive a hearing where evidence was given on your petition, application, or motion?

❏   Yes   ☑ No

(7) Result:   Denied

(8) Date of result (if you know):   7/13/2015

(d) Did you appeal to the highest state court having jurisdiction over the action taken on your petition, application, or motion?

(1) First petition:   ☑ Yes   ❏ No

(2) Second petition:   ☑ Yes   ❏ No

(3) Third petition:   ☑ Yes   ❏ No

(e) If you did not appeal to the highest state court having jurisdiction, explain why you did not:

12.   For this petition, state every ground on which you claim that you are being held in violation of the Constitution, laws, or treaties of the United States.  Attach additional pages if you have more than four grounds.  State the facts supporting each ground.

CAUTION: To proceed in the federal court, you must ordinarily first exhaust (use up) your available state-court remedies on each ground on which you request action by the federal court.  Also, if you fail to set forth all the grounds in this petition, you may be barred from presenting additional grounds at a later date.

**GROUND ONE:**

(a) Supporting facts (Do not argue or cite law. Just state the specific facts that support your claim.):
 Petitioner was convicted with the use of Prosecutorial Misconduct.

(b) If you did not exhaust your state remedies on Ground One, explain why:

AO 241
(Rev. 10/07)

Page 7

(c)     **Direct Appeal of Ground One:**

(1) If you appealed from the judgment of conviction, did you raise this issue?     ☐ Yes     ☑ No

(2) If you did not raise this issue in your direct appeal, explain why:
This evidence was "Newly Discovered"

(d) **Post-Conviction Proceedings:**

(1) Did you raise this issue through a post-conviction motion or petition for habeas corpus in a state trial court?

☑ Yes     ☐ No

(2) If your answer to Question (d)(1) is "Yes," state:

Type of motion or petition:     Application for Post Conviction Relief

Name and location of the court where the motion or petition was filed:
22nd Judicial District Court, St. Tammany Parish

Docket or case number (if you know):     471010

Date of the court's decision:     1/4/2016

Result (attach a copy of the court's opinion or order, if available):
attached

(3) Did you receive a hearing on your motion or petition?     ☐ Yes     ☐ No

(4) Did you appeal from the denial of your motion or petition?     ☑ Yes     ☐ No

(5) If your answer to Question (d)(4) is "Yes," did you raise this issue in the appeal?     ☑ Yes     ☐ No

(6) If your answer to Question (d)(4) is "Yes," state:

Name and location of the court where the appeal was filed:
1st Circuit Court of Appeals

Docket or case number (if you know):     2016 KW 0158

Date of the court's decision:     3/21/2016

Result (attach a copy of the court's opinion or order, if available):
attached

(7) If your answer to Question (d)(4) or Question (d)(5) is "No," explain why you did not raise this issue:

AO 241
(Rev. 10/07)

Page 8

(e) **Other Remedies:** Describe any other procedures (such as habeas corpus, administrative remedies, etc.) that you have

used to exhaust your state remedies on Ground One:
Louisiana Supreme Court - Denied on August 4, 2017

**GROUND TWO:**

(a) Supporting facts (Do not argue or cite law. Just state the specific facts that support your claim.):
Petitioner was convicted with insufficient evidence

(b) If you did not exhaust your state remedies on Ground Two, explain why:

(c)  **Direct Appeal of Ground Two:**

(1) If you appealed from the judgment of conviction, did you raise this issue?  ☐ Yes  ☑ No

(2) If you did <u>not</u> raise this issue in your direct appeal, explain why:
Was not raised on direct appeal due to ineffective assistance of appellate counsel

(d)  **Post-Conviction Proceedings:**

(1) Did you raise this issue through a post-conviction motion or petition for habeas corpus in a state trial court?

☑ Yes  ☐ No

(2) If your answer to Question (d)(1) is "Yes," state:

Type of motion or petition:     Application for Post Conviction Relief

Name and location of the court where the motion or petition was filed:
22nd Judicial District Court

Docket or case number (if you know):   471010

Date of the court's decision:   11/6/2014

AO 241
(Rev. 10/07)

Result (attach a copy of the court's opinion or order, if available):
attached

(3) Did you receive a hearing on your motion or petition?　　　　　　☐ Yes　　☐ No

(4) Did you appeal from the denial of your motion or petition?　　　　☑ Yes　　☐ No

(5) If your answer to Question (d)(4) is "Yes," did you raise this issue in the appeal?　☑ Yes　　☐ No

(6) If your answer to Question (d)(4) is "Yes," state:

Name and location of the court where the appeal was filed:
1st Circuit Court of Appeals

Docket or case number (if you know):　　2014 KW 1782

Date of the court's decision:　　2/9/2015

Result (attach a copy of the court's opinion or order, if available):
attached

(7) If your answer to Question (d)(4) or Question (d)(5) is "No," explain why you did not raise this issue:

(e)　　　**Other Remedies:** Describe any other procedures (such as habeas corpus, administrative remedies, etc.) that you :

have used to exhaust your state remedies on Ground Two
Louisiana Supreme Court - 204 So.3d 200,  No. 15-KH-1292

**GROUND THREE:**

(a) Supporting facts (Do not argue or cite law. Just state the specific facts that support your claim.):
Petitioner's Constitutional Rights against Self Incrimination were violated

AO 241
(Rev. 10/07)

(b) If you did not exhaust your state remedies on Ground Three, explain why?

(c)     **Direct Appeal of Ground Three:**

(1) If you appealed from the judgment of conviction, did you raise this issue?          ☐  Yes     ☑  No

(2) If you did not raise this issue in your direct appeal, explain why:
Due to ineffective assistance of appellate counsel

(d)     **Post-Conviction Proceedings:**

(1) Did you raise this issue through a post-conviction motion or petition for habeas corpus in a state trial court?

☑  Yes     ☐  No

(2) If your answer to Question (d)(1) is "Yes," state:

Type of motion or petition:

Name and location of the court where the motion or petition was filed:
22nd Judicial District Court

Docket or case number (if you know):    471010

Date of the court's decision:    11/6/2014

Result (attach a copy of the court's opinion or order, if available):
attached

(3) Did you receive a hearing on your motion or petition?          ☐  Yes     ☐  No

(4) Did you appeal from the denial of your motion or petition?          ☑  Yes     ☐  No

(5) If your answer to Question (d)(4) is "Yes," did you raise this issue in the appeal?     ☑  Yes     ☐  No

(6) If your answer to Question (d)(4) is "Yes," state:

Name and location of the court where the appeal was filed:
1st Circuit Court of Appeals

Docket or case number (if you know):    2014 KW 1782

Date of the court's decision:    2/9/2015

Result (attach a copy of the court's opinion or order, if available):
attached

(7) If your answer to Question (d)(4) or Question (d)(5) is "No," explain why you did not raise this issue:

(e)    **Other Remedies:** Describe any other procedures (such as habeas corpus, administrative remedies, etc.) that you

have used to exhaust your state remedies on Ground Three:
Louisiana Supreme Court - 204 So.3d 200, No. 15-KH-1292

**GROUND FOUR:**

(a) Supporting facts (Do not argue or cite law. Just state the specific facts that support your claim.):
Petitioner was convicted with the use of other crimes evidence

(b) If you did not exhaust your state remedies on Ground Four, explain why:

(c)    **Direct Appeal of Ground Four:**

(1) If you appealed from the judgment of conviction, did you raise this issue?    ☐ Yes    ☑ No

(2) If you did not raise this issue in your direct appeal, explain why:
Due to ineffective assistance of appellate counsel

(d)    **Post-Conviction Proceedings:**

(1) Did you raise this issue through a post-conviction motion or petition for habeas corpus in a state trial court?

☑ Yes    ☐ No

(2) If your answer to Question (d)(1) is "Yes," state:

Type of motion or petition:

AO 241
(Rev. 10/07)

Page 12

Name and location of the court where the motion or petition was filed:
22nd Judicial District Court

Docket or case number (if you know):   471010

Date of the court's decision:   11/6/2014

Result (attach a copy of the court's opinion or order, if available):
attached

(3) Did you receive a hearing on your motion or petition?  ☐ Yes  ☐ No

(4) Did you appeal from the denial of your motion or petition?  ☑ Yes  ☐ No

(5) If your answer to Question (d)(4) is "Yes," did you raise this issue in the appeal?  ☑ Yes  ☐ No

(6) If your answer to Question (d)(4) is "Yes," state:

Name and location of the court where the appeal was filed:
1st Circuit Court of Appeals

Docket or case number (if you know):   2014 KW 1782

Date of the court's decision:   2/9/2015

Result (attach a copy of the court's opinion or order, if available):
attached

(7) If your answer to Question (d)(4) or Question (d)(5) is "No," explain why you did not raise this issue:

(e)    **Other Remedies:** Describe any other procedures (such as habeas corpus, administrative remedies, etc.) that you

have used to exhaust your state remedies on Ground Four:
Appealed to Louisiana Supreme Court - 204 So.3d 200, No. 15-KH-1292

AO 241
(Rev. 10/07)

Page 13

13.    Please answer these additional questions about the petition you are filing:

(a)    Have all grounds for relief that you have raised in this petition been presented to the highest state court
having jurisdiction?   ☑ Yes    ☐ No

If your answer is "No," state which grounds have not been so presented and give your reason(s) for not
presenting them:

(b)    Is there any ground in this petition that has not been presented in some state or federal court?  If so,
ground or grounds have not been presented, and state your reasons for not presenting them:

14.    Have you previously filed any type of petition, application, or motion in a federal court regarding the conviction
that you challenge in this petition?   ☐ Yes    ☑ No

If "Yes," state the name and  location of the court, the docket or case number, the type of proceeding, the issues
raised, the date of the court's decision, and the result for each petition, application, or motion filed.  Attach a copy
of any court opinion or order, if available.

15.    Do you have any petition or appeal now pending (filed and not decided yet) in any court, either state or federal, for
the judgment you are challenging?   ☑ Yes    ☐ No

If "Yes," state the name and location of the court, the docket or case number, the type of proceeding, and the
raised.

24th Judicial District Court, Parish of Jefferson
Same Claims

AO 241
(Rev. 10/07)

Page 14

16.    Give the name and address, if you know, of each attorney who represented you in the following stages of the

judgment you are challenging:

(a) At preliminary hearing:
    John Hogue, 402 N. Jefferson Ave. Convington, LA 70433

(b) At arraignment and plea:
    John Hogue, 402 N. Jefferson Ave. Covington, LA 70433

(c) At trial:
    John Hogue, 402 N. Jefferson Ave. Covington, LA 70433

(d) At sentencing:
    John Hogue, 402 N. Jefferson Ave. Covington, LA 70433

(e) On appeal:
    Mary Roper, 830 Main Street - Baton Rouge, LA 0802

(f) In any post-conviction proceeding:
    Katherine Crouch & Julie Tizzard at 700 Camp Street - New Orleans, LA 70130

(g) On appeal from any ruling against you in a post-conviction proceeding:
    Kathrie Crouch & Julie Tizzard at 700 Camp Street - New Orleans
    Micheal Thiel, P.O. Box 9, Hammond, LA 70404

17.    Do you have any future sentence to serve after you complete the sentence for the judgment that you are

challenging?            ☑ Yes      ☐ No

(a) If so, give name and location of court that imposed the other sentence you will serve in the future:
    Petitioner has a 297 year sentence in the 24th Judicial District Court, Parish of Jefferson

(b) Give the date the other sentence was imposed:      9/4/2013

(c) Give the length of the other sentence:      297 Years

(d) Have you filed, or do you plan to file, any petition that challenges the judgment or sentence to be served in the

future?            ☑ Yes      ☐ No

18.    TIMELINESS OF PETITION: If your judgment of conviction became final over one year ago, you must explain

why the one-year statute of limitations as contained in 28 U.S.C. § 2244(d) does not bar your petition.*
Petitioner's Original Application for Post-Conviction Relief was denied on September 7, 2016, therefore
petitioner is timely and within the 365 days allotted for 2254 Habeas Relief

---

\* The Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA") as contained in 28 U.S.C.   § 2244(d) provides in

part that:

      (1)     A one-year period of limitation shall apply to an application for a writ of habeas corpus by a person in custody  pursuant to the judgment of a State court.  The limitation period shall run from the latest of -

            (A)     the date on which the judgment became final by the conclusion of direct review or the expiration of the time for seeking such review;

            (B)     the date on which the impediment to filing an application created by State action in violation of the Constitution or laws of the United States is removed, if the applicant was prevented from filing by such state action;

            (C)     the date on which the constitutional right asserted was initially recognized by the Supreme Court, if the right has been newly recognized by the Supreme Court and made retroactively applicable to cases on collateral review; or

            (D)     the date on which the factual predicate of the claim or claims presented could have been discovered through the exercise of due diligence.

AO 241
(Rev. 10/07)

(2)     The time during which a properly filed application for State post-conviction or other collateral review
        with respect to the pertinent judgment or claim is pending shall not be counted toward any period of
        limitation under this subsection.

Therefore, petitioner asks that the Court grant the following relief:

or any other relief to which petitioner may be entitled.

_____

Signature of Attorney (if any)

I declare (or certify, verify, or state) under penalty of perjury that the foregoing is true and correct and that this Petition for

Writ of Habeas Corpus was placed in the prison mailing system on _____9/1/17_____ (month, date, year).

Executed (signed) on _____9/1/17_____ (date).

_____
Signature of Petitioner

If the person signing is not petitioner, state relationship to petitioner and explain why petitioner is not signing this petition.

AO 241
(Rev. 10/07)

## Petition for Relief From a Conviction or Sentence
## By a Person in State Custody

### (Petition Under 28 U.S.C. § 2254 for a Writ of Habeas Corpus)

#### Instructions

1. To use this form, you must be a person who is currently serving a sentence under a judgment against you in a state court. You are asking for relief from the conviction or the sentence. This form is your petition for relief.

2. You may also use this form to challenge a state judgment that imposed a sentence to be served in the future, but you must fill in the name of the state where the judgment was entered. If you want to challenge a federal judgment that imposed a sentence to be served in the future, you should file a motion under 28 U.S.C. § 2255 in the federal court that entered the judgment.

