**APPENDIX "A" -- UNIFORM APPLICATION FOR POST-CONVICTION RELIEF**

## UNIFORM APPLICATION FOR POST-CONVICTION RELIEF

<u>Gregory Reaux</u>
NAME OF PETITIONER

No._____
(to be filled in by the clerk)

<u>574124</u>
PRISON NUMBER

<u>22nd</u>  JUDICIAL DISTRICT

<u>ANGOLA</u>
PLACE OF CONFINEMENT

PARISH OF  <u>St. Tammany</u>

STATE OF LOUISIANA

vs.

<u>Burl Cain</u>
CUSTODIAN (Warden, Superintendent, Jailor, or authorized person having custody of
petitioner)

Please Serve CUSTODIAN and **WALTER P. REED**, DISTRICT ATTORNEY, **22ND
JUDICIAL DISTRICT, PARISH OF WASHINGTON**, STATE OF LOUISIANA.

### INSTRUCTIONS--READ CAREFULLY

(1) This petition must be legibly written or typed, signed by the petitioner and sworn to before
a notary public or institutional officer authorized to administer an oath. Any false statement of a
material fact may serve as the basis for a criminal prosecution. All questions must be answered
concisely in the proper space on the form. Additional pages are not permitted except with respect
to the facts which you rely upon to support your claims for relief. No citation of authorities or
legal arguments are necessary.

(2) Only one judgment may be challenged in a single petition except that convictions on
multiple counts of a single indictment or information may be challenged in one petition.

(3) YOU MUST INCLUDE ALL CLAIMS FOR RELIEF AND ALL FACTS SUPPORTING
SUCH CLAIMS IN THE PETITION.

(4) When the petition is completed, the original must be mailed to the clerk of the district court
in the parish where you were convicted and sentenced.

(5) You must attach official documentation showing your sentence and the crime for which you
have been convicted. You may obtain that documentation from the clerk of court of the district
court of the parish where you were sentenced or from the institution where you are confined. If
that documentation is not attached, you must allege what steps were taken to obtain it.

(6) Petitions which do not conform to these instructions will be returned with a notation as to
the deficiency.

1


EXHIBIT
P-5

## PETITION

1. Name and location of court which entered the judgment of conviction challenged

   22nd Judicial District Court, Parish of St. Tammany, 601 N. Columbia Street, Covington, LA 70433

2. Date of judgment of conviction July 30, 2010.

3. Length of sentence:

   **Original sentence:** On August 12, 2010, the Court sentenced Petitioner to serve ten years at hard labor as to each count, without benefit of probation, parole, or suspension of sentence, and to run consecutively with one another.

   **New sentence:** Subsequently, the St. Tammany Parish District Attorney filed a multiple offender bill of information. On September 12, 2013, the St. Tammany Parish Court vacated Petitioner's 10 year sentence on count one, and resentenced Mr. Reaux to 50 years, to run consecutively with counts two, three, and four.

4. Nature of offense involved (all counts):

   Count One: R.S.14:64 Armed Robbery; Count Two: R.S. 14:64 Armed Robbery; Count Three: R.S.14:64 Armed Robbery; Count Four: 14:27/64 Attempted Armed Robbery.

5. What was your plea? (check one)

   (a) Not guilty (X )

   (b) Guilty ( )

   (c) Not guilty and not guilty by reason of insanity ( )

   If you entered a guilty plea to one or more counts and not guilty to other counts, give details:

   Not applicable (N/A).

   (d) Name and address of the lawyer representing you at your plea (if you had no lawyer,

   please indicate): N/A.

   (e) Was the lawyer appointed ( ) or hired ( )? (check one) N/A

6. Kind of trial: (check one)

   (a) Jury (X )

   (b) Judge only ( )

7. (a) Name and address of the lawyer representing you at your trial:

   John Hogue, 22nd Judicial District Public Defender Office, 402 N Jefferson Avenue, Covington, LA 70433

(b) Was the lawyer appointed (X) or hired ( )? (check one)

8. Did you testify at the trial? Yes (X ) No ( )

9. (a) Give the name and address of the lawyer who represented you at sentencing for the

conviction being attacked herein.

> John Hogue represented Petitioner at his original sentencing hearing on August 20, 2010. At the resentencing hearing on September 12, 2013, Petitioner was represented by Julie C. Tizzard, 700 Camp Street, Suite 101, New Orleans, Louisiana 70130.

(b) Was the lawyer appointed ( ) or hired ( )? (check one)

> John Hogue was appointed and Julie Tizzard was hired.

10. Did you appeal from the judgment of conviction? Yes (X) No ( )

11. If you did appeal, give the following information:

(a) Citation, docket number, and date of written opinion by the Supreme Court (if known)

> **First Appeal:** *State v. Reaux*, 2011-0443 (La.App. 1 Cir. 9/14/11), unpublished opinion, Docket No. 2011 KA 0443, opinion written by Justice McClendon.
> **Second Appeal:** *State v. Reaux*, 2014-0330 (La. App. 1 Cir. 9/14/11), unpublished opinion, Docket No. 2014 KA 0330, Opinion written by Justice Drake.

(b) Name and address of lawyer representing you on appeal:

> **First Appeal:** Mary Roper, 830 Main Street, Baton Rouge, Louisiana 70802.
> **Second Appeal:** Kathryn W. Landry, 820 YMCA Plaza, Suite10A, Baton Rouge, Louisiana 70810 and Mary Roper, 830 Main Street, Baton Rouge, Louisiana 70802.

(c) Was the lawyer appointed (X) or hired ( )? (check one)

12. Other than a direct appeal from the judgment of conviction and sentence, have you previously filed any application for post-conviction relief with respect to this judgment in any state or federal court? Yes ( ) No (X )

13. If your answer to 12 is "yes", give the following information:

(a)(1) Name of court: N/A

    (2) Nature of proceeding: N/A

    (3) Claims raised: N/A

    (4) Did you receive an evidentiary hearing on your application? Yes ( ) No ( ) N/A

    (5) Was relief granted or denied? N/A

    (6) Date of disposition: N/A

    (7) Citation of opinion (if known): N/A

    (8) Name and address of lawyer representing you [if none, so state]: N/A

    (9) Was the lawyer appointed ( ) or hired ( )? (check one) N/A

(b) As to any second application give the same information:

    (1) Name of court  N/A

    (2) Nature of proceeding N/A

    (3) Claims raised N/A

    (4) Did you receive an evidentiary hearing on your application?

Yes ( ) No ( ) N/A

(5) Was relief granted or denied? N/A

(6) Date of disposition N/A

(7) Citation of opinion (if known) N/A

(8) Name and address of lawyer representing you [if none, so state]: N/A

(9) Was the lawyer appointed ( ) or hired ( )? (check one) N/A

(c) Have you filed any other applications for post-conviction relief with respect to the challenged conviction? Yes ( ) No ( ) N/A

If "yes", set forth the details (as above) on separate paper and attach.

(d) Did you appeal or seek writs of review from the denial of any post-conviction application?

(1) First petition, etc. Yes ( ) No ( ) N/A

(2) Second petition, etc. Yes ( ) No ( ) N/A

(e) If you did not appeal or seek writs from the denial of any post-conviction application, explain briefly why you did not: N/A

(f) Name of the lawyer who represented you on appeal from the denial of any post-conviction application [if none, so state]:
(1) First petition ___N/A
(2) Second petition N/A

## CLAIMS FOR RELIEF

State concisely facts supporting your claim that you are being held unlawfully. If necessary, you may attach extra pages stating additional claims and supporting facts. Do not argue points of law.

The following is a list of those claims, and only those claims, that may provide you with grounds for relief:

(1) Your conviction was obtained in violation of the constitution of the United States or the State of Louisiana;

(2) The court exceeded its jurisdiction;

(3) Your conviction or sentence subjected you to double jeopardy;

(4) The limitations on prosecution had expired;

(5) The statute creating the offense for which you were convicted and sentenced is unconstitutional;

(6) The conviction or sentence constitute the ex post facto application of law in violation of the Constitution of the United States or the State of Louisiana.

A REMINDER: THE ABOVE LIST CONTAINS ONLY THOSE CLAIMS THAT YOU MAY RAISE FOR RELIEF. YOU MUST SET FORTH ALL OF YOUR COMPLAINTS ABOUT YOUR CONVICTION IN THIS APPLICATION. YOU MAY BE BARRED FROM PRESENTING ADDITIONAL CLAIMS AT A LATER DATE. Remember that you must state the FACTS upon which your complaints about your conviction are based. MERE CONCLUSORY ALLEGATIONS WILL NOT SUFFICE.

4

## REPETITIVE APPLICATIONS

The above claims may not provide grounds for relief if any of the following applies to you:

(1) Unless required in the interest of justice, any claim for relief which you fully litigated in an appeal shall not be considered.

(2) Any claim of which you had knowledge and inexcusably failed to raise in the proceeding leading to conviction may be denied by the court.

(3) Any claim which you raised in the trial court and inexcusably failed to pursue on appeal may be denied by the court.

(4) A successive application may be dismissed if it fails to raise a new or different claim.

(5) A successive application may be dismissed if it raises a new or different claim that was inexcusably omitted from a prior application.

    This application will provide space for you to explain the reasons why you failed to raise your claims in the proceedings leading to conviction, or failed to urge the claim on appeal, or failed to include the claim in a prior application.

## CLAIM I

Claim: Conviction was obtained in violation of the constitution of the United States or the State of Louisiana. Specifically, the trial court and the appellate court erroneously applied the "preponderance of evidence" standard in determining whether the State met its burden of proof to introduce evidence of other crimes under *Prieur* and Article 404 (B), which in turn may have resulted in improperly instructing the jury.

(a) Supporting FACTS (tell your story briefly without citing cases or law):

    See page 11 of attached brief.

(b) List names and addresses of witnesses who could testify in support of your claim. If you cannot do so, explain why: None.

(c) If you failed to raise this ground in the trial court prior to conviction, on appeal or in a prior application, explain why:

    The claim was not previously raised due to ineffective assistance of trial and appellate counsel. See page 11 of brief attached.

## CLAIM II

Claim: Conviction was obtained in violation of the constitution of the United States or the State of Louisiana. Specifically, Appellate Counsel was ineffective for failing to raise the trial court's denial of Defendant's Six Amendment right to fully cross-examine a State witness.  Lack of Probable Cause for Arrest/Denial of Motion to Suppress.

(a) Supporting FACTS (tell your story briefly without citing cases or law):

    See page 17 of attached brief.

(b) List names and addresses of witnesses who could testify in support of your claim. If you cannot do so, explain why: None.

(c) If you failed to raise this ground in the trial court prior to conviction, on appeal or in a prior application, explain why:

5

The claim was not previously raised due to ineffective assistance of appellate counsel.
See page 17 of attached brief.

## CLAIM III

Claim: Conviction was obtained in violation of the constitution of the United States or the State of Louisiana. Specifically, Appellate Counsel was ineffective for failing to raise the trial court's error in denying Petitioner's Motion to suppress evidence based on lack of probable cause for his arrest.

(a) Supporting FACTS (tell your story briefly without citing cases or law):

See page 19 of attached brief.

(b) List names and addresses of witnesses who could testify in support of your claim. If you cannot do so, explain why: None.

(c) If you failed to raise this ground in the trial court prior to conviction, on appeal or in a prior application, explain why:

The claim was not previously raised due to ineffective assistance of appellate counsel.
See page 19 of attached brief.

You may attach additional pages setting forth the required information (above) if additional claims are asserted.

## CLAIM IV

Claim: Conviction was obtained in violation of the constitution of the United States or the State of Louisiana. Specifically, appellate counsel was ineffective for failing to raise insufficiency of evidence regarding count IV attempted armed robbery .

(a) Supporting FACTS (tell your story briefly without citing cases or law):

See page 21 of attached brief.

(b) List names and addresses of witnesses who could testify in support of your claim. If you cannot do so, explain why: None.

(c) If you failed to raise this ground in the trial court prior to conviction, on appeal or in a prior application, explain why:

The claim was not previously raised due to ineffective assistance of appellate counsel.
See page 21 of attached brief.

## CLAIM V

Claim: Conviction was obtained in violation of the constitution of the United States or the State of Louisiana. Specifically, appellate counsel was ineffective for failing to raise the trial court's violation of Petitioner's Sixth Amendment right to counsel of his choice caused by the denial of Petitioner's motion to continue (Pro se assignment of error number three).

(a) Supporting FACTS (tell your story briefly without citing cases or law):

See page 22 of attached brief.

(b) List names and addresses of witnesses who could testify in support of your claim. If you cannot do so, explain why: None.

(c) If you failed to raise this ground in the trial court prior to conviction, on appeal or in a prior application, explain why:

The claim was not previously raised due to ineffective assistance of Appellate counsel. See page 22 of attached brief.

A. Do you have in a state or federal court any petition or appeal now pending as to the judgment challenged?

Yes [ ] No [ X ] If "yes", name the court

B. Do you have any future sentence to serve after you complete the sentence imposed by the judgment challenged? Yes [ X ] No [ ]

(1) If so, give name and location of court which imposed sentence to be served in the future:

24th Judicial District Court for the Parish of Jefferson, Division "L," The Honorable Donald A. Rowan, Jr., Judge Presiding, 200 Derbigny Street, Gretna, LA 70053.

(2) Give date and length of sentence to be served in the future:

On September 4, 2013, the Court sentenced Petitioner to 297 years (99 years to be served consecutively on three counts of armed robbery). *See State of Louisiana Uniform Commitment Order attached hereto as Exhibit P-4.*

(3) Have you filed, or do you contemplate filing, any petition attacking the judgment which imposed the sentence to be served in the future? Yes [ X ] No [ ]

C. If a copy of the court order sentencing you to custody is not attached, explain why.

WHEREFORE, petitioner prays that the Court grant petitioner relief to which he may be entitled.

_Katherine B Liese_
Signature of Petitioner

_6th day of October, 2014_
Day/Month/Year

_Julie C. Tizzard_
Attorneys for Petitioner

TWENTY-SECOND JUDICIAL DISTRICT COURT

PARISH OF ST. TAMMANY

STATE OF LOUISIANA

DOCKET NO. 471010                       DIVISION "B"

GREGORY J. REAUX
Petitioner,

VERSUS

BURL CAIN
Respondent.

FILED: _____         _____
                                           Deputy Clerk

## PETITION FOR POST-CONVICTION RELIEF

**NOW INTO COURT**, through undersigned counsel, comes Petitioner GREGORY J. REAUX, who pursuant to La. C.Cr.P. art 924 *et seq.*, petitions this Honorable Court for Post-Conviction Relief based on his conviction being obtained in violation of the constitutions of the United States and the State of Louisiana.

## STATEMENT OF THE CASE

### I. PROCEDURAL HISTORY

Mr. Reaux was arrested on April 20, 2009, and thereafter charged by separate Bills of Information with three Counts of Armed Robbery, and one Count of Attempted Armed Robbery, which were consolidated into one case by filing a Bill of Information on April 7, 2010. **R. p. 81.** The aforesaid offenses occurred in St. Tammany Parish but Defendant was a suspect in similar cases pending in Tangipahoa and Jefferson Parish. Defendant entered pleas of "Not Guilty" to the charges on multiple occasions prior to the commencement of his jury trial in St. Tammany Parish on June 14, 2011.

On September 22, 2009, the State filed an answer to Defendant's motion for discovery and inspections, and its own motions for discovery and notice of intent to introduce evidence of other offenses. R. p. 73. The motion stated: "The State gives written notice of its intent to introduce evidence of other offenses admissible under L.C.E. Article 404 as described in the attached discovery. Such evidence is admissible as proof of motive, opportunity, intent,

1

preparation, plan, knowledge, identity, absence of mistake or accident, or is an integral part of the act or transaction that is the subject of the current proceeding. **R. p. 74.**

On June 4, 2010, John Hogue, Assistant Public Defender, filed a Motion to Continue Trial on behalf of Petitioner, which the Court heard and denied on the same date.   (R. 326-328). On June 14, 2010, Mr. Hogue filed contemporaneous, supervisory writs on this matter with the First Circuit Court of Appeal and the Louisiana Supreme Court, both of which were subsequently denied. (R. 148, 259, 326-328).

On June 14, 2010, the Court began a four-day hearing on Petitioner's Motions to Suppress Evidence and Confessions, which continued on June 14, June 15, June 16, and June 30, 2010.  On June 16, the court also heard evidence on Defense Motions for *Prieur* Hearing and Motion to Sever, which the judge took under advisement. On June 30, 2010, the State informed Defense counsel that a State witness, John Carroll, was arrested and fired by the Jefferson Parish Sheriff's Office and hearings on all of the four above-mentioned pre-trial motions were continued. **R. p. 20.**

On July 15, 2010, the Court ruled on the outstanding pre-trial motions, denying the Defense's motions to suppress evidence, identification, and severance of offenses. Similarly, the Court ruled against the defense by allowing the State to bring up prior offenses the defendant has committed into evidence, specifically evidence of five robberies occurring outside of St. Tammany Parish. The State introduced a "list of all crimes with location, date, time and details of the incidents." **R. p. 663.**

A seven-day jury trial commenced on July 21, 2010, and on July 30, 2010, the jury found Petitioner guilty on all four counts. R. p. 55. Petitioner subsequently filed a motion for new trial and for post-verdict judgment of acquittal. R. p. 56, 253.

On August 12, 2010, the Court denied Petitioner's motions for new trial and for post-verdict judgment of acquittal and then sentenced Petitioner to serve ten years at hard labor as to each count, without benefit of probation, parole, or suspension of sentence, and to run consecutively with one another. The Petitioner notified the Court of its intent to file a Motion to Reconsider Sentence and Motion for Appeal. **R. p. 57.**

On August 23, 2010, Defense counsel filed a Motion to Reconsider Sentence and a Motion for Appeal and Designation of Record. On August 24, 2010, the Court denied the motion to reconsider sentence without a hearing. **R. p. 255.**

2

Finally, on September 3, 2010, the Court ordered that the Petitioner be granted an appeal to the First Circuit Court of Appeal and appointed the Louisiana Appellate Project to handle the appeal, with a return date of November 18, 2010. **R. p. 256.**

Petitioner appealed, raising one assignment of error in his counseled brief, wherein he argued that the sentencing was excessive and an abuse of the trial court's discretion. Petitioner raised four additional assignments of error in a pro se brief, namely: (1) the trial court's Denial of Motion to Suppress; (2) the trial court's Denial of Motion to Continue; (3) the trial court's Admission of Other Crimes Evidence; and, (4) Sufficiency of Evidence based on the claim that the Record is Incomplete. The Louisiana First Circuit of Appeal affirmed the convictions and sentences on September 14, 2011. *State v. Reaux*, 2011-0443 (La.App. 1 Cir. 9/14/11).

Subsequently, the St. Tammany Parish District Attorney filed a multiple offender bill of information. On September 12, 2013, the St. Tammany Parish Court vacated Petitioner's 10 year sentence on count one, and resentenced Mr. Reaux to 50 years, to run consecutively with counts two, three, and four.

On March 11, 2014, Mr. Reaux appealed his sentence to the Louisiana First Circuit Court of Appeal, where it is pending under docket # 2014-KA-0330.

## II. STATEMENT OF FACTS

### a.  Slidell

On April 17, 2009, **Adolfo Castro** was working at the Slidell Game Stop when a masked perpetrator robbed him, wielding a box cutter. **R. p. 1362-1363, 1367.** Mr. Castro stated that around closing time (9 p.m.) "somebody came into the store with what looked like a mask at that time and threw a black mesh bag at me and said, 'Put all the money in the bag.'" **R. p. 1369.** Castro described the perpetrator as a black male, approximately 6 foot and 6 inches in height, wearing a black baseball cap with a yellow bill, blue jeans, a long-sleeve t-shirt, and a mask that looked like a sleeve that was cut out of a t-shirt. **R. p. 1369-1370**. The robber had what appeared to be a rag wrapped around his right arm. The perpetrator took approximately $813 cash, and five Wii points cards. **R. p. 1334, 1379.**

Mr. Castro explained the system Game Stop uses to price merchandise. The store receives merchandise in numbered boxes. The employee types the box number in to a Game Stop

3

Computer application, which provides an inventory of the items in that box and their respective prices and item numbers. R. p. 1363. Price stickers are generated, which include a description of the item, the date the price tag was printed, and the initials of the manager working on that date. R. p. 1365-1366. The State introduced Exhibits No. 1 and 2—photographs of the Wii point cards that were recovered from Mr. Reaux's car. Exhibit 2 is a close up of the price tag on the card containing the following information: (1) the type of merchandise "Wii Points Card 2000," (2) the item # 79, (3) numbers 040309 and (4) the letters ACC.  Recognizing the date and his own initials, Mr. Castro identified the Wii points cards depicted in Exhibit No. 1 and 2 as merchandise that he set out for display at the Slidell Game Stop and was subsequently stolen during the armed robbery. R. p. 1366-1367.

State introduced Exhibit 3, which Mr. Castro described as a "sleeve cut out of a t-shirt." The State showed Mr. Castro and introduced into evidence, Exhibit No. 4— surveillance footage from an Academy Sports Store near the Game Stop which depicted an African American male, wearing a black backpack and a black baseball cap with a yellow bill getting into a white Monte Carlo vehicle. R. p. 1379-1384. Although Mr. Castro indicated that the male in the surveillance footage was the same person who robbed the Game Stop, he never identified Mr. Reaux as the robber. R. p. 1396.

Officer McNulty of the Slidell Police Department was called to the scene of the April 17th Robbery in Slidell and interviewed Adolfo Castro, Chris Jackson, and Jack Douglas, a non-employee witness. Mr. Douglas described the perpetrator leaving in a vehicle which was the same color but a different make and model type than the vehicle seen in the Academy Sport surveillance video, that was introduced during Mr. Castro's testimony. R. p. 1422,1425.

The Slidell Police Department gathered forensic evidence from the store including a partial fingerprint and a latent palm print. R. p. 1431, 1435; However, Sgt. Bobby Campbell, an expert in fingerprint analysis and crime scene investigation, analyzed the three exhibits [1] and found "no identifiable prints," meaning the prints were not of sufficient quality to render further testing for identification reliable. R. p. 2519, 2525. 2529, 2535-2536. The Slidell Police did not attempt to collect contact DNA swabs from the crime scene because there was no evidence that the perpetrator directly touched anything while in the store. R. p. 2538.

      **b.  Covington**

---

[1] : State's Exhibit 33- described as a partial palm print, Exhibit 34- a Nintendo magnet, and Exhibit 35- a Game Stop Flier. **R. p. 2528, 2591, 2535.**

Joel Vogt was working at the Covington Game Stop when it was robbed on April 18, 2009, at approximately 9 p.m. (1459, 1461). At that time, three other people were in the store: another employee, Ryan Bohn, and two customers: Charlie McElroy and his wife Crystal. R. p. 1461. The perpetrator raised a box cutter up to the two customers almost immediately after walking into the store and instructed them to step back. The robber then threw a black mesh Jansport bag on the counter and said, "put the money in the bag fast." (1470). Charlie McElroy took out his wallet and handed it out to the robber, who responded " 'No, you're good,' just like he was talking to a friend.'" Mr. Vogt described the perpetrator as follows:

> He was a tall black male, probably six foot two, six foot three, he was wearing light gray sweat pants, wearing a white shirt. He had a scarf of some kind of fabric that appeared to be a scarf down his right arm. It was black. He was holding a blue box cutter, and it was the extendable kind, the extendable blade. The blade was already extended. He had it out probably about three inches. And he did have a white fabric covering his face.

(R, Vol. 6, 1463).