3. Make sure the form is typed or neatly written.

4. You must tell the truth and sign the form. If you make a false statement of a material fact, you may be prosecuted for perjury.

5. Answer all the questions. You do not need to cite law. You may submit additional pages if necessary. If you do not fill out the form properly, you will be asked to submit additional or correct information. If you want to submit a brief or arguments, you must submit them in a separate memorandum.

6. You must pay a fee of $5. If the fee is paid, your petition will be filed. If you cannot pay the fee, you may ask to proceed in forma pauperis (as a poor person). To do that, you must fill out the last page of this form. Also, you must submit a certificate signed by an officer at the institution where you are confined showing the amount of

   money that the institution is holding for you. If your account exceeds $ _____ , you must pay the filing fee.

7. In this petition, you may challenge the judgment entered by only one court. If you want to challenge a judgment entered by a different court (either in the same state or in different states), you must file a separate petition.

8. When you have completed the form, send the original and two copies to the Clerk of the United States District Court at this address:

   Clerk, United States District Court for
   Address
   City, State Zip Code

9. **CAUTION: You must include in this petition all the grounds for relief from the conviction or sentence that you challenge. And you must state the facts that support each ground. If you fail to set forth all the grounds in this petition, you may be barred from presenting additional grounds at a later date.**

10. **CAPITAL CASES: If you are under a sentence of death, you are entitled to the assistance of counsel and should request the appointment of counsel.**

TENDERED FOR FILING

SEP - 5 2017

U.S. DISTRICT COURT
Eastern District of Louisiana
Deputy Clerk

TENDERED FOR FILING

SEP - 5 2017

U.S. DISTRICT COURT
Eastern District of Louisiana
Deputy Clerk

**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF LOUISIANA**

**GREGORY REAUX, Petitioner**                    CASE NO. _____

**VS.**

**DARYL VANNOY, WARDEN**
**LOUISIANA STATE PENITENTIARY, Respondent**      DIVISION: _____

## MEMORANDUM IN SUPPORT OF
## PETITION FOR A WRIT OF HABEAS CORPUS
## PURSUANT TO 28 U.S.C. § 2254

Petitioner, Gregory Reaux, pro se, respectfully submits this Memorandum in support of his Petition for a Writ of Habeas Corpus pursuant to 28 U.S.C. § 2254, on grounds that his conviction and sentence occurred through processes which offended the United States Constitution.

### Preliminary Statement

This memorandum respectfully addresses the threshold issues regarding the Petitioner's rights to the 4th, 5th, 6th, 8th & 14th Amendments of the United States Constitution were violated. Petitioner avers that he has established in his pleadings in the state courts, as he will establish here, that federal law guarantees those rights; that he was denied those rights in the state courts; as he will establish all state remedies available to him throughout the course of these proceedings; and that he has no other remedy at law.

1

# TABLE OF CONTENTS

**TABLE OF CONTENTS**………………………………………………………………………………i

**TABLE OF AUTHORITIES**……………………………………………………………ii,iii

**Statutory Framework of the AEDPA**……………………………………………………2

**STATEMENT OF THE CASE**……………………………………………………………3

**STATEMENT OF FACTS** ………………………………………………………………5

**Claim – I** ………………………………………………………………………………11

**Claim – II** ………………………………………………………………………………19

**Claim – III** ……………………………………………………………………………25

**Claim – IV** ……………………………………………………………………………31

**Claim – V** ………………………………………………………………………………41

**Conclusion**……………………………………………………………………………49

**Certificate of Service**………………………………………………………………50

## TABLE OF AUTHORITIES

### CONSTITUTION

28 U.S.C. § 2254……………………………………………………………………………1,23

28 U.S.C. § 2254 (d)(1)……………………………………………………………………2

### STATE CASES

City of Baton Rouge v. Short, 345 So.2d 37, 40 (La. 1977)………………………………46

State v. Dauzert, 844 So.2d 159……………………………………………………………34

State v. Prieur, 277 So.2d 126 (1973)………………………………………35,36,37

### FEDERAL CASES

Alexander v. McCotter, 775 F.2d 595, 598 (5th Cir 1985)…………………………………45

Branch v. Estelle, 631 F.2d 1229, 1233 (5th Cir. 1980)……………………………………45

Bowen v. Doyal, 259 La. 839, 253 So.2d 200 (1971)………………………………………46

Donnelly v. DeChristoforo, 416 U.S. 637, 643, 94 S.Ct. 1868, 40 L.Ed.2d 431 (1974)…………………………………………………………………………………19

Fuller v. Johnson, 114 F.3d 491, 496 (5th Cir. 1997)………………………………………18

Giglio v. United States, 405 U.S. 150, 153-4, 92 S.Ct. 763, 31 L.Ed.2d 104 (1972)..18

Huddleston v. U.S., 485 681, 686 (1988)……………………………………………………41

Jackson v. Virginia, 443 U.S. 307, [324], 99 S. Ct. 2781, [2791-92], 61 L. Ed. 2d 560 (1979)…………………………………………………………………………………22,23

Koch v. Pucket, 907 F.2d 524, 531 (5th Cir. 1990)…………………………………………18

Kutzner v. Johnson, 242 F.3d 605, 609 (5th Cir. 2001)……………………………………18

Marshall v. Hendricks, 307 F.3d 36, 67 (3rd Cir. 2002)……………………………………19

Matteo v. Superintendent, 171 F.3d 877 (3rd Cir. 1999).................................................2

McDaniel v. Brown, 558 U.S. 120, 121, 130 S.Ct. 665, 666, 175 L.Ed.2d 582 (2010).22

McKay v. Collins, 12 F.3d 66, 69 (5th Cir.), reh'g granted on other grounds, 12 F.3d 70 (5th Cir.), cert. denied sub nom...............................................................................45

Perez v. Cain, 529 F.3d 588, 594 (5th Cir.), cert. denied, 555 U.S. 995, 129 S. Ct. 496, 172 L. Ed. 2d 358 (2008)..................................................................................................23

Plaquemines Parish Commission Council v. Perez, 379 So.2d 1373, 1377 (La. 1980)....................................................................................................................................45

Stokes and Stiehler Onshore Inc. v. Ogle, 467 Fed. Appx. 248 (5th Cir. 3/20/2012).15

Strickland v. Washington, 466 U.S. 668, 694, 104 S.Ct. 2052, 2068, 80 L.Ed.2d 674 (1984)....................................................................................................................................44

United States v. Bagley, 473 U.S. 667, 676, 105 S.Ct. 3375, 87 L.Ed.2d 481 (1985).18

in United States v. Beechum, 582 F.2d 898, 910 (5th Cir. 1978) (en banc)...............42

United States v. Garcia, 27 F.3d 1009, 1014 (5th Cir. 1994).........................................42

United States v. Marzook, 435 F.Supp. 2d 708 (2006)...................................................32

United States v. Mateo, 947 F.2d 1191, 1198 (5th Cir. 1991)......................................42

United States v. Morena, 547 F.3d 191, 193-94 (3rd Cir. 2008)...................................19

United States v. Randall, 887 F.2d 1262, 1268 (5th Cir. 1989)....................................42

United States v. Royal, 972 F.2d 643, 647 (5th Cir. 1992).............................................42

United States v. Stanert, 762 F.2d 775 (9th Cir. 1984)...................................................19

United States v. Solorzano, 2017 U.S. Dist. LEXIS 54141..............................................41

United States v. Williams, 2016 U.S. Dist. LEXIS 153758...............................................37

United States v. Williams, 900 F.2d 823, 825 (5th Cir. 1990).......................................42

Williams v. Collins, 16 F.3d 626, 637 (5th Cir.)................................................................45

Williams v. Scott, 513 U.S. 854, 115 S.Ct. 157, 130 L.Ed.2d 95 (1994).......................45

## Statutory Framework of the AEDPA

The AEDPA provides in relevant part:

(d) An application for a writ of habeas corpus on behalf a person in custody pursuant to the judgment of a state court shall not be granted with respect to any claim that was adjudicated on the merits in state court proceedings unless the adjudication of that claim - -

(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States 28 U.S.C. § 2254 (d)(1).

The language of the statute provides for a dual standard for federal review of state court adjudications. State court decisions on adjudicated claims may be set aside and federal habeas relief granted where those decisions are "contrary to" clearly established federal law, or "involve an unreasonable application of clearly established federal law."

In Matteo v. Superintendent, 171 F.3d 877 (3rd Cir. 1999), the Third Circuit's en banc ruling is instructive. The court explained the framework for determining which standard for federal review of a § 2254 petition as it applies to a particular claim. Matteo holds that the "contrary to" provision of the AEDPA requires a

federal habeas court to first identify the applicable Supreme Court precedent and determine whether it resolves the petitioner's claim.

The inquiry must be whether the Supreme Court has established a rule that determines the outcome of the petition.  The Third Circuit Court stated that "[I]t is not sufficient for the petitioner to show merely that his interpretation of Supreme Court precedent is more plausible than the state court's; rather, the petitioner must demonstrate that Supreme Court precedent requires the contrary outcome..."

Under the "unreasonable application" standard, the analytical rubric under which a client is scrutinized is "whether the state court's application of Supreme Court precedent was objectively unreasonable." *Matteo, at pg. 490.*

## STATEMENT OF THE CASE

Petitioner was arrested on April 20, 2009 and charged with one count of attempted armed robbery and 3 counts of armed robbery.

On July 30, 2010 petitioner was found guilty on all four counts.  Petitioner was sentenced to 10 years on each count, with all four sentences to run consecutively.  Subsequently, the habitual offender bill was filed on September 12, 2013 and petitioner was found to be a second felony offender and the sentence on count one was vacated and he was sentenced to 50 years to run concurrently with

counts 2,3, & 4.  Petitioner filed direct appeal on April 7, 2014 which was affirmed on September 19, 2014.

Petitioner filed his first application for Post-Conviction Relief on October 6, 2014 which was denied on November 6, 2014.  Petitioner appealed to the 1st Circuit and was denied on 2/9/2015. Petitioner appealed to the Louisiana Supreme Court which was denied at 204 So.3d 200, No. 15-KH-1292.

Petitioner filed his second application for Newly Discovered Evidence concerning the forged notaries on the affidavits used to arrest on 3/26/15 which was denied on 1/4/2016.  Petitioner appealed to the 1st Circuit which was denied on 3/21/2016.  Petitioner appealed to the Louisiana Supreme Court which was denied on 8/4/2017.

Petitioner filed a third application for Post-Conviction Relief due to Newly Discovered evidence on 6/6/2015 which was denied on 7/15/2015.  Petitioner appealed to the 1st Circuit which was denied on 3/21/2016. Petitioner appealed to the Louisiana Supreme Court which is still pending.

Petitioner is filing his timely petition for Habeas Corpus on September 1, 2017.  Petitioner is within the 365 day time frame for 2254 petition.

## STATEMENT OF FACTS

### A. Covington

Joel Vogt explained that the black fabric on the perpetrator's arms extended down his arm, covered his right hand, and that he was extremely cautious not to touch anything in the store.

At trial, the State introduced evidence of five robberies, which occurred at Game Stop locations outside the jurisdiction of St. Tammany Parish in Walker, Denham Springs, Marrero, Harvey, and Hammond. The "other crimes" evidence was introduced through the Petitioner's audio-recorded statement to St. Tammany Parish law enforcement officers and through live testimony of police officers.

### B. Mandeville

David Vigo is the manager of the Game Stop in Mandeville, where he has worked since 2007. Mr. Vigo was handling the cash register on the night Mr. Reaux was arrested near the Mandeville store.

### C. Testimony regarding the investigation

Sergeant Patrick McCormick of the St. Tammany Parish Sheriff's Office explained how Mr. Reaux was apprehended around 8 p.m. on April 20, 2009. Lieutenant McCormick was part of a multi-jurisdictional task force investigating a string of armed robberies that had occurred at Game Stop/EB Games in Slidell

Covington, and other stores in Southeast Louisiana.  McCormick learned from other law enforcement officers that the perpetrator was an extremely tall, black male, who wore a black baseball cap, carried a black backpack, which he used to carry his "loot," and wielded a box cutter or utility knife.  The perpetrator carried out the robberies near the stores' closing time, which was 9 p.m. on all days except Sunday, when the stores closed at 6 p.m.  In one robbery, a white Chevy Monte Carlo was used.

Sgt. McCormick determined that there were three EB Games/Game Stop stores in St. Tammany Parish, and the only store that had not been robbed was the Mandeville store.  Consequently, McCormick conducted a surveillance operation across the street from the Mandeville Game Stop to try to catch the robber in the act.  Using his personal binoculars, McCormick witnessed a tall black male wearing a dark hat and a white t-shirt emerge from an area of trees and shrubbery between the Game Stop and an adjacent Business-Bippo's Dental Clinic.  As a young woman exited the Game Stop, McCormick saw the subject step back, then after that woman got in a car, the subject stepped back into the light and began looking around.  The subject and the officer made eye contact from over 1000 feet away, and the subject began walking past the front of the businesses.  Within minutes, another police officer, Noel Forrester stopped the subject, who turned out to be

Mr. Reaux.  McCormick followed Reaux, observed him talking to Officer Forrester, and upon seeing him wearing a black backpack, and shifting his feet back and forth nervously, Lt. McCormick decided to restrain Mr. Reaux by handcuffing him from behind.

The police soon determined that Mr. Reaux had arrived in a white Monte Carlo vehicle.  McCormick and Forrester secured Mr. Reaux in Deputy Forrester's patrol unit and were standing outside the unit talking when McCormick noticed a "little black piece of plastic" under the left rear tire of the police nit.  McCormick also observed a broken box cutter on the hood of Officer Forrester's unit and determined that the black piece of plastic was part of the box cutter.  McCormick also saw a black knit cap lying on the hood of Forrester's police unit, which was found somewhere on Mr. Reaux's person.

When Mr. Reaux was arrested, he was wearing white t-shirt, gray sweatpants, a black Pittsburgh Pirates cap, and had a piece of light gray fabric wrapped around his neck, that was partially tucked under his t-shirt.  Sgt. McCormick advised Mr. Reaux that he was under arrest for attempted armed robbery of the Mandeville Game Stop.  He was also carrying a black backpack.  Sgt. McCormick testified that Mr. Reaux did not have a knife or box cutter on him at the time.