Mr. Vogt explained that the black fabric on the perpetrator's arm extended down his arm, covered his right hand, and that he was extremely cautious not to touch anything in the store. R. p. 1547. The District Attorney showed Mr. Vogt pictures, including Photograph No. 41, which depicted a person wearing a white shirt and "fabric that could have been coming out of his shirt, covering his face."  R.  p. 1473. Exhibit No. 40 depicted a person from the waist down holding a backpack which Mr. Vogt said was  "very similar" to the backpack he described the perpetrator having during the robbery (1473).

David Vigo is the manager of the Game Stop in Mandeville, where he has worked since 2007. **R. p. 2162.** Prior to that position, Mr. Vigo worked for EB Games in New Orleans from 2003 through 2005. After Hurricane Katrina, he worked at several EB Games locations temporarily and then was transferred to Covington where he was the manager from June of 2005 through October of 2007. **R. p. 2165.**  Mr. Vigo recalled Gregory Reaux as a customer at the New Orleans Game Stop and an employee of the Hammond Game Stop. **R. p. 2166.** On Monday, April 20, 2009, Mr. Vigo had a conference call with other Game Stop store managers and learned that another store was burglarized or robbed the night before the robbery that had occurred over the weekend. He noted some similarities among the robberies such as they were all formerly EB Game Stores, and the robberies always occurred when the store managers were not

5

there. R. p. 2167, 2168. Mr. Vigo was handling the cash register on the night Mr. Reaux was arrested near the Mandeville store.

At trial, the State introduced evidence of five robberies, which occurred at Game Stop locations outside the jurisdiction of St. Tammany Parish in Walker, Denham Springs, Marrerro, Harvey, and Hammond. The "other crimes" evidence was introduced through the Petitioner's audio-recorded statement to St. Tammany Parish law enforcement officers and through live testimony of police officers.

### c. **Testimony regarding the investigation**

Lieutenant Patrick McCormick of the St. Tammany Parish Sheriff's Office explained how Mr. Reaux was apprehended around 8 p.m. on April 20, 2009. Lieutenant McCormick was part of a multi-jurisdictional task force investigating a string of armed robberies that had occurred at Game Stop/EB Games in Slidell, Covington, and other stores in Southeast Louisiana. R. p. 1578-1579. McCormick learned from other law enforcement officers that the perpetrator was an extremely tall, black male, who wore a black baseball cap, carried a black backpack, which he used to carry his "loot," and wielded a box cutter or utility knife. R. p. 1580. The perpetrator carried out the robberies near the stores' closing time, which was 9 p.m. on all days except Sunday, when the stores closed at 6 p.m.  In one robbery, a white Chevy Monte Carlo was used. R. p. 1580.

McCormick determined that there were three EB Games/Game Stop stores in St. Tammany Parish, and the only store that had not been robbed was the Mandeville store. R. p. 1581-1582.  Consequently, McCormick conducted a surveillance operation across the street from the Mandeville Game Stop to try to catch the robber in the act. R. p. 1582. Using his personal binoculars, McCormick witnessed a tall black male wearing a dark hat and a white t-shirt emerge from an area of trees and shrubbery between the Game Stop and an adjacent Business- Bippo's Dental Clinic. As a young woman exits the Game Stop, McCormick saw the subject step back, then after the female got in a car, the subject stepped back into the light and began looking around. R. p. 1596. The suspect and the officer made eye contact from over 100 feet away[2], and the subject began walking past the front of the businesses. R. p. 1597. Within minutes, another police officer Noel Forrester stopped the suspect, who turned out to be Mr. Reaux. R. p. 1599.

---

[2] Transcript of Hearing on 7/22/13, p. 54, appearing in R. Vol. 1, p. 219.

McCormick followed Reaux, observed him talking to Officer Forrester, and upon seeing him wearing a black backpack, and shifting his feet back and forth nervously, decided to restrain him by   handcuffing him from behind. R. p. 1603.

The police soon determined that Mr. Reaux had arrived in a white Monte Carlo vehicle. R. p. 1606. McCormick and Forrester secured Mr. Reaux in Deputy Forrester's patrol unit and were standing outside the unit talking when McCormick noticed a "little black piece of plastic" under the left rear tire of the police unit. McCormick also observed a broken box cutter on the hood of Officer Forrester's unit and determined that the black piece of plastic was part of the box cutter. R. p. 1610. McCormick also saw a black knit cap lying on the hood of Forrester's police unit, which was found somewhere on Mr. Reaux's person R. p. 1613.

When Mr. Reaux was arrested he was wearing a white t-shirt, gray sweatpants, a black Pittsburgh Pirates cap, and had a piece of light gray fabric wrapped around his neck, that was partially tucked under his t-shirt. R. p. 1618-1619. Lieutenant McCormick advised Mr. Reaux that he was under arrest for attempted armed robbery of the Mandeville Game Stop. R. p. 1620. He was also carrying a black backpack. Lieutenant McCormick testified that Mr. Reaux did not have a knife or box cutters on him at the time.

Deputy William Noel Forester of the St. Tammany Parish Sheriff's Office assisted Lieutenant McCormick with surveillance of the Mandeville Game Stop on April 20, 2009, and initially stopped Mr. Reaux as he was walking away from the Game Stop towards his vehicle. Deputy Forrester conducted a pat down frisk of Mr. Reaux and felt a hard object around his waistband, at which time Mr. Reaux moved his hands from behind his back to the front and grabbed his shirt. Deputy Forrester got Mr. Reaux's hands back behind him and then as he attempted to raise his shirt, Mr. Reaux jerked his body and the item in his waistband fell to the ground. Deputy Forrester observed a blue handle box cutter fall to the ground and break into a few pieces. R. p. 1744. During the pat down, Deputy Forrester also recovered a black or dark blue knit cap from the left pocket of Mr. Reaux's sweat pants. R. p. 1746. Mr. Reaux complied with the deputies every command during his stop and arrest.

Lt. George Cox of St. Tammany Parish Sheriff's Office and Sgt. Sean McClain of the Slidell Police Department were the first law enforcement officers to interrogate Mr. Reaux after his arrest. R. p. 2362, 2366. Mr. Reaux was orally advised of his Miranda rights and also signed a written waiver of rights form. R. p. 2366. The interrogation began at 9:27 p.m. on April 20,

7

2009. R. p. 2369. Lt. Cox explained that Mr. Reaux told them he was not involved in any robberies, and confirmed that detectives from Jefferson Parish spoke to Mr. Reaux for over an hour and a half with the same results. R. p. 2370-2372.

On the night of April 20, 2009, Detective Vermall learned that the St. Tammany Sheriff's Office had arrested a suspect for the robberies of multiple Game Stops in that parish. Detective Varmall and former JPSO detective John Carroll travelled to St. Tammany to interview the suspect. R. p. 1786. Mr. Reaux was cooperative, and denied any involvement in the robberies during the hour-long interview with Jefferson Parish detectives. As a result, the detectives stopped the interview and began to make preparations to search Mr. Reaux's residence in Hammond. R. p. 1789. While in route to the residence, the detectives were called back to the St. Tammany Sheriff's Office because the St. Tammany detectives claimed that Mr. Reaux had confessed to the robberies in Jefferson Parish. R. p. 1790. During their second encounter with Mr. Reaux, Detectives Vermall and Carroll showed Mr. Reaux a still photograph of the robbery suspect obtained from video surveillance of the Marrerro Game Stop and Mr. Reaux advised that was him in the photograph. R. p. 1790.

Lt. Cox, still not satisfied that he received his version of the "truth," continued to interrogate Mr. Reaux after the JPSO detectives had left. R. p. 2372. Lt. Cox showed Mr. Reaux a still image captured from the video surveillance in one of the Game Stop robberies from Jefferson Parish and informed him that he also had video surveillance from the Academy Sports near the Slidell Game Stop. Mr. Reaux continued to deny any involvement. R. p. 2375. Mr. Reaux was taken out of the interrogation room and was being brought to the jail to be booked when, according to Lt. Cox, he told the detectives, "Let's go back. I'll tell you everything." R. p. 2376. Mr. Reaux then gave a recorded statement that began at 4:07 a.m.[3] and ended at 5 a.m. on April 21, 2009. R. p. 2417.

Lt. Cox explained that Mr. Reaux gave a second recorded statement on April 22, 2009, to Sergeant McLain of the Slidell Police Department. R. p. 2379-2380. Lt. Cox, however, characterized the second statement as "inaccurate" and explained how he had Mr. Reaux recant the second statement while in jail.

Detective Corey Crowe of the St. Tammany Parish Sheriff's Office obtained search warrants for Petitioner's home in Hammond and his vehicle, a two-door 2006 Chevrolet Monte

---

[3] 7/23/13 Trial Transcript, p. 115.

Carlo. R. p. 2454, 2458. Crowe executed the warrant at Mr. Reaux's home and recovered a play station gaming console, one or two box cutters from the mantel of the living room, and another box cutter in a bedroom. R. p. 2486. Crowe did not determine whose room the box cutter was found in, nor did he inquire if the other occupants of the apartment used box cutters in their work. R. p. 2487 None of the box cutters were tested for fingerprints or DNA. **R. p. 2496.**

Det. Crowe seized the following items from Petitioner's car: (1) Wii points card; (2) a Wii video game disk with a price tag marked DAG 3-29-09 **(R. p. 2467)**; (3) a box with a USPS shipping label addressed to Game Stop located in Walker Louisiana **(R. p. 2469)**; (4) a Rayman game **(R. p. 2470)**; and (5) a skull cap type hat **(R. p. 2473)**. Det. Crowe identified a USPS tracking statement, which showed that the package found in petitioner's car was received by Travis Bousquet on April 14, 2009. The District Attorney alluded to prior trial testimony that the Walker Game Stop had been robbed on April 14, 2009. **R. p. 2470.** Detective Crowe also recovered 8 Wii point car boxes, five of which contained a label reading "ACC 04/03/09." Crowe testified that this label was consistent with Game Stop practice wherein the employee who put the item for display as merchandise would sign their initials and the date and that the five particular labels would suggest that Adolfo Castro put them out for display on April 3, 2009. **R. p. 2472.** No fingerprints were found on the Wii point card boxes. **R. p. 2473.** Crowe also recovered an "Alpha s magnetic hand key," which he explained is used by Game Stop to remove security tags from merchandise. **2481.**

## TIMELINESS

Petitioner's Post-Conviction Relief Application is timely. Louisiana's Code of Criminal Procedure provides that:

> "A. No application for post-conviction relief…shall be considered if it is filed more than two years after the judgment of conviction and sentence has become final…"

La.C.Cr.P Art. 930.8(A).

In this case, the District court sentenced Mr. Reaux to serve forty years on August 12, 2010. The Louisiana First Circuit of Appeal affirmed the convictions and sentences on September 14, 2011. *State v. Reaux*, 2011-0443 (La.App. 1 Cir. 9/14/11). Subsequently, the St. Tammany Parish District Attorney filed a multiple offender bill of information. On September

12, 2013, the St. Tammany Parish Court vacated Petitioner's 10 year sentence on count one, and resentenced Mr. Reaux to 50 years, to run consecutively with counts two, three, and four.

On March 11, 2014, Mr. Reaux appealed his sentence to the Louisiana First Circuit Court of Appeal, where it is pending under docket # 2014-KA-0330. As a result, Reaux's new sentence has not yet become final, and this application timely follows.

<div align="center">

**LAW AND ARGUMENT**

</div>

## I.   PETITIONER WAS DENIED EFFECTIVE ASSISTANCE OF COUNSEL ON APPEAL.

Ineffective assistance of counsel claims are analyzed under the *Strickland* two-prong test. A court must reverse a conviction if the defendant establishes: (1) that counsel's performance fell below an objective standard of reasonableness under prevailing professional norms; and (2) counsel's inadequate performance prejudiced defendant to the extent that the guilty plea is rendered unfair and suspect. *See, Strickland v. Washington,* 466 U.S. 668 (1984); see, *State v. Washington,* 491 So.2d 1337, 1339 (La. 1986).

A defendant must prove that counsel's deficient performance prejudiced the defense. This requires a showing that counsel's errors were so serious as to deprive the defendant of a fair trial, *Strickland,* 491 So.2d at 686, or in this case, a fair appeal.

In the instant case, "but for" appellate counsel's errors, Petitioner would have presented an overwhelmingly stronger case. Appellate counsel failed to counsel him on two of the four pro se assignments of error, specifically: the violation of Petitioner's Sixth Amendment right to counsel of choice caused by the denial of Petitioner's Motion to Continue, and the Trial Court's application of incorrect law in its decision to allow the State to introduce Art. 404(B) "other crimes" evidence. In addition, counsel failed to advise Petitioner of three additional arguments: (1) the violation of his Sixth Amendment Right to Confront His Accuser, (2) Lack of probable cause for his arrest and the denial of Motion to Suppress, and (3) Insufficiency of Evidence supporting the Attempted Armed Robbery charge, causing these important issues not to be argued on appeal. Appellate counsel has a duty to conduct a thorough, independent investigation into the facts on appeal.

A professional treatment of the two pro se assignments of error would have had a stronger impact. Any argument of the Sixth Amendment violation would have strengthened the

<div align="center">

10

</div>

Petitioner's case, as would have an argument on the lack of probable cause for the arrest and the Denial of the Motion to Suppress.     In this instance, appellate counsel prevented crucial arguments from being properly briefed, and prevented the strongest arguments, the Sixth Amendment violation, and the Denial of the Motion to Suppress due to lack of probable cause to arrest, from being briefed at all.

Under these circumstances it is impossible to conclude that Petitioner received a fair appeal or to have confidence in the result of the appellate court.     Counsel's inadequate performance "so undermined the proper functioning of the adversarial process that the trial cannot be relied on as having produced a just result." *Strickland* at 686, 104 S.Ct. 2052. In Petitioner's case, the appellate process was undermined in the same manner as that of the *Strickland* trial court.

**A.     Appellate Counsel was ineffective for failing to raise the trial court's denial of Defendants Six Amendment right to fully cross-examine a State witness**

On June 30, 2010, the State informed Defense counsel that a State witness, John Carroll, was arrested and fired by the Jefferson Parish Sheriff's Office. **R. p. 20.** At the pre-trial suppression hearing, the District Attorney called John Carroll, who testified that on April 20, 2009, he was notified by the St. Tammany's Parish Sheriff's Office that "there was an apprehension on a suspect involved in Game Stop Serial robberies that were going on in multi jurisdictions." **R. p. 684, 695.** Carroll and Detective Vermall of the Jefferson Parish Sheriff's Office subsequently drove to St. Tammany to interview Petitioner on behalf of the prosecution. **R. p. 696.** Upon their arrival, Carroll testified that he was briefed on the case by St. Tammany Parish deputies and did not enter the monitoring room, where he could have heard and/or viewed other detectives questioning Petitioner. **R. p. 705.** Although Detective Carroll indicated that he was carrying his "personal Glock-40," during his interrogation with Petitioner, there were no threats, pressure, coercion or any promises of leniency, and a possible sentence was not discussed. **R. p. 714.**

On cross-examination, Petitioner's trial attorney asked Carroll if he had been recently arrested, prompting an objection by the District Attorney on the grounds of relevancy. **R. p. 715** Petitioner's attorney indicated that his arrest was relevant to potential bias, interest, or corruption, and any hopes or expectations that he might have to testify a certain way in order to

gain favor from the State. **R. p. 717.** The trial court judge overruled the objection, and ordered that any questioning of the witness about his potential bias be limited to "inappropriate coercion, threats of violence or violence during interrogation as to perhaps other defendants or other matters, if the defense can lay a foundation for it." R. p. 737.

At trial, John Carroll was not a witness in the State's Case-in-Chief, rather he testified as a defense witness. Prior to Carroll's testimony, Defense Counsel asked the court for clarification regarding its pre-trial ruling as to the permissible scope of questions. Defendant's attorney objected to this witness on the grounds of bias, and asked the court for clarification as to why he would not be permitted to fully cross-examine the witness concerning the witness' arrest, the charges against him, his termination from the sheriff's office due to the arrest, the status of the pending charges, and his interest in getting favorable treatment on his sentence by testifying on behalf of the state in this case. The court limited the interrogation of this witness, and would not permit any questions of him that would give notice to the jury that he was arrested, charged with crimes, terminated from his deputy job, and/or had any potential for bias in seeking favorable treatment in exchange for his testimony. (Trial transcript, pgs 2816-2822).

Upon the defendant being arrested in St. Tammany Parish, Carroll travelled to the interrogation of the defendant, and spent an hour and a half to two hours questioning the defendant. After the questioning by Detective Carroll, the detective left the premises. The defendant then promptly confessed to other law enforcement officers. The defendant alleges that detective Carroll threatened him during the interrogation by placing his pistol on the table in front of him while he questioned the defendant. The defendant also stated that the detective made threatening remarks to him about how blacks are treated in St. Tammany Parish, and that he would likely have a nearly all white jury if he went to trial. There was neither a tape recording of the interrogation nor a video to confirm or dispute these allegations. The defendant alleges that he was in fear due to the misconduct of the detective, and that is why he confessed. He later withdrew his confession, and opted for trial.

The Sixth Amendment Right to Confront His Accuser was violated by the trial court's refusal to permit cross-examination of former detective, John Carroll, on the issue of his potential bias. The trial court's reasoning for its refusal to allow the cross-examination is set out in the trial transcript. (Trial transcript pgs 2816-2822). The court's reasoning falls short of that

12

demanded by the Sixth Amendment.  Support for this assignment of error can be found in

*Delaware v. Van Arsdall,* 475 U.S. 673 (1986).  The court stated at page 679,

> "…the trial court prohibited all inquiry into the possibility
> that Fleetwood would be biased as a result of the State's
> dismissal of his pending public drunkenness charge.  By
> thus cutting off all questioning about an event that the
> State conceded had taken place and that a jury might
> reasonably have found furnished the witness a motive for
> favoring the prosecution in his testimony, the court's
> ruling violated respondent's rights secured by the
> Confrontation Clause."

It is interesting that the trial court noted the *Van Arsdall* case in its reasoning, yet failed to

follow its admonitions.  Nevertheless, the court only allowed Defendant's counsel to ask if

former detective Carroll had made any deal with the state, and when he said "no" the court

would not allow further inquiry into whether or not he was a biased witness.  This is a clear

violation of the Sixth Amendment.

In *State v Huckabay,* 2000-1082, pp. 25-26 (La. App. 4 Cir. 2/6/02), 809 So.2d 1093,

1108, the Court discussed a defendant's right to confront his accusers:

> "An accused is entitled to confront and cross examine the
> witnesses against him.  La. Const. art. 1, Sec. 16.  La. C.E.
> art. 611(B) provides that a witness may be cross-examined
> on any matter relevant to any issue in the case.  Due
> process affords a defendant the right of full confrontation
> and cross-examination of the State's witnesses.  *State v.
> Van Winkle,* 94-0947, p. 5 (La. 6/30/95), 658 So.2d 198,
> 201-202.  The trial court has the discretionary power to
> control the extent of the examination of witnesses as long
> as the court does not deprive the defendant of his right to
> effective cross-examination.  *State v Hawkins,* 96-0766
> (La. 1/14/97), 688 So.2d 473."

**B.    Appellate Counsel was ineffective for failing to raise Lack of Probable Cause for
Arrest/Denial of Motion to Suppress**

At the time of his arrest, Petitioner had stopped at a gas station to get gasoline for his

vehicle.  When he attempted to use his debit card, it would not process.  He saw a bank nearby,

and decided to use its ATM to get cash for the gasoline.  He had to cross the parking lot of a

dental clinic to get to the bank.  The debit card again failed to process.  He started walking back

to his vehicle when he was called by Det. Noel Forrester, and ordered to approach him.  He had

surrendered his driver's license to Det. Forrester but had not yet had a chance to explain his

presence in the area when he was taken by surprise from behind, and handcuffed by Det.

McCormick.

13

At the pre-trial suppression hearing to suppress all evidence from Petitioner's arrest, Det. McCormick sought to legitimize his abrupt arrest of petitioner. McCormick testified that he set up a surveillance operation across the street from the Mandeville Game Stop, where he observed the Petitioner. From a distance he had the Game Stop store under surveillance. He saw petitioner, noted that he was extremely tall, and **that he had a black backpack. (Suppression Hearing, pg 386, L 22 – 28).**

At the jury trial, Det. McCormick changed his testimony. He stated that petitioner was a tall, black, male…but **"I can't see a backpack, or anything like that…" (Trial Transcript, pg 1595, L 21 – 27).**

At the trial, Det. McCormick said petitioner was observed next to the Game Stop store going in and out of the trees and plants, and that made him suspicious. In the Complaint Arrest Affidavit, McCormick was quoted as saying petitioner was walking to the Game Stop from a white Chevrolet Monte Carlo...until he apparently saw Sergeant McCormick and then changed direction and quickly walked away.

Det. Forrester, who stopped petitioner on the scene, admitted under cross-examination during the jury trial that he didn't have enough information to arrest the petitioner at the time that Det. McCormick arrived and put the handcuffs on him. (Trial Transcript pg 1765, L 17 – 32).

The probable cause to arrest petitioner did not exist at the time that Det. Forrester stopped petitioner for questioning, nor at the time that Det. McCormick approached and handcuffed him. This handcuffing was indistinguishable from a traditional arrest. (See *Dunaway v. New York,* 442 U.S. 200, 99 S.Ct. 2248, 60 L.Ed.2d 824 (U.S. 1979).

At the time of his arrest, petitioner had not committed any crime, had not gone into the Game Stop store, had not even gone near the entrance of the Game Stop, but had merely walked past the store to get to the bank's ATM. This activity was spun different ways, as the detective saw fit, and labeled by the detectives as suspicious because he was tall and black. This met the general description of the person for whom they were looking. But this alleged "suspicious" activity by petitioner does not make his arrest, and seizure of evidence, even roughly analogous to the narrowly defined intrusions involved in *Terry v. Ohio,* 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (U.S. 1968). There was nothing unique in being a tall, black male. As the Court in *Terry* observed,

> "The Fourth Amendment provides that 'the right of the
> people to be secure in their persons, houses, papers, and
> effects, against unreasonable searches and seizures,
> shall not be violated ***.' This inestimable right of
> personal security belongs as much to the citizen on the
> streets of our cities as to the homeowner closeted in his
> study to dispose of his secret affairs. For, as this Court
> has always recognized, 'No right is held more sacred,
> or is more carefully guarded, by the common law, than
> the right of every individual to the possession and
> control of his own person, free from all restraint or
> interference of others, unless by clear and unquestionable
> authority of law.' *Terry,* at pg 8 – 9, citing *Union Pac. R.
> v. Botsford,* 141 U.S. 250, 251, 11 S.Ct. 1000, 1001, 35
> L.Ed. 734 (1891).

In *State v. Herbert,* 351 So.2d 434 (La. 1977), the court reversed the denial of a Motion

to Suppress, and held that **mere suspicious activity without any relationship to any law**

**violation was not a sufficient basis for police interference with the freedom of an individual.**

In the instant case, the detectives jumped to a conclusion that petitioner was attempting to

rob the Game Stop, when, in fact, no violation of law had occurred by him merely being present

near the premises of the Game Stop. The Motion to Suppress should have been granted in the

trial court, and the denial of the motion should have been reversed on appeal.

**C.    Appellate Counsel was ineffective for failing to raise Insufficiency of Evidence**
**regarding Count IV Attempted Armed Robbery**

At the time of his arrest, defendant was seen near the premises of the Game Stop store,

then he turned away, and walked toward the Bippo Dental Clinic next door to the Game Stop

store where he was stopped, questioned, and arrested. He had not made any attempt to enter the

Game Stop store nor did he give any clue that he was about to enter the store.