7

Deputy William Noel Forrester of the St. Tammany Parish Sheriff's Office assisted Sgt. McCormick with surveillance of the Mandeville Game Stop on April 20, 2009, and initially stopped Mr. Reaux as he was walking away from the Game Stop towards his vehicle. Deputy Forrester conducted a pat down frisk of Mr. Reaux and felt a hard object around his waistband, at which time Mr. Reaux moved his hands from behind his back to the front and grabbed his shirt. Deputy Forrester got Mr. Reaux's hands back behind him and then as he attempted to raise his shirt, Mr. Reaux jerked his body and the item in his waistband fell to the ground. During the pat down, Deputy Forrester also recovered a black or dark blue knit cap from the left pocket of Mr. Reaux's sweat pants. Mr. Reaux complied with the deputies every command during his stop and arrest.

Lt. George Cox of the St. Tammany Parish Sheriff's Office and Sgt. Sean McClain of the Slidell Police Department were the first law enforcement officers to interrogate Mr. Reaux after his arrest. Mr. Reaux was orally advised of his Miranda rights and also signed a written waiver of rights form. The interrogation began at 9:27 p.m. on April 20, 2009. Lt. Cox explained that Mr. Reaux told them he was not involved in any robberies, and confirmed that detectives from Jefferson Parish spoke to Mr. Reaux for over an hour and a half with the same results.

On the night of April 20, 2009, Detective Vermall of the Jefferson Parish Sheriff's Office (JPSO) learned that the St. Tammany Sheriff's Office had arrested a suspect for the robberies of multiple Game Stops in that parish. Detective Vermall and former JPSO Detective John Carroll travelled to St. Tammany Parish to interview the suspect, Mr. Reaux. Mr. Reaux was cooperative, and denied any involvement in the robberies during the hour-long interview with Jefferson Parish detectives. As a result, the detectives stopped the interview and began to make preparations to search Mr. Reaux' residence, the detectives were called back to the St. Tammany Sheriff's Office because the St. Tammany detectives claimed that Mr. Reaux had confessed to the robberies in Jefferson Parish. During their second encounter with Mr. Reaux, Detectives Vermall and Carroll showed Mr. Reaux a still photograph of the robbery suspect obtained from video surveillance of the Marrero Game Stop and Mr. Reaux advised that was him in the photograph.

Lt. Cox, still not satisfied that he received his version of the "truth," continued to interrogate Mr. Reaux after the JPSO detectives had left. Lt. Cox showed Mr. Reaux a still image captured from the video surveillance in one of the Game Stop robberies from Jefferson Parish and informed him that he also had video surveillance from the Academy Sports near the Slidell Game Stop. Mr. Reaux continued to deny any involvement. Mr. Reaux was taken out of the interrogation

room and was being brought to the jail to be booked when, according to Lt. Cox,

he told the detectives, "Let's go back. I'll tell you everything." Mr. Reaux then gave

a recorded statement that began at 4:07 a.m. and ended at 5 a.m. on April 21, 2009.

Lt. Cox explained that Mr. Reaux gave a second recorded statement on April

22, 2009, to Sergeant McLain of the Slidell Police Department. Lt. Cox, however,

characterized the second statement as "inaccurate" and explained how he had Mr.

Reaux recant the second statement while in jail.

Detective Corey Crowe of the St. Tammany Parish Sheriff's Office obtained

and executed search warrants for Petitioner's home in Hammond and his vehicle,

a two-door 2006 Chevrolet Monte Carlo. At Mr. Reaux's home, Crowe recovered a

play station gaming console, one or two box cutters from the mantel of the living

room, and another box cutter in a bedroom. Detective Crowe did not determine

whose room the box cutter was found in, nor did he inquire if the other occupants

of the apartment used box cutters in their work. None of the box cutters were

tested for fingerprints or DNA.

Detective Crowe seized the following items from Petitioner's car: (1) Wii

points card; (2) a Wii video game disk with a price tag marked DAG 3-29-09 (3) a

box with USPS shipping label addressed to Game Stop located in Walker Louisiana;

(4) a Rayman game ; and (5) a skull cap type hat. Detective Crowe identified a

USPS tacking statement, which showed that the package found in petitioner's car was received by Travis Bousquet on April 14, 2009. The State alluded to prior trial testimony that the Walker Game Stop had been robbed on April 14, 2009. Detective Crowe also recovered 8 Wii point car boxes, five of which contained a label reading "ACC 04/03/09." Crowe testified that this label was consistent with Game Stop practice wherein the employee who put the item for display as merchandise would sign their initials and the date and that the five particular labels would suggest that Adolfo Castro put them out for display on April 3, 2009. No fingerprints were found on the Wii point card boxes. Crowe also recovered an "Alpha magnetic hand key," which he explained is used by Game Stop to remove security tags from merchandise.

**Claim 1 - Petitioner's Constitutional Rights were violated when the Affidavits were both forged on their face and not properly notarized.**

Petitioner obtained the affidavits in this case, obtained an expert and found that the affidavits were not properly obtained.

As the Court can observe from the face of the arrest warrants, both are in direct contrast. While Sgt. McCormick alleged that Petitioner hid the vehicle, Detective Crowe alleged that they observed Petitioner occupying the vehicle in a nearby parking lot. If Petitioner was first observed sitting in the vehicle, then why did Sgt. McCormick allege that Petitioner was observed walking from between businesses. In another instance, Sgt. McCormick alleged that when Petitioner

11

observed Sgt. McCormick, Petitioner "immediately fled to the rear of the building where [the subject] was detained by Detective Forrester; but Detective Crowe alleges that Petitioner only became evasive after contact was made and that being relative to throwing a box cutter to the ground away from Petitioner.   Sgt. McCormick, however, made no reference to Petitioner possessing or throwing a box cutter.  To add, Sgt. McCormick noted that Petitioner's claim of his business in the area were disproved, but Detective Crowe's arrest warrant never mentioned that this instant discussion occurred, and there was no mention as to what Petitioner's business in the area was.

See Stokes and Stiehler Onshore Inc. v. Ogle, 467 Fed. Appx. 248 (5th Cir. 3/20/2012) The trustee's objection to the claimant's claim was that the claimant failed to secure a lien against the wells. To secure a lien against mineral property in Texas, a lien claimant had to file an affidavit with the county clerk of the county in which the property was located. The certification did not contain any language showing that the president of the claimant's oath was sworn in the notary's presence. Absent such a certification, there was no jurat and consequently, no valid affidavit.

Moreover, when does it become unlawful to be in a business area or to patronize a particular business?

It is baffling in relation as to why there are two arrest warrants of one incident in the first place.  Both being written by two different officers who contradict each other's version of the facts.  The only reasonably explanation is that the officers were trying to figure out a way to explain stopping and harassing Petitioner for these crimes, without probable cause, and pinning an attempt armed robbery on him in order to charge him for the rest of these crimes.

It is clear from the trial record that Petitioner never went inside of the Game Stop Store.  In addition, both affidavits were forged documents as the notary public whose stamp number #7103, which was the stamp issued to Mr. Charles M. Kendrick, which was used on Detective Crowe's warrant had not been a notary in fifteen years, (Exhibit "A" Page from the Notary Bulk Data Showing the owner of #7103 and Statement given by Ms. Lillian N. Kendrick on March 26, 2015) and the warrant authored by Sergeant Patrick McCormick has number #3302, which was issued to Ms. Deania M. Jackson who lives in Houston Texas, (Exhibit "B-I" Page from the Notary Bulk Data Showing the owner of #3302.  See all affidavits signed by George Cox and Van James Laurent, Jr. which proves that petitioner's arrest and everything that happened afterward was done fraudulently and not in accordance with law.  Petitioner then filed a complaint against the sheriff's department for Unauthorized Exercise of Notarial Powers against George Cox and Van James

13

Laurent, Jr.  The state sent a letter and oath that were administered for both.  These oaths are not in compliance with the State's Legislature.  These affidavits for warrants for petitioner's arrest were illegal and any fruit gathered should be considered "fruit from the poisonous tree.  Exhibit "C." (Copies of the affidavits for arrest by Officer Patrick McCormick and Detective Crowe)

No district attorney would have not found these warrants questionable.  In fact, no reasonable minded district attorney would have, in good faith, pursued a prosecution of Petitioner for the crime of attempted armed robbery of a place of business under these circumstances.  Specifically, contradicting warrants of one incident.  Petitioner not being in possession of any weapons.  Petitioner not being in possession of a mask which, as in the other robberies the perpetrator wore a mask.  Petitioner never even stepped foot on the Game Stop Store's property as both warrants clearly established this fact.  There was nothing presented in either warrant to justify a man of average knowledge that Petitioner had committed, was about to commit, or was in the process of committing an attempted armed robbery.

The sole purpose of the district attorney pursuing these charges against Petitioner was to harass him.  It is clear, that the district attorney in bad faith,

unnecessarily abused his authority.  The only question was whether counsel's deficient performance of not enjoining and/or not filing a motion to quash on the basis of Petitioner's due process rights of the 14th Amendment to the United States Constitution were violated when his right to be free of a bad faith prosecution was transgressed; prejudiced Petitioner.  Petitioner avers that it is clear from the face of the record that he was prejudiced as the district attorney lacked the evidence to support probable cause to file a bill of information with any possibility of ultimately obtaining a conviction.

### Standard of Review

When presenting a claim of Prosecutorial Misconduct, a Petitioner must show that the actions of the prosecutor so infected the trial with unfairness as to make the resulting conviction a denial of Due Process, and the Prosecutorial Misconduct must be of sufficient significance to result in the denial of the petitioner's right to a fair trial.  Kutzner v. Johnson, 242 F.3d 605, 609 (5th Cir. 2001).  United States v. Bagley, 473 U.S. 667, 676, 105 S.Ct. 3375, 87 L.Ed.2d 481 (1985).

To prevail on this claim Reaux must prove that: (1) the actual falsity of a witness's testimony, (2) that the testimony was material, and (3) that the prosecution knew the witness's testimony was false.  Giglio v. United States, 405

U.S. 150, 153-4, 92 S.Ct. 763, 31 L.Ed.2d 104 (1972); Fuller v. Johnson, 114 F.3d 491,

496 (5th Cir. 1997); Koch v. Pucket, 907 F.2d 524, 531 (5th Cir. 1990).

The falsity is the testimonies of Detective Corey Crowe and Sgt. Patrick

McCormick's questionable accounts as to the circumstances surrounding the

alleged attempted armed robbery.  The testimonies were material as it pertains to

the illegal stop, search and arrest of petitioner.  The prosecution knew that the

notaries were not certified with the state (as it was a standard practice in St.

Tammany Parish) and the discrepancies in Crowe's and McCormick's testimonies

compared to the basic information in the two affidavits for arrest.

Petitioner was prejudiced as to the illegal stop, arrest and all that followed

which would be considered "fruit from the poisonous tree."

As explained in United States v. Morena, 547 F.3d 191, 193-94 (3rd Cir. 2008):

Improper prosecutorial conduct rises to the level of constitutional error

"when the impact of the misconduct is to distract the trier of fact and thus raise

doubts as to the fairness of the trial." Marshall v. Hendricks, 307 F.3d 36, 67 (3rd Cir.

2002). The test for prosecutorial misconduct is whether the conduct "so infected

the trial with unfairness as to make the resulting conviction a denial of due process"

in light of the entire proceeding. (quoting Donnelly v. DeChristoforo, 416 U.S. 637,

643, 94 S.Ct. 1868, 40 L.Ed.2d 431 (1974)).

Similarly here, Petitioner's trial was infected with unfairness which makes his conviction a denial of due process. The impact of the misconduct in petitioner's stop, arrest, search, and trial was totally illegal and thus warrants reversal. The police in this case should be sanctioned for their conduct in the way they handled this case.

See additionally, United States v. Stanert, 762 F.2d 775 where:

"[D]efendant was convicted of conspiracy to possess with intent to distribute a controlled substance, a violation of 21 U.S.C.S.§ 846, and he sought review. The court affirmed in part and vacated and remanded, finding that petitioner was entitled to evidentiary hearing to challenge the validity of the search warrant. The court found that, under the totality of the circumstances as set forth in the affidavit, the district court had a substantial basis for concluding that probable cause existed to search petitioner's residence. The court found, however, that petitioner had made a sufficient showing with respect to four inaccuracies or omissions that negated the facial showing of probable cause. Petitioner also showed that the affidavit purged of the inaccuracies and supplemented by the omissions would not be sufficient showing with respect to four inaccuracies or omissions that negated the facial showing of probable cause. Petitioner also showed that the affidavit purged of the inaccuracies and supplement by the omissions would not be

17

sufficient to support a finding of probable cause, which entitled him to a Franks hearing. The court found that petitioner failed to make a sufficient preliminary showing that the affidavit misrepresented or invented information supplied by a confidential informant because it was reasonable that the affiant reported the informant's tip in good faith without any reckless disregard." "The outcome was that the 9th Circuit affirmed in part but vacated petitioner's conviction and remanded for an evidentiary hearing on the warrant affidavit because petitioner had made a sufficient showing of inaccuracies or omissions that negated the facial showing of probable cause."

Based on the pretense that Petitioner had committed the robberies of several Game Stop Stores in multiple Parishes in close geographical locations, the district attorney mislead a jury into obtaining a conviction for the crime of attempted armed robbery of the Game Stop Store located on Highway 190 in Mandeville, Louisiana. There was absolutely no reliable evidence presented by the district attorney to slightly suggest that Petitioner committed an attempted armed robbery of this store. The only evidence presented, suggested that at best, Petitioner was in the area of the Game Stop Store located in Mandeville, Louisiana.

The prosecutor in this case did everything in his power to convict petitioner on these crimes and submitted evidence that should not have been presented,

suggested that there was probable cause to stop/search and arrest petitioner without any probable cause.

Additionally, he allowed these warrants stand knowing that **no** district attorney would have **not** found these warrants questionable as stated in previous application concerning the Notaries who were not certified with the state.  At the very least, petitioner has made a substantial showing that these affidavits have inaccuracies and/or omissions concerning the validity of the certifications of the notaries.  They also have several inconsistencies made by Officer Forrester and Detective McCormick.