> "To prove an attempted armed robbery, the state had to prove
> that the defendant 1) had a specific intent to commit the crime
> of Armed Robbery, and 2) did an act for the purpose of and
> tending directly toward the commission of the crime of Armed
> Robbery. La. Rev. Stat. Ann. 14:64 requires: 1) a taking,
> 2) of anything of value, 3) belonging to another, 4) from the
> person of another or from his immediate control, 5) by use
> of force or intimidation, 6) while armed with a dangerous
> weapon." *State v Stone,* 615 So.2d 38 (La. App. 3d Cir. 1993).

When the issue of sufficiency of evidence is raised on appeal, the critical inquiry of the

reviewing court is whether, after viewing the evidence in the light most favorable to the

prosecution, any rational trier of fact could have found the essential elements of the crime proven

beyond a reasonable doubt. *Jackson v Virginia,* 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560

(1979).

In order for the State to obtain a conviction, it must prove the elements of the crime beyond a reasonable doubt.

Justice Kimball, of the Louisiana Supreme Court, expounded in her dissent in *State v. Ordodi,* 946 So.2d 654 (La. 2006), on the jurisprudential treatise of *Clark & Marshall,* explaining the attempt to commit a crime as follows:

> "For a man to make up his mind to commit a crime, and to make preparations to commit it, is not an attempt. He must go further than mere preparation, and do some act directly tending to a carrying out of his unlawful intent. Procuring or loading a gun or buying poison, or walking to a particular place with intent to kill another, is not enough to make one guilty of attempt to commit murder. The same is true of similar preparations to commit burglary, or robbery. *Clark & Marshall, A Treatise On the Law of Crimes*, 248-49, (Marian Quinn [pg 20] Barnes, ed., Callaghan & Co., 7th Ed. 1967) (1927).

In the instant case, the defendant never entered the premises of the Game Stop, unlike the defendant in *Ordodi.* In *Ordodi* the jury was given evidence of the defendant's financial demise, his removal of the license plate from his vehicle, the vehicle left with the motor running while he went inside one of the banks, the pistol in his pocket, and the empty grocery bag in his pocket, and the presence of customers inside each bank. In petitioner's case, he did not go onto the premises of the Game Stop store, he didn't remove a license plate from his vehicle, he wasn't in financial stress, he didn't leave his vehicle's motor running. He did nothing from which the jury could have concluded that he had attempted to rob the Game Stop. Although petitioner may have seemed suspicious to the sheriff's deputies since he generally fit the description of the person for whom they were watching, he had not made any act tending to carry out an armed robbery of the store. Suspicion is not enough evidence to convict. The evidence does not prove, beyond a reasonable doubt, that Defendant possessed the intent to take anything from the store. Thus, the evidence is both constitutionally and statutorily insufficient to support the defendant's conviction.

**D.    Appellate Counsel was ineffective for failing to raise the trial court's violation of Petitioner's Sixth Amendment right to counsel of his choice caused by the denial of Petitioner's Motion to Continue (Pro se assignment of error number three).**

On June 4, 2010, John Hogue, Assistant Public Defender, filed a Motion to Continue Trial on behalf of Petitioner. The motion was urged on the facts that Petitioner had hired a private attorney, Mark Dennis, on April 20, 2010, to represent him at his trial in St. Tammany

16

Parish and in proceedings pending in Jefferson Parish. Subsequently, on June 1, 2010, Mr. Dennis appeared at the Pre-Trial conference on behalf of Mr. Reaux and indicated he would not be able to represent Mr. Reaux due to a scheduling conflict. (R. 109, 277). The legal basis asserted in Mr. Hogue's motion was a criminal defendant's State and Federal constitutional right to retain counsel of his choice to represent him. Article 1 Section 13 of the Louisiana Constitution, Sixth Amendment of United States Constitution. (R. 109-110).

On June 4, 2010, the Court heard and denied Petitioner's motion to continue trial, to which defense counsel objected and indicated his intent to file contemporaneous, supervisory writs on this matter with the First Circuit Court of Appeal and the Louisiana Supreme Court. (R. 326-328).

On June 14, 2010, Mr. Hogue subsequently filed a writ with two assignments of error: (1) The trial court erred in finding that the defendant himself had to be able to hire private counsel and not his family on his behalf, and (2) The trial court erred in denying Gregory Reaux's motion to Continue trial so that he could exercise his right to retain counsel of his own choice. On the same day, both the Louisiana First Circuit Court of Appeal and the Louisiana Supreme Court denied stay of the proceedings and the writ application. (R. 148, 259).

In his pro se appellate brief, Petitioner challenged the trial court's denial of his motion for continuance of trial on the grounds that had he been granted the continuance he could have better prepared for trial and contacted key alibi witnesses, whose testimony would have resulted in an acquittal. The First Circuit's opinion in response to Petitioner's appeal noted that during trial the Petitioner's stated grounds for the continuance was to retain private counsel and that the desire to subpoena alibi witnesses was not urged until appeal.

As noted in the procedural history, John Hogue, Petitioner's Public Defender, challenged the trial court's denial of the motion to continue trial, filing writs with the First Circuit Court of Appeal and the Louisiana Supreme Court, which were both denied. Despite the pre-trial decisions of the First Circuit and the Louisiana Supreme Court, appellate counsel should have reasserted the trial court's error in denying Petitioner's motion to continue trial on appeal.

Under the doctrine of "law of the case," an appellate court will generally refuse to reconsider its own rulings of law on a subsequent appeal in the same case. *State v. Pettus,* 11–862 (La.App. 5 Cir. 5/22/12), 96 So.3d 1240 (citation omitted). The law of the case doctrine is discretionary. *Id.* Reconsideration of a prior ruling is warranted when, in light of a subsequent trial record, it is apparent that the determination was patently erroneous and produced unjust results. *Id.*

17

A writ denial is not authoritative and does not make law. The denial by the court of appeal of a writ application seeking to invoke that court's supervisory jurisdiction "neither blesses nor adopts the [lower court's] factual determination or expressions of law." *McClendon v. State, Dept. of Transportation and Development*, 94-0111, p. 2 (La.9/6/94), 642 So.2d 157, 158; Block v. Reliance Ins. Co., 433 So.2d 1040, 1044 (La.1983). A denial of supervisory review does not constitute the court's considered opinion on the allegations made in a writ application but is merely a decision not to exercise the extraordinary powers of supervisory jurisdiction in that case. *In re Quirk*, 97-1143 (La. 12/12/97), 705 So.2d 172, 181 n. 17.

Mr. Hogue's Motion to Continue, the hearing on that motion, and Mr. Hogue's subsequent writ application were narrowly focused on the Petitioner's efforts to retain private counsel and Petitioner's reasonable belief that he had hired Mr. Dennis in April of 2010. Accordingly, the supporting jurisprudence was limited to cases wherein the defendant's right to choose an attorney of his choice was at issue based upon the conduct of counsel and to cases which emphasized the defendant's right to retain counsel of his choice even if counsel is hired by a third party. The Motion to Continue stated:

> Under Louisiana jurisprudence, defendant's right to choose an attorney of his choice should not be denied based upon the conduct of counsel. If trial counsel is at fault by failing to appear, or refusing to participate in the trial, or failing to give timely notice of scheduling conflicts, no waiver is presumed and the defendant may not be penalized by being forced to trial without counsel. State v. Wisenbaker, 428 So.2d 790 (LA. 1983); State v. Crawford, 660 So.2d 950 (La. App. 5th Cir. 1995) reversible error to require defendant to go forward with motion to suppress hearing without counsel even though the hearings had been previously postponed repeatedly because of the failure of retained counsel to appear.)

Mr. Hogue's Petition for Supervisory Writs cited three cases: Louisiana State Bar Ass'n v. Bosworth, 481 So.2d 567 (La. 1986)(the existence of an attorney-client relationship turns largely on the client's subjective belief that it exists); State v. Leggett, 363 So.2d 434 (La. 1978); and State v. Reeves, 11 So.3d 1031, 2006-2419 (La 5/5/09).

*Legget* and *Reeves* were merely cited for general principles of law; the facts of the cases were not mentioned, nor were they compared to the facts of the case sub judice. A more thorough analysis would have revealed factual and legal considerations that would have made this case more persuasive to the trial court. Notably, in *Leggett* the defendant's desire to retain new counsel and appointed counsel's motion to withdraw were based on irreconcilable

difference over the propriety of a plea of not guilty by reason of insanity in the absence of any supporting evidence. State v. Leggett, 363 So. 2d 434, 436-37 (La. 1978).

In this case, appointed counsel did not mention, nor did the trial court inquire, about any strategic conflicts that may have existed between Petitioner and Mr. Hogue. However, Petitioner's third pro se assignment of error asserted that had a continuance been granted Petitioner would have been able to "contact key alibi witnesses, whose testimony would have resulted in an acquittal." It is quite possible that Mr. Hogue was unwilling to pursue that particular defense strategy and this was the reason why Petitioner desired to retain private counsel.

Reconsideration of a prior ruling is warranted when, in light of a subsequent trial record, it is apparent that the determination was patently erroneous and produced unjust results. State v. Pettus, 11–862 (La.App. 5 Cir. 5/22/12), 96 So.3d 1240 (citation omitted). Id. In the present case, the trial record is insufficient to evaluate whether reconsideration of the prior ruling denying Petitioner's motion to continue was erroneous and produced unjust results. Given that Petitioner challenged his identity as the perpetrator at trial and even the District Attorney asserted that identity was a real issue, necessitating the introduction of 404B "other crimes" evidence, it is quite possible that the jury would have acquitted petitioner if they heard testimony from defense alibi witnesses and found their testimony credible. The only way to determine whether reconsideration of the prior ruling is warranted is to supplement the record with additional evidence, which could be accomplished at a Post-Conviction Hearing.

## II. PETITIONER WAS DENIED EFFECTIVE ASSISTANCE OF COUNSEL AT TRIAL AND ON APPEAL BECAUSE COUNSEL FAILED TO RAISE THE TRIAL COURT'S APPLICATION OF INCORRECT LAW IN ITS DECISION TO ALLOW THE STATE TO INTRODUCE 404(B) "OTHER CRIMES" EVIDENCE.

### A. Law governing the introduction of "other crimes" evidence at trial

For evidence of other crimes to be admissible at trial, the State must: (1) prove that the defendant committed these other acts by *clear and convincing evidence*;[4] (2) demonstrate that the other acts show motive, opportunity, intent, preparation, plan, knowledge, identity, absence of

---

[4] *State v. Blank*, 955 So.2d 90, 123 (La. 2007).

19

mistake or accident,[5] (3) show that the probative value of evidence of unrelated offenses outweighs its prejudicial effect; [6] and (4) provide the defendant with notice before trial that it intends to offer prior crimes evidence. [7]

Nevertheless, the introduction of inadmissible other crimes evidence is subject to harmless error analysis. State v. Leday, 11-1022 (La. App. 5 Cir. 6/28/12), 97 So. 3d 501, 506 writ denied, 2012-1765 (La. 3/1/13), 108 So. 3d 788; *State v. Santos,* 09–789, p. 14 (La.App. 5 Cir. 4/13/10), 40 So.3d 167, 175, *writ denied,* 10–1080 (La.11/24/10), 50 So.3d 828 (citations omitted). An error is harmless where the verdict actually rendered is surely unattributable to the error. *Crandell,* 987 So.2d 375. Reversal is only required where there is a reasonable possibility that the evidence might have contributed to the verdict. *Ridgley,* 7 So.3d 689. State v. Stevens, 2011-175 (La. App. 3 Cir. 10/5/11), 74 So. 3d 803, 807 writ denied, 2011-2496 (La. 3/30/12), 85 So. 3d 115.

## B.  State's Pre-trial Notice of intent to introduce evidence of other crimes

On September 22, 2009, the State filed notice of intent to introduce evidence of other offenses. R. p. 73. At a pre-trial hearing, the State presented a "list of all crimes with location, date, time and details of the incidents," asserting that those out-of-parish crimes are admissible for the purpose of identity. **R. p. 663.**

Defense counsel argued:

Identity has not been established either here or there, and it would be one thing if the defendant's identity has been established at any of these crimes. But with reference to the armed robbery charge, identity hasn't been established anywhere, so you're sort of boot-strapping two unknowns and trying to use one to say one's evidence of the other to meet its burden.

But in that case, identity is at issue in all of them. And so, I would argue that that would certainly be a reason not to let it in. **R. p. 663.**

The State responded that he must prove the defendant's identity on the out of parish charges at trial and that the State had "videotape of the crime itself on three of the out of parish crimes, which the State intends to seek to introduce to the jury so the jury can make their own assessment as to whether that is Gregory Reaux in that video committing those three robberies. And that's something that's a piece of evidence that we don't have for any of the St. Tammany juries—excuse me, crimes, where the jury can

---

[5] Louisiana Code of Evidence Article 404(B)
[6] *Prieur,* 277 So.2d at 128.
[7] *Prieur,* 277 So.2d at 130.

make an assessment of the video themselves and decide whether that is Gregory Reaux's image." R. p. 670.

On July 15, 2010, the Court ruled that the State could introduce evidence of five robberies occurring outside of St. Tammany Parish in Marrero, Hammond, Denham Springs, Harvey, and Walker. The trial court agreed with the State's contention that the details of the five offenses and the instant offenses were signature crimes with a particular method of operation used, and that there were multiple grounds for admission of the evidence, including the issue of the perpetrator's identity.

### C.   Art. 404 (B) "other crimes" evidence presented at Petitioner's Trial
### i.   Hammond

Beau Warren was working at the Hammond Game Stop, on March 23, 2009, when the store was robbed of approximately $600. The District Attorney played surveillance footage from the store (State's Exhibit 89) and Mr. Warren identified himself and another customer, Laura, who he walked out of the store after she had submitted a job application. R. p. 2044.

Mr. Warren expressly stated that the perpetrator was not armed with a weapon, explaining, " No. He had, he had nothing in his hands. Because he pushed me. And he grabbed the money with both hands." R. p. 2047. Mr. Warren described the perpetrator as a "tall black guy with a little beanie on his head, a white loose T shirt and blue jeans," carrying a black backpack. R. p. 2042.

For evidence of other crimes to be admissible at trial, the State must: (1) prove that the defendant committed these other acts by *clear and convincing evidence*;[8] (2) demonstrate that the other acts show motive, opportunity, intent, preparation, plan, knowledge, identity, absence of mistake or accident,[9] (3) show that the probative value of evidence of unrelated offenses outweighs its prejudicial effect; [10] and (4) provide the defendant with notice before trial that it intends to offer prior crimes evidence. [11]

Mr. Warren never identified Mr. Reaux as the perpetrator of the crime. Moreover, Mr. Warren's testimony confirms that the perpetrator of this offense was missing the signature

---

[8] *State v. Blank*, 955 So.2d 90, 123 (La. 2007).
[9] Louisiana Code of Evidence Article 404(B)
[10] *Prieur*, 277 So.2d at 128.
[11] *Prieur*, 277 So.2d at 130.

elements that the prosecution theorized as critical to the robber's modus operandi: covering his hand with a scarf or other material and intimidating his victim's with a box cutter.

Finally, there was no physical evidence tending to suggest that Mr. Reaux was the perpetrator of this simple robbery.[12] Accordingly, the State failed to prove by clear and convincing evidence that the Petitioner robbed the Hammond Game Stop.

### ii.  Denham Springs

Corporal Rodney Walker was the first officer to respond to the scene of the Denham Springs Robbery on April 13, 2009, at approximately 9 p.m. R. p. 1951. Corporal Walker interviewed and obtained written statements from the two victims, Justin Picket and Chris Crawford, and a witness Jermey Mateo. R. p. 1952. No physical evidence was recovered. The robber stole approximately $900 and a Mario Olympics game for the Wii gaming console. R. p. 1953.

Chris Crawford was the only witness to testify at trial and he provided inconsistent descriptions of the robber. On direct examination, Mr. Crawford said the robber was wearing a "grayish white hoodie." R. p. 1976. Then on cross-examination, defense counsel directed Mr. Crawford to his written statement, where he described the perpetrator wearing a black "do-rag" on his head and white cloth over his face. R. p. 1983. Mr. Crawford said that the robber was carrying something, but it was covered up with a black cloth, and he never saw a weapon. R. p. 1975. The State showed him surveillance footage, from which he identified himself, the other employee, and a customer in the store. R. p. 1978. Although the perpetrator was briefly captured on camera, Mr. Crawford could only identify the object the robber was carrying and his black backpack. R. p. 1979.

Here again, Mr. Crawford's testimony—riddled with an inconsistent description and the fact that he never saw a weapon— is insufficient to prove by clear and convincing evidence that Mr. Reaux is the person who committed this robbery.

### iii.  Harvey

Stephanie Ashley worked at the Harvey Game Stop when it was robbed on April 12, 2009. R. p. 2131. She described the perpetrator as a black "guy with his face covered up," "very tall" between 6 foot and 6 foot, five inches, wearing a "long white t-shirt, light gray sweat pants

---

[12] Sgt. Avery Rohner of the Walker Police Department lifted three latent prints from the Hammond store. Only one of the fingerprints was sufficient for further analysis and it was processed through AFIS. Although ten potential matches were identified, subsequent manual comparison revealed that these matches were not close at all. R. p. 1925.

with elastic at the bottom, light socks, and new balance tennis shoes that were white with a little bit of gray." R. p. 2133. The perpetrator was holding a black knit hat in one hand and a box cutter in the other hand, which he pointed at Ms. Ashley and another Game Stop employee, instructing them to open the "drawer" and put the money in a black Jansport mesh backpack that he brought with him. The perpetrator ultimately took $1,033 in cash, and approximately $2,000 worth of merchandise including: several video games and two gaming systems (a Wii console). R. p. 2137-2139.

Detective Russell Vermall of the Jefferson Parish Sheriff's Office lead the investigation of the Harvey and Marrero Game Stop armed robberies. Detective Vermall interviewed Stephanie Ashley and Nancy Pichon, victims of the Harvey Robbery, and Daniel Gaudet, victim of the Marrero Robbery. On cross-examination, Detective Vermall conceded that one of the witnesses said the perpetrator had age spots under his eyes and acne scars. R. .p. 1824. A witness from the Harvey robbery stated that she saw a ford mustang flee the parking lot after the robbery, which is inconsistent with Mr. Reaux's Chevy Monte Carlo. R. p .1837. None of the victims identified Mr. Reaux as the robber. Furthermore, no physical evidence was recovered directly linking Mr. Reaux to either robbery. Based upon the inconsistent descriptions of the perpetrator's physical appearance and the lack of an eyewitness identification, there is little doubt that the State failed to meet its burden that Mr. Reaux committed the Harvey armed robbery by clear and convincing evidence.

### D. The Trial Court and the Appellate court erroneously applied the preponderance of evidence standard in determining whether the State met its burden of proof to introduce evidence of other crimes under *Prieur* and Article 404 (B)

In the present case, Petitioner's trial counsel and appellate counsel were ineffective because they both failed to recognize and assert that the trial and appellate courts applied the wrong burden of proof in that the State has to establish that the defendant committed the prior act by clear and convincing evidence rather than the lower standard of a preponderance of the evidence.[13] At trial, Petitioner's counsel argued: "So I would suggest that the State has failed to

---

[13]     the Louisiana Supreme Court has not adopted the Huddleston standard for it has ratified the holding of State v. Prieur with its holding in State v. Blank. 955 So.2d 90, 123 (La. 2007). In Blank, the Louisiana Supreme Court, citing Prieur, and State v. Davis, a case decided by the court in 1984, clearly stated that "when the other crimes are offered for a purpose allowed under article 404, the state is required to prove that the defendant committed these other acts by clear and convincing evidence. See also Professor Bobby Harge's comments and analysis in La. Prac. Evidence Art. 404, attached as exhibit A, pages 8-10.

establish by the ***preponderance of the evidence*** that Mr. Reaux actually committed any of these

offenses for which it is seeking to Prieur in beyond that, your Honor." (R. 820).

The trial court prefaced its ruling to admit evidence of the five other robberies occurring

outside St. Tammany Parish with the following explanation:

> Okay, in looking at the Rule 404(b) relative to "other crimes" or "criminal acts" evidence, the court is required to look at basically a two-fold issue. Number one is the other, the other act or other acts relevant to any issue other than the defendant's character.
>
> The court finds that certainly and let me note this: It's not a burden of proof that any greater than a preponderance of the evidence for purposes of in consideration of allowing that other, those other acts of evidence to be submitted to the jury. Of course they are limiting instructions that the court needs to instruct the jury on with regard to "in consideration of those other acts" of evidence that might be allowed
>
> But as long as it relevant to a specific issue, and it is pointed out by the State, I think, there are multiple issues, not just, not just one issue but I think not just as to the character which is not intended to be introduced for, but it goes to the intent more particularly, on the attempted armed robbery that has been alleged there's an issue of the intent of Mr Reaux as to his presence at the Game Stop in Mandeville. That's an issue that he seems to make a point of in his testimony, at least in the preliminary hearing before the court that it wasn't his intent to rob the store but I think these other acts may show to the jury that they'll have to give it such due weight as they deem fit as to what his intent was to be located at the Game Stop in Mandeville.

(R. 823-825)

In its opinion dated September 14, 2011, the First Circuit Court of Appeal

incorrectly stated:

> The procedure to be used when the State intends to offer evidence of other criminal offenses was formerly controlled by *State v. Prieur,* 277 So.2d 126 (La.1973). However, 1994 La. Acts, 3d Ex.Sess., No. 51 added LSA–C.E. art. 1104 and amended LSA–C.E. art. 404B. Louisiana Code of Evidence article 1104 provides that the burden of proof in pretrial *Prieur* hearings, "shall be identical to the burden of proof required by Federal Rules of Evidence Article IV, Rule 404."
>
> The burden of proof required by Federal Rules of Evidence Article IV, Rule 404, is satisfied upon a showing of sufficient evidence to support a finding by the jury that the defendant committed the other crime, wrong, or act. *See Huddleston v. U.S.,* 485 U.S. 681, 685, 108 S.Ct. 1496, 1499, 99 L.Ed.2d 771 (1988). The Louisiana Supreme Court has yet to address the issue of the burden of proof required for the admission of other crimes evidence in light of the repeal of LSA–C.E. art. 1103 and the addition of LSA–C.E. art. 1104. However, numerous Louisiana appellate courts, including this Court, have held that burden of proof to now be less than "clear and convincing." *See State v. Williams,* 99–2576 (La.App. 1 Cir. 9/22/00), 769 So.2d 730, 734 n. 4

State v. Reaux, 2011-0443 (La.App. 1 Cir. 9/14/11).

As stated above, the introduction of inadmissible other crimes evidence is subject to harmless error analysis. An error is harmless where the verdict actually rendered is surely unattributable to the error. *Crandell,* 987 So.2d 375. Reversal is only required where there is a reasonable possibility that the evidence might have contributed to the verdict. *Ridgley,* 7 So.3d 689. State v. Stevens, 2011-175 (La. App. 3 Cir. 10/5/11), 74 So. 3d 803, 807 writ denied, 2011-2496 (La. 3/30/12), 85 So. 3d 115.

The trial and appellate court erred by evaluating the State's evidence under a lesser burden of proof—the preponderance of evidence standard rather than the standard of clear and convincing evidence. This error caused the trial court to give the following instruction to the jury about the limited admissibility of other crime's evidence:

> Evidence that the defendant was involved in the commission of an act or acts, other than the offense for which he is on trial, is to be considered only for a limited purpose. The sole purpose for which such evidence may be considered is whether it tends to show on the part of the defendant similar or signature patterns, intent, identity, a common plan or scheme, and/ or preparation.