Petitioner has made a substantial showing that cumulatively, these affidavits are misrepresented by the state and should have been quashed.

**Claim II - Petitioner's Fifth, Sixth and Fourteenth Amendment rights were violated when the evidence presented during the trial were contrary to federal and state law and do not support a criminal conviction.**

In determining whether the evidence presented against Petitioner was in the light most favorable to the prosecution, contrary to clearly established Federal law. For more than a generation, the United States Supreme Court has consistently applied a single standard for evaluating the sufficiency of the evidence to support a state criminal jury verdict.

"In Jackson v. Virginia, 443 U.S. 307, [324], 99 S. Ct. 2781, [2791-92], 61 L. Ed. 2d 560 (1979), it was held that a state prisoner is entitled to habeas corpus relief if a federal judge finds that 'upon the record evidence adduced at the trial no rational trier of fact could have found proof of guilt beyond a reasonable doubt." McDaniel v. Brown, 558 U.S. 120, 121, 130 S.Ct. 665, 666, 175 L.Ed.2d 582 (2010)(citation omitted). "[T]he relevant question is whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." Jackson v. Virginia, 443 U.S. at 319, 99 S.Ct. at 2789; Perez v. Cain, 529 F.3d 588, 594 (5th Cir.), cert. denied, 555 U.S. 995, 129 S. Ct. 496, 172 L. Ed. 2d 358 (2008).

In a habeas corpus proceeding arising from a claim that a person has been convicted in a state court upon insufficient evidence, a federal court must consider whether there is sufficient evidence to justify a rational trier of fact to find guilty beyond a reasonable doubt.

Petitioner, simply states that a federal habeas court must consider whether there was any evidence to support prisoners state court conviction a under state law. Petitioner claims that by using the vehicle of federal habeas the court does not have to consider whether there has been evidence to support the state court conviction, but rather determine if sufficient evidence will support the state court

20

conviction. The determination of sufficient evidence must be brought to the court assuming the procedural prerequisites have been satisfied. This petitioner is entitled to habeas relief as there is evidence that no rational trier of fact would have found proof that this petitioner is guilty beyond a reasonable doubt. Under 28 USCS 2254, this petitioner is entitled to habeas relief, assuming settled procedural prerequisites for such a claim have otherwise been satisfied, if it is found that upon the record evidence adduced at the trial no rational trier of fact could have found proof of guilty beyond a reasonable doubt in terms of the substantive elements of the criminal offense as defined by state law.

A reviewing court cannot merely look to see if the State has presented evidence in support of each element of the investigation. If the State has done so, the reviewing court must analyze that evidence in light, of the entire record, which includes that of the petitioner's evidence. If the court finds that no rational juror would have found the petitioner guilty in light, of the "**complete**" record, the conviction simply cannot stand.

When circumstantial evidence formulates the basis of the conviction, that evidence must be composed of proof of collateral facts and circumstances from which the existence of the main fact may be inferred, as to reason and common experience. The elements must be proven such that every reasonable hypothesis

21

of innocence is omitted.  Whether or not the hypothesis is probable the point here is simply that a rational juror could have been led to a different outcome by the directed verdict.

It is not for us to find the facts. . . If the Sixth Amendment right to have a jury decide guilt and innocence means anything, it means that the facts essential to conviction must be proven beyond the jury's reasonable doubt, not beyond ours. A jury verdict, if based on an instruction that allows it to convict without properly finding the facts supporting each element of the crime, is error. Such error is not corrected merely because an appellate court, upon review, is satisfied that the jury would have found the essential facts had it been properly instructed. The error cannot be treated as harmless.  No rational jury could have found that Mr. Reaux was guilty had the complete record been produced at the trial.

The Due Process Claim of the Fourteenth Amendment protects a criminal petitioner against conviction except upon proof beyond a reasonable doubt of every fact necessary to constitute the crime charged. The Due Process Clause of the Fourteenth Amendment protects a criminal petitioner against a conviction except upon proof beyond a reasonable doubt of every fact necessary to constitute the crime charged.   A state prisoner who alleged the evidence could not be fairly characterized as sufficient to have led a rational trier of fact to find guilt beyond a

reasonable doubt stated a constitutional claim cognizable in a, federal habeas proceeding. Petitioner contends review of the record in the light most favorable to the prosecution does not established a rational factfinder could readily have found the him guilty beyond a reasonable doubt of armed robbery under state law.

Under LSA-R.S. 14:64 - armed robbery is defined as A.  Armed robbery is the taking of anything of value belonging to another from the person of another or that is in the immediate control of another, by use of force or intimidation, while armed with a dangerous weapon.  B.  Whoever commits the crime of armed robbery shall be imprisoned at hard labor for not less than ten years and for not more than ninety-nine years, without benefit of parole, probation, or suspension of sentence.

---

Nancy Pinchoff testified that she and "Stephanie", were working together at the Game Stop on Manhattan Boulevard when Pinchoff explained that a man walked into the store near closing time, demanding money from the registers. Pinchoff further explained that she could not open the register. Pinchoff stated she was nervous forgetting the code to the registers, this resulted in Stephanie Ashley having to open the registers. Pincoff testified that Stephanie handed over the money from the registers to the robber.[1]

There was no evidence presented in the trial that supports Stephanie Ashley was robbed. Further, there were no employment records produced or photo

---

[1] Pinchoff could not remember the last name of Stephanie Ashley.

identification produced identifying Stephanie Ashley. Pinchoff testified that Stephanie Ashley was the victim; however, Stephanie Ashley was not presented by the state at trial and it cannot be determined if Stephanie Ashley was robbed. "A crime is a violation of a statute of this State in which there shall be a union of joint operation of act or omission to act, and intention or criminal negligence. A person shall not be found guilty of any crime committed by misfortune or accident where it satisfactorily appears there was no criminal scheme or undertaking or intention or criminal negligence. The acts of a person of sound mind and discretion are presumed to be the product of the person's will, but the presumption may be rebutted. A person of sound mind and discretion is presumed to intend the natural and probable consequences of his acts but the presumption may be rebutted. A person will not be presumed to act with criminal intention but the trier of facts, that is, the Jury, may find criminal intention upon a consideration of the words, conduct, demeanor, motive and all other circumstances connected with the act for which the accused is prosecuted." Given the significance that no crime was committed against Pinchoff or Ashley in count one of the indictment this matter should be vacated or in the alternative remanded.

Secondly, with canons that are set forth in the residual clause that always appear in laws that call for the application of a "trier of fact" this phrase in this

instant matter refers to the State and law enforcement being named as the trier of fact.  Therefore, the standard used by the State should raise conduct-specific inquiry further creating constitutional problems set forth by the State in which Mr. Reaux was found guilty.  Mr. Reaux's conviction should be reversed.

**Claim III:    Petitioner's due process and the petitioners right to Self-Incrimination was violated under the Fifth and Sixth Amendment during custodial interrogation.**

The rule is not that in order to render a statement admissible the proof must be adequate to establish that the particular communications contained in a statement were voluntarily made, but it must be sufficient to establish that the making of the statement was voluntary.  Petitioner's constitutional rights have been violated based on his conviction in whole or in part, on an involuntary confession, regardless of its truth or falsity.  Even is there is ample evidence aside from the confession that will support a conviction.  Both state and federal courts adhere to trial procedures that seek to assure a reliable and clear-cut determination of the voluntariness of the confession offered at trial.

Petitioner's conviction hinges on the fact that he arbitrarily confessed to the crime. The confession was not given freely and voluntarily as the petitioner was under duress and had undergone strain and was sleep deprived and forced to give an unambiguous confession.  The confession given by Petitioner should have been

suppressed by the trial court; however, due to trial counsel's error a motion to suppress confession was not entered into the record by trial counsel.

There was no identification in this case.   In fact, all the victims gave conflicting descriptions regarding the car that was driven, the color of the hat that was worn, the covering on the face, and the scarring (or lack thereof) on the face of the perpetrator.  The police knew they needed a confession to convict the man they had in custody and close a handful of cases.  The man who took the confession, Lt. Cox, was not going to let Petitioner walk.

For some unknown reason, trial counsel never filed a motion to suppress the statement and never requested a pre-trial hearing to try to suppress the statement. Despite the lack of a suppression hearing, however, the State is required by law to affirmatively show that the confession made freely and voluntarily and not made under the influence of fear, duress intimidation, menaces, threats, inducements or promises. The need for counsel to protect the Fifth Amendment privilege comprehends not merely a right to consult with counsel prior to questioning, but also to have counsel present during any questioning, but also to have counsel present during any questioning if the petitioner so desires.  An individual need not make a pre-interrogation request for a lawyer.  While such request affirmatively secures his right to have one, his failure to ask for a lawyer does not constitute a

waiver. No effective waiver of the right to counsel during interrogation can be recognized unless specifically made after the warnings herein delineated have been given. Petitioner was interrogated from just after 9:00 p.m. to just after 4:00 a.m. for a period of seven hours relentlessly by law enforcement officials.  Petitioner was arrested shortly after 8:00 p.m., Petitioner was handcuffed and continuously kept in custody until his first recorded statement at 4:07 a.m. the next morning in which he purports to confess to all the armed robberies for which he was arrested.

After Petitioner's arrest he was placed in the interview room.  Lt. Cox first initiated a conversation with Petitioner at 9:27 p.m. – almost one and one-half hours after his arrest.  An accused has a right to remain silent without sacrificing their innocence.

The State asked standard questions regarding whether the officer threatened, forced, inflicted pain, etc. on Petitioner. The trained witness, of course, gave equally standard responses of "no."  The prosecutor even asked Lt. Cox if Petitioner was deprived of sleep, to which the officer astonishingly testified, again, "no."  So what did the police do for over six hours between 9:30 p.m. and 4:00 a.m.? "We just kept talking to him."  Apparently constantly talking to someone for six hours at a time when most people are sleeping is not sleep deprivation, according to Lt. Cox, who explained his interrogation technique as follows;

27

It's – it's – the practice especially when – when there is information
we had that indicated he was involved in it, to just keep speaking with
him to – to get the truth, the truth is all we want; so we speak with
him until – till we realize we're not going to get the truth, or we get
the truth, one of the two.

Since we are all sing our brains and not just blindly accepting the grossly

standard denial of force, coercion, or sleep deprivation, it should be clear that Lt.

Cox was not going to stop until he heard Petitioner regurgitate the polices' version

of the truth.

After Lt. Cox and McLain interrogated Petitioner for about two hours, they

took a break (a luxury not afforded Petitioner) and allowed the Jefferson Parish

detectives to have a crack at Petitioner, who up until that time told the police that

he had nothing to do with the robberies.  For an hour and a half to two hours the

Jefferson Parish detectives interrogated Petitioner without taking a break.

Petitioner continued to insist on his innocence.

After hours of interrogation, and five and one-half hours of being in police

custody, Petitioner maintained his innocence.  But everyone has a breaking point –

a point at which they will say what they know the other person wants to hear,

because they think that will make the situation better.  Petitioner's breaking point

came at 4:07 a.m. in the morning after hours of relentless interrogation from law

enforcement.  After the Jefferson Parish detectives left, Lt. Cox went back at it,

continuing to "just ke[ep] talking to him" until "we get the truth."  For an additional three hours (from approximately 1:00 a.m. to 4:07 a.m.) Lt. Cox hammered away at the exhausted and sleep deprived Petitioner.  Finally, at 4:07 a.m. Petitioner ended the ordeal and broken telling Lt. Cox what the officer obviously wanted to hear. Under the Fifth Amendment Petitioner was subjected to physical and psychological abuse including that of sleep deprivation.

A confession is inadmissible under the Fifth Amendment's Due Process Clause unless the government can show by the preponderance of the evidence that the confession was voluntary. Under the Fifth Amendment, there is no talismanic definition of "voluntariness," mechanically applicable to the host of situations where the question has arisen. Rather, a confession satisfies the requirements of the Fifth Amendment if, after examining the totality of the circumstances, the court is satisfied that the confession was the product of rational intellect and not the result of physical abuse, psychological intimidation, or deceptive interrogation tactics calculated to overcome the petitioner's free will. The court must determine, under the totality of the circumstances, whether the petitioner's will, has been overborne and his capacity for self-determination critically impaired. See United States v. Marzook, 435 F.Supp. 2d 708, June 8, 2006.

Seven hours of police interrogation can hardly result in a reliable confession that passes the muster of LSA-R.S. 15:451 and 452.  Although the State's witness provided the standard responses of "no" to the questions regarding force, intimidation, and sleep deprivation, the facts tell a different story.  Petitioner was in duress and had been deprived of sleep causing an effect on his body and mind that rendered his confession compelled.

Statements made at and during custodial interrogation should be questioned as well as their admissibility of those statements once a defendant has been detained at length by law enforcement.  It would stand to reason that the prosecution should not be allowed to use those statements, whether exculpatory or inculpatory stemming from the custodial interrogation of that defendant unless it demonstrates the use of procedural safeguards effective to secure the privilege against self-incrimination.  Petitioner had been custodial interrogation for a period of eight hours exhibiting duress and deprivation from sleep.  Petitioner's story had not changed until he was so exhausted that he relented and told law enforcement what they wanted to hear so he could merely rest.

The State not only failed to carry its burden under LSA-R.S. 15:451, but the record reflects that the statement was not free of fear, duress, intimidation, menaces, threats, inducements or promises.  Additionally, the record exposes that

Petitioner was subjected to treatment designed by effect on body or mind to compel a confession of a crime.   The privilege against self-incrimination, the essential basis of the American adversary system, has its constitutional foundation in the respect a government, state or federal, must accord to the dignity and integrity of its citizens. As such, Petitioner's confession should not have been presented to the jury and his conviction must be reversed.

**Claim IV:     Petitioner's constitutional rights of due process and rights to confrontation were violated when jury heard inadmissible "other crimes" evidence submitted by the State when the Stated failed to meet its burden of proof under Prieur and Art. 404(B).**

For evidence of other crimes to be admissible, the State must: (1) prove by a preponderance of the evidence that the other acts or crimes occurred and were committed by the petitioner; (2) demonstrate that the acts show motive, opportunity, intent, preparation, plan, knowledge, identity, absence of mistake or accident; and (3) show that the probative value of the evidence outweighs its prejudicial effect.[2]

The probative value of evidence of unrelated offenses in relation to the charged offense should be weighed in light of its possible prejudicial effect, its

---

[2] See Sate v. Dauzert, 02-1187 (La. 5 Cir. 3/25/03), 844 So.2d 159, 165.

tendency to influence the triers of fact improperly as to the present guilt of the accused.