> Remember the accused is on trial only for the offense charged. You may not find him guilty of this offense merely because he may have committed another offense or act.

R. p. 3181-3182.

If the trial court had evaluated the State's other crimes evidence using the standard of clear and convincing evidence, it is reasonably possible that the Court would have determined that the State did not meet this burden, requiring the judge to instruct the jury to disregard the evidence. Similarly, if the judge had given the proper instruction—to disregard the other crimes evidence--- it is reasonably possible that the jury would have followed such instructions and found the Petitioner not guilty on at least one of the charged offenses. As a result, the error is not harmless and reversal is required.

## CONCLUSION

Petitioner was denied effective assistance of counsel because appellate counsel failed to counsel him on two of the four pro se assignments of error, specifically: the violation of Petitioner's Sixth Amendment right to counsel of choice caused by the denial of Petitioner's Motion to Continue, and the Trial Court's application of incorrect law in its decision to allow the State to introduce Art. 404(B) "other crimes" evidence. In addition, counsel failed to advise Petitioner of three additional arguments: (1) the violation of his Sixth Amendment Right to

25

Confront His Accuser, (2) Lack of probable cause for his arrest and the denial of Motion to Suppress, and (3) Insufficiency of Evidence supporting the Attempted Armed Robbery charge, causing these important issues not to be argued on appeal.

Further, Petitioner meets all statutory requirements for Post-Conviction Relief according to the Louisiana Code of Criminal Procedure.

**WHEREFORE,** the petitioner prays that this Court issue an order granting this application for Post-Conviction Relief and issue all other orders deemed just and equitable.

Respectfully submitted,

_____
Julie C. Tizzard
Katherine Z. Crouch
700 Camp Street, Suite 101
New Orleans. LA 70130
Telephone: (504) 529-3774
Facsimile: (504) 529-3776
Attorney for Petitioner,
Gregory J. Reaux

STATE OF LOUISIANA

VERSUS

GREGORY REAUX
DOC# 574124

FILED: November 6, 2014

22ND JUDICIAL DISTRICT COURT

PARISH OF ST. TAMMANY

STATE OF LOUISIANA

DOCKET NOS: 471010

_____
Minute Clerk

### JUDGMENT

The defendant has filed an application for post-conviction relief. The Court has

reviewed this application. The Court finds no merit in the application. Thus,

IT IS HEREBY ORDERED thst the application for post-conviction relief, as filed

on October 8, 2014, and the relief requested therein, be, and the same is hereby, DENIED.

Covington, Louisiana, this ___6___ day of ~~October~~ November, 2014.

_____
Hon.  August J.  Hand, Judge
22nd Judicial District, Division "B"

SERVICE INSTRUCTIONS:
Please mail a true copy of this Order to:
the defendant through his counsel of record:

Katherine C. Crouch, Esq.
Julie C. Tizzard, Esq.
Attorneys at Law
700 Camp St., Ste. 101
New Orleans, LA 70130
Please mail a conformed copy of this Order to:
Dale Branch, Assistant District Attorney
for the Parish of Washington, State of Louisiana

A TRUE COPY

DY. CLERK 22nd Jud. Dist. Court
ST. TAMMANY PARISH, LA

Page 1 of  1

EXHIBIT
P-6

(B)

GREGORY REUAX

VERSUS

BURL CAIN

FILED: *November 19, 2014*

22ND JUDICIAL DISTRICT COURT

PARISH OF ST. TAMMANY

STATE OF LOUISIANA

DOCKET NO: 471010

*Dori A. Burress*
DEPUTY CLERK

## NOTICE OF INTENT TO SEEK WRIT

NOW INTO COURT, through undersigned counsel, comes petitioner herein, GREGORY REUAX, and on suggesting to the Court that the record herein shows error to his prejudice and that he seeks to apply for Supervisory Writ to the Louisiana Court of Appeal, First Circuit, from the judgment rendered on the 6th day of November, 2014, wherein petitioner's Application for Post Conviction Relief was denied.

FURTHER, petitioner respectfully designates the entire record, including the transcript and all exhibits of each hearing herein, if any, and all of the pleadings and exhibits filed for inclusion in the record.

WHEREFORE, petitioner prays that he be granted leave to apply for Supervisory Writ, returnable to the Louisiana Court of Appeal, First Circuit, within the applicable delays fixed by law.

Respectfully Submitted,

KATHERINE Z. CROUCH (Bar No. 34910)
JULIE C. TIZZARD (Bar No. 26132)
700 Camp Street, Suite 101
New Orleans, LA 70130
Phone: (504) 528-9500
Fax: (504)529-3776

## CERTIFICATE OF SERVICE

I hereby certify that the foregoing motion has been served on all parties by U.S. Mail, facsimile, and/or hand delivering a copy on this 17th day of November, 2014.

KATHERINE Z. CROUCH

EXHIBIT
P-7

P. 001          FAX No.          2014/THU 09:39 AM

GREGORY REUAX
"A"

VERSUS

BURL CAIN

FILED: _November 19, 2014_

NUMBER: ~~99 WFLN~~ 633,   DIVISION _B_   *970(0*

~~20TH~~ *22nd* JUDICIAL DISTRICT COURT

PARISH OF ~~WEST FELICIANA~~ *St. Tammany*

STATE OF LOUISIANA

_Toki R. Burell_
DEPUTY CLERK

## ORDER

Considering the foregoing Notice of Intent to Seek Writ,

IT IS HEREBY ORDERED that petitioner is hereby granted leave to apply for

Supervisory Writ from the judgment rendered in the above-captioned matter on November 6,,

2014, and returnable to the Louisiana Court of Appeal, First Circuit, the return date being the

_Jan 2nd_ day of _Jan._ , ~~2013.~~ *2015*

IT IS FURTHER ORDERED that the entire transcript and all pleadings and exhibits be

prepared for supervisory writ purposes.

BY MY HAND this _2nd_ day of _Dec_ , 2014, in Covington, Louisiana.

_____
JUDGE

IN THE

FIRST CIRCUIT COURT OF APPEAL

STATE OF LOUISIANA

---

NO. 2014- _____

STATE OF LOUISIANA

VERSUS

GREGORY J. REAUX

---

Application for Supervisory Writ, to review the ruling of the Honorable Judge August J. Hand, presiding in Division "B," 22nd Judicial District Court for the Parish of St. Tammany, State of Louisiana, Case No. 471010

---

Original Writ Application Submitted on behalf of Defendant- Petitioner

GREGORY J. REAUX

---

**Julie C. Tizzard, Esq.**
Bar Roll No. 26123
**Katherine Z. Crouch, Esq.**
Bar Roll No. 34910
Attorneys for Gregory Reaux
700 Camp Street, Suite 101
New Orleans. LA 70130
Telephone: (504) 529-3774
Facsimile: (504) 529-3776

i

## INDEX

STATEMENT OF JURISDICTION……………………………………............... 1

STATEMENT OF THE CASE………………………………................................ 1

    PROCEDURAL HISTORY…………………………………………….. 1

    FACTS ADDUCED FROM TESTIMONY AT TRIAL………………… 4

ASSIGNMENT OF ERROR………………………………………………….. 11

ISSUES AND QUESTIONS OF LAW……………………………………..… 11

LAW AND ARGUMENT…………………………………………………….. 12

   A. Trial and Appellate counsel were ineffective for their failure to raise
     the trial court's application of incorrect law in its decision to  allow the
     state to introduce 404(b) "other crimes" evidence…………………….….. 12

   B. Appellate counsel was ineffective for failing to raise the violation  of
     Petitioner's Six Amendment right to fully cross-examine a State witness.. 21

   C. Appellate counsel was ineffective for failing to raise the trial
     court's error in denying Petitioner's motion to suppress evidence
     based on lack of probable cause for his arrest…………………….……… 24

   D. Appellate counsel was ineffective for failing to raise insufficient
     evidence to convict Petitioner of attempted armed robbery…………….. 26

   E. Appellate counsel was ineffective for failing to raise the trial court's
     violation of Petitioner's Sixth Amendment right to counsel of his
     choice caused by the denial of Petitioner's motion to continue………....... 27

CONCLUSION AND PRAYER FOR RELIEF…………………………….…... 31

AFFIDAVIT OF VERIFICATION…………………………………………… 33

EXHIBITS:

P-1: Amended Felony Bill of Information for Docket No. 471010

P-2: Minute extract dated August 12, 2010, Petitioner's original sentence

P-3: Minute extract dated September 12, 2013, Petitioner's amended sentence

P-4: State of Louisiana Uniform Commitment Order

P-5: Post-Conviction Relief Application (Exhibits omitted and renumbered above)

P-6: Judgment of November 6, 2014 denying Application for PCR

P-7: Defendant's Notice of Intent to Seek Writ and Return Date Order

## STATEMENT OF JURISDICTION

The Honorable Court has jurisdiction over this case pursuant to Article V, Section 10 of the 1974 Louisiana Constitution and Louisiana Code of Criminal Procedure Article 912.1(C)(2).

## STATEMENT OF THE CASE

**PROCEDURAL HISTORY**

Mr. Reaux was arrested on April 20, 2009, and thereafter charged by separate Bills of Information with three Counts of Armed Robbery, and one Count of Attempted Armed Robbery, which were consolidated into one case by filing a Bill of Information on April 7, 2010. R. p. 81. The aforesaid offenses occurred in St. Tammany Parish but Defendant was a suspect in similar cases pending in Tangipahoa and Jefferson Parish. Defendant entered pleas of "Not Guilty" to the charges on multiple occasions prior to the commencement of his jury trial in St. Tammany Parish on June 14, 2011.

On September 22, 2009, the State filed an answer to Defendant's motion for discovery and inspections, and its own motions for discovery and notice of intent to introduce evidence of other offenses. R. p. 73. The motion stated: "The State gives written notice of its intent to introduce evidence of other offenses admissible under L.C.E. Article 404 as described in the attached discovery. Such evidence is admissible as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, absence of mistake or accident, or is an integral part of the act or transaction that is the subject of the current proceeding. R. p. 74.

On June 4, 2010, John Hogue, Assistant Public Defender, filed a Motion to Continue Trial on behalf of Petitioner, which the Court heard and denied on the same date. R. pp. 326-328. On June 14, 2010, Mr. Hogue filed contemporaneous, supervisory writs on this matter with the First Circuit Court of Appeal and the

1

Louisiana Supreme Court, both of which were subsequently denied. R. pp. 148, 259, 326-328.

On June 14, 2010, the Court began a four-day hearing on Petitioner's Motions to Suppress Evidence and Confessions, which continued on June 14, June 15, June 16, and June 30, 2010.  On June 16, the court also heard evidence on Defense Motions for *Prieur* Hearing and Motion to Sever, which the judge took under advisement. On June 30, 2010, the State informed Defense counsel that a State witness, John Carroll, was arrested and fired by the Jefferson Parish Sheriff's Office and hearings on all of the four above-mentioned pre-trial motions were continued. R. p. 20.

On July 15, 2010, the Court ruled on the outstanding pre-trial motions, denying the Defense's motions to suppress evidence, identification, and severance of offenses. Similarly, the Court ruled against the defense by allowing the State to bring up prior offenses the defendant has committed into evidence, specifically evidence of five robberies occurring outside of St. Tammany Parish. The State introduced a "list of all crimes with location, date, time and details of the incidents." R. p. 663.

A seven-day jury trial commenced on July 21, 2010, and on July 30, 2010, the jury found Petitioner guilty on all four counts. R. p. 55. Petitioner subsequently filed a motion for new trial and for post-verdict judgment of acquittal. R. p. 56, 253.

On August 12, 2010, the Court denied Petitioner's motions for new trial and for post-verdict judgment of acquittal and then sentenced Petitioner to serve ten years at hard labor as to each count, without benefit of probation, parole, or suspension of sentence, and to run consecutively with one another. *See Exhibit P-2*. The Petitioner notified the Court of its intent to file a Motion to Reconsider Sentence and Motion for Appeal. R. p. 57.

On August 23, 2010, Defense counsel filed a Motion to Reconsider Sentence and a Motion for Appeal and Designation of Record. On August 24, 2010, the Court denied the motion to reconsider sentence without a hearing. R. p. 255.

Finally, on September 3, 2010, the Court ordered that the Petitioner be granted an appeal to the First Circuit Court of Appeal and appointed the Louisiana Appellate Project to handle the appeal, with a return date of November 18, 2010. R. p. 256.

Petitioner appealed, raising one assignment of error in his counseled brief, wherein he argued that the sentencing was excessive and an abuse of the trial court's discretion. Petitioner raised four additional assignments of error in a pro se brief, namely: (1) the trial court's denial of motion to suppress; (2) the trial court's denial of motion to continue; (3) the trial court's admission of other crimes evidence; and, (4) sufficiency of evidence based on the claim that the record is incomplete. The Louisiana First Circuit of Appeal affirmed the convictions and sentences on September 14, 2011. *State v. Reaux*, 2011-0443 (La.App. 1 Cir. 9/14/11).

Subsequently, the St. Tammany Parish District Attorney filed a habitual offender bill of information, alleging Mr. Reaux to be a second-felony habitual offender with respect to his armed robbery conviction on count one. On September 12, 2013, the St. Tammany Parish Court vacated Petitioner's ten year sentence on count one, and resentenced Mr. Reaux to imprisonment for fifty years at hard labor, without the benefit of parole, probation or suspension of sentence. The trial court ordered that this enhanced sentence would run concurrently with his sentences on counts two, three, and four, and with any other sentences Mr. Reaux is currently serving. *See exhibit P-3 attached hereto.*

Mr. Reaux appealed his sentence to the Louisiana First Circuit Court of Appeal, which was affirmed on September 19, 2014. *State v. Reaux*, 2014-0330 (La. App. 1 Cir. 9/19/14).

## FACTS ADDUCED FROM TESTIMONY AT TRIAL

### A. Slidell

On April 17, 2009, Adolfo Castro was working at the Slidell Game Stop when a masked perpetrator robbed him, wielding a box cutter. R. p. 1362-1363, 1367. Mr. Castro stated that around closing time (9 p.m.) "somebody came into the store with what looked like a mask at that time and threw a black mesh bag at me and said, 'Put all the money in the bag.'" R. p. 1369. Castro described the perpetrator as a black male, approximately 6 foot and 6 inches in height, wearing a black baseball cap with a yellow bill, blue jeans, a long-sleeve t-shirt, and a mask that looked like a sleeve that was cut out of a t-shirt. R. pp. 1369-1370. The robber had what appeared to be a rag wrapped around his right arm. The perpetrator took approximately $813 cash, and five Wii points cards. R. pp. 1334, 1379.

Mr. Castro explained the system Game Stop uses to price merchandise. The store receives merchandise in numbered boxes. The employee types the box number in to a Game Stop Computer application, which provides an inventory of the items in that box and their respective prices and item numbers. R. p. 1363. Price stickers are generated, which include a description of the item, the date the price tag was printed, and the initials of the manager working on that date. R. p. 1365-1366. The State introduced Exhibits No. 1 and 2—photographs of the Wii point cards that were recovered from Mr. Reaux's car. Exhibit 2 is a close up of the price tag on the card containing the following information: (1) the type of merchandise "Wii Points Card 2000," (2) the item # 79, (3) numbers 040309 and (4) the letters ACC. Recognizing the date and his own initials, Mr. Castro identified the Wii points cards depicted in Exhibit No. 1 and 2 as merchandise that

he set out for display at the Slidell Game Stop and was subsequently stolen during the armed robbery. R. pp. 1366-1367.

State introduced Exhibit 3, which Mr. Castro described as a "sleeve cut out of a t-shirt." The State showed Mr. Castro and introduced into evidence, Exhibit No. 4— surveillance footage from an Academy Sports Store near the Game Stop which depicted an African American male, wearing a black backpack and a black baseball cap with a yellow bill getting into a white Monte Carlo vehicle. R. pp. 1379-1384. Although Mr. Castro indicated that the male in the surveillance footage was the same person who robbed the Game Stop, he never identified Mr. Reaux as the robber. R. p. 1396.

Officer McNulty of the Slidell Police Department was called to the scene of the April 17th Robbery in Slidell and interviewed Adolfo Castro, Chris Jackson, and Jack Douglas, a non-employee witness. Mr. Douglas described the perpetrator leaving in a vehicle which was the same color but a different make and model type than the vehicle seen in the Academy Sport surveillance video that was introduced during Mr. Castro's testimony. R. pp. 1422, 1425.

The Slidell Police Department gathered forensic evidence from the store including a partial fingerprint and a latent palm print. R. pp. 1431, 1435; However, Sgt. Bobby Campbell, an expert in fingerprint analysis and crime scene investigation, analyzed the three exhibits [1] and found "no identifiable prints," meaning the prints were not of sufficient quality to render further testing for identification reliable. R. pp. 2519, 2525. 2529, 2535-2536. The Slidell Police did not attempt to collect contact DNA swabs from the crime scene because there was no evidence that the perpetrator directly touched anything while in the store. R. pp. 2538.

### B. <u>Covington</u>

---

[1] : State's Exhibit 33- described as a partial palm print, Exhibit 34- a Nintendo magnet, and Exhibit 35- a Game Stop Flier. **R. p. 2528, 2591, 2535.**

Joel Vogt was working at the Covington Game Stop when it was robbed on April 18, 2009, at approximately 9 p.m. R. pp. 1459, 1461. At that time, three other people were in the store: another employee, Ryan Bohn, and two customers: Charlie McElroy and his wife Crystal. R. p. 1461. The perpetrator raised a box cutter up to the two customers almost immediately after walking into the store and instructed them to step back. The robber then threw a black mesh Jansport bag on the counter and said, "put the money in the bag fast." R. pp. 1470. Charlie McElroy took out his wallet and handed it out to the robber, who responded " 'No, you're good,' just like he was talking to a friend.'" Mr. Vogt described the perpetrator as follows:

> He was a tall black male, probably six foot two, six foot three, he was wearing light gray sweat pants, wearing a white shirt. He had a scarf of some kind of fabric that appeared to be a scarf down his right arm. It was black. He was holding a blue box cutter, and it was the extendable kind, the extendable blade. The blade was already extended. He had it out probably about three inches. And he did have a white fabric covering his face.

(R pp. 1463).

Mr. Vogt explained that the black fabric on the perpetrator's arm extended down his arm, covered his right hand, and that he was extremely cautious not to touch anything in the store. R. p. 1547. The District Attorney showed Mr. Vogt pictures, including Photograph No. 41, which depicted a person wearing a white shirt and "fabric that could have been coming out of his shirt, covering his face." R. p. 1473. Exhibit No. 40 depicted a person from the waist down holding a backpack which Mr. Vogt said was "very similar" to the backpack he described the perpetrator having during the robbery. R. p. 1473.

At trial, the State introduced evidence of five robberies, which occurred at Game Stop locations outside the jurisdiction of St. Tammany Parish in Walker, Denham Springs, Marrerro, Harvey, and Hammond. The "other crimes" evidence was introduced through the Petitioner's audio-recorded statement to St. Tammany

Parish law enforcement officers and through live testimony of police officers.

### C. __Mandeville__

David Vigo is the manager of the Game Stop in Mandeville, where he has worked since 2007. R. p. 2162. Mr. Vigo was handling the cash register on the night Mr. Reaux was arrested near the Mandeville store. R. p. 2168.

### D. __Testimony regarding the investigation__

Lieutenant Patrick McCormick of the St. Tammany Parish Sheriff's Office explained how Mr. Reaux was apprehended around 8 p.m. on April 20, 2009. Lieutenant McCormick was part of a multi-jurisdictional task force investigating a string of armed robberies that had occurred at Game Stop/EB Games in Slidell, Covington, and other stores in Southeast Louisiana. R. p. 1578-1579. McCormick learned from other law enforcement officers that the perpetrator was an extremely tall, black male, who wore a black baseball cap, carried a black backpack, which he used to carry his "loot," and wielded a box cutter or utility knife. R. p. 1580. The perpetrator carried out the robberies near the stores' closing time, which was 9 p.m. on all days except Sunday, when the stores closed at 6 p.m.  In one robbery, a white Chevy Monte Carlo was used. R. p. 1580.

Lt. McCormick determined that there were three EB Games/Game Stop stores in St. Tammany Parish, and the only store that had not been robbed was the Mandeville store. R. p. 1581-1582.  Consequently, McCormick conducted a surveillance operation across the street from the Mandeville Game Stop to try to catch the robber in the act. R. p. 1582. Using his personal binoculars, McCormick witnessed a tall black male wearing a dark hat and a white t-shirt emerge from an area of trees and shrubbery between the Game Stop and an adjacent Business-Bippo's Dental Clinic. As a young woman exited the Game Stop, McCormick saw the subject step back, then after that woman got in a car, the subject stepped back into the light and began looking around. R. p. 1596. The subject and the officer

7

made eye contact from over 100 feet away, and the subject began walking past the front of the businesses. R. p. 1597. Within minutes, another police officer Noel Forrester stopped the subject, who turned out to be Mr. Reaux. R. p. 1599. McCormick followed Reaux, observed him talking to Officer Forrester, and upon seeing him wearing a black backpack, and shifting his feet back and forth nervously, Lt. McCormick decided to restrain Mr. Reaux by handcuffing him from behind. R. p. 1603.

The police soon determined that Mr. Reaux had arrived in a white Monte Carlo vehicle. R. p. 1606. McCormick and Forrester secured Mr. Reaux in Deputy Forrester's patrol unit and were standing outside the unit talking when McCormick noticed a "little black piece of plastic" under the left rear tire of the police unit. McCormick also observed a broken box cutter on the hood of Officer Forrester's unit and determined that the black piece of plastic was part of the box cutter. R. p. 1610. McCormick also saw a black knit cap lying on the hood of Forrester's police unit, which was found somewhere on Mr. Reaux's person R. p. 1613.

When Mr. Reaux was arrested he was wearing a white t-shirt, gray sweatpants, a black Pittsburgh Pirates cap, and had a piece of light gray fabric wrapped around his neck, that was partially tucked under his t-shirt. R. p. 1618-1619. Lieutenant McCormick advised Mr. Reaux that he was under arrest for attempted armed robbery of the Mandeville Game Stop. R. p. 1620. He was also carrying a black backpack. Lieutenant McCormick testified that Mr. Reaux did not have a knife or box cutters on him at the time.

Deputy William Noel Forester of the St. Tammany Parish Sheriff's Office assisted Lieutenant McCormick with surveillance of the Mandeville Game Stop on April 20, 2009, and initially stopped Mr. Reaux as he was walking away from the Game Stop towards his vehicle. Deputy Forrester conducted a pat down frisk of Mr. Reaux and felt a hard object around his waistband, at which time Mr. Reaux

moved his hands from behind his back to the front and grabbed his shirt. Deputy Forrester got Mr. Reaux's hands back behind him and then as he attempted to raise his shirt, Mr. Reaux jerked his body and the item in his waistband fell to the ground. Deputy Forrester observed a blue handle box cutter fall to the ground and break into a few pieces. R. p. 1744. During the pat down, Deputy Forrester also recovered a black or dark blue knit cap from the left pocket of Mr. Reaux's sweat pants. R. p. 1746. Mr. Reaux complied with the deputies every command during his stop and arrest.

Lt. George Cox of St. Tammany Parish Sheriff's Office and Sgt. Sean McClain of the Slidell Police Department were the first law enforcement officers to interrogate Mr. Reaux after his arrest. R. p. 2362, 2366. Mr. Reaux was orally advised of his Miranda rights and also signed a written waiver of rights form. R. p. 2366. The interrogation began at 9:27 p.m. on April 20, 2009. R. p. 2369. Lt. Cox explained that Mr. Reaux told them he was not involved in any robberies, and confirmed that detectives from Jefferson Parish spoke to Mr. Reaux for over an hour and a half with the same results. R. p. 2370-2372.