The State filed a notice of intent to use evidence of other crimes committed by the petitioner.  The State listed four other crimes that it intended to present to the jury;

- April 17, 2009, the petitioner robbed a Game Shop- located at 61103 Airport Road, in St. Tammany Parish, Louisiana with a box cutter.
- April 18, 2009, the petitioner robbed a Game Shop located at 69240 LA Highway 21 in St. Tammany Parish with a box cutter.
- April 13, 2009, the petitioner robbed a Game Stop in Denham Springs, Louisiana
- April 14, 2010 the petitioner robbed a Game Stop in Walker, Louisiana.

The admissibility of other acts of misconduct involves substantial risk of grave prejudice to a defendant. As to the prejudicial effect of evidence of other crimes…

"* * * The natural and inevitable tendency of the tribunal--whether judge or jury--is to give excessive weight to the vicious record of crime thus exhibited, and either to allow it to bear too strongly on the present charge, or to take the proof of it as justifying a condemnation irrespective of guilt of the present charge. State v. Prieur, 277 So. 2d 126, 1973 La. LEXIS 5689.

The State was unable to meet its burden at the pretrial hearing.  Moreover, the trial court failed to make a finding that Mr. Reaux was the perpetrator of the Denham Springs and Walker, Louisiana robberies.  The trial court mentioned that it was aware that Mr. Reaux had been convicted of the St. Tammany Parish

offenses, but no evidence was presented to prove the conviction by a preponderance of the evidence.  Additionally, the State never presented an argument how the evidence would be used; notwithstanding the Notice stated the purpose was "to show petitioner's knowledge, intent, guilty knowledge, system, and motive."

The trial court found that based on the petitioner's confession, which was not entered into evidence at the *Prieur* hearing, the evidence "goes to his knowledge and intent, and system and *modus operandi*".[3]  Based on that, the trial court's final ruling on the matter was that it would "allow the portion of his taped confession by St. Tammany to be used in regards as it applies to 404B. Nothing else will be allowed, whether or not he was arrested and jailed, and whether or not all these other matters will be redacted in regards to that.[4]

"Evidence of an uncharged offense arising out of the same transactions as the offense charged in the indictment is not extrinsic evidence within the meaning of Rule 404(b)." Generally, evidence of other acts is intrinsic "when the evidence of the other act and the evidence of the crime charged are 'inextricably intertwined; or both acts are part of a 'single criminal episode' or the other acts were 'necessary

---

[3] Transcript of Hearing on 7/22/13 p. 30, appearing in R. Vol. 1, p. 195
[4] Id. (emphasis added).

preliminaries' to the crime charged." The First Circuit has explained, "It is well established that where a conspiracy is charged, acts that are not alleged in the indictment may be admissible as part of the Government's proof."  "Evidence is intrinsic to a conspiracy if it is relevant to establish how the conspiracy came about, how it was structured, and how the [defendant] became a member."   "This evidence is admissible to complete the story of the crime by proving the immediate context of events in time and place." "Intrinsic evidence does not implicate Rule 404(b), and 'consideration of its admissibility pursuant to Rule 404(b) is unnecessary.'" United States v. Williams, 2016 U.S. Dist. LEXIS 153758.

Thus, the trial court ruled that the only 404(B) evidence could come in the form of Mr. Reaux's statement.  The trial court specified that nothing else would be allowed.  Despite that ruling, the State submitted an excess of other crimes evidence through live testimony of police officers.

In the instant matter – a Jefferson Parish case, supposedly to prove a Jefferson Parish Crime -- the State called only three Jefferson Parish deputies, compared to five police officers from St. Tammany, making this case more about the robberies in St. Tammany than the ones that took place in Jefferson Parish. The State merely relied on the police officers from another jurisdiction and not the Jefferson Parish Detective shows the level of prejudice this error caused Mr. Reaux,

who had no less than eight police officers testify against him for two armed robberies.  Furthermore, without the other crimes evidence it is high probability that a jury would not have convicted Mr. Reaux in this matter where the victims were unable to identify the robber and gave conflicting descriptions, one of which was inaccurate.

**St. Tammany Parish armed robberies**

The first unauthorized utterance of other crimes evidence came when Detective Varmall informed the jury that there were multiple Game Stop robberies on the Northshore that he believed were connected to the two Game Shop robberies concerned in this trial. The jury learned through Detective Varmall that the Loss Prevention Officer for all Game Stop stores in Southeastern Louisiana informed him of additional armed robberies of Game Stop stores – specifically, armed robberies of Game Stop stores "in Walker, Denham Springs, Covington and ..the attempt one in Slidell."[5]  Shortly after the hearing of these additional armed robberies, the jury heard the prosecutor ask the office. "...did you believe that those were seven unrelated incidents of Game Stop robberies occurring near closing time all over South Louisiana...?[6] Of course, the officer replied that he

_____

[5] 7/23/13 Trial Transcript, pp. 53-54.
[6] *Id.* (emphasis added)

believed there may have been a connection.[7]  Detective Varmall explained that to follow up on his belief that they were related, he contacted the St. Tammany Parish Sheriff's Office, where he learned that the other robberies were consistent with the ones in Jefferson Parish.

Next up to tell the jury all about Mr. Reaux's criminal history was Lieutenant McCormick, of the St. Tammany Parish Sheriff's Office.  He informed the jury that two of the three Game Stop stores in St. Tammany Parish were robbed by Mr. Reaux, despite the fact, that the information came from two other people who did not testify.[8]

The third police officer that the State used to tell the jury about Mr. Reaux's previous crimes was Lt. Cox, who informed the jury that similar robberies occurred in his jurisdiction of Slidell and Covington. He also testified that he was "made aware that there were several ['very similar' armed robberies] throughout the, I guess metro New Orleans area, up to Walker, Louisiana.[9]  He explained to the jury that the "method of operation and the "physical characteristics were almost identical."  Lt. Cox even went so far as to opine that the crimes were committed by the same person – Mr. Reaux, of course.[10]

---

[7] 7/23/13 Trial Transcript, p. 54.
[8] 7/23/13 Trial Transcript, p. 54.
[9] 7/23/13 Trial Transcript pp. 75-76
[10] 7/23/13 Trial Transcript, pp. 39

Finally, Lt. Mclain – another police officer from the Northshore – explained more facts surrounding the other crimes, this time in detail.[11]   Also during Lt. Mclain's testimony, the State elicited information about Mr. Reaux's arrest in the St. Tammany Parish robberies[12] – something that the judge explicitly disallowed. Putting the nail in the coffin, Lt. Mclain, informed the jury that Mr. Reaux was facing charges for eight armed robberies at the time he gave his statement.[13]

In addition to eliciting testimony that was clearly prohibited by the trial court's pretrial ruling regarding other crimes evidence, the State went even further out of bounds when it asked Lt. Mclain to opine directly on Mr. Reaux's guilty in this this case.

Q:     …did you believe that nobody else [other than Mr. Reaux] could have committed the Jefferson Parish robberies…?

A:     Yes sir.[14]

Considering the above-mentioned testimony of the State's witnesses -- mostly from St. Tammany Parish, the lack of evidence presented at the pre-trial *Prieur* hearing, and the blatant disregard for the Trial court's order regarding how the *Prieur* evidence could be introduced, this Court should overturn Mr. Reaux's

---

[11] 7/23/13 Trial Transcript, pp. 39
[12] 7/24/13 Trial Transcript, pp 121.
[13] 7/24/13 Trial Transcript, p. 132.
[14] 7/24/13 Trial Transcript, p. 138.

conviction and order a fair trial where a jury can decide his guilt or innocence based on facts of this case, and not multiple armed robberies in St. Tammany Parish.

**The armed robberies in Denham Springs and Walker**

As mentioned, Louisiana has adopted the federal standard for the admission of other crimes evidence.  See La.C.E. Art 1104.  The federal case on point is Huddleston v. U.S., 485 681, 686 (1988), in which the Court held that prior acts are admissible if relevant and f the jury could reasonably find a preponderance of the evidence that the petitioner had committed those prior acts.  In other words, sufficient facts need to be presented to a jury (not just the judge at a pre-trial hearing) so that the jury can reasonably find a preponderance of the evidence that the petitioner had committed those prior acts.

The jury heard that Mr. Reaux committed an armed robbery of a Game Stop in Denham Springs, Louisiana and an armed robbery of a game Stop in Walker, Louisiana.  That is all the jury heard. There was no evidence presented to the jury from which they could have reasonably concluded by a preponderance of the evidence that the petitioner had committed those criminal acts.  As such the jury was given impermissible character evidence and their verdict was tainted by that evidence.  A baseball cap allegedly worn by the robber was improperly published to the jury and considered as evidence.

38

United States v. Solorzano, 2017 U.S. Dist. LEXIS 54141 Evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person to show that he acted in conformity with the character. Fed. R. Evid. 404(b)(1). Such evidence however, is admissible for other purposes, such as proof of "motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake, or lack of accident." Fed. R. Evid. 404(b)(2). Extrinsic evidence must satisfy rule 404(b), whereas "[i]ntrinsic evidence does not implicate Rule 404(b)." United States v. Garcia, 27 F.3d 1009, 1014 (5th Cir. 1994). Evidence is "intrinsic" if it and "evidence of the crime charged are 'inextricably intertwined' or both acts are part of a 'single criminal episode' or the other acts were 'necessary preliminaries' to the crime charged." Id. (quoting United States v. Williams, 900 F.2d 823, 825 (5th Cir. 1990)). "'Other act 'evidence is 'intrinsic' when the evidence of the other act and evidence of the crime charged are 'inextricably intertwined' or both acts are part of a 'single criminal episode' or the other acts were 'necessary preliminaries' to the crime charged." Id. at 825. Intrinsic evidence is admissible so the jury may evaluate all the circumstances under which the petitioner acted. United States v. Royal, 972 F.2d 643, 647 (5th Cir. 1992); United States v. Mateo, 947 F.2d 1191, 1198 (5th Cir. 1991) (citing United States v. Randall, 887 F.2d 1262, 1268 (5th Cir. 1989)).

The test of whether extrinsic evidence is admissible is set forth in United States v. Beechum, 582 F.2d 898, 910 (5th Cir. 1978) (en banc). Under this test, first, the extrinsic evidence must be relevant to an issue other than a petitioner's character. *Id.* at 911. Second, "the evidence must possess probative value that is not substantially outweighed by its undue prejudice and must meet the other requirements of [R]ule 403." *Id.* While it is a close call, the court treats the proposed testimony of Edgar Solorzano as extrinsic and concludes that it is admissible under Rule 404(b), as it is relevant to Petitioner's intent, knowledge, and motive with respect to the offenses charged in Counts one and two, and the probative value of the evidence is not substantially outweighed by undue prejudice.

Thus, under Federal Rule of Evidence 404(b) evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person to show action in conformity. In the instant matter, it must be determined that the evidence that was presented to the jury that found this petitioner guilty was not sufficient as the petitioner had not been found guilty of the other offenses and it had not been proved that the petitioner was involved in the other crimes. The only information that had been gathered was the involuntary statement that law enforcement gathered after an eight-hour interrogation depriving the petitioner of his

constitutional rights.  The admissibility of the extrinsic offense evidence should not have been permitted for any reasonable jury to establish preliminary facts by a preponderance of evidence.  The evidence that was given to the jury during the trial of this petitioner should have been excluded as it was irrelevant and cannot be proven to be intertwined or of the same act or of a single criminal episode, which severely prejudiced this petitioner.

**Claim V – Petitioner was denied the effective assistance of counsel guaranteed by the Sixth and Fourteenth Amendments to the United States Constitution when trial counsel failed to object or challenge the trial court's subject matter jurisdiction.**

Petitioner contends there was no jurisdiction of the subject matter for the trial court because the district attorney, in bad faith, arbitrarily and unreasonably filed a bill of information charging Petitioner with the offense of attempted armed robbery where there was no evidence to support any such charge.  Trial Counsel's knowledge of there being no evidence to base the bill of information on was ineffective for failing to challenge or object to the jurisdiction.

## Standard of Review

The Sixth Amendment to the United States Constitution guarantees the right to effective assistance of counsel.  Strickland v. Washington, 466 U.S. 668, 694, 104 S.Ct. 2052, 2068, 80 L.Ed.2d 674 (1984).  A petitioner must show: (1) that trial counsel's performance was defective, and (2) a reasonable probability that but for

the deficient performance, the outcome of the proceedings would have been different.  A prisoner's challenge to [the] indictment is not appropriate unless the indictment was so defective that the convicting court had no jurisdiction.

Williams v. Collins, 16 F.3d 626, 637 (5th Cir.), cert. denied, 512 U.S. 1289, 115 S.Ct. 42, 129 L.Ed.2d 937 (1994); Alexander v. McCotter, 775 F.2d 595, 598 (5th Cir 1985); Liner v. Phelps, 731 F.2d 1201, 1203 (5th Cir. 1984); Branch v. Estelle, 631 F.2d 1229, 1233 (5th Cir. 1980).  "Due deference [must be given] to the state court's interpretation of its own law that a defect of substance in an indictment [bill of indictment] …deprive a state trial court of jurisdiction."  McKay v. Collins, 12 F.3d 66, 69 (5th Cir.), reh'g granted on other grounds, 12 F.3d 70 (5th Cir.), cert. denied sub nom., Williams v. Scott, 513 U.S. 854, 115 S.Ct. 157, 130 L.Ed.2d 95 (1994). Louisiana courts have held that Article 1 § 2 of the Constitution provides that "no person shall be deprived of life, liberty, or property, except by due process of law," and that … the essence of due process [is] "protection from an arbitrary and unreasonable action." Plaquemines Parish Commission Council v. Perez, 379 So.2d 1373, 1377 (La. 1980).  Due Process is also defined by the Constitution itself to require impartiality.  Article 1 § 22 provides: "All courts shall be open, and every person shall have an adequate remedy by due process of law and justice,

administered without denial, partiality, or unreasonable delay, for injury to him in his person, property, reputation, or other rights."