On the night of April 20, 2009, Detective Vermall of the Jefferson Parish Sheriff's Office (JPSO) learned that the St. Tammany Sheriff's Office had arrested a suspect for the robberies of multiple Game Stops in that parish. Detective Varmall and former JPSO Detective John Carroll travelled to St. Tammany Parish to interview the suspect, Mr. Reaux. R. p. 1786. Mr. Reaux was cooperative, and denied any involvement in the robberies during the hour-long interview with Jefferson Parish detectives. As a result, the detectives stopped the interview and began to make preparations to search Mr. Reaux's residence in Hammond. R. p. 1789. While in route to Mr. Reaux's residence, the detectives were called back to the St. Tammany Sheriff's Office because the St. Tammany detectives claimed that Mr. Reaux had confessed to the robberies in Jefferson Parish. R. p. 1790.

9

During their second encounter with Mr. Reaux, Detectives Vermall and Carroll showed Mr. Reaux a still photograph of the robbery suspect obtained from video surveillance of the Marrerro Game Stop and Mr. Reaux advised that was him in the photograph. R. p. 1790.

Lt. Cox, still not satisfied that he received his version of the "truth," continued to interrogate Mr. Reaux after the JPSO detectives had left. R. p. 2372. Lt. Cox showed Mr. Reaux .a still image captured from the video surveillance in one of the Game Stop robberies from Jefferson Parish and informed him that he also had video surveillance from the Academy Sports near the Slidell Game Stop. Mr. Reaux continued to deny any involvement. R. p. 2375. Mr. Reaux was taken out of the interrogation room and was being brought to the jail to be booked when, according to Lt. Cox, he told the detectives, "Let's go back. I'll tell you everything." R. p. 2376. Mr. Reaux then gave a recorded statement that began at 4:07 a.m and ended at 5 a.m. on April 21, 2009. R. p. 2417.

Lt. Cox explained that Mr. Reaux gave a second recorded statement on April 22, 2009, to Sergeant McLain of the Slidell Police Department. Lt. Cox, however, characterized the second statement as "inaccurate" and explained how he had Mr. Reaux recant the second statement while in jail. R. pp. 2379-2380.

Detective Corey Crowe of the St. Tammany Parish Sheriff's Office obtained and executed search warrants for Petitioner's home in Hammond and his vehicle, a two-door 2006 Chevrolet Monte Carlo. R. p. 2454, 2458. At Mr. Reaux's home, Crowe recovered a play station gaming console, one or two box cutters from the mantel of the living room, and another box cutter in a bedroom. R. p. 2486. Det. Crowe did not determine whose room the box cutter was found in, nor did he inquire if the other occupants of the apartment used box cutters in their work. R. p. 2487. None of the box cutters were tested for fingerprints or DNA. R. p. 2496.

10

Det. Crowe seized the following items from Petitioner's car: (1) Wii points card; (2) a Wii video game disk with a price tag marked DAG 3-29-09 (R. p. 2467); (3) a box with a USPS shipping label addressed to Game Stop located in Walker Louisiana (R. p. 2469); (4) a Rayman game (R. p. 2470); and (5) a skull cap type hat (R. p. 2473). Det. Crowe identified a USPS tracking statement, which showed that the package found in petitioner's car was received by Travis Bousquet on April 14, 2009. The District Attorney alluded to prior trial testimony that the Walker Game Stop had been robbed on April 14, 2009. R. p. 2470. Detective Crowe also recovered 8 Wii point car boxes, five of which contained a label reading "ACC 04/03/09." Crowe testified that this label was consistent with Game Stop practice wherein the employee who put the item for display as merchandise would sign their initials and the date and that the five particular labels would suggest that Adolfo Castro put them out for display on April 3, 2009. R. p. 2472. No fingerprints were found on the Wii point card boxes. R. p. 2473. Crowe also recovered an "Alpha s magnetic hand key," which he explained is used by Game Stop to remove security tags from merchandise. R. p. 2481.

Petitioner, Gregory Reaux, presents the following issues and questions of law for determination by this Honorable Court:

## ASSIGNMENT OF ERROR

I.    **The District Court erred in denying Petitioner's Application for Post-Conviction Relief because Petitioner was denied effective assistance of counsel at trial and on appeal.**

## ISSUES AND QUESTIONS OF LAW

A. **Trial and Appellate counsel were ineffective for their failure to raise the trial court's application of incorrect law in its decision to allow the state to introduce 404(b) "other crimes" evidence.**

B. **Appellate counsel was ineffective for failing to raise the trial court's denial of Defendant's Six Amendment right to fully cross-examine a State witness.**

C. **Appellate counsel was ineffective for failing to raise the trial court's error in denying Petitioner's motion to suppress evidence based on lack of probable cause for his arrest.**

11

**D. Appellate counsel was ineffective for failing to raise insufficient evidence to convict Petitioner of attempted armed robbery.**

**E. Appellate counsel was ineffective for failing to raise the trial court's violation of Petitioner's Sixth Amendment right to counsel of his choice caused by the denial of Petitioner's motion to continue.**

## LAW AND ARGUMENT

**I. ASSIGNMENT OF ERROR ONE: The District Court erred in denying Petitioner's Application for Post-Conviction Relief because Petitioner was denied effective assistance of counsel at trial and on appeal.**

Ineffective assistance of counsel claims are analyzed under the *Strickland* two-prong test. A court must reverse a conviction if the defendant establishes: (1) that counsel's performance fell below an objective standard of reasonableness under prevailing professional norms; and (2) counsel's inadequate performance prejudiced defendant to the extent that the guilty plea is rendered unfair and suspect. *See, Strickland v. Washington,* 466 U.S. 668 (1984); see, *State v. Washington,* 491 So.2d 1337, 1339 (La. 1986).

A defendant must prove that counsel's deficient performance prejudiced the defense. This requires a showing that counsel's errors were so serious as to deprive the defendant of a fair trial, *Strickland,* 491 So.2d at 686, or in this case, a fair appeal.

**A. Trial and Appellate counsel were ineffective for their failure to raise the trial court's application of incorrect law in its decision to allow the state to introduce 404(b) "other crimes" evidence.**

### 1. Law governing the introduction of "other crimes" evidence at trial

For evidence of other crimes to be admissible at trial, the State must: (1) prove that the defendant committed these other acts by *clear and convincing evidence*;[2] (2) demonstrate that the other acts show motive, opportunity, intent, preparation, plan, knowledge, identity, absence of mistake or accident,[3] (3) show that the probative value of evidence of unrelated offenses outweighs its prejudicial

---

[2] *State v. Blank,* 955 So.2d 90, 123 (La. 2007).
[3] Louisiana Code of Evidence Article 404(B)

effect; [4] and (4) provide the defendant with notice before trial that it intends to offer prior crimes evidence. [5]

Nevertheless, the introduction of inadmissible other crimes evidence is subject to harmless error analysis. State v. Leday, 11-1022 (La. App. 5 Cir. 6/28/12), 97 So. 3d 501, 506 writ denied, 2012-1765 (La. 3/1/13), 108 So. 3d 788; State v. Santos, 09–789, p. 14 (La.App. 5 Cir. 4/13/10), 40 So.3d 167, 175, writ denied, 10–1080 (La.11/24/10), 50 So.3d 828 (citations omitted). An error is harmless where the verdict actually rendered is surely unattributable to the error. Crandell, 987 So.2d 375. Reversal is only required where there is a reasonable possibility that the evidence might have contributed to the verdict. Ridgley, 7 So.3d 689. State v. Stevens, 2011-175 (La. App. 3 Cir. 10/5/11), 74 So. 3d 803, 807 writ denied, 2011-2496 (La. 3/30/12), 85 So. 3d 115.

In the instant case, Petitioner's trial counsel, John Hogue, challenged the State's introduction of Louisiana Code of Evidence Art. 404(B) "other crimes" evidence before and during trial. However, both Mr. Hogue and Petitioner's appellate counsel made a critical error by failing to recognize and raise the trial court's application of incorrect law (i.e. the preponderance of evidence standard rather than the standard of clear and convincing evidence) in its decision to allow the State to introduce "other crimes" evidence and in its instructions to the jury. The performance of both counselors certainly fell below the objective standard of reasonableness as they were both simply ignorant of the law.

Under these circumstances it is impossible to conclude that Petitioner received a fair appeal or to have confidence in the result of the appellate court. Counsel's inadequate performance "so undermined the proper functioning of the adversarial process that the trial cannot be relied on as having produced a just

---

[4] Prieur, 277 So.2d at 128.
[5] Prieur, 277 So.2d at 130.

result." *Strickland* at 686, 104 S.Ct. 2052. In Petitioner's case, the appellate process was undermined in the same manner as that of the *Strickland* trial court.

    2. <u>State's Pre-trial Notice of intent to introduce evidence of other crimes</u>

On September 22, 2009, the State filed notice of intent to introduce evidence of other offenses. R. p. 73. At a pre-trial hearing, the State presented a "list of all crimes with location, date, time and details of the incidents," asserting that those out-of-parish crimes are admissible for the purpose of identity. R. p. 663. Defense counsel argued:

> Identity has not been established either here or there, and it would be one thing if the defendant's identity has been established at any of these crimes. But with reference to the armed robbery charge, identity hasn't been established anywhere, so you're sort of boot-strapping two unknowns and trying to use one to say one's evidence of the other to meet its burden.

> But in that case, identity is at issue in all of them. And so, I would argue that that would certainly be a reason not to let it in. R. p. 663.

The State responded that he must prove the defendant's identity on the out of parish charges at trial and that the State had:

> "videotape of the crime itself on three of the out of parish crimes, which the State intends to seek to introduce to the jury so the jury can make their own assessment as to whether that is Gregory Reaux in that video committing those three robberies. And that's something that's a piece of evidence that we don't have for any of the St. Tammany juries—excuse me, crimes, where the jury can make an assessment of the video themselves and decide whether that is Gregory Reaux's image."

R. p. 670.

On July 15, 2010, the trial court ruled that the State could introduce evidence of five robberies occurring outside of St. Tammany Parish in Marrerro, Hammond, Denham Springs, Harvey, and Walker. The trial court agreed with the State's contention that the details of the five offenses and the instant offenses were signature crimes with a particular method of operation used, and that there were

multiple grounds for admission of the evidence, including the issue of the perpetrator's identity.

### 3. Art. 404 (B) "Other Crimes" evidence presented at Petitioner's Trial

#### a. Hammond

Beau Warren was working at the Hammond Game Stop, on March 23, 2009, when the store was robbed of approximately $600. The District Attorney played surveillance footage from the store (State's Exhibit 89) and Mr. Warren identified himself and another customer, Laura, who he walked out of the store after she had submitted a job application. R. p. 2044.

Mr. Warren expressly stated that the perpetrator was not armed with a weapon, explaining, " No. He had, he had nothing in his hands. Because he pushed me. And he grabbed the money with both hands." R. p. 2047.  Mr. Warren described the perpetrator as a "tall black guy with a little beanie on his head, a white loose T shirt and blue jeans," carrying a black backpack. R. p. 2042.

For evidence of other crimes to be admissible at trial, the State must: (1) prove that the defendant committed these other acts by *clear and convincing evidence*;[6] (2) demonstrate that the other acts show motive, opportunity, intent, preparation, plan, knowledge, identity, absence of mistake or accident,[7] (3) show that the probative value of evidence of unrelated offenses outweighs its prejudicial effect; [8] and (4) provide the defendant with notice before trial that it intends to offer prior crimes evidence. [9]

Mr. Warren never identified Mr. Reaux as the perpetrator of the crime. Moreover, Mr. Warren's testimony confirms that the perpetrator of this offense was missing the signature elements that the prosecution theorized as critical to the robber's modus operandi: covering his hand with a scarf or other material and

---

[6] *State v. Blank*, 955 So.2d 90, 123 (La. 2007).
[7] Louisiana Code of Evidence Article 404(B)
[8] *Prieur,* 277 So.2d at 128.
[9] *Prieur,* 277 So.2d at 130.

intimidating his victim's with a box cutter.  Finally, there was no physical evidence tending to suggest that Mr. Reaux was the perpetrator of this **simple robbery**.[10] Accordingly, the State failed to prove by clear and convincing evidence that the Petitioner robbed the Hammond Game Stop.

b. Denham Springs

Corporal Rodney Walker was the first officer to respond to the scene of the Denham Springs Robbery on April 13, 2009, at approximately 9 p.m. R. p. 1951. Corporal Walker interviewed and obtained written statements from the two victims, Justin Picket and Chris Crawford, and a witness Jermey Mateo. R. p. 1952. No physical evidence was recovered. The robber stole approximately $900 and a Mario Olympics game for the Wii gaming console.  R. p. 1953.

Chris Crawford was the only witness to testify at trial and he provided inconsistent descriptions of the robber. On direct examination, Mr. Crawford said the robber was wearing a "grayish white hoodie." R. p. 1976. Then on cross-examination, defense counsel directed Mr. Crawford to his written statement, where he described the perpetrator wearing a black "do-rag" on his head and white cloth over his face. R. p. 1983. Mr. Crawford said that the robber was carrying something, but it was covered up with a black cloth, and he never saw a weapon. R. p. 1975. The State showed him surveillance footage, from which he identified himself, the other employee, and a customer in the store. R. p. 1978. Although the perpetrator was briefly captured on camera, Mr. Crawford could only identify the object the robber was carrying and his black backpack.  R. p. 1979.

Here again, Mr. Crawford's testimony—riddled with an inconsistent description and the fact that he never saw a weapon— is insufficient to prove by

---

[10] Sgt. Avery Rohner of the Walker Police Department lifted three latent prints from the Hammond store. Only one of the fingerprints was sufficient for further analysis and it was processed through AFIS. Although ten potential matches were identified, subsequent manual comparison revealed that these matches were not close at all. R. p. 1925.

clear and convincing evidence that Mr. Reaux is the person who committed this robbery.

### c. Harvey

Stephanie Ashley was working at the Harvey Game Stop when it was robbed on April 12, 2009. R. p. 2131. She described the perpetrator as a black "guy with his face covered up;" "very tall" between 6 foot and 6 foot, five inches; wearing a "long white t-shirt, light gray sweat pants with elastic at the bottom, light socks, and new balance tennis shoes that were white with a little bit of gray." R. p. 2133. The perpetrator was holding a black knit hat in one hand and a box cutter in the other hand, which he pointed at Ms. Ashley and another Game Stop employee, instructing them to open the "drawer" and put the money in a black Jansport mesh backpack that he brought with him. The perpetrator ultimately took $1,033 in cash, and approximately $2,000 worth of merchandise including: several video games and two gaming systems. R. p. 2137-2139.

Detective Russell Vermall of the Jefferson Parish Sheriff's Office testified that he lead the investigation of the Harvey and Marrero Game Stop armed robberies. Detective Vermall interviewed Stephanie Ashley and Nancy Pichon, victims of the Harvey Robbery, and Daniel Gaudet, the victim of the Marrerro Robbery. On cross-examination, Detective Vermall conceded that one of the witnesses said the perpetrator had age spots under his eyes and acne scars. R. .p. 1824. A witness from the Harvey robbery stated that she saw a ford mustang flee the parking lot after the robbery, which is inconsistent with Mr. Reaux's ownership of a Chevy Monte Carlo. R. p .1837. None of the victims identified Mr. Reaux as the robber. Furthermore, no physical evidence was recovered directly linking Mr. Reaux to either robbery. Based upon the inconsistent descriptions of the perpetrator's physical appearance and the lack of an eyewitness identification,

there is little doubt that the State failed to meet its burden that Mr. Reaux committed the Harvey armed robbery by clear and convincing evidence.

> 4.   The erroneous application of "preponderance of evidence" as burden of proof for evidence of "other crimes" evidence resulted in an improper jury instruction.

In the present case, Petitioner's trial counsel and appellate counsel were ineffective because they both failed to recognize and assert that the trial and appellate courts applied the wrong burden of proof in that the State has to establish that the defendant committed the prior act by clear and convincing evidence rather than the lower standard of a preponderance of the evidence.[11] At trial, Petitioner's counsel argued:  "So I would suggest that the State has failed to establish by the ***preponderance of the evidence*** that Mr. Reaux actually committed any of these offenses for which it is seeking to Prieur in beyond that, your Honor." R. p. 820.

The trial court prefaced its ruling to admit evidence of the five other robberies occurring outside St. Tammany Parish with the following explanation:

> Okay, in looking at the Rule 404(b) relative to "other crimes" or "criminal acts" evidence, the court is required to look at basically a two-fold issue. Number one is the other, the other act or other acts relevant to any issue other than the defendant's character.

> The court finds that certainly and let me note this: It's not a burden of proof that any greater than a preponderance of the evidence for purposes of in consideration of allowing that other, those other acts of evidence to be submitted to the jury. Of course they are limiting instructions that the court needs to instruct the jury on with regard to "in consideration of those other acts" of evidence that might be allowed.

> But as long as it relevant to a specific issue, and it is pointed out by the State, I think, there are multiple issues, not just, not just one issue but I think not just as to the character which is not intended to be introduced for, but it goes to the intent more particularly, on the attempted armed robbery that has been alleged there's an issue of the intent of Mr. Reaux as to his presence at the Game Stop in

---

[11]   The Louisiana Supreme Court has not adopted the Huddleston standard for it has ratified the holding of State v. Prieur with its holding in State v. Blank. 955 So.2d 90, 123 (La. 2007). In Blank, the Louisiana Supreme Court, citing Prieur, and State v. Davis, a case decided by the court in 1984, clearly stated that "when the other crimes are offered for a purpose allowed under article 404, the state is required to prove that the defendant committed these other acts by clear and convincing evidence. See also Professor Bobby Harge's comments and analysis in La. Prac. Evidence Art. 404 at pages 8-10.

Mandeville. That's an issue that he seems to make a point of in his testimony, at least in the preliminary hearing before the court that it wasn't his intent to rob the store but I think these other acts may show to the jury that they'll have to give it such due weight as they deem fit as to what his intent was to be located at the Game Stop in Mandeville.

(R. 823-825)

In its opinion dated September 14, 2011, the First Circuit Court of

Appeal incorrectly stated:

> The procedure to be used when the State intends to offer evidence of other criminal offenses was formerly controlled by *State v. Prieur,* 277 So.2d 126 (La.1973). However, 1994 La. Acts, 3d Ex.Sess., No. 51 added LSA–C.E. art. 1104 and amended LSA–C.E. art. 404B. Louisiana Code of Evidence article 1104 provides that the burden of proof in pretrial *Prieur* hearings, "shall be identical to the burden of proof required by Federal Rules of Evidence Article IV, Rule 404."

> The burden of proof required by Federal Rules of Evidence Article IV, Rule 404, is satisfied upon a showing of sufficient evidence to support a finding by the jury that the defendant committed the other crime, wrong, or act. *See Huddleston v. U.S.,* 485 U.S. 681, 685, 108 S.Ct. 1496, 1499, 99 L.Ed.2d 771 (1988). The Louisiana Supreme Court has yet to address the issue of the burden of proof required for the admission of other crimes evidence in light of the repeal of LSA–C.E. art. 1103 and the addition of LSA–C.E. art. 1104. However, numerous Louisiana appellate courts, including this Court, have held that burden of proof to now be less than "clear and convincing." *See State v. Williams,* 99–2576 (La.App. 1 Cir. 9/22/00), 769 So.2d 730, 734 n. 4

*State v. Reaux*, 2011-0443 (La.App. 1 Cir. 9/14/11).

As stated above, the introduction of inadmissible other crimes evidence is subject to harmless error analysis. An error is harmless where the verdict actually rendered is surely unattributable to the error. *Crandell,* 987 So.2d 375. Reversal is only required where there is a reasonable possibility that the evidence might have contributed to the verdict. *Ridgley,* 7 So.3d 689. State v. Stevens, 2011-175 (La. App. 3 Cir. 10/5/11), 74 So. 3d 803, 807 writ denied, 2011-2496 (La. 3/30/12), 85 So. 3d 115.

The trial and appellate court erred by evaluating the State's evidence under a lesser burden of proof—the preponderance of evidence standard rather than the standard of clear and convincing evidence. This error caused the trial court to give the following instruction to the jury about the limited admissibility of other crime's evidence:

> Evidence that the defendant was involved in the commission of an act or acts, other than the offense for which he is on trial, is to be considered only for a limited purpose. The sole purpose for which such evidence may be considered is whether it tends to show on the part of the defendant similar or signature patterns, intent, identity, a common plan or scheme, and/ or preparation.

> Remember the accused is on trial only for the offense charged. You may not find him guilty of this offense merely because he may have committed another offense or act.

R. p. 3181-3182.

If the trial court had evaluated the State's other crimes evidence using the standard of clear and convincing evidence, it is reasonably possible that the Court would have determined that the State did not meet this burden, requiring the judge to instruct the jury to disregard the evidence. Similarly, if the judge had given the proper instruction—to disregard the other crimes evidence--- it is reasonably possible that the jury would have followed such instructions and found the Petitioner not guilty on at least one of the charged offenses. As a result, the error is not harmless and reversal is required.

Furthermore, trial and appellate counsel's ignorance of the law relating to the admissibility of 404(B) "other crimes" evidence do not withstand the scrutiny of the *Strickland* two-prong test. First, counsel's ignorance of the law clearly fell below "an objective standard of reasonableness under prevailing professional norms," as the jury should have been instructed to apply this greater burden of proof in evaluating the testimony of sixteen out of twenty-six State witnesses. Second, counsel's inadequate performance undoubtedly prejudiced Mr. Reaux to

20

the extent that his conviction is rendered unfair and suspect. Accordingly, Mr. Reaux's conviction must be reversed.

**B. Appellate counsel was ineffective for failing to raise the trial court's denial of Defendant's Six Amendment right to fully cross-examine a State witness.**

On June 30, 2010, the State informed Defense counsel that a State witness, John Carroll, was arrested and fired by the Jefferson Parish Sheriff's Office. R. p. 20. At the pre-trial suppression hearing, the District Attorney called John Carroll, who testified that on April 20, 2009, he was notified by the St. Tammany's Parish Sheriff's Office that "there was an apprehension on a suspect involved in Game Stop Serial robberies that were going on in multi jurisdictions." R. p. 684, 695. Carroll and Detective Vermall of the Jefferson Parish Sheriff's Office subsequently drove to St. Tammany to interview Petitioner on behalf of the prosecution. R. p. 696. Upon their arrival, Carroll testified that he was briefed on the case by St. Tammany Parish deputies and did not enter the monitoring room, where he could have heard and/or viewed other detectives questioning Petitioner. R. p. 705. Although Detective Carroll indicated that he was carrying his "personal Glock-40," during his interrogation with Petitioner, he maintained that there were no threats, pressure, coercion or any promises of leniency, and a possible sentence was not discussed. R. p. 714.

On cross-examination, Petitioner's trial attorney asked Carroll if he had been recently arrested, prompting an objection by the District Attorney on the grounds of relevancy. R. p. 715 Petitioner's attorney indicated that his arrest was relevant to potential bias, interest, or corruption, and any hopes or expectations that he might have to testify a certain way in order to gain favor from the State. R. p. 717. The trial court judge overruled the objection, and ordered that any questioning of the witness about his potential bias be limited to "inappropriate coercion, threats of

violence or violence during interrogation as to perhaps other defendants or other matters, if the defense can lay a foundation for it." R. p. 737.