Jurisdiction over the subject matter is defined by C.C.P. 2 as "the legal power and authority of a court to hear and determine a particular class of actions or proceedings…"  Article 5 § 10 of the Constitution confers upon the appellate courts "original jurisdiction of all civil and criminal matters, except as otherwise authorized by the Constitution."  See Bowen v. Doyal, 259 La. 839, 253 So.2d 200 (1971).  A district attorney is granted his/her plenary powers by Article 5 § 26 of the Constitution, which provides: "(B) Powers. Except as otherwise provided by this Constitution, a district attorney, or his designated assistant, shall have charge of every criminal prosecution by the state in his district, be the representative of the state before the grand jury in his district, and be the legal advisor to the grand jury. He shall perform other duties provided by law."  A criminal prosecution is defined by C.Cr.P. 381 as a prosecution instituted "for the purpose of bringing to punishment one who has violated a criminal law."  Finally, the jurisdiction of the district attorney to prosecute those who violate state criminal statutes is exclusive; it can only be constrained or curtailed when it operates to the prejudice of a contrary constitutional mandate, and even then only with due deference to the

district attorney's constitutional prerogative.   City of Baton Rouge v. Short, 345

So.2d 37, 40 (La. 1977).

A district attorney's investigation can be curtailed when the district attorney

abuses the powers of his office by subjecting an individual to a harassing

investigation without any good faith belief that the individual has committed any

crime. Matter Under Investigation Grand Jury No. 1, 875 So.2d 33, 36 (La. 5/14/04);

Compare In re Grand Jury Subpoenas Issued to Certain Members of Orleans Levee

District, 95-kk-0042, 648 So.2d 864 (La. 1995) (per curiam).  The issuance of an

injunction is warranted in such cases because "there [is] a federal right to be free

of a bad faith prosecution.  "Plaquemines Parish Comm'n Council v. Perez, 379

So.2d 1373, 1385 (La. 1980) (footnote omitted), discussing Shaw v. Garrison, 467

F.2d 113 (5th Cir. 1972).   A plaintiff who seeks to enjoin such "bad faith"

investigation must show, at a minimum, that he is threatened with an investigation

which is, unnecessarily abusive, harassing or illegal, and without any possibility of

ultimate indictment supported by probable cause for prosecution.  Perez, supra,

379 So.2d at 1385.

In the present case, trial counsel failed to enjoin this state criminal

prosecution before the institution of criminal proceedings by bill of information.

Had counsel challenged the arbitrary and unreasonable prosecutorial misconduct,

there would not have been a bill of information charging Petitioner with an attempt

armed robbery for which there was no supporting evidence.  If by no other means,

counsel should have raised the lack of subject matter jurisdiction prior to trial by

motion to quash.  C.Cr.P. Art. 531.  During a pretrial hearing, a record of evidence

would have been had where Petitioner could have proved that the whole purpose

of the district attorney's investigation was to harass Petitioner without any good

faith belief that Petitioner had committed the offense of attempted armed

robbery.

Prior to the filing of a bill of information, the district attorney was armed with

Detective Corey Crowe and Sgt. Patrick McCormick's questionable accounts as to

the circumstances surrounding the alleged attempted armed robbery.  According

to Sgt. McCormick, "on April 20, 2009, at approximately 1950 hours, [he] was

conducting surveillance from Macaroni Grill parking lot on Highway 190 in

Mandeville!  The surveillance was a result of multiple armed robberies at Game

Stop and EB Game locations throughout the area. Ibid.  He had knowledge of the

description of the alleged perpetrator. Ibid.  At approximately 2006 hours [he]

noted a subject matching the description ... walk from between business. Ibid. Sgt.

McCormick was spotted by the subject whom immediately fled to the rear of the

building where [the subject] was detained by Detective Forester. Ibid.  A pat down

for weapons revealed items utilized in the crimes. Ibid.  The vehicle hidden by the suspect also fit the vehicle description. Ibid.  The suspect's claim of his business in the area were disproved."   Ibid. Petitioner should never have been stopped, arrested, searched and most importantly, tried for these robberies.

According to Detective Crowe, however, "on Monday April 20, 2009, about 2007 hours, Sgt. Patrick McCormick of the St. Tammany Sheriff's Department observed a white Monte Carlo, parked in a nearby parking lot, near the Game Stop store on Highway 190 in Mandeville, Louisiana. (Exhibit "D" Affidavit for Arrest Signed by Detective Corey Crowe).  Sgt. McCormick observed the vehicle to be occupied by a black male driver.  Ibid.  Sgt. McCormick began surveillance of the suspect and observed him exit the vehicle and began walking towards the Game Stop Store. Ibid.  The suspect was observed to fit the physical and clothing description given during the prior robberies.  Ibid.  Contact was made with the suspect, at which time he was observed to be evasive with deputies as he threw a box cutter to the ground away from him. Ibid.  The suspect was also discovered to be in possession of a black mesh "Jansport" backpack and was also wearing grey sweat pants and a white tee shirt.  Ibid.

As the Court can observe from the face of the arrest warrants, both are in direct contrast.  While Sgt. McCormick alleged that Petitioner hid the vehicle,

Detective Crowe alleged that they observed Petitioner occupying the vehicle in a nearby parking lot.  If Petitioner was first observed sitting in the vehicle, then why did Sgt. McCormick allege that Petitioner was observed walking from between businesses.   In another instance, Sgt. McCormick alleged that when Petitioner observed Sgt. McCormick, Petitioner "immediately fled to the rear of the building where [the subject] was detained by Detective Forrester; but Detective Crowe alleges that Petitioner only became evasive after contact was made and that being relative to throwing a box cutter to the ground away from Petitioner.   Sgt. McCormick, however, made no reference to Petitioner possessing or throwing a box cutter.  To add, Sgt. McCormick noted that Petitioner's claim of his business in the area were disproved; but Detective Crowe's arrest warrant never mentioned that this instant discussion occurred, and there was no mention as to what Petitioner's business in the area was.

Moreover, when does it become unlawful to be in a business area or to patronize a particular business?

It is baffling in relation as to why there are two arrest warrants of one incident in the first place.  Both being written by two different officers who contradict each other's version of the facts.  The only reasonably explanation is that the officers were trying to figure out a way to explain stopping and harassing

Petitioner for these crimes, without probable cause, and pinning an attempt armed robbery on him in order to charge him for the rest of these crimes. It is clear from the trial record that Petitioner never went inside of the Game Stop Store.

No district attorney would have not found these warrants questionable. In fact, no reasonable minded district attorney would have, in good faith, pursued a prosecution of Petitioner for the crime of attempted armed robbery of a place of business under these circumstances. Specifically, contradicting warrants of one incident. Petitioner not being in possession of any weapons. Petitioner not being in possession of a mask which, as in the other robberies the perpetrator wore a mask. Petitioner never even stepped foot on the Game Stop Store's property as both warrants clearly established this fact. There was nothing presented in either warrant to justify a man of average knowledge that Petitioner had committed, was about to commit, or was in the process of committing an attempted armed robbery.

The sole purpose of the district attorney pursuing these charges against Petitioner was to harass him. It is clear, that the district attorney in bad faith, unnecessarily abused his authority. The only question was whether counsel's deficient performance of not enjoining and/or not filing a motion to quash on the basis of Petitioner's due process rights of the 14th Amendment to the United States

Constitution were violated when his right to be free of a bad faith prosecution was transgressed; prejudiced Petitioner.  Petitioner avers that it is clear from the face of the record that he was prejudiced as the district attorney lacked the evidence to support probable cause to file a bill of information with any possibility of ultimately obtaining a conviction.

Based on the pretense that Petitioner had committed the robberies of several Game Stop Stores in multiple Parishes in close geographical locations, the district attorney misled a jury into obtaining a conviction for the crime of attempted armed robbery of the Game Stop Store located on Highway 190 in Mandeville, Louisiana.  There was absolutely no reliable evidence presented by the district attorney to slightly suggest that Petitioner committed an attempted armed robbery of this store.  The only evidence presented, suggested that at best, Petitioner was in the area, of the Game Stop Store located in Mandeville, Louisiana.

Counsel's deficient performance prejudiced Petitioner as this matter could have been resolved pretrial, where the outcome of these proceedings would have been different, instead of having to be resolved in a post-conviction proceeding.

### **CONCLUSION**

Wherefore, Petitioner contends he has shown that his 5th, 6th, 8th and 14th Amendments to the United States Constitution were violated.  Additionally,

Petitioner has shown that both of the affidavits used for arrest warrants were in conflict with one another, forged on the face of the documents by Detective's using notary numbers that belonged to others as argued in previous petition, which makes the arrest illegal and all that followed, illegal.

Respectfully Submitted on this 1st day of September, 2017.

Gregory Reaux #574124
Main Prison  Pine – 4
Louisiana State Penitentiary
Angola, LA  70712

## AFFIDAVIT/CERTIFICATE OF SERVICE

I, Gregory Reaux, hereby swear and aver that the foregoing is true and correct to the best of my knowledge and belief.  I, Gregory Reaux, further swear and aver that a copy of the foregoing has been served upon counsel for the Respondent, District Attorney, Warren Montgomery – Justice Center, 701 N. Columbia St., Covington, LA  70433 by placing a copy of the same in the United States Mail, properly addressed and postage pre-paid.

Done this 1st day of September, 2017.

Gregory Reaux #574124
Main Prison  Pine – 4
Louisiana State Penitentiary
Angola, LA  70712

Exhibit (A)



# PROBABLE CAUSE DETERMINATION

## STATE OF LOUISIANA

## 22ND JUDICIAL DISTRICT COURT   PARISH OF ST. TAMMANY

Before me, the undersigned notary public, personally came and appeared: Sgt. Patrick McCormick

who, after being by me first duly sworn, did depose and state: That he/she prepared and signed the

attached arrest report, item number ___2009-8067___

and that it is a true and correct statement to be submitted to a Magistrate per La.C.Cr.Pr. Art 230.2 consists of the following summarized facts:

    On 04-20-09 at approximately 1950 hrs. Sgt. McCormick was conducting surveillance from the Macaroni Grill parking lot on Highway 190 in Mandeville. The surveillance was a result of multiple armed robberies at Game Stop and EB Game locations throughout the area. Sgt. McCormick had knowledge of the description of the alleged perpetrator.
    At approximately 20:06 hrs. Sgt. McCormick noted a subject matching the description provided to him walk from between two buildings, one of which was Game Stop. The subject utilized an alley and lighting to stay covert from the front of the business. Sgt. McCormick was spotted by the subject whom immediately fled to the rear of the building where he was detained by Dfc. Forester.
    A pat down for weapons revealed items utilized in the crimes. The vehicle hidden by the suspect also fit the vehicle description. The suspects' claims of his business in the area were disproven.

_____ 3202
Arresting Officer

Sworn to and subscribed before me this __22nd__ day of __April__, __2009__

_____
NOTARY PUBLIC                    IP 3302

    WHEREAS, the above and foregoing affidavit having been submitted to me, upon oath, of arresting

officer detailing the warrantless arrest of __Gregory John Reaux b/m 01-31-81__

for the charge(s) of __14:27 14:64 Attempted Armed Robbery__

and after having reviewed the above affidavit for the purpose of determining whether probable cause existed for the arrest, as per La.C.Cr.Pr. Art 230.2: I, the undersigned Judge, have determined that probable cause (did) (did not) exist for the warrantless arrest of the aforementioned individual.

Given under my official signature this __24__ day of _____, __09__

_____
JUDGE

__04-20-09__
DATE OF OFFENSE

Exhibit (B)

# PROBABLE CAUSE DETERMINATION

## STATE OF LOUISIANA

### 22ND JUDICIAL DISTRICT COURT    PARISH OF ST. TAMMANY

Before me, the undersigned notary public, personally came and appeared:

Det. Corey Crowe _____, who, after being by me first duly sworn, did depose and state:

That he/she prepared and signed the attached arrest report, item number____2009-007922____

and that it is a true and correct statement to be submitted to a Magistrate as per La.C.C.P. Art 230.2 consists of the following summarized facts:

On Saturday, April 18, at 2059 hours, The St. Tammany Parish Sheriff's Office received a call for assistance from the Game Stop at 69240 Highway 21, Covington, LA relative to an Armed Robbery of the business. The victims described black male wearing a white tee shirt, gray sweat pants with a white stripe down the leg and a grey shirt covering his nose and mouth. The perpetrator was further described as wearing a single diamond stud earring in his left ear and was carrying a box cutter in his right hand and a black mesh type "Jansport" back pack. The perpetrator entered the store while two of the male employees were behind the counter, the remaining victims/ witnesses were in the merchandise area of the store. The perpetrator brandished the box cutter and ordered the two employees to place the money from both of the cash registers into his back pack. After receiving the cash, the perpetrator fled on foot away from the store. Another robbery fitting the same description and actions of the perpetrator was reported to the Slidell Police Dept. the day prior. In the Slidell Police investigation the suspect was observed driving a Chevrolet Monte Carlo, white in color.

On Monday, April 20, 2009, about 2007 hours, Sgt. Pat McCormick of the St. Tammany S.O. observed a white Chevrolet Monte Carlo, parked in a near-by parking lot, near the Game Stop store on Highway 190 in Mandeville, LA. Sgt. Pat McCormick observed the vehicle to be occupied by a black male driver. Sgt. McCormick began surveillance of the suspect and observed him exit the vehicle, and begin walking towards the Game Stop store. The suspect was observed to fit the physical and clothing description given during the prior robberies. Contact was made with the suspect, at which time he was observed to be evasive with deputies as he threw a box cutter to the ground away from him. The suspect was also discovered to be in possession of a black mesh "Jansport" back pack and was also wearing grey sweat pants and a white tee shirt. The suspect, identified as Gregory Reaux, later confessed to the aforementioned armed robbery."