At trial, John Carroll was not a witness in the State's Case-in-Chief, rather he testified as a defense witness. Prior to Carroll's testimony, Defense Counsel asked the court for clarification regarding its pre-trial ruling as to the permissible scope of questions. Defendant's attorney objected to this witness on the grounds of bias, and asked the court for clarification as to why he would not be permitted to fully cross-examine the witness concerning the witness' arrest, the charges against him, his termination from the sheriff's office due to the arrest, the status of the pending charges, and his interest in getting favorable treatment on his sentence by testifying on behalf of the state in this case. The court limited the interrogation of this witness, and would not permit any questions of him that would give notice to the jury that he was arrested, charged with crimes, terminated from his deputy job, and/or had any potential for bias in seeking favorable treatment in exchange for his testimony. R. pp. 2816-2822.

Upon the Mr. Reaux being arrested in St. Tammany Parish, Carroll travelled to the interrogation of the Mr. Reaux, and spent an hour and a half to two hours questioning the Mr. Reaux.    After the questioning by Detective Carroll, the detective left the premises. The Mr. Reaux then promptly confessed to other law enforcement officers. The Mr. Reaux alleges that detective Carroll threatened him during the interrogation by placing his pistol on the table in front of him while he questioned the Mr. Reaux.  The Mr. Reaux also stated that the detective made threatening remarks to him about how blacks are treated in St. Tammany Parish, and that he would likely have a nearly all white jury if he went to trial. Conveniently, there was neither an audio or visual recording of the interrogation to confirm or dispute these allegations.  Mr. Reaux alleges that he was in fear due to

22

the misconduct of the detective, and that is why he confessed. He later withdrew his confession, and opted for trial.

Mr. Reaux's Sixth Amendment Right to confront his accuser was violated by the trial court's refusal to permit cross-examination of former detective, John Carroll, on the issue of his potential bias. The trial court's reasoning for its refusal to allow the cross-examination is set out in the trial transcript. R. pp. 2816-2822. The court's reasoning falls short of that demanded by the Sixth Amendment. Support for this assignment of error can be found in *Delaware v. Van Arsdall,* 475 U.S. 673 (1986), wherein the United States Supreme Court stated:

> "...the trial court prohibited all inquiry into the possibility that Fleetwood would be biased as a result of the State's dismissal of his pending public drunkenness charge.   By thus cutting off all questioning about an event that the State conceded had taken place and that a jury might reasonably have found furnished the witness a motive for favoring the prosecution in his testimony, the court's ruling violated respondent's rights secured by the Confrontation Clause."

*Id.* at 679.

It is interesting that the trial court noted the *Van Arsdall* case in its reasoning, yet failed to follow its admonitions.   Nevertheless, the court only allowed Defendant's counsel to ask if former detective Carroll had made any deal with the state, and when he said "no" the court would not allow further inquiry into whether or not he was a biased witness.   This is a clear violation of the Sixth Amendment.

In *State v Huckabay,* 2000-1082, pp. 25-26 (La. App. 4 Cir. 2/6/02), 809 So.2d 1093, 1108, the Court discussed a defendant's right to confront his accusers:

> "An accused is entitled to confront and cross examine the witnesses against him. La. Const. art. 1, Sec. 16.  La. C.E. art. 611(B) provides that a witness may be cross-examined on any matter relevant to any issue in the case.  Due process affords a defendant the right of full confrontation and cross-examination of the State's witnesses. *State v. Van Winkle,* 94-0947, p. 5 (La. 6/30/95), 658 So.2d 198, 201-202. The trial court has the discretionary power to control the extent of the examination of witnesses as long as the court does not deprive the

defendant of his right to effective cross-examination. *State v Hawkins,* 96-0766 (La. 1/14/97), 688 So.2d 473."

**C. Appellate counsel was ineffective for failing to raise the trial court's error in denying Petitioner's motion to suppress evidence based on lack of probable cause for his arrest.**

At the time of his arrest, Petitioner had stopped at a gas station to get gasoline for his vehicle. When he attempted to use his debit card, it would not process. He saw a bank nearby, and decided to use its ATM to get cash for the gasoline. He had to cross the parking lot of a dental clinic to get to the bank. The debit card again failed to process. He started walking back to his vehicle when he was called by Det. Noel Forrester, and ordered to approach him. He had surrendered his driver's license to Det. Forrester but had not yet had a chance to explain his presence in the area when he was taken by surprise from behind, and handcuffed by Det. McCormick.

At the pre-trial suppression hearing to suppress all evidence from Petitioner's arrest, Det. McCormick sought to legitimize his abrupt arrest of petitioner. McCormick testified that he set up a surveillance operation across the street from the Mandeville Game Stop, where he observed the Petitioner. From a distance he had the Game Stop store under surveillance. He saw petitioner, noted that he was extremely tall, and that he had a black backpack. (Suppression Hearing, pg 386, L 22 – 28).

At the jury trial, Det. McCormick changed his testimony. He stated that petitioner was a tall, black, male…but "I can't see a backpack, or anything like that…" (Trial Transcript, pg 1595, L 21 – 27). Det. McCormick said petitioner was observed next to the Game Stop store going in and out of the trees and plants, and that made him suspicious.

Det. Forrester, who stopped petitioner on the scene, admitted under cross-examination during the jury trial that he didn't have enough information to arrest

the petitioner at the time that Det. McCormick arrived and put the handcuffs on him. (Trial Transcript pg 1765, L 17 – 32).

The probable cause to arrest petitioner did not exist at the time that Det. Forrester stopped petitioner for questioning, nor at the time that Det. McCormick approached and handcuffed him. This handcuffing was indistinguishable from a traditional arrest. (See *Dunaway v. New York,* 442 U.S. 200, 99 S.Ct. 2248, 60 L.Ed.2d 824  (U.S. 1979).

At the time of his arrest, petitioner had not committed any crime, had not gone into the Game Stop store, had not even gone near the entrance of the Game Stop, but had merely walked past the store to get to the bank's ATM.  This activity was spun different ways, as the detective saw fit, and labeled by the detectives as suspicious because he was tall and black.  This met the general description of the person for whom they were looking.  But this alleged "suspicious" activity by petitioner does not make his arrest, and seizure of evidence, even roughly analogous to the narrowly defined intrusions involved in *Terry v. Ohio,* 392 U.S. 1, 88 S.Ct.  1868, 20 L.Ed.2d 889 (U.S. 1968).   There was nothing unique in being a tall, black male. As the Court in *Terry* observed:

> "The Fourth Amendment provides that 'the right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated.'  This inestimable right of personal security belongs as much to the citizen on the streets of our cities as to the homeowner closeted in his study to dispose of his secret affairs. For, as this Court has always recognized, 'No right is held more sacred, or is more carefully guarded, by the common law, than the right of every individual to the possession and control of his own person, free from all restraint or interference of others, unless by clear and unquestionable authority of law.'

*Terry,* at pg 8 – 9, citing *Union Pac. R.v. Botsford,* 141 U.S. 250, 251, 11 S.Ct. 1000, 1001, 35 L.Ed. 734 (1891).

In *State v. Herbert,* 351 So.2d 434 (La. 1977), the court reversed the denial of a Motion to Suppress, and held that mere suspicious activity without any

relationship to any law violation was not a sufficient basis for police interference with the freedom of an individual.

In the instant case, the detectives jumped to a conclusion that petitioner was attempting to rob the Game Stop, when, in fact, no violation of law had occurred by him merely being present near the premises of the Game Stop. The Motion to Suppress should have been granted in the trial court, and the denial of the motion should have been reversed on appeal.

### D. Appellate counsel was ineffective for failing to raise insufficient evidence to convict Petitioner of attempted armed robbery.

At the time of his arrest, defendant was seen near the premises of the Game Stop store, then he turned away, and walked toward the Bippo Dental Clinic next door to the Game Stop store where he was stopped, questioned, and arrested. He had not made any attempt to enter the Game Stop store nor did he give any clue that he was about to enter the store.

> "To prove an attempted armed robbery, the state had to prove that the defendant 1) had a specific intent to commit the crime of Armed Robbery, and 2) did an act for the purpose of and tending directly toward the commission of the crime of Armed Robbery. La. Rev. Stat. Ann. 14:64 requires: 1) a taking, 2) of anything of value, 3) belonging to another, 4) from the person of another or from his immediate control, 5) by use of force or intimidation, 6) while armed with a dangerous weapon." *State v Stone*, 615 So.2d 38 (La. App. 3d Cir. 1993).

When the issue of sufficiency of evidence is raised on appeal, the critical inquiry of the reviewing court is whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt. *Jackson v Virginia,* 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979).

In order for the State to obtain a conviction, it must prove the elements of the crime beyond a reasonable doubt. Justice Kimball, of the Louisiana Supreme Court, expounded in her dissent in *State v. Ordodi,* 946 So.2d 654 (La. 2006), on

the jurisprudential treatise of *Clark & Marshall,* explaining the attempt to commit a crime as follows:

> "For a man to make up his mind to commit a crime, and to make preparations to commit it, is not an attempt.  He must go further than mere preparation, and do some act directly tending to a carrying out of his unlawful intent.  Procuring or loading a gun or buying poison, or walking to a particular place with intent to kill another, is not enough to make one guilty of attempt to commit murder.  The same is true of similar preparations to commit burglary, or robbery. *Clark & Marshall, A Treatise On the Law of Crimes*, 248-49, (Marian Quinn [pg 20] Barnes, ed., Callaghan & Co., 7[th]Ed. 1967) (1927).

In the instant case, Mr. Reaux never entered the premises of the Game Stop, unlike the defendant in *Ordodi*.  In *Ordodi* the jury was given evidence of the defendant's financial demise, his removal of the license plate from his vehicle, the vehicle left with the motor running while he went inside one of the banks, the pistol and the empty grocery bag in his pocket, and the presence of customers inside each bank.  In petitioner's case, he did not go onto the premises of the Game Stop store, he didn't remove a license plate from his vehicle, he wasn't in financial stress, he didn't leave his vehicle's motor running.  He did nothing from which the jury could have concluded that he had attempted to rob the Game Stop.  Although Petitioner may have seemed suspicious to the sheriff's deputies since he generally fit the description of the person for whom they were watching, he had not made any act tending to carry out an armed robbery of the store.  Suspicion is not enough evidence to convict.  The evidence does not prove, beyond a reasonable doubt, that Petitioner possessed the intent to take anything from the store.  Thus, the evidence is both constitutionally and statutorily insufficient to support Mr. Reaux's conviction.

### E. Appellate counsel was ineffective for failing to raise the trial court's violation of Petitioner's Sixth Amendment right to counsel of his choice caused by the denial of Petitioner's motion to continue.

On June 4, 2010, John Hogue, Assistant Public Defender, filed a Motion to Continue Trial on behalf of Petitioner.  The motion was urged on the facts that

Petitioner had hired a private attorney, Mark Dennis, on April 20, 2010, to represent him at his trial in St. Tammany Parish and in proceedings pending in Jefferson Parish. Subsequently, on June 1, 2010, Mr. Dennis appeared at the Pre-Trial conference on behalf of Mr. Reaux and indicated he would not be able to represent Mr. Reaux due to a scheduling conflict. R. pp. 109, 277. The legal basis for the motion to continue was a criminal defendant's State and Federal constitutional right to retain counsel of his choice to represent him. Article 1 Section 13 of the Louisiana Constitution, Sixth Amendment of United States Constitution. R. pp. 109-110.

On June 4, 2010, the Court heard and denied Petitioner's motion to continue trial, to which defense counsel objected and indicated his intent to file contemporaneous, supervisory writs on this matter with the First Circuit Court of Appeal and the Louisiana Supreme Court. R. 326-328.

On June 14, 2010, Mr. Hogue subsequently filed a writ with two assignments of error: (1) The trial court erred in finding that the defendant himself had to be able to hire private counsel and not his family on his behalf, and (2) The trial court erred in denying Gregory Reaux's motion to continue trial so that he could exercise his right to retain counsel of his own choice. On the same day, both the Louisiana First Circuit Court of Appeal and the Louisiana Supreme Court denied a stay of the proceedings and the writ application. (R. 148, 259).

In his *pro se* appellate brief, Petitioner challenged the trial court's denial of his motion for continuance of trial on the grounds that had he been granted the continuance he could have better prepared for trial and contacted key alibi witnesses, whose testimony would have resulted in an acquittal.  The First Circuit's opinion in response to Petitioner's appeal noted that during trial the Petitioner's stated grounds for the continuance was to retain private counsel and that the desire to subpoena alibi witnesses was not urged until appeal.

28

As noted in the procedural history, John Hogue, Petitioner's Public Defender, challenged the trial court's denial of the motion to continue trial, filing writs with the First Circuit Court of Appeal and the Louisiana Supreme Court, which were both denied. Despite the pre-trial decisions of the First Circuit and the Louisiana Supreme Court, appellate counsel should have reasserted the trial court's error in denying Petitioner's motion to continue trial on appeal.

Under the doctrine of "law of the case," an appellate court will generally refuse to reconsider its own rulings of law on a subsequent appeal in the same case. *State v. Pettus,* 11–862 (La.App. 5 Cir. 5/22/12), 96 So.3d 1240 (citation omitted). The law of the case doctrine is discretionary. *Id.* Reconsideration of a prior ruling is warranted when, in light of a subsequent trial record, it is apparent that the determination was patently erroneous and produced unjust results. *Id.*   The Louisiana Supreme Court has stated:  A writ denial is not authoritative and does not make law. The denial by the court of appeal of a writ application seeking to invoke that court's supervisory jurisdiction "neither blesses nor adopts the [lower court's] factual determination or expressions of law." *McClendon v. State, Dept. of Transportation and Development*, 94-0111, p. 2 (La.9/6/94), 642 So.2d 157, 158; Block v. Reliance Ins. Co., 433 So.2d 1040, 1044 (La.1983). A denial of supervisory review does not constitute the court's considered opinion on the allegations made in a writ application but is merely a decision not to exercise the extraordinary powers of supervisory jurisdiction in that case. *In re Quirk*, 97-1143 (La. 12/12/97), 705 So.2d 172, 181 n. 17.

Mr. Hogue's Motion to Continue, the hearing on that motion, and Mr. Hogue's subsequent writ application were narrowly focused on the Petitioner's efforts to retain private counsel and Petitioner's reasonable belief that he had hired Mr. Dennis in April of 2010. Accordingly, the supporting jurisprudence was

limited to cases wherein the defendant's right to choose an attorney of his choice was at issue based upon the conduct of counsel and to cases which emphasized the defendant's right to retain counsel of his choice even if counsel is hired by a third party. The Motion to Continue stated:

> Under Louisiana jurisprudence, defendant's right to choose an attorney of his choice should not be denied based upon the conduct of counsel. If trial counsel is at fault by failing to appear, or refusing to participate in the trial, or failing to give timely notice of scheduling conflicts, no waiver is presumed and the defendant may not be penalized by being forced to trial without counsel. State v. Wisenbaker, 428 So.2d 790 (LA. 1983); State v. Crawford, 660 So.2d 950 (La. App. 5th Cir. 1995) reversible error to require defendant to go forward with motion to suppress hearing without counsel even though the hearings had been previously postponed repeatedly because of the failure of retained counsel to appear.)

Mr. Hogue's Petition for Supervisory Writs cited three cases: Louisiana State Bar Ass'n v. Bosworth, 481 So.2d 567 (La. 1986)(the existence of an attorney-client relationship turns largely on the client's subjective belief that it exists); State v. Leggett, 363 So.2d 434 (La. 1978); and State v. Reeves, 11 So.3d 1031, 2006-2419 (La 5/5/09).

*Legget* and *Reeves* were merely cited for general principles of law; the facts of the cases were not mentioned, nor were they compared to the facts of the case sub judice. A more thorough analysis would have revealed factual and legal considerations that would have made this case more persuasive to the trial court. Notably, in *Leggett* the defendant's desire to retain new counsel and appointed counsel's motion to withdraw were based on irreconcilable difference over the propriety of a plea of not guilty by reason of insanity in the absence of any supporting evidence. State v. Leggett, 363 So. 2d 434, 436-37 (La. 1978).

In this case, appointed counsel did not mention, nor did the trial court inquire, about any strategic conflicts that may have existed between Petitioner and Mr. Hogue. However, Petitioner's third pro se assignment of error asserted that had

a continuance been granted Petitioner would have been able to "contact key alibi witnesses, whose testimony would have resulted in an acquittal." It is quite possible that Mr. Hogue was unwilling to pursue that particular defense strategy and this was the reason why Petitioner desired to retain private counsel.

Reconsideration of a prior ruling is warranted when, in light of a subsequent trial record, it is apparent that the determination was patently erroneous and produced unjust results. *State v. Pettus,* 11–862 (La.App. 5 Cir. 5/22/12), 96 So.3d 1240 (citation omitted). *Id.* In the present case, the trial record is insufficient to evaluate whether reconsideration of the prior ruling denying Petitioner's motion to continue was erroneous and produced unjust results.   Given that Petitioner challenged his identity as the perpetrator at trial and even the District Attorney asserted that identity was a real issue, necessitating the introduction of 404B "other crimes" evidence, it is quite possible that the jury would have acquitted petitioner if they heard testimony from defense alibi witnesses and found their testimony credible. The only way to determine whether reconsideration of the prior ruling is warranted is to supplement the record with additional evidence, which could be accomplished at a Post-Conviction Hearing.

## CONCLUSION AND PRAYER FOR RELIEF

Petitioner was denied effective assistance of counsel at trial and on appeal. Although Petitioner's trial counsel, John Hogue, challenged the State's introduction of Louisiana Code of Evidence Art. 404(B) "other crimes" evidence before and during trial, both Mr. Hogue and Petitioner's appellate counsel failed to recognize and raise the trial court's application of incorrect law (i.e. the preponderance of evidence standard rather than the standard of clear and convincing evidence) in its decision to allow the State to introduce "other crimes" evidence and in its instructions to the jury.   Additionally, appellate counsel failed

to raise and brief four additional arguments: (1) the violation of Petitioner's Sixth Amendment right to confront his accuser caused by the trial court's limiting cross-examination of former JPSO Detective John Carroll; (2) the trial court's error in denying Petitioner's motion to suppress evidence based on lack of probable cause for his arrest; (3) Insufficiency of evidence supporting the attempted armed robbery charge; and (4) the violation of Petitioner's Sixth Amendment right to counsel of his choice caused by the denial of his motion to continue trial.

Further, Petitioner meets all statutory requirements for Post-Conviction Relief according to the Louisiana Code of Criminal Procedure.

**WHEREFORE,** the petitioner prays that this Honorable Court issue an order granting this application for Post-Conviction Relief, reversing his conviction and sentence, and issuing all other orders deemed just and equitable.

Respectfully submitted,

Julie C. Tizzard, Bar. No. 26132
700 Camp Street, Suite 101
New Orleans, Louisiana 70130
Tel: (504) 529-3774
Fax: (504) 529-3776

Katherine Z. Crouch, Bar. No. 34910
700 Camp Street, Suite 101
New Orleans, Louisiana 70130
Tel: (504) 982-6995

**Attorneys for Petitioner, Gregory J. Reaux**

32

## VERIFICATION AFFIDAVIT

STATE OF LOUISIANA

PARISH OF ORLEANS

BEFORE ME, the undersigned authority appeared **Katherine Z. Crouch, Esq.** Bar Roll No. 34910, to me personally known, who, after being duly sworn, did depose and say:

1. That she is the counsel for **Gregory Reaux.**

2. That she has reviewed the foregoing petition and attachments thereto and that the allegations contained therein are truthful.

3. That she has delivered a copy of this petition and the attachments thereto to opposing counsel, the District Judge listed below, and the Clerk of Court for the Louisiana First Circuit Court of Appeal.

> **Walter P. Reed**
> District Attorney for St. Tammany Parish
> 701 N. Columbia Street
> Covington, Louisiana 70433
> Phone: (985)809-8383

> **The Honorable August J. Hand**
> 22nd Judicial District Court, Division "B"
> 701 N. Columbia Street
> Covington, Louisiana 70433
> Phone: (985) 809-5310

> **Clerk of Court, Louisiana First Circuit Court of Appeal**
> P.O. Box 4408
> Baton Rouge, Louisiana 70821
> Phone: (225) 382-3000

_____
Katherine Z. Crouch, Esq.

SWORN TO AND SUBSCRIBED BEFORE ME,
THIS 5th DAY OF DECEMBER, 2014

_____
NOTARY PUBLIC # LA Bar 28787
Arthur Tarn
My commission expires at death

33

AMENDED FELONY BILL OF INFORMATION FOR DOCKET NUMBER 471019  FILED

STATE OF LOUISIANA - PARISH OF ST. TAMMANY

TWENTY-SECOND JUDICIAL DISTRICT

FEB 1 1 2010

MALISE PRIETO - CLK
Deputy

TO THE HONORABLE, THE TWENTY-SECOND JUDICIAL DISTRICT COURT OF LOUISIANA, sitting in for the Parish of St. Tammany, comes now into open Court the undersigned District Attorney of the Twenty-Second Judicial District of Louisiana, in the name and by the authority of said State, informs the said Honorable Court;

That the person(s) named and identified below, late of the Parish of St. Tammany on or about the date below described, in the Parish of St. Tammany aforesaid and within the jurisdiction of the Twenty-Second Judicial District in and for the Parish of St. Tammany, State of Louisiana and contrary to the form of the Statutes of the State of Louisiana in such cases made and provided, and against the peace and dignity of the same did violate:

DEFENDANTS'S NAME AND DATE OF BIRTH:

1) GREGORY J REAUX     DOB: 01/31/1981     SSN: 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
   Arrest Date: 04/20/2009    SID#: 2148187
   36 Joe Iverstine Place, Hammond, LA. 70401-

DATE OF OFFENSE:         April 17, 2009

COUNT 1
R.S. 14:64 ARMED ROBBERY, by the taking of anything of value from the person of ADOLFO CASTRO, or from his immediate control, by use of force or intimidation, while armed with a dangerous weapon, to wit: a box cutter.

COUNT 2:  And further, on the 18th day of April, 2009, did violate:
R.S. 14:64 ARMED ROBBERY, by the taking of anything of value from the person of RYAN BOHNE, or from his immediate control, by use of force or intimidation, while armed with a dangerous weapon, to wit: a box cutter.

COUNT 3:  And further, on the 18th day of April, 2009, did violate:
R.S. 14:64 ARMED ROBBERY, by the taking of anything of value from the person of JOEL VOGT, or from his immediate control, by use of force or intimidation, while armed with a dangerous weapon, to wit: a box cutter.

COUNT 4:  And further, on the 20th day of April, 2009, did violate:
R.S. 14:27/64 ATTEMPTED ARMED ROBBERY, by attempting to take anything of value from the person of DAVID VIGO, or from his immediate control, by use of force or intimidation, while armed with a dangerous weapon, to wit: a box cutter.

DIV B

WALTER P. REED
DISTRICT ATTORNEY
22nd JUDICIAL DISTRICT
STATE OF LOUISIANA

BY: _____ SCANNED

APR 0 7 2010



EXHIBIT
P-1

 

Thursday, August 12, 2010

COURT MET THIS DAY AND PURSUANT TO ADJOURNMENT, PRESENT AND PRESIDING, HIS HONOR, AUGUST J. HAND, JUDGE DIVISION "B", BRUCE DEARING, ASSISTANT DISTRICT ATTORNEY, AND DAVID WEIHLBACHER, ASSISTANT ATTORNEY GENERAL, RODNEY J. STRAIN, JR., SHERIFF AND MALISE PRIETO, CLERK OF COURT. (Laura Chabreck, Court Reporter and Chris Naquin, Bailiff)

471010          STATE OF LOUISIANA

                VS

                GREGORY JOHN REAUX

The defendant being present in open Court attended by his Counsel, John W. Hogue, III and this matter being on assignment for Felony Sentencing.