DOB: 1/31/81   B/m                    Arresting Officer     C Crowe 7114

Sworn to and subscribed before me this 21st day of Apr /        , 2009

                                              G. Cal        7103

                                              Notary Public

CONTINUED ON NEXT PAGE

GREGORY REAUX

WHEREAS, the above and foregoing affidavit having been submitted to me, upon oath, of the

arresting officer detailing the warrantless arrest of _____ **Gregory J. Reaux, b/m, 1-31-1981**

for the charge(s) of _____ **LA R.S. 14: 64, Armed Robbery   (1 count)**

and after having reviewed the above affidavit for the purpose of determining whether probable cause exists

required by La.C.C.P. Art 230.2: I, the undersigned Judge or Magistrate, have determined that probable

cause exists for the aforementioned individual for the purposes of said article.

Given under my official signature this _____ day of _____

Judge / Magistrate

Exhibit (C)

# PROBABLE CAUSE DETERMINATION

## STATE OF LOUISIANA

## 22ND JUDICIAL DISTRICT COURT    PARISH OF ST. TAMMANY

Before me, the undersigned notary public, personally came and appeared: Sgt. Patrick McCormick

who, after being by me first duly sworn, did depose and state: That he/she prepared and signed the

attached arrest report, item number   2009-8067

and that it is a true and correct statement to be submitted to a Magistrate per La.C.Cr.Pr. Art 230.2 consists of the following summarized facts:

On 04-20-09 at approximately 1950 hrs. Sgt. McCormick was conducting surveilance from the Macaroni Grill parking lot on Highway 190 in Mandeville. The surveilance was a result of multiple armed robberies at Game Stop and EB Game locations throughout the area. Sgt. McCormick had knowledge of the description of the alleged perpetetrator.
At approximately 20:06 hrs. Sgt. McCormick noted a subject matching the description provided to him walk from between two buildings, one of which was Game Stop. The subject utilized an alley and lighting to stay covert from the front of the business. Sgt. McCormick was spotted by the subject whom immediately fled to the rear of the building where he was detained by Dfc. Forester.
A pat down for weapons revealed items utilized in the crimes. The vehicle hidden by the suspect also fit the vehicle description. The suspects' claims of his business in the area were disproven.

_____ / 3202
Arresting Officer

Sworn to and subscribed before me this _____ day of _Araw_ , 2009
_____
NOTARY PUBLIC                    I# 3302

WHEREAS, the above and foregoing affidavit having been submitted to me, upon oath, of arresting

officer detailing the warrantless arrest of Gregory John Reaux b/m 01-31-81

for the charge(s) of 14:27 14:64 Attempted Armed Robbery

and after having reviewed the above affidavit for the purpose of determining whether probable cause existed for the arrest, as per La.C.Cr.Pr. Art 230.2: I, the undersigned Judge, have determined that probable cause (did) (did not) exist for the warrantless arrest of the aforementioned individual.

Given under my official signature this _____ day of _____ , 09

_____
JUDGE

04-20-09
_____
DATE OF OFFENSE

# PROBABLE CAUSE DETERMINATION

## STATE OF LOUISIANA

### 22ND JUDICIAL DISTRICT COURT    PARISH OF ST. TAMMANY

Before me, the undersigned notary public, personally came and appeared:

_____ Det. Corey Crowe _____, who, after being by me first duly sworn, did depose and state:

That he/she prepared and signed the attached arrest report, item number____ 2009-007922 _____

and that it is a true and correct statement to be submitted to a Magistrate as per La.C.C.P. Art 230.2 consists of the following summarized facts:

On Saturday, April 18, 2009, at 2059 hours, The St. Tammany Parish Sheriff's Office received a call for assistance from the Game Stop at 69240 Highway 21, Covington, LA relative to an Armed Robbery of the business. The victims described black male wearing a white tee shirt, gray sweat pants with a white stripe down the leg and a grey shirt covering his nose and mouth. The perpetrator was further described as wearing a single diamond stud earring in his left ear and was carrying a box cutter in his right hand and a black mesh type "Jansport" back pack. The perpetrator entered the store while two of the male employees were behind the counter, the remaining victims/ witnesses were in the merchandise area of the store. The perpetrator brandished the box cutter and ordered the two employees to place the money from both of the cash registers into his back pack. After receiving the cash, the perpetrator fled on foot away from the store. Another robbery fitting the same description and actions of the perpetrator was reported to the Slidell Police Dept. the day prior. In the Slidell Police investigation the suspect was observed driving a Chevrolet Monte Carlo, white in color.

On Monday, April 20, 2009, about 2007 hours, Sgt. Pat McCormick of the St. Tammany S.O. observed a white Chevrolet Monte Carlo, parked in a near-by parking lot, near the Game Stop store on Highway 190 in Mandeville, LA. Sgt. Pat McCormick observed the vehicle to be occupied by a black male driver. Sgt. McCormick began surveillance of the suspect and observed him exit the vehicle, and begin walking towards the Game Stop store. The suspect was observed to fit the physical and clothing description given during the prior robberies. Contact was made with the suspect, at which time he was observed to be evasive with deputies as he threw a box cutter to the ground away from him. The suspect was also discovered to be in possession of a black mesh "Jansport" back pack and was also wearing grey sweat pants and a white tee shirt. The suspect, identified as Gregory Reavy, later confessed to the aforementioned armed robbery."

DOB: 1/31/81  B/M

_____  C Crowe 7114
Arresting Officer

Sworn to and subscribed before me this 21st day of ___Apr.'l___, 2009.

_____
G. Cal          7103
Notary Public

CONTINUED ON NEXT PAGE

GREGORY REAVY

WHEREAS, the above and foregoing affidavit having been submitted to me, upon oath, of the

arresting officer detailing the warrantless arrest of _____ **Gregory J. Reaux, b/m, 1-31-1981**

for the charge(s) of _____ **LA R.S. 14: 64, Armed Robbery (1 count)**

and after having reviewed the above affidavit for the purpose of determining whether probable cause exists

required by La.C.C.P. Art 230.2: I, the undersigned Judge or Magistrate, have determined that probable

cause exists for the aforementioned individual for the purposes of said article.

Given under my official signature this _____ day of _____

Judge / Magistrate

# Exhibit (D)

Jan. ... ... ... HUB INTERNATIONAL

No. 4602    P. 1

# PROBABLE CAUSE DETERMINATION

## STATE OF LOUISIANA

## 22ND JUDICIAL DISTRICT COURT    PARISH OF ST. TAMMANY

Before me, the undersigned notary public, personally came and appeared:

___Det. Corey Crowe_____, who, after being by me first duly sworn, did depose and state:

That he/she prepared and signed the attached arrest report, item number____2009-007922_____

and that it is a true and correct statement to be submitted to a Magistrate as per La.C.C.P. Art 230.2 consists of the following summarized facts:

On Saturday, April 18, 2009, at 2059 hours, The St. Tammany Parish Sheriff's Office received a call for assistance from the Game Stop at 69240 Highway 21, Covington, LA relative to an Armed Robbery of the business. The victims described black male wearing a white tee shirt, gray sweat pants with a white stripe down the leg and a grey shirt covering his nose and mouth. The perpetrator was further described as wearing a single diamond stud earring in his left ear and was carrying a box cutter in his right hand and a black mesh type "Jansport" back pack. The perpetrator entered the store while two of the male employees were behind the counter, the remaining victims/ witnesses were in the merchandise area of the store. The perpetrator brandished the box cutter and ordered the two employees to place the money from both of the cash registers into his back pack. After receiving the cash, the perpetrator fled on foot away from the store. Another robbery fitting the same description and actions of the perpetrator was reported to the Slidell Police Dept. the day prior. In the Slidell Police investigation the suspect was observed driving a Chevrolet Monte Carlo, white in color.

On Monday, April 20, 2009, about 2007 hours, Sgt. Pat McCormick of the St. Tammany S.O. observed a white Chevrolet Monte Carlo, parked in a near-by parking lot, near the Game Stop store on Highway 190 in Mandeville, LA. Sgt. Pat McCormick observed the vehicle to be occupied by a black male driver. Sgt. McCormick began surveillance of the suspect and observed him exit the vehicle, and begin walking towards the Game Stop store. The suspect was observed to fit the physical and clothing description given during the prior robberies. Contact was made with the suspect, at which time he was observed to be evasive with deputies as he threw a box cutter to the ground away from him. The suspect was also discovered to be in possession of a black mesh "Jansport" back pack and was also wearing grey sweat pants and a white tee shirt. *The suspect, identified as Gregory Reaux, later confessed to the aforementioned armed robbery."*

*DOB: 1/31/81  B/m*

Arresting Officer _____  C Crowe 7114

Sworn to and subscribed before me this _21st_ day of __April____, 2009

G. Cal _____ 7103

Notary Public

CONTINUED ON NEXT PAGE

*GREGORY REAUX*

WHEREAS, the above and foregoing affidavit having been submitted to me, upon oath, of the

arresting officer detailing the warrantless arrest of _____ **Gregory J. Reaux, b/m, 1-31-1981**

for the charge(s) of    **LA R.S. 14: 64, Armed Robbery   (1 count)**

and after having reviewed the above affidavit for the purpose of determining whether probable cause exists

required by La.C.C.P. Art 230.2: I, the undersigned Judge or Magistrate, have determined that probable

cause exists for the aforementioned individual for the purposes of said article.

Given under my official signature this _____ day of _____

_____

Judge / Magistrate

IN THE

COURT OF APPEAL, FIRST CIRCUIT

STATE OF LOUISIANA

———————————

No. 2014-KA-0330

———————————

STATE OF LOUISIANA,

Appellee

versus

GREGORY JOHN REAUX,

Appellant

———————————

CRIMINAL APPEAL

ON APPEAL FROM THE 22ND JUDICIAL DISTRICT COURT
IN AND FOR THE PARISH OF ST. TAMMANY, STATE OF LOUISIANA,
THE HONORABLE AUGUST J. HAND, JUDGE PRESIDING,
DOCKET NO. 471010 "B"

———————————

ORIGINAL BRIEF ON BEHALF OF
DEFENDANT/APPELLANT, GREGORY JOHN REAUX

———————————

RESPECTFULLY SUBMITTED,

LOUISIANA APPELLATE PROJECT

Mary E. Roper (La. Bar # 22146)
830 Main Street
Baton Rouge, LA 70802
Telephone (225) 387-6600
Facsimile (225) 250-1308
*Attorney for Appellant*

## TABLE OF CONTENTS

TABLE OF AUTHORITIES ..................................................................... ii

JURISDICTION .................................................................................. 1

STATEMENT OF THE CASE .............................................................. 1

ASSIGNMENTS OF ERROR .............................................................. 2

ISSUES PRESENTED ....................................................................... 2

STATEMENT OF THE FACTS ........................................................... 3

SUMMARY OF THE ARGUMENT ..................................................... 4

ARGUMENT ...................................................................................... 5

     ASSIGNMENT OF ERROR NO. 1 ............................................. 5

CONCLUSION .................................................................................. 7

CERTIFICATE .................................................................................. 9

APPENDIX:

Minute Entry of Denial of Motion to Quash

i

## TABLE OF AUTHORITIES

### CONSTITUTIONS

Louisiana Constitution, Article V, § 10  ................................................................. 1

### STATUTES

Louisiana Revised Statute 14:27  ............................................................................. 1

Louisiana Revised Statute 14:64  ............................................................................. 1

Louisiana Revised Statute 15:529.1  ........................................................................ 1

Louisiana Administrative Code, Title 22, part IX, § 309  ........................................ 7

## JURISDICTION

Jurisdiction in this case vests in this Honorable Court pursuant to the provisions of *Article V, §10 of the Louisiana Constitution.*

## STATEMENT OF THE CASE

On July 30, 2010, Gregory John Reaux was convicted of three counts of armed robbery, in violation of *La. R.S. 14:64*, armed robbery, and one count of attempted armed robbery, *La. R.S. 14:27/64.*[1]

On August 12, 2010, he was sentenced to ten years at hard labor on each count, without benefit of probation, parole or suspension of sentence, with each count to run consecutively to the other.[2]

On September 28, 2012, the State filed a multiple offender bill against Mr. Reaux, alleging that he was an habitual offender and seeking to have his sentence enhanced on Count I (one of the armed robbery convictions), pursuant to the provisions of La. *R.S. 15:529.1.*[3] Mr. Reaux filed a motion to quash the multiple offender bill, arguing that the bill had not been filed within a reasonable time.[4]

The trial court denied the motion to quash and found Mr. Reaux to be a second felony offender.[5] Mr. Reaux waived sentencing delays and was sentenced as an habitual offender to fifty years at hard labor, without benefit of probation, parole or suspension of sentence.[6]

---

[1] Prior Appeal Record, 2011 KA 0443, Vol. I, p. 249-250.

[2] Prior Appeal Record, 2011 KA 0443, Vol. XIII, p. 3229.

[3] R., Vol. I, p. 17.

[4] R., Vol. I, p. 48.

[5] R., Vol. I, p. 9.

[6] R., Vol. I, p. 9.

## ASSIGNMENTS OF ERROR

### Assignment of Error No. 1:

The trial court abused its discretion in denying Gregory John Reaux's motion to quash the multiple offender bill.

### ISSUES

I.    Whether the trial court abused its discretion in denying Gregory John Reaux's motion to quash the multiple offender bill?

## STATEMENT OF THE FACTS

Gregory John Reaux wasn't multi-billed until almost two years after he had been sentenced on the underlying armed robbery conviction. The prosecutor blamed the delay on the fact that he was unaware that Mr. Reaux had a prior conviction until a prosecutor from another parish mentioned it to him on September 24, 2012.[7] He filed the multi-bill four days later.[8]

During pre-trial hearings for the underlying armed robbery conviction, John Gregory Reaux indicated that he had no prior felony convictions.[9] The defense requested that the State provide it with the prior criminal history of Mr. Reaux as a part of the discovery process.[10] No prior convictions were reported, as the Department of Corrections records did not reflect that there were any.[11] Defense counsel testified that he relied on the State to provide him with this type of information.[12]

At the hearing on the motion to quash the multiple offender bill, the prosecutor testified that he had relied in part upon the assertions of Mr. Reaux in determining whether Mr. Reaux had any prior convictions.[13] He argued that had he known about the prior conviction, that he would have multi-billed him.[14] He buttressed this argument by claiming that he always multi-billed defendants when they had a prior felony conviction and were found guilty after a trial.[15]

---

[7] R., Vol. II, p. 434.