The Defense Counsel having previously filed Motion for New Trial and Motion for Post Verdict Judgment of Acquittal, Court at this time having denied both motions.

Evidence was heard on behalf of the Defense with the following witness giving testimony:

    1       Marlene Johnson

Evidence was offered, filed and introduced into evidence on behalf of the Defense with the following items:

    1       Copy of Southeastern Louisiana University Financial Aid Status Reports a
            and a List of Academic Work The matter was argued by the Defense and
State and submitted to the Court and the defendant having been found guilty on July 30, 2010; whereupon, the Court sentenced the defendant as follows:

GREGORY J. REAUX, being over 17 years of age and having previously been found guilty to unlawfully violated COUNT 1, R.S. 14:64 ARMED ROBBERY, by the taking of anything of value from the person of ADOLFO CASTRO, or from his immediate control, by use of force or intimidation, while armed with a dangerous

56



EXHIBIT
P-2

weapon, to wit: box cutter, COUNT 2, R.S. 14:64 ARMED ROBBERY, by the taking of anything of value from the person of RYAN BOHNE, or from his immediate control, by use of force or intimidation, while armed with a dangerous weapon, to wit: box cutter, COUNT 3, R.S. 14:64 ARMED ROBBERY, by the taking of anything of value from the person of JOEL VOGT, or from his immediate control, by use of force or intimidation, while armed with a dangerous weapon, to wit: box cutter, and COUNT 4, R.S. 14:27/64 ATTEMPTED ARMED ROBBERY, by attempting to take anything of value from the person of DAVID VIGO, or from his immediate control, by use of force or intimidation, while armed with a dangerous weapon, to wit: a box cutter, Court at this time AS TO EACH COUNT sentences him to serve a period of TEN (10) YEARS at hard labor to be served without benefit of probation, parole or suspension at hard labor with the Department of Public Safety with the State of Louisiana.

Further, Court ordered for the sentences imposed herein is to run consecutively with one another.

The Defense Counsel informed the Court of his intentions to file a Motion to Reconsider Sentence

Also, the Defense Counsel informed the Court of his intention to file a Motion for Appeal.

Court further ordered that the defendant be given credit for time served and advised him that he has a period of two (2) years in which to file post conviction relief.

COURT ADJOURNED SINE DIE

MINUTES READ AND APPROVED

_____
MINUTE CLERK    Sherri L. Viviano

_____
JUDGE     DIV B          AJH

57

Thursday, September 12, 2013

COURT MET THIS DAY AND PURSUANT TO ADJOURNMENT, PRESENT AND PRESIDING, HIS HONOR, AUGUST J. HAND, JUDGE DIVISION "B", JACK HOFFSTADT, NICK NORIEA AND BRUCE DEARING, ASSISTANT DISTRICT ATTORNEY, RODNEY J. STRAIN, JR., SHERIFF AND MALISE PRIETO, CLERK OF COURT (Laura Chabreck, Court Reporter; Rhett Rodriguez, Bailiffs)

471010                    STATE OF LOUISIANA
                          VS
                          GREGORY JOHN REAUX

The defendant being present in open Court attended by his Counsel, JULIE TIZZARD and this matter being on assignment for Ruling on Motion to Quash the Multiple Offender Bill of Information, Court denied said motion. The defense noted their objection and request thirty (30) days to file writs; Whereupon, Court granted.

Further, State has filed a Multiple Offender Bill of Information as to Count One and a hearing being held on June 11, 2013. Court at this time finds that the defendant has previously been convicted of felony offenses as set forth in the multiple bill and at this time adjudicated the defendant as a Second Felony Offender under the provisions of Article 15:529.1 of the Code of Criminal Procedure. The defendant having waived all delays in sentencing, Court vacates the previously imposed sentence as to Count one and resentences the defendant to FIFTY (50) YEARS at hard labor with the Department of Public Safety and Corrections of State of Louisiana with out benefit of probation, parole or suspension of sentence. Court ordered the sentence imposed on Count one is to run concurrently with counts 2, 3 and 4 and any other time the defendant may be serving but Counts 2, 3 and 4 run consecutive with each other and any other time the defendant may be serving. Court gives the defendant credit for time served. The defense noted their objection to the sentence imposed.

COURT ADJOURNED SINE DIE:              MINUTES READ AND APPROVED:

_____               _____
MINUTE CLERK    Karen C. Guzzardo      JUDGE  DIVISION B          AJH

A TRUE EXTRACT OF THE MINUTES OF THIS COURT

_____
DEPUTY CLERK
22ND JUDICIAL DISTRICT COURT
ST. TAMMANY PARISH, LOUISIANA

EXHIBIT
P-3

State of Louisiana Uniform Commitment Order

| Judicial District | 24th |
| Parish of Commitment | Jefferson |

Court Section   L

Docket Number   09-04002

### Defendant/Case Identifiers:

| Name of Convicted | Reaux, Gregory |
| Race | B |
| Sex | M |

Date of Birth   01/31/1981

State ID Number (SID)

Sentence: The above noted offender shall be imprisoned at hard labor in the custody of the Department of Public Safety and Corrections for:

| Convicted of: | Cts | Verdict/Plea | Enh/Mod | Drug Offense Type / Activity | Total Sentence | Imposed Time |
|---|---|---|---|---|---|---|
| 14:64 ARMED ROBBERY | 1 | Guilty | | | 99 yr/ 0 m/ 0d | 99 yr/ 0 m/ 0d |
| 14:64 ARMED ROBBERY | 2 | Guilty | | | 99 yr/ 0 m/ 0d | 99 yr/ 0 m/ 0d |
| 14:64 ARMED ROBBERY | 3 | Guilty | | | 99 yr/ 0 m/ 0d | 99 yr/ 0 m/ 0d |

Sentence/Offense Dates (MM/DD/YYYY) (For each of the above numbered convictions)

| Offense Date(s) | |
| Adjudication Date | 09/04/2013 |
| Sentence Date | 09/04/2013 |
| Revocation Date(s) | |

### Sentence Conditions:

| | Docket Number | Parish, Judicial District of Docket Number |
|---|---|---|
| Concurrent with: | | |
| Consecutive to: | Consecutive to time currently serving out of St. Tammany Parish | Jefferson, 24th JDC |

C.Cr.P. 890, Waiver of minimum mandatory sentences (excludes R.S. 14:2(B) & R.S. 15:541)  Yes ☐   No ☒

Is this part of a multi bill proceeding?   Yes ☐   No ☒

Charges Dismissed or Not Guilty on the docket (count)

### Special Comments, Program Participations or Instructions

297 Years of the sentence to be served without benefit of parole, probation or suspension

| Defendant is recommended for: | ☐ Substance Abuse Treatment |
| | ☐ Other |

### Involved Parties (Printed Names and Addresses):

| Minute Clerk: | Samantha A. Carter | Court Reporter: | Dana Daste |
| Prosecutor: | Jerome Smith | Defense Attorney: | JULIE C. TIZZARD |
| Address: | 200 Derbigny St - Jefferson Parish District Attorney | Address: | 712 SPLANE DR |
| | Gretna, LA 70053 | | WEST MONROE LA 71291 |

The above sentence, handed down in Open Court, is the order of this Court and this shall be sufficient warrant for its execution.  Thus Done and Signed this _____ day of _____ 20 _____

Judge's Signature

Judge's Printed Name and Mailing Address:
Donald A. Rowan, Jr.
200 Derbigny St. Ste. 4201 Div:L
Gretna LA 70054

EXHIBIT
P-4

# STATE OF LOUISIANA
# COURT OF APPEAL, FIRST CIRCUIT

STATE OF LOUISIANA                                    NO.  2014 KW 1782

VERSUS

GREGORY J. REAUX                                      **FEB 0 9 2015**

---

In Re:   Gregory J. Reaux, applying for supervisory writs, 22nd
         Judicial District Court, Parish of St. Tammany, No.
         471,010.

---

**BEFORE:   McDONALD, CRAIN AND HOLDRIDGE, JJ.**

   **WRIT DENIED ON THE SHOWING MADE.**  Relator failed to include
a copy of the trial, motion to suppress hearing, and motion to
continue hearing transcripts.  See **City of Baton Rouge v. Plain,**
433 So.2d 710 (La.), cert. denied, 464 U.S. 896, 104 S.Ct. 246,
78 L.Ed.2d 235 (1983).  Supplementation of this writ application
and/or an application for rehearing will not be considered.  See
Uniform Rules of Louisiana Courts of Appeal, Rules 2-18.7 & 4-9.
In the event relator elects to file a new application with this
Court, the application shall be filed on or before March 11,
2015.  Any future filing on this issue should include the entire
contents of this application, the missing items noted above, and
a copy of this ruling.

                          JMM
                          WJC
                          GH

COURT OF APPEAL, FIRST CIRCUIT

*Elizabeth D. Nauta*
DEPUTY CLERK OF COURT
   FOR THE COURT

## AFFIDAVIT

September 1, 2017

I, Gregory Reaux have tried to obtain a copy of my writ of Certiorari from the indigent defender's office to no avail.  I am obtaining this copy of an affidavit with proof that I have made every attempt to obtain this writ.

Gregory Reaux

Patricia Adam

Joseph Cline

# State ex rel. Reaux v. State, 204 So. 3d 200

### Copy Citation

Supreme Court of Louisiana

September 6, 2016, Decided

No. 15-KH-1292

**Reporter**

**204 So. 3d 200** \* | 2016 La. LEXIS 1644 \*\* | 15-1292 (La. 09/06/16);

STATE EX REL. GREGORY J. REAUX v. STATE OF LOUISIANA

**Prior History:** [\*\*1] ON SUPERVISORY WRITS TO THE TWENTY-SECOND JUDICIAL DISTRICT COURT, PARISH OF ST. TAMMANY.

State v. Reaux, 2014 La. App. Unpub. LEXIS 527 (La.App. 1 Cir., Sept. 19, 2014)

## Core Terms

successive application, fully litigated, per curiam, post-conviction

## Opinion

### [\*200] PER CURIAM:

Denied. Relator fails to show he received ineffective assistance of counsel under the standard of Strickland v. Washington, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984).

Relator has now fully litigated his application for post-conviction relief in state court. Similar to federal habeas relief, see 28 U.S.C. § 2244, Louisiana post-conviction procedure envisions the filing of a second or successive application only under the narrow circumstances provided in La.C.Cr.P. art. 930.4 and within the limitations period as set out in La.C.Cr.P. art. 930.8. Notably, the Legislature in 2013 La. Acts 251 amended that article to make the procedural bars against successive filings [\*201] mandatory. Relator's claims have now been fully litigated in accord with La.C.Cr.P. art. 930.6, and this denial is final. Hereafter, unless he can show that one of the narrow exceptions authorizing the filing of a successive application applies, relator has exhausted his right to state collateral review. The District Court is ordered to record a minute entry consistent with this per curiam.

APPENDIX "A" -- UNIFORM APPLICATION FOR POST-CONVICTION RELIEF

UNIFORM APPLICATION FOR POST-CONVICTION RELIEF

GREGORY REAUX                                    No. _____
NAME OF PETITIONER                                         (to be filled in by the clerk)

574124                                            _22ND_  JUDICIAL DISTRICT
PRISON NUMBER

LOUISIANA STATE PENITENTIARY                      PARISH OF _St. Tammany_____
PLACE OF CONFINEMENT STATE OF LOUISIANA

vs.

N. BURL CAIN, WARDEN
CUSTODIAN (Warden, Superintendent, Jailor,
or authorized person having custody of petitioner)

Please Serve CUSTODIAN and _Warren Montgomery_, DISTRICT ATTORNEY, _22ND_ JUDICIAL DISTRICT,
STATE OF LOUISIANA.

INSTRUCTIONS--READ CAREFULLY

(1) This petition must be legibly written or typed, signed by the petitioner and sworn to before a notary
public or institutional officer authorized to administer an oath. Any false statement of a material fact may
serve as the basis for a criminal prosecution. All questions must be answered concisely in the proper space
on the form.  Additional pages are not permitted except with respect to the facts which you rely upon to
support your claims for relief. No citation of authorities or legal arguments are necessary.

(2) Only one judgment may be challenged in a single petition except that convictions on multiple counts
of a single indictment or information may be challenged in one petition.

(3) YOU MUST INCLUDE ALL CLAIMS FOR RELIEF AND ALL FACTS SUPPORTING SUCH CLAIMS IN THE
PETITION.

(4) When the petition is completed, the original must be mailed to the clerk of the district court in the
parish where you were convicted and sentenced.

(5) You must attach official documentation showing your sentence and the crime for which you have
been convicted. You may obtain that documentation from the clerk of court of the district court of the
parish where you were sentenced or from the institution where you are confined. If that documentation
is not attached, you must allege what steps were taken to obtain it.

(6) Petitions which do not conform to these instructions will be returned with a notation as to the
deficiency

PETITION

1. Name and location of court which entered the judgment of conviction challenged

 22nd Judicial District Court,

2. Date of judgment of conviction __July 30, 2010_____

3. Length of sentence _Original Sentence: On August 12, 2010 the Court sentenced petitioner to server
10 years at hard labor as to each count, without benefit of probation, parole, or suspension of sentence
and to run  consecutively with one another.

New Sentence: Subsequently, the St. Tammany District Attorney filed a multiple bill of information. On
September 12, 2013 the St. Tammany Parish Court vacated Petitioner's 10 year sentence on count 1 and
re-sentenced Petitioner to 50 years to run consecutively with counts two, three, and four._____

4. Nature of offense involved (all counts) _Count 1: Armed Robbery 14:64, Count 2: Armed Robbery
14:64, Count 3: Armed Robbery 14:64, and Count 4: Attempted Armed Robbery 14:27/64._____

5. What was your plea? (check one)

1

(a) Not guilty (X)

(b) Guilty ( )

(c) Not guilty and not guilty by reason of insanity ( )

If you entered a guilty plea to one or more counts and not guilty to other counts, give details

___N/A_____

(d) Name and address of the lawyer representing you at your plea (if you had no lawyer, please indicate)

___N/A No Attorney_____

(e) Was the lawyer appointed ( ) or hired ( )? (check one)

6. Kind of trial: (check one)

(a) Jury (X)

(b) Judge only ( )

7. (a) Name and address of the lawyer representing you at your trial:

_John Hogue, 22nd Judicial District Public Defenders Office, 402 N. Jefferson Avenue, Covington, LA._
_70433_____

(b) Was the lawyer appointed (X) or hired ( )? (check one)

8. Did you testify at the trial? Yes (X) No ( )

9. (a) Give the name and address of the lawyer who represented you at sentencing for the conviction being attacked herein. _John Hogue represented Petitioner at original sentencing on August 20, 2010._ _On September 12, 2013 Petitioner was represented by Julie Tizzard 700 Camp Street, Suite 101, New_ _Orleans, La. 70130_____

(b) Was the lawyer appointed ( ) or hired (X)? (check one)

10. Did you appeal from the judgment of conviction? Yes (X) No ( )

11. If you did appeal, give the following information:

(a) Citation, docket number, and date of written opinion by the Supreme Court (if known)

_First Appeal: State v. Reaux, 2011-0443 (La. 1st Cir. 9/14/11) Unpublished Opinion, Docket No. 2011-KA-_
_0443 Opinion Written By Justice McClendon._____

_Second Appeal: State v. Reaux, 2014-0330 (La. 1st Cir. XX/XX/14) Unpublished Opinion, Docket No. 2014-_
_KA-0330 Opinion Written By Justice Blake._____

(b) Name and address of lawyer representing you on appeal:

_First Appeal: Mary Roper, 830 Main Street, Baton Rouge, La. 70802_

_Second Appeal: Kathryn W. Landry, 820 YMCA Plaza, Suite 10A, Baton Rouge, La. 70810 and Mary Roper,_
_830 Main Street, Baton Rouge, La. 70802._

(c) Was the lawyer appointed (X) or hired ( )? (check one)

12. Other than a direct appeal from the judgment of conviction and sentence, have you previously filed any application for post-conviction relief with respect to this judgment in any state or federal court?

Yes (X) No ( )

13. If your answer to 12 is "yes", give the following information:

(a)(1) Name of court _22nd Judicial District Court,_____

(2) Nature of proceeding _Application for Post-Conviction Relief._____

(3) Claims raised __Attached_____

2

(4) Did you receive an evidentiary hearing on your application? Yes ( ) No (X)

(5) Was relief granted or denied? _Denied_____

(6) Date of disposition _____

(7) Citation of opinion (if known) _____

(8) Name and address of lawyer representing you [if none, so state]:

_____

(9) Was the lawyer appointed ( ) or hired ( )? (check one)

(b) As to any second application give the same information:

(1) Name of court ___N/A_____

(2) Nature of proceeding _N/A_____

(3) Claims raised __N/A_____

(4) Did you receive an evidentiary hearing on your application?

Yes ( ) No ( )

(5) Was relief granted or denied? _N/A_____

(6) Date of disposition __N/A_____

(7) Citation of opinion (if known) __N/A_____

(8) Name and address of lawyer representing you [if none, so state]:

_N/A_____

(9) Was the lawyer appointed ( ) or hired ( )? (check one)

(c) Have you filed any other applications for post-conviction relief with respect to the challenged

conviction? Yes ( ) No ( )

If "yes", set forth the details (as above) on separate paper and attach.

(d) Did you appeal or seek writs of review from the denial of any post-conviction application?

(1) First petition, etc. Yes (X) No ( )

(2) Second petition, etc. Yes ( ) No ( )

(e) If you did not appeal or seek writs from the denial of any post-conviction application, explain briefly

why you did not:

_____

(f) Name of the lawyer who represented you on appeal from the denial of any post-conviction
application -[if none, so state]:

(1) First petition _Kathryn W. Landry 820 YMCA Plaza, Suite 10A, Baton Rouge, La. 70810_____

(2) Second petition _____

CLAIMS FOR RELIEF

State concisely facts supporting your claim that you are being held unlawfully. If necessary, you may
attach extra pages stating additional claims and supporting facts. Do not argue points of law.

The following is a list of those claims, and only those claims, that may provide you with grounds for
relief:

(1) Your conviction was obtained in violation of the constitution of the United States or the State of
Louisiana;

(2) The court exceeded its jurisdiction;

3

(3) Your conviction or sentence subjected you to double jeopardy;

(4) The limitations on prosecution had expired;

(5) The statute creating the offense for which you were convicted and sentenced is unconstitutional;

(6) The conviction or sentence constitute the ex post facto application of law in violation of the Constitution of the United States or the State of Louisiana.

A REMINDER: THE ABOVE LIST CONTAINS ONLY THOSE CLAIMS THAT YOU MAY RAISE FOR RELIEF. YOU MUST SET FORTH ALL OF YOUR COMPLAINTS ABOUT YOUR CONVICTION IN THIS APPLICATION. YOU MAY BE BARRED FROM PRESENTING ADDITIONAL CLAIMS AT A LATER DATE. Remember that you must state the FACTS upon which your complaints about your conviction are based. MERE CONCLUSORY ALLEGATIONS WILL NOT SUFFICE. REPETITIVE APPLICATIONS

The above claims may not provide grounds for relief if any of the following applies to you:

(1) Unless required in the interest of justice, any claim for relief which you fully litigated in an appeal shall not be considered.

(2) Any claim of which you had knowledge and inexcusably failed to raise in the proceeding leading to conviction may be denied by the court.

(3) Any claim which you raised in the trial court and inexcusably failed to pursue on appeal may be denied by the court.

(4) A successive application may be dismissed if it fails to raise a new or different claim.

(5) A successive application may be dismissed if it raises a new or different claim that was inexcusably omitted from a prior application. This application will provide space for you to explain the reasons why you failed to raise your claims in the proceedings leading to conviction, or failed to urge the claim on appeal, or failed to include the claim in a prior application.

CLAIM I

Claim:

_____ Prosecutorial Misconduct – Due Process Violation _____

(a) Supporting FACTS (tell your story briefly without citing cases or law):

___ See Memorandum in Support _____

(b) List names and addresses of witnesses who could testify in support of your claim. If you cannot do so, explain why:

___ Ms. Mary Ann Sherry CDE – Board Certified Documents – 4513 Folse Drive – Metarie, LA 70006

(504) 889-0775 _____

(c) If you failed to raise this ground in the trial court prior to conviction, on appeal or in a prior application, explain why: ___ "Newly Discovered Facts" _____

CLAIM II

Claim:

_____ Ineffective Assistance of Counsel _____

(a) Supporting FACTS (tell your story briefly without citing cases or law):

___ See Memorandum in Support _____

(b) List names and addresses of witnesses who could testify in support of your claim. If you cannot do so, explain why:

_____

4

(c) If you failed to raise this ground in the trial court prior to conviction, on appeal or in a prior application, explain why: _____

You may attach additional pages setting forth the required information (above) if additional claims are asserted.

A. Do you have in a state or federal court any petition or appeal now pending as to the judgment challenged?

Yes [X] No [ ] If "yes", name the court

  Supervisory Writ pending in the 1st Circuit Court of Appeal

B. Do you have any future sentence to serve after you complete the sentence imposed by the judgment challenged? Yes [X] No [ ]

 (1) If so, give name and location of court which imposed sentence to be served in the future:

_____

(2) Give date and length of sentence to be served in the future:

_____

(3) Have you filed, or do you contemplate filing, any petition attacking the judgment which imposed the sentence to be served in the future? Yes [X] No [ ]

C. If a copy of the court order sentencing you to custody is not attached, explain why.

_____

WHEREFORE, petitioner prays that the Court grant petitioner relief to which he may be entitled.

_____
 Signature of Petitioner

   19/11/15
Day/Month/Year

APPLICATION FOR APPOINTMENT OF COUNSEL

I am unable to employ counsel to represent me in this matter because I have no assets or funds except:

___NONE_____

(Write "None" above if you have nothing; otherwise, list your assets including funds in prison accounts.)

_____
 Signature of Petitioner

AFFIDAVIT
STATE OF LOUISIANA
PARISH OF ___West Feliciana_____

___Greagory Reaux___, being first duly sworn says that he has read the foregoing application for post-conviction relief and swears or affirms that all of the information therein is true and correct. He further swears or affirms that he is unable to employ counsel because he has no assets or funds which could be used to hire an attorney except as listed above.

_____
Signature of Petitioner

SWORN TO AND SUBSCRIBED before me this 6th day of November, 2015.

_____
Notary Public or other person authorized to administer an oath

| GREGORY REAUX | 22ND JUDICIAL DISTRICT COURT |
|---|---|
| VERSUS | PARISH OF ST. TAMMANY |
| N. BURL CAIN, WARDEN | STATE OF LOUISIANA |

FILED:_____

_____
CLERK OF COURT

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

**MEMORANDUM IN SUPPORT OF
POST-CONVICTION RELIEF**

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

**MAY IT PLEASE THE COURT:**

**NOW INTO COURT** comes Petitioner, Gregory Reaux, respectfully submitting the following memorandum in support of his Application for Post-Conviction Relief.

## JURISDICTION

Jurisdiction is vested in this Honorable Court pursuant to *Article 5 § 16* of the Louisiana Constitution of 1974, and the Louisiana Code of Criminal Procedure Article 912.(C)(2).

**PROCEDURAL HISTORY**

Mr. Reaux was arrested on April 20, 2009, and thereafter charged by separate Bills of Information with three Counts of Armed Robbery, and one Count of Attempted Armed Robbery, which were consolidated into one case by filing a Bill of Information on April 7, 2010. R. p. 81. The aforesaid offenses occurred in St. Tammany Parish but the Defendant was a suspect in similar cases pending in Tangipahoa and Jefferson Parish. Defendant entered pleas of "Not Guilty" to the charges on multiple occasions prior to the commencement of his jury trial in St. Tammany Parish on June 14, 2011.