[8] R., Vol. II, p. 434.

[9] R., Vol. I, p.83.

[10] R., Vol. II, p. 411-412.

[11] R., Vol. II, p. 436.

[12] R., Vol. II, p. 432.

[13] R., Vol. II, p. 436.

[14] R., Vol. II, p. 437.

[15] R., Vol. II, p. 437.

3

## SUMMARY OF THE ARGUMENT

The filing of the multiple offender bill in this case was a continuation of a pattern of prosecutorial vindictiveness, punishing defendants for exercising the right to a trial by jury, and it was an abuse of discretion for the trial court to deny the motion to quash once this had been made evident.  The multiple offender bill wasn't filed until two years after the original sentencing and there was no reason given by the prosecutor that it was appropriate in this case, except for the prosecutor's assertion that he always filed a multiple bill against a defendant with a prior felony if the defendant went to trial and was convicted.

## ARGUMENT

### Assignment of Error No. 1:

**The trial court abused its discretion in denying Gregory John Reaux's motion to quash the multiple offender bill.**

Gregory John Reaux was not multiple billed until almost two years after he was sentenced on the underlying armed robbery charge. The prosecutor attributed the delay in filing the multiple offender bill to his being unaware of the prior offense, a 2004 conviction for issuing a worthless check.[16]

During sentencing on the armed robbery charge on August 12, 2010, the prosecutor had been aware of, and had mentioned the worthless check arrest, commenting as follows:

> "The defendant doesn't have any felony convictions and part of that contributed to his failure to go to Court on pending charges that he had in Jefferson Parish. He's attached on a felony worthless check charge dating back to 2004 for failure to appear."[17]

Had the prosecutor properly investigated Mr. Reaux's criminal history in this case, he would have easily discovered that he had a prior felony conviction. He was asked for this information in discovery by the defense.[18] Rather than taking the time to determine the disposition of the arrest on the worthless check charge, the prosecutor reported incorrect information to the court.[19] There does not appear to have been any factual basis to assert that Mr. Reaux had absconded and failed to go to court on the worthless check charge, as it has been established that he was convicted on that very charge in 2004.[20]

---

[16] R., Vol. II, p. 434.

[17] Prior Record, 2011 KA 0443, Vol. XIII, p. 3225.

[18] R., Vol. II, p. 411-412.

[19] Prior Record, 2011 KA 0443, Vol. XIII, p. 3225.

[20] R., Vol. II, p. 434.

For the prosecutor to try to partially place the blame on the delay in filing of the multiple offender bill on Mr. Reaux, is incredulous. The prosecutor asserted that he relied in part on Mr. Reaux's assertion that he had no prior felony convictions, in determining that there were no priors.[21] Criminal defendants are notoriously confused about their past criminal histories, often not understanding that a plea results in a conviction. They do not always appreciate the difference between a misdemeanor and a felony, when both grades are possible with a certain crime, as in the case of a worthless check charge. Relying upon a defendant's assertion that he had no prior felony convictions cannot be a serious method of ascertaining a prior criminal history of a defendant for a prosecuting agency.

The prosecutor testified at the hearing on the motion to quash the multiple offender bill in defense of the delay in filing the bill. After explaining that he did not know about the prior felony conviction until almost two years after the original sentencing in this case, he made the following statement:

> "And I would like also to state that I've been a prosecutor for 22 years. I don't know exactly how many jury trials I have done but I know it's in excess of 250. And I cannot recall a single trial that I prosecuted that resulted in a conviction with a defendant who had a prior felony conviction and I did not bill that person. I'm saying that without exception I have always multiple billed a defendant who went to trial and was convicted if in fact he had a prior felony conviction that I was aware of."[22]

This statement is concerning. The prosecutor asserted with pride that he never passed up an opportunity to multiple bill someone if they had a prior felony conviction and had exercised their right to go to trial. This evidences a longstanding practice of vindictiveness by this prosecutor against defendants who have chosen to exercise their legal rights. Even in a situation like this, where there

---

[21] R., Vol. II, p. 436.

[22] R., Vol. II, p. 437.

has been an inordinate delay in determining the defendant's prior criminal history, the prosecutor could not pass up the opportunity to pile on. That is not what the habitual offender law was designed for.

The *Louisiana Administrative Code* sets forth the policy for when it is appropriate for a prosecutor to file a multiple offender bill. Specifically, the law provides, in pertinent part, as follows:

> In those cases in which the district attorney determines that the offender's pattern of past criminal conduct has been significantly more extensive than the typical offender with the same criminal history index, the district attorney may institute proceedings under R.S. 15:529.1, the Habitual Offender Law. *La. Admin. Code tit. 22, pt. IX, § 309.*

There was no assertion by the prosecutor that Mr. Reaux's past criminal conduct had been significantly more extensive than the typical offender in order to justify the filing of the multiple offender bill. Further, Mr. Reaux had already received a significant sentence for the convictions arising out of this case. Although the robberies all occurred over a relatively short period of time and involved a common scheme or plan to rob Game Stop, the sentences had been ordered to be served consecutively. There were four convictions, with sentences of ten years each, giving him a total of forty years at hard labor without benefit of probation, parole or suspension of sentence. For the prosecutor to seek to enhance one of the sentences in this case was vindictive and a needless infliction of pain and suffering.

### CONCLUSION

Mr. Reaux's adjudication as a habitual offender should be reversed and his enhanced sentence should be vacated.

RESPECTFULLY SUBMITTED,

LOUISIANA APPELLATE PROJECT

By: _____

Mary E. Roper (La. Bar # 22146)
830 Main Street
Baton Rouge, LA 70802
Telephone (225) 387-6600
Facsimile (225) 250-1308
*Attorney for Appellant*

8

## CERTIFICATE

A copy of the foregoing Original Brief of Appellant has been duly served on the State of Louisiana, through:

Ms. Kathryn W. Landry
IEYOUB & LANDRY, L.L.C.
Attorney for the State
P.O. Box 82659
Baton Rouge, LA 70884

and the trial court:

The Honorable August J. Hand
Judge, 22nd Judicial District Court Judge,
P.O. Box 608
Franklinton, LA 70438

and upon Defendant-Appellant:

Mr. Gregory J. Reaux, DOC#574124
Louisiana State Penitentiary
General Delivery
Angola, LA 70712-9999

This _____ day of April, 2014.

_____
MARY E. ROPER

9

# APPENDIX

COURT ADJOURNED SINE DIE:    MINUTES READ AND APPROVED:

_____    _____

MINUTE CLERK    Karen C. Guzzardo    JUDGE  DIVISION B    AJH

1 0

## NOT DESIGNATED FOR PUBLICATION

STATE OF LOUISIANA

COURT OF APPEAL

FIRST CIRCUIT

2014 KA 0330

STATE OF LOUISIANA

VERSUS

GREGORY J. REAUX

Judgment Rendered:   SEP 1 9 2014

* * * * *

On Appeal from the
Twenty-Second District Court
In and for the Parish of St. Tammany
State of Louisiana
No. 471010, Division "B"

The Honorable August J. Hand, Judge Presiding

* * * * *

Walter P. Reed
District Attorney
Covington, Louisiana

Kathryn W. Landry
Special Appeals Counsel
Baton Rouge, Louisiana

Counsel for Appellee,
State of Louisiana

Mary E. Roper
Louisiana Appellate Project
Baton Rouge, Louisiana

Counsel for Appellant,
Gregory John Reaux

* * * * *

BEFORE:   GUIDRY, THERIOT, AND DRAKE, JJ.

**DRAKE, J.**

Defendant, Gregory J. Reaux, was previously convicted of three counts of armed robbery, a violation of La. R.S. 14:64 (counts one, two, and three), and one count of attempted armed robbery, a violation of La. R.S. 14:27 and La. R.S. 14:64 (count four).   On each count, the trial court sentenced defendant to ten years imprisonment at hard labor, without the benefit of parole, probation, or suspension of sentence.   The trial court ordered these sentences to be served consecutively. This Court affirmed defendant's convictions and sentences in an earlier appeal. *See State v. Reaux*, 11-0443 (La. App. 1 Cir. 9/14/11), 90 So.3d 543 (unpublished), *writ denied*, 11-2597 (La. 4/9/12), 85 So.3d 693.

Subsequently, the state filed a habitual offender bill of information alleging defendant to be a second-felony habitual offender with respect to his armed robbery conviction on count one.[1]   Defendant filed a motion to quash the habitual offender bill of information, alleging that the state failed to file the habitual offender bill within a reasonable time.   The trial court denied that motion.   Based on a stipulation that defendant was the same individual from the alleged predicate offense, the trial court adjudicated defendant a second-felony habitual offender. The trial court vacated defendant's previously imposed sentence on count one and resentenced him to imprisonment for fifty years at hard labor, without the benefit of parole, probation, or suspension of sentence.   The trial court ordered that this enhanced sentence would run concurrently with his sentences on counts two, three, and four, and with any other sentences defendant was currently serving.   Defendant now appeals, alleging one assignment of error with respect to the trial court's denial of his motion to quash.   For the following reasons, we affirm defendant's habitual offender adjudication and sentence.

---

[1] The predicate offense set forth in defendant's habitual offender bill of information is a felony conviction on June 25, 2004, for issuing worthless checks under Jefferson Parish docket number 04-1625.

**FACTS AND PROCEDURAL HISTORY**

Defendant's underlying convictions for armed robbery and attempted armed robbery are related to a string of robberies of Game Stop video game stores in St. Tammany Parish in April 2009. Defendant's convictions and sentences for these offenses were affirmed by this Court on September 14, 2011.

On September 28, 2012, the state filed a habitual offender bill of information alleging defendant to be a second-felony habitual offender. Defendant initially pled "not guilty" to the habitual offender bill, and he filed a motion to quash. On May 7, 2013, and June 11, 2013, the trial court conducted hearings related to defendant's motion to quash, and at one of those hearings, defendant stipulated to his identity as the individual who committed the predicate offense alleged in the habitual offender bill of information. After taking the matter under advisement, the trial court denied defendant's motion to quash on September 12, 2013. On the same date, the trial court adjudicated defendant a second-felony habitual offender, vacated his prior sentence on count one, and resentenced him on count one to fifty years at hard labor, without the benefit of parole, probation, or suspension of sentence.

**ASSIGNMENT OF ERROR**

Defendant now appeals, assigning as his only error the trial court's denial of his motion to quash the habitual offender bill of information. Specifically, he contends that the state's filing of a habitual offender bill of information over two years after his initial sentencing was untimely and a vindictive and needless imposition of pain and suffering.

Under La. R.S. 15:529.1(D)(1)(a), a habitual offender bill may be filed against a defendant who has been convicted of a felony "at any time, either after conviction or sentence." While La. R.S. 15:529.1 does not establish a time limit for multiple offender proceedings, the Louisiana Supreme Court has stated that a

habitual offender bill must be filed within a reasonable time after the state learns the defendant has prior felony convictions. *See State v. Muhammad*, 03-2991 (La. 5/25/04), 875 So.2d 45, 55-56. This rationale is based upon a defendant's constitutional right to a speedy trial and to know the full consequences of the verdict within a reasonable time. *State v. Anderson*, 01-0158 (La. App. 5 Cir. 5/16/01), 788 So.2d 561, 563. Any conclusion as to what constitutes a reasonable time must be determined on a case-by-case basis. *Id.*

As a general matter, the United States Supreme Court has set forth four factors to consider in determining whether a defendant's right to a speedy trial has been violated. Those factors are the length of the delay, the reasons for the delay, the accused's assertion of his right to a speedy trial, and the prejudice to the accused resulting from the delay. *Barker v. Wingo*, 407 U.S. 514, 530-32, 92 S.Ct. 2182, 2192-93, 33 L.Ed.2d 101 (1972). These factors are neither definitive nor dispositive in the context of a habitual offender proceeding, but they are instructive. *See Muhammad*, 875 So.2d at 55.

The record indicates that the state filed the habitual offender bill of information on September 28, 2012 – several months after defendant's convictions and sentences became final, and just over two years after defendant was initially sentenced. In his argument to the trial court regarding the motion to quash, the prosecutor informed the court that he had not become aware of defendant's prior felony conviction until September 24, 2012, when he received a call from a prosecutor in Jefferson Parish informing him of defendant's prior conviction. He further explained to the court that he was unaware of the prior conviction, in part, because of defendant's denial of any criminal history, and also because records from the Department of Corrections (DOC) – which he generally relied upon over defendants' rap sheets – failed to reflect any prior convictions.

4

A trial court's ruling on a motion to quash should not generally be reversed in the absence of a clear abuse of the trial court's discretion. *See State v. Odom*, 02-2698 (La. App. 1 Cir. 6/27/03), 861 So.2d 187, 191, *writ denied*, 03-2142 (La. 10/17/03), 855 So.2d 765. However, a trial court's legal findings are subject to a *de novo* standard of review. *See State v. Smith*, 99-0606, 99-2015, 99-2019, 99-2094 (La. 7/6/00), 766 So.2d 501, 504. In this case the trial court's ruling on the motion to quash is based on a legal finding and is, therefore, subject to *de novo* review.

After reviewing the record as a whole, we find that the trial court did not err or abuse its discretion in denying defendant's motion to quash. The state filed the habitual offender bill of information within just a few days after it learned that defendant had a prior felony conviction. The reason for the delay was largely attributable to the state's reliance on DOC records that did not accurately reflect defendant's criminal history.[2] Finally, although defendant certainly suffered the adverse consequence of an enhanced sentence, he did not suffer any appreciable prejudice that would be attributable to the state's delay in filing the habitual offender bill of information. Nothing about the delay would have prevented defendant from presenting a defense relative to the habitual offender allegation, had he chosen to pursue one.

This assignment of error is without merit.

**HABITUAL OFFENDER ADJUDICATION AND SENTENCE AFFIRMED.**

---

[2] Defendant points out that during his initial sentencing on the underlying offenses, the state mentioned the felony worthless check offense as a pending charge in Jefferson Parish. He contends that had the state properly investigated his criminal history, it would have discovered the fact that this charge actually resulted in a felony conviction. However, we believe the state satisfied its burden of investigating defendant's criminal history by securing DOC records, which did not conflict with defendant's sworn testimony that he had no prior criminal history.