On September 22, 2009, the State filed an answer to Defendant's motion for discovery and inspections, and its own motions for discovery and notice of intent to introduce evidence of other offenses.  R. p. 73.  The motion stated: "The State give written notice of its intent to introduce evidence of other offenses admissible under L.C.E. Article 404 as described in the attached discovery.  Such evidence is admissible as proof of motive, opportunity, intent, preparation, plan knowledge, identity, absence of mistake or accident, or is an integral part of the act or transaction that is the subject of the current proceeding.  R. p. 74.

On June 4, 2010, John Hogue, Assistant Public Defender, filed a Motion to Continue Trial on behalf of Petitioner, which the Court heard and denied on the same date.  R. pp. 326-328.  Mr. Hogue filed contemporaneous, supervisory writs on this matter with the First Circuit Court of Appeal and the Louisiana Supreme Court, both of which were subsequently denied.  R. Pp. 148, 259, 326-328.

On June 14, 2010, the Court began a four-day hearing on Petitioner's Motions to Suppress Evidence and Confessions, which continued on June 14, 15, 16 and June 30, 2010, the State informed Defense counsel that a State witness, John Carroll, was arrested and fired by the Jefferson Parish Sheriff's Office and hearings on all of the four above-mentioned pre-trial motions were continued.  R. p. 20.

On July 15, 2010, the Court ruled on the outstanding pre-trial motions, denying the Defense's motions to suppress evidence, identification, and severance of offenses.  Similarly, the Court ruled against the defense by allowing the State to bring up prior offenses the defendant has committed into evidence, specifically evidence of five robberies occurring outside of St. Tammany Parish.  The State

introduced a "list of all crimes with location, date, time and details of incidents." R. p. 663.

A seven-day jury trial commenced on July 21, 2010, and on July 30, 2010, the jury found Petitioner guilty on all four counts. R. p. 55.  Petitioner subsequently filed a motion for new trial and for post-verdict judgment of acquittal. R. p. 253.

On August 12, 2010, the Court denied Petitioner's motions for new trial and or post-verdict judgment of acquittal and then sentenced Petitioner to serve ten years at hard labor as to each court, without benefit of probation, parole, or suspension of sentence, and to run consecutively with one another.  The Petitioner notified the Court of its intent to file a Motion to Reconsider Sentence and Motion for Appeal.  R. p. 57.

On August 23, 2010, Defense counsel filed a Motion to Reconsider Sentence and a Motion for Appeal and Designation of Record.  On August 24, 2010, the Court denied the motion to reconsider sentence without a hearing.  R. p. 255.

Finally, on September 3, 2010, the Court ordered that the Petitioner be granted an appeal to the First Circuit Court of Appeal and appointed the Louisiana Appellate Project to handle the appeal, with a return date of November 18, 2010. R. p. 256.

Petitioner appealed, raising one assignment of error in his counseled brief, wherein he argued that the sentencing was excessive and an abuse of the trial Court's discretion.  Petitioner raised four additional assignments of error in a pro se brief, namely: (1) the trial court's denial of motion to suppress; (2) the trial court's denial of motion to continue; (3) the trial court's admission of other crimes evidence; and (4) sufficiency of evidence based on the claim that the record is

incomplete.   The Louisiana First Circuit of Appeal affirmed the convictions and sentences on September 14, 2011.   **State v. Reaux**, 2011-0443   (La.App. 1 Cir. 9/14/11).

Subsequently, the St. Tammany Parish District Attorney filed a habitual offender bill of information, alleging Mr. Reaux to be a second-felony habitual offender with respect to his armed robbery conviction on count one.   On September 12, 2013, the St. Tammany Parish Court vacated Petitioner's ten year sentence on count one, and resentenced Mr. Reaux to imprisonment for fifty years at hard labor, without the benefit of parole, probation or suspension of sentence. The trial court ordered that this enhanced sentence would run concurrently with his sentences on counts two, three, and four, and with any other sentences Mr. Reaux is currently serving.

Mr. Reaux appealed his sentence to the Louisiana First Circuit Court of Appeal which was affirmed on September 19, 2014.   **State v. Reaux**, 2014-0330 (La.App. 1 Cir. 9/14/14).

Petitioner filed an Application for Post-Conviction Relief on October 6, 2014 which was denied on November 6, 2014.   Petitioner then filed Notice of Intent to seek Writs and a return date was set for January 22, 2015.   Petitioner filed a Supervisory Writ to the 1st Circuit Court of Appeal which is now pending.   No. 2014-_____.

Petitioner then obtained "Newly Discovered Facts" on March 26, 2015 and May 28, 2015.  See Exhibit's "1," "2," "A," and Exhibit "B."   Petitioner then filed a successive Application for Post-Conviction Relief under La.C.Cr.P. Art. 930.8(A)(1) on June 15, 2015.

Page | 4

After further investigations, petitioner obtained signatures from all the Judges in the 22nd Judicial District Court and had Mary Ann Sherry, CDE, a Certified Document Examiner look over the two affidavits for petitioner's arrest and she came to the conclusion that no Judge, nor Commissioner signed the affidavits for petitioner's arrest, which makes the arrest an illegal arrest, and all that followed illegal.  Petitioner now files a timely Successive Application for Post-Conviction Relief under La.C.Cr.P. Art. 930.8(A)(1) on November 6, 2015.

## STATEMENT OF THE FACTS

### A.  Slidell

On April 17, 2009, Adolfo Castro was working at the Slidell Game Stop when a masked perpetrator robbed him, wielding a box cutter.  R. p. 1362-1363, 1367.  Mr. Castro stated that around closing time (9 p.m.) "somebody came into the store with what looked like a mask at that time and threw a black mesh bag at me and said, 'Put all the money in the bag.'" R. p. 1369.  Castro described the perpetrator as a black male, approximately 6 foot and 6 inches in height, wearing a black baseball cap with a yellow bill, blue jeans, a long-sleeve shirt, and a mask that looked like a sleeve that was cut out of a t-shirt.  R. pp. 1369-1370.  The robber had what appeared to be a rag wrapped around his right arm.  The perpetrator took approximately $813 cash and five Wii points cards.  R. pp. 1334, 1379.

Mr. Castro explained the system Game Stop uses to price merchandise.  The store receives merchandise in numbered boxes.  The employee types the box number into a Game Stop Computer application, which provides an inventory of the items in that box and their respective prices and item numbers.  R. p. 1363.

Price stickers are generated, which include a description of the item, the date the price tag was printed, and the initials of the manager working on that date.  R. pp. 1365-1366.  The State introduced Exhibits No. 1 and 2—photographs of the Wii point cards that were recovered from Mr. Reaux's car.  Exhibit 2 is a close up of the price tag on the card containing the following information: (1) the type of merchandise "Wii Points Card 2000," and item #79, (3) numbers 040309 and (4) the letters ACC.  Recognizing the date and his own initials, Mr. Castro identified the Points cards depicted in Exhibit No. 1 and 2 as merchandise that he set out for display at the Slidell Game Stop and was subsequently stolen during the armed robbery.  R. pp. 1366-1367.

State introduced Exhibit 3, which Mr. Castor described as a "Sleeve cut out of a t-shirt."  The State showed Mr. Castro and introduced into evidence, Exhibit No. 4—Surveillance footage from an Academy Sports Store near the Game Stop which depicted an African American male, wearing a black backpack and a black baseball cap with a yellow bill getting into a white Monte Carlo vehicle.  R. pp. 1379-1384.  Although Mr. Castro indicated that the male in the surveillance footage was the same person who robbed the Game Stop, he never identified Mr. Reaux as the robber.  R. p. 1396.

Officer McNulty of the Slidell Police Department was called to the scene of the April 17th Robbery in Slidell and interviewed Adolfo Castro, Chris Jackson, and Jack Douglas, a non-employee witness.  Mr. Douglas described the perpetrator leaving in a vehicle which was the same color but a different make and model type than the vehicle seen in the Academy Sport surveillance video that was introduced during Mr. Castro's testimony.  R. pp. 1422, 1425.

The Slidell Police Department gathered forensic evidence from the store including a partial fingerprint and a latent palm print. R. pp. 1431, 1435; However, Sgt. Bobby Campbell, an expert in fingerprint analysis and crime scene investigation analyzed the three exhibit and found "no identifiable prints," meaning the prints were not of sufficient quality to render further testing for identification reliable. R. pp. 2519, 2525, 2529, 2535-2536. The Slidell Police did not attempt to collect contact DNA swabs from the crime scene because there was no evidence that the perpetrator directly touched anything while in the store. R. p. 2538.

### B. Covington

Joel Vogt explained that the black fabric on the perpetrator's arms extended down his arm, covered his right hand, and that he was extremely cautious not to touch anything in the store. R. p. 1547. The District Attorney showed Mr. Vogt pictures, including Photograph No. 41, which depicted a person wearing a white shirt and "fabric that could have been coming out of his shirt, covering his face." R. p. 1473. Exhibit No. 40 depicted a person from the waist down holding a backpack which Mr. Vogt said was "very similar" to the backpack he described the perpetrator having during the robbery. R. p. 1473.

At trial, the State introduced evidence of five robberies, which occurred at Game Stop locations outside the jurisdiction of St. Tammany Parish in Walker, Denham Springs, Marrero, Harvey, and Hammond. The "other crimes" evidence was introduced through the Petitioner's audio-recorded statement to St. Tammany Parish law enforcement officers and through live testimony of police officers.

### C. Mandeville

David Vigo is the manager of the Game Stop in Mandeville, where he has worked since 2007.  R. p. 2162.  Mr. Vigo was handling the cash register on the night Mr. Reaux was arrested near the Mandeville store.  R. p. 2168.

### D. Testimony regarding the investigation

Sergeant Patrick McCormick of the St. Tammany Parish Sheriff's Office explained how Mr. Reaux was apprehended around 8 p.m. on April 20, 2009. Lieutenant McCormick was part of a multi-jurisdictional task force investigating a string of armed robberies that had occurred at Game Stop/EB Games in Slidell Covington, and other stores in Southeast Louisiana.  R. pp. 1578-1579.  McCormick learned from other law enforcement officers that the perpetrator was an extremely tall, black male, who wore a black baseball cap, carried a black backpack, which he used to carry his "loot," and wielded a box cutter or utility knife.  R. p. 1580.  The perpetrator carried out the robberies near the stores' closing time, which was 9 p.m. on all days except Sunday, when the stores closed at 6 p.m.  In one robbery, a white Chevy Monte Carlo was used.  R. p. 1580.

Sgt. McCormick determined that there were three EB Games/Game Stop stores in St. Tammany Parish, and the only store that had not been robbed was the Mandeville store.   R. pp. 1581-1582.   Consequently, McCormick conducted a surveillance operation across the street from the Mandeville Game Stop to try to catch the robber in the act.  R. p. 1582.  Using his personal binoculars, McCormick witnessed a tall black male wearing a dark hat and a white t-shirt emerge from an area of trees and shrubbery between the Game Stop and an adjacent Business-Bippo's Dental Clinic.  As a young woman exited the Game Stop, McCormick saw the subject step back, then after that woman got in a car, the subject stepped back into the light and began looking around.  R. p. 1596.  The subject and the officer

Page | 8

made eye contact from over 1000 feet away, and the subject began walking past the front of the businesses.  R. p. 1597.  Within minutes, another police officer, Noel Forrester stopped the subject, who turned out to be Mr. Reaux.  R. p. 1599. McCormick followed Reaux, observed him talking to Officer Forrester, and upon seeing him wearing a black backpack, and shifting his feet back and forth nervously, Lr. McCormick decided to restrain Mr. Reaux by handcuffing him from behind.  R. p. 1603.

The police soon determined that Mr. Reaux had arrived in a white Monte Carlo vehicle.  R. p. 1606.  McCormick and Forrester secured Mr. Reaux in Deputy Forrester's patrol unit and were standing outside the unit talking when McCormick noticed a "little black piece of plastic" under the left rear tire of the police nit. McCormick also observed a broken box cutter on the hood of Officer Forrester's unit and determined that the black piece of plastic was part of the box cutter.  R. p. 1610.  McCormick also saw a black knit cap lying on the hood of Forrester's police unit, which was found somewhere on Mr. Reaux's person. R. p. 1613.

When Mr. Reaux was arrested he was wearing white t-shirt, gray sweatpants, a b lack Pittsburgh Pirates cap, and had a piece of light gray fabric wrapped around his neck, that was partially tucked under his t-shirt.  R. pp. 1618-1619.  Sgt. McCormick advised Mr. Reaux that he was under arrest for attempted armed robbery of the Mandeville Game Stop.  R. p. 1620.  He was also carrying a black backpack.  Sgt. McCormick testified that Mr. Reaux did not have a knife or box cutter on him at the time.

Deputy William Noel Forrester of the St. Tammany Parish Sheriff's Office assisted Sgt. McCormick with surveillance of the Mandeville Game Stop on April 20, 2009, and initially stopped Mr. Reaux as he was walking away from the Game Stop

Page | 9

towards his vehicle.  Deputy Forrester conducted a pat down frisk of Mr. Reaux and felt a hard object around his waistband, at which time Mr. Reaux moved his hands from behind his back to the front and grabbed his shirt.  Deputy Forrester got Mr. Reaux's hands back behind him and then as he attempted to raise his shirt, Mr. Reaux jerked his body and the item in his waistband fell to the ground.  R. p. 1744. During the pat down, Deputy Forrester also recovered a black or dark blue knit cap from the left pocket of Mr. Reaux's sweat pants.  R. p. 1746.  Mr. Reaux complied with the deputies every command during his stop and arrest.

Lt. George Cox of the St. Tammany Parish Sheriff's Office and Sgt. Sean McClain of the Slidell Police Department were the first law enforcement officers to interrogate Mr. Reaux after his arrest.  R. pp. 2362, 2366.  Mr. Reaux was orally advised of his Miranda rights and also signed a written waiver of rights form.  R. p. 2366.  The interrogation began at 9:27 p.m. on April 20, 2009.  R. p. 2369.  Lt. Cox explained that Mr. Reaux told them he was not involved in any robberies, and confirmed that detectives from Jefferson Parish spoke to Mr. Reaux for over an hour and a half with the same results.  R. pp. 2370-2372.

On the night of April 20, 2009, Detective Vermall of the Jefferson Parish Sheriff's Office (JPSO) learned that the St. Tammany Sheriff's Office had arrested a suspect for the robberies of multiple Game Stops in that parish.  Detective Vermall and former JPSO Detective John Carroll travelled to St. Tammany Parish to interview the suspect, Mr. Reaux.  R. p. 1786.  Mr. Reaux was cooperative, and denied any involvement in the robberies during the hour-long interview with Jefferson Parish detectives.  As a result, the detectives stopped the interview and began to make preparations to search Mr. Reaux' residence, the dete4ctives were called back to the St. Tammany Sheriff's Office because the St. Tammany detectives

claimed that Mr. Reaux had confessed to the robberies in Jefferson Parish.  R. p. 1790.  During their second encounter with Mr. Reaux, Detectives Vermall and Carroll showed Mr. Reaux a still photograph of the robbery suspect obtained from video surveillance of the Marrerro Game Stop and Mr. Reaux advised that was him in the photograph.  R. p. 1790.

Lt. Cox, still not satisfied that he received his version of the "truth," continued to interrogate Mr. Reaux after the JPSO detectives had left.  R. p. 2372. Lt. Cox showed Mr. Reaux a still image captured from the video surveillance in one of the Game Stop robberies from Jefferson Parish and informed him that he also had video surveillance from the Academy Sports near the Slidell Game Stop.  Mr. Reaux continued to deny any involvement.  R. p. 2375.  Mr. Reaux was taken out of the interrogation room and was being brought to the jail to be booked when, according to Lt. Cox, he told the detectives, "Let's go back. I'll tell you everything." R. p. 2376.  Mr. Reaux then gave a recorded statement that began at 4:07 a.m. and ended at 5 a.m. on April 21, 2009.  R. p. 2417.

Lt. Cox explained that Mr. Reaux gave a second recorded statement on April 22, 2009, to Sergeant McLain of the Slidell Police Department.  Lt. Cox, however, characterized the second statement as "inaccurate" and explained how he had Mr. Reaux recant the second statement while in jail.  R. pp. 2379-2380.

Detective Corey Crowe of the St. Tammany Parish Sheriff's Office obtained and executed search warrants for Petitioner's home in Hammond and his vehicle, a two-door 2006 Chevrolet Monte Carlo.  R. pp. 2454, 2458. At Mr. Reaux's home, Crowe recovered a play station gaming console, one or two box cutters from the mantel of the living room, and another box cutter in a bedroom.  R. p. 2486. Detective Crowe did not determine whose room the box cutter was found in, nor

did he inquire if the other occupants of the apartment used box cutters in their work. R. p. 2487. None of the box cutters were tested for fingerprints or DNA. R. p. 2496.

Detective Crowe seized the following items from Petitioner's car: (1) Wii points card; (2) a Wii video game disk with a price tag marked DAG 3-29-09 (R. p. 2467); (3) a box with USPS shipping label addressed to Game Stop located in Walker Louisiana (R. p. 2469); (4) a Rayman game (R. p. 2470); and (5) a skull cap type hat (R. p. 2473). Detective Crowe identified a USPS tacking statement, which showed that the package found in petitioner's car was received by Travis Bousquet on April 14, 2009. The State alluded to prior trial testimony that the Walker Game Stop had been robbed on April 14, 2009. R. p. 2470. Detective Crowe also recovered 8 Wii point car boxes, five of which contained a label reading "ACC 04/03/09." Crowe testified that this label was consistent with Game Stop practice wherein the employee who put the item for display as merchandise would sign their initials and the date and that the five particular labels would suggest that Adolfo Castro put them out for display on April 3, 2009. R. p. 2472. No fingerprints were found on the Wii point card boxes. R. p. 2473. Crowe also recovered an "Alpha s magnetic hand key," which he explained is used by Game Stop to remove security tags from merchandise. R. p. 2481.

Petitioner is now filing this second successive Application for Post-Conviction Relief on June 11, 2015 under the exception of La.C.Cr.P. art. 930.8 A(1).

### CLAIMS FOR RELIEF

### #1.

**Petitioner was denied the a Fair Trial Due to Prosecutorial Misconduct in Violation of his Constitutional Right to Due Process.**

#2

**Petitioner was denied the effective assistance of counsel guaranteed by the Sixth and Fourteenth Amendments to the United States Constitution when trial counsel failed to object or challenge the trial court's subject matter jurisdiction.**

### CLAIM #1

**Petitioner was denied the a Fair Trial Due to Prosecutorial Misconduct in Violation of his Constitutional Right to Due Process.**

In the present case Petitioner contends that his Constitutional Right to Due Process was violated due to Prosecutorial Misconduct.  See Exhibit "A" (A copy of the signatures of all the Judges, Commissioner, and even the City Court Judge in Slidell.  It is a proven fact that none of these judges signed these two affidavits for petitioner's arrest.

**Standard of Review**

When presenting a claim of Prosecutorial Misconduct, a Petitioner must show that the actions of the prosecutor so infected the trial with unfairness as to make the resulting conviction a denial of Due Process, and the Prosecutorial Misconduct must be of sufficient significance to result in the denial of the defendant's right to a fair trial.  **Kutzner v. Johnson**, 242 F.3d 605, 609 (5th Cir. 2001).  **United States v. Bagley**, 473 U.S. 667, 676, 105 S.Ct. 3375, 87 L.Ed.2d 481 (1985).

To prevail on this claim Reaux must prove that: (1) the actual falsity of a witness's testimony, (2) that the testimony was material, and (3) that the prosecution knew the witness's testimony was false.  **Giglio v. United States**, 405 U.S. 150, 153-4, 92 S.Ct. 763, 31 L.Ed.2d 104 (1972); **Fuller v. Johnson**, 114 F.3d 491, 496 (5th Cir. 1997); **Koch v. Pucket**, 907 F.2d 524, 531 (5th Cir. 1990).

The falsity is the testimonies of Detective Corey Crowe and Sgt. Patrick McCormick's questionable accounts as to the circumstances surrounding the

Page | 13

alleged attempted armed robbery.  The testimonies were material as it pertains to the illegal stop, search and arrest of petitioner.  The prosecution knew that the notaries were not certified with the state (as it was a standard practice in St. Tammany Parish) and the discrepancies in Crowe's and McCormick's testimonies compared to the basic information in the affidavits for arrest. Additionally, the prosecution knew that the signatures on the affidavits were false.

Petitioner was prejudiced as to the illegal stop, arrest and all that followed which would be considered "fruit from the poisonous tree."  Nothing that was obtained after the illegal stop, and/or arrest should have been used**. _XXXXXXXXXX_**

As explained in **United States v. Morena**, 547 F.3d 191, 193-94 (3rd Cir. 2008):

> Improper prosecutorial conduct rises to the level of constitutional error "when the impact of the misconduct is to distract the trier of fact and thus raise doubts as to the fairness of the trial." **Marshall v. Hendricks**, 307 F.3d 36, 67 (3rd Cir. 2002). The test for prosecutorial misconduct is whether the conduct "so infected the trial with unfairness as to make the resulting conviction a denial of due process" in light of the entire proceeding. (quoting **Donnelly v. DeChristoforo**, 416 U.S. 637, 643, 94 S.Ct. 1868, 40 L.Ed.2d 431 (1974))

Similarly here, Petitioner's trial was infected with unfairness which makes his conviction a denial of due process.  The impact of the misconduct in petitioner's stop, search, arrest, and trial was totally illegal and thus warrants reversal.  The police in this case should be sanctioned for their conduct in the way they handled this case.

No district attorney would have not found these warrants questionable as stated in the previous application concerning the Notaries who were not certified with the state, and the fact that no judge signed them.

### #2

**Petitioner was denied the effective assistance of counsel guaranteed by the Sixth and Fourteenth Amendments to the United States Constitution when trial counsel failed to object or challenge the trial court's subject matter jurisdiction.**

CLAIM #2

**Ineffective Assistance of Counsel in failing to challenge trial court's subject matter jurisdiction.**

Petitioner contends there was no jurisdiction of the subject matter for the trial court because the district attorney, in bad faith, arbitrarily and unreasonably filed a bill of information charging Petitioner with the offense of attempted armed robbery where there was no evidence to support any such charge. Trial Counsel's knowledge of there being no evidence to base the bill of information on was ineffective for failing to challenge or object to the jurisdiction.

**Standard of Review**

The Sixth Amendment to the United States Constitution guarantees the right to effective assistance of counsel. **Strickland v. Washington**, 466 U.S. 668, 694, 104 S.Ct. 2052, 2068, 80 L.Ed.2d 674 (1984). A defendant must show: (1) that trial counsel's performance was defective, and (2) a reasonable probability that but for the deficient performance, the outcome of the proceedings would have been different.

A prisoner's challenge to [the] indictment is not appropriate unless the indictment was so defective that the convicting court had no jurisdiction. **Williams v. Collins**, 16 F.3d 626, 637 (5th Cir.), cert. denied, 512 U.S. 1289, 115 S.Ct. 42, 129 L.Ed.2d 937 (1994); **Alexander v. McCotter**, 775 F.2d 595, 598 (5th Cir 1985); **Liner v. Phelps**, 731 F.2d 1201, 1203 (5th Cir. 1984); **Branch v. Estelle**, 631 F.2d 1229, 1233 (5th Cir. 1980). "Due deference [must be given] to the state court's interpretation of its own law that a defect of substance in an indictment [bill of indictment] …deprive a state trial court of jurisdiction." **McKay v. Collins**, 12 F.3d 66, 69 (5th Cir.), reh'g granted on other grounds, 12 F.3d 70 (5th Cir.), cert. denied