sub nom., **Williams v. Scott**, 513 U.S. 854, 115 S.Ct. 157, 130 L.Ed.2d 95 (1994). Louisiana courts have held that Article 1 § 2 of the Constitution provides that "no person shall be deprived of life, liberty, or property, except by due process of law," and that ... the essence of due process [is] "protection from an arbitrary and unreasonable action." **Plaquemines Parish Commission Council v. Perez**, 379 So.2d 1373, 1377 (La. 1980).  Due Process is also defined by the Constitution itself to require impartiality.  Article 1 § 22 provides: "All courts shall be open, and every person shall have an adequate remedy by due process of law and justice, administered without denial, partiality, or unreasonable delay, for injury to him in his person, property, reputation, or other rights."

Jurisdiction over the subject matter is defined by C.C.P. 2 as "the legal power and authority of a court to hear and determine a particular class of actions or proceedings..." Article 5 § 10 of the Constitution confers upon the appellate courts "original jurisdiction of all civil and criminal matters, except as otherwise authorized by the Constitution."  See **Bowen v. Doyal**, 259 La. 839, 253 So.2d 200 (1971).  A district attorney is granted his/her plenary powers by Article 5 § 26 of the Constitution, which provides: "(B) Powers. Except as otherwise provided by this Constitution, a district attorney, or his designated assistant, shall have charge of every criminal prosecution by the state in his district, be the representative of the state before the grand jury in his district, and be the legal advisor to the grand jury. He shall perform other duties provided by law."  A criminal prosecution is defined by C.Cr.P. 381 as a prosecution instituted "for the purpose of bringing to punishment one who has violated a criminal law."  Finally, the jurisdiction of the district attorney to prosecute those who violate state criminal statutes is exclusive; it can only be constrained or curtailed when it operates to the prejudice of a

contrary constitutional mandate, and even then only with due deference to the district attorney's constitutional prerogative. **City of Baton Rouge v. Short**, 345 So.2d 37, 40 (La. 1977).

A district attorney's investigation can be curtailed when the district attorney abuses the powers of his office by subjecting an individual to a harassing investigation without any good faith belief that the individual has committed any crime. **Matter Under Investigation Grand Jury No. 1**, 875 So.2d 33, 36 (La. 5/14/04); **Compare In re Grand Jury Subpoenas Issued to Certain Members of Orleans Levee District**, 95-kk-0042, 648 So.2d 864 (La. 1995) (per curiam). The issuance of an injunction is warranted in such cases because "there [is] a federal right to be free of a bad faith prosecution. "**Plaquemines Parish Comm'n Council v. Perez**, 379 So.2d 1373, 1385 (La. 1980) (footnote omitted), discussing **Shaw v. Garrison**, 467 F.2d 113 (5th Cir. 1972). A plaintiff who seeks to enjoin such "bad faith" investigation must show, at a minimum, that he is threatened with an investigation which is, unnecessarily abusive, harassing or illegal, and without any possibility of ultimate indictment supported by probable cause for prosecution. **Perez**, supra, 379 So.2d at 1385.

In the present case, trial counsel failed to enjoin this state criminal prosecution before the institution of criminal proceedings by bill of information. Had counsel challenged the arbitrary and unreasonable prosecutorial misconduct, there would not have been a bill of information charging Petitioner with an attempt armed robbery for which there was no supporting evidence. If by no other means, counsel should have raised the lack of subject matter jurisdiction prior to trial by motion to quash. C.Cr.P. Art. 531. During a pretrial hearing, a record of evidence would have been had where Petitioner could have proved that the whole purpose

of the district attorney's investigation was to harass Petitioner without any good faith belief that Petitioner had committed the offense of attempted armed robbery.

Prior to the filing of a bill of information, the district attorney was armed with Detective Corey Crowe and Sgt. Patrick McCormick's questionable accounts as to the circumstances surrounding the alleged attempted armed robbery.  According to Sgt. McCormick, "on April 20, 2009, at approximately 1950 hours, [he] was conducting surveillance from Macaroni Grill parking lot on Highway 190 in Mandeville!  The surveillance was a result of multiple armed robberies at Game Stop and EB Game locations throughout the area.  Ibid.  He had knowledge of the description of the alleged perpetrator.  Ibid.  At approximately 2006 hours [he] noted a subject matching the description … walk from between business. Ibid. Sgt. McCormick was spotted by the subject whom immediately fled to the rear of the building where [the subject] was detained by Detective Forester.  Ibid.  A pat down for weapons revealed items utilized in the crimes.  Ibid.  The vehicle hidden by the suspect also fit the vehicle description.  Ibid.  The suspect's claim of his business in the area were disproved."  Ibid.  (Exhibit "A" The report from Mary Ann Sherry, Certified Document Examiner who states that none of the Judges in the 22nd Judicial District Court, nor the Commissioner in the 22nd Judicial District Court, and not even the City Court judge in Slidell who is sometimes used, signed these two affidavits for arrest.  Petitioner should never have been stopped, arrested, searched and most importantly, tried for these robberies.

According to Detective Crowe, however, "on Monday April 20, 2009, about 2007 hours, Sgt. Patrick McCormick of the St. Tammany Sheriff's Department observed a white Monte Carlo, parked in a nearby parking lot, near the Game Stop

store on Highway 190 in Mandeville, Louisiana. (Exhibit "2" Affidavit for Arrest Signed by Detective Corey Crowe).  Sgt. McCormick observed the vehicle to be occupied by a black male driver.  Ibid.  Sgt. McCormick began surveillance of the suspect and observed him exit the vehicle and began walking towards the Game Stop Store.  Ibid.  The suspect was observed to fit the physical and clothing description given during the prior robberies.  Ibid.  Contact was made with the suspect, at which time he was observed to be evasive with deputies as he threw a box cutter to the ground away from him.  Ibid.  The suspect was also discovered to be in possession of a black mesh "Jansport" backpack and was also wearing grey sweat pants and a white tee shirt.  Ibid.

As the Court can observe from the face of the arrest warrants, both are in direct contrast.  While Sgt. McCormick alleged that Petitioner hid the vehicle, Detective Crowe alleged that they observed Petitioner occupying the vehicle in a nearby parking lot.  If Petitioner was first observed sitting in the vehicle, then why did Sgt. McCormick allege that Petitioner was observed walking from between businesses.  In another instance, Sgt. McCormick alleged that when Petitioner observed Sgt. McCormick, Petitioner "immediately fled to the rear of the building where [the subject] was detained by Detective Forrester; but Detective Crowe alleges that Petitioner only became evasive after contact was made and that being relative to throwing a box cutter to the ground away from Petitioner.  Sgt. McCormick, however, made no reference to Petitioner possessing or throwing a box cutter.  To add, Sgt. McCormick noted that Petitioner's claim of his business in the area were disproved; but Detective Crowe's arrest warrant never mentioned that this instant discussion occurred, and there was no mention as to what Petitioner's business in the area was.

Moreover, when does it become unlawful to be in a business area or to patronize a particular business?

It is baffling in relation as to why there are two arrest warrants of one incident in the first place.  Both being written by two different officers who contradict each other's version of the facts.  The only reasonably explanation is that the officers were trying to figure out a way to explain stopping and harassing Petitioner for these crimes, without probable cause, and pinning an attempt armed robbery on him in order to charge him for the rest of these crimes.  It is clear from the trial record that Petitioner never went inside of the Game Stop Store.

No district attorney would have not found these warrants questionable.  In fact, no reasonable minded district attorney would have, in good faith, pursued a prosecution of Petitioner for the crime of attempted armed robbery of a place of business under these circumstances.  Specifically, contradicting warrants of one incident.  Petitioner not being in possession of any weapons.  Petitioner not being in possession of a mask which, as in the other robberies the perpetrator wore a mask.  Petitioner never even stepped foot on the Game Stop Store's property as both warrants clearly established this fact.  There was nothing presented in either warrant to justify a man of average knowledge that Petitioner had committed, was about to commit, or was in the process of committing an attempted armed robbery.

The sole purpose of the district attorney pursuing these charges against Petitioner was to harass him.  It is clear that the district attorney in bad faith, unnecessarily abused his authority.  The only question was whether counsel's deficient performance of not enjoining and/or not filing a motion to quash on the basis of Petitioner's due process rights of the 14th Amendment to the United States

Constitution were violated when his right to be free of a bad faith prosecution was transgressed; prejudiced Petitioner.  Petitioner avers that it is clear from the face of the record that he was prejudiced as the district attorney lacked the evidence to support probable cause to file a bill of information with any possibility of ultimately obtaining a conviction.

Based on the pretense that Petitioner had committed the robberies of several Game Stop Stores in multiple Parishes in close geographical locations, the district attorney mislead a jury into obtaining a conviction for the crime of attempted armed robbery of the Game Stop Store located on Highway 190 in Mandeville, Louisiana.  There was absolutely no reliable evidence presented by the district attorney to slightly suggest that Petitioner committed an attempted armed robbery of this store.   The only evidence presented, suggested that at best, Petitioner was in the area of the Game Stop Store located in Mandeville, Louisiana.

Counsel's deficient performance prejudiced Petitioner as this matter could have been resolved pretrial, where the outcome of these proceedings would have been different, instead of having to be resolved in a post-conviction proceeding.

Had counsel filed pre-trial motion to quash the arrest warrants, the outcome of the pre-trial hearing and the trial would have been different. Petitioner would never had a trial.

## CONCLUSION

Wherefore, Petitioner contends he has shown that his 4th, 5th and 14th Amendments to the United States Constitutional were violated as that he was entitled to Due Process and to, Effective Assistance of Counsel.  Petitioner has shown that both of the affidavits used for arrest warrants were forged on the face

of the documents by Detective's using notary numbers that belonged to others as argued in previous petition and that no Judge, nor Commissioner, signed the two affidavits that were used for his arrest which makes the arrest illegal and all that followed, also illegal.

### PRAYER FOR RELIEF

Gregory Reaux prays that this Honorable Court grants his Application for Post-Conviction Relief, grants him a proper opportunity to have both of the Arrest Warrants quashed, grants him relief available due to the errors presented herein and any other relief this Honorable Court deems appropriate.

Respectfully Submitted on this 27th day of November, 2015.

_____
Gregory Reaux #574124
Main Prison Walnut #1
Louisiana State Penitentiary
Angola, LA  70712

### AFFIDAVIT/CERTIFICATE OF SERVICE

I, Gregory Reaux, hereby swear and aver that the foregoing is true and correct to the best of my knowledge and belief.  I, Gregory Reaux, further swear and aver that a copy of the foregoing has been served upon counsel for the Respondent, District Attorney, Warren Montgomery – Justice Center, 701 N. Columbia St., Covington, LA  70433 by placing a copy of the same in the United States Mail, properly addressed and postage pre-paid.

Done this 27th day of November, 2015.

_____
Gregory Reaux #574124

Main Prison Walnut #1
Louisiana State Penitentiary
Angola, LA  70712



*Malise Prieto*

Clerk of Court
22nd Judicial District
Parish of St. Tammany

P.O. Box 1090
Covington, LA 70434
(985) 809-8700

January 7, 2016

GREGORY REAUX #574124
MAIN PRISON WALNUT #1
LA. STATE PENITENTIARY GENERAL DELIVERY
ANGOLA, LA. 70712

DIVISION B
Re:  State of La.
     Vs. #471010
     GREGORY JOHN REAUX

Dear Sir/Madam:

ENCLOSED PLEASE FIND A CERTIFIED COPY OF A JUDGMENT FILED
BY THE COURT ON JANUARY 4, 2016 DENYING YOUR POST CONVICTION
RELIEF.

Yours very truly,

*Sherri L. Viviano*

SHERRI L. VIVIANO
Deputy Clerk

**GREGORY REAUX**

**VERSUS**

**N. BURL CAIN, WARDEN**

**FILED:** _January 14, 2016_

**NO. 471010 "B"**

**22ND JUDICIAL DISTRICT COURT**

**PARISH OF ST. TAMMANY**

**STATE OF LOUISIANA**

_____
**DEPUTY CLERK**

## JUDGMENT ON POST-CONVICTION
## WITH INCORPORATED REASONS

On November 20, 2015, petitioner Gregory Reaux filed a third Application for Post-Conviction Relief under La. C.Cr.P. art. 930.8(A)(1). After considering the application and the applicable law, the Court finds the application may be dismissed upon the pleadings pursuant to La. C.Cr.P. art. 928.

The procedural history of the petitioner's case was thoroughly discussed in the Judgment denying Reaux's second Application for Post-Conviction Relief. In his second application, Reaux challenged the notary signatures and stamp numbers on the form showing probable cause was found for his warrantless arrest pursuant to La. C.Cr.P. art. 230.2. Relief was denied for his second application for post-conviction relief when the Court found the numbers placed on the form were the radio numbers of the officers signing as ex officio notaries public under the provisions of La. R.S. 13:5564(A), and not the notarial numbers assigned to other notaries.

In this third application, Reaux claims he has discovered new facts unknown to him or his counsel so as to avoid dismissal on timeliness grounds pursuant to La. C.Cr.P. art. 930.8(A)(1). Reaux now challenges the signature/identity of the judge who determined that probable cause existed for his warrantless arrest, contending that no one with authority made that determination. In support of that claim, Reaux has obtained a report by a certified document examiner, who compared known signatures of the sitting judges of the 22nd Judicial District Court, of the Commissioner of the 22nd Judicial District Court, and of a Slidell city court judge with the signature on the probable cause form. The document examiner's report states that the form was not signed by any of these persons. Reaux asserts the signature on the form of someone other than a judge with authority to sign invalidates the probable cause determination, the subsequently issued search warrants and the evidence seized thereby.

Reaux combines this challenge with several different arguments, all previously raised and

1

rejected, to assert a claim of prosecutorial misconduct. Specifically, Reaux argues that the challenge regarding the notaries and alleged discrepancies in the testimonies of the two officers (both issues found meritless in the second application for post-conviction), and this new claim regarding the signature/identity of the person making the probable cause determination, led to his illegal stop and arrest. Reaux contends that any reasonable district attorney confronted with this information would have refused to proceed with charges against him. Reaux includes a second claim of ineffective assistance of counsel, arguing that had counsel challenged the prosecutorial misconduct, a bill of information would not have been lodged against him (another claim found meritless in the second application for post-conviction).

To the extent that Reaux again raises claims regarding the notary signature on the form for the probable cause determination, the testimonies of the officers, or the effectiveness of his counsel, the Court finds the claims to be successive and repetitive under La. C.Cr.P. art. 930.4(D) and will refuse to revisit these claims which have been thoroughly discussed and rejected. With regard to the new issue raised as to the judge's signature on the probable cause form, the Court again finds (as it did with the second application for post-conviction relief) that the uniqueness of the claim is better answered by addressing the merits of Reaux's claim than to dismiss it on procedural grounds.

Reaux challenges the authority of the person who made the determination that probable cause existed for his warrantless arrest and signed the form memorializing that determination under La. C.Cr.P. art. 230.2. A review of the form shows it was signed by a retired judge of the 22nd Judicial District Court, Judge Donald M. Fendlason. A review of court documents shows Judge Fendlason was appointed by the court to be the commissioner *pro tempore* on the date the form was signed, April 24, 2009. Pursuant to La. R.S. 13:721(C), the Commissioner for the 22nd Judicial District Court has jurisdiction over criminal matters.   The Commissioner also has specific statutory authority to review probable cause affidavits within forty-eight hours of warrantless arrests.   La. R.S. 13:721(E)(g).   As such, Judge Fendlason, acting as the commissioner *pro tempore,* had the legal authority necessary to make the determination that probable cause existed for Reaux's warrantless arrest and to sign the disputed form. Reaux's claim is found to be without merit.

Accordingly, the Court denies and dismisses petitioner Gregory Reaux's third Application for Post-Conviction Relief in its entirety.

Covington, Louisiana, this _____ day of January, 2016.

Hon. August J. Hand, Judge
22nd Judicial District Court, Division B

A TRUE COPY

DY. CLERK 22nd JUD. DIST. COURT
ST. TAMMANY PARISH, LA

3

GREGORY REAUX                           22ND JUDICIAL DISTRICT COURT

VERSUS                                  PARISH OF ST. TAMMANY

N. BURL CAIN, WARDEN                    STATE OF LOUISIANA

FILED:_____                   _____
                                                 CLERK OF COURT

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*
**COMBINED NOTICE OF INTENT TO APPEAL &**
**MOTION REQUESTING RETURN DATE**
\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

**MAY IT PLEASE THE COURT:**

**NOW INTO COURT** comes Petitioner, Gregory Reaux, respectfully submitting the following Combined Motion of Intent to Appeal and Motion Requesting Return Date.

**1.**

Petitioner was denied his Application for Post-Conviction Relief in the 22nd Judicial District Court, Honorable Judge August Hand, Case No. 471,010 on January 4, 2016.

Petitioner is giving Notice of his Intent to Appeal this matter to the 1st Circuit Court of Appeal through Supervisory Writs.

Respectfully Submitted on this 7th day of January, 2016.

                                        _____
                                        Gregory Reaux #574124
                                        Main Prison Walnut #1
                                        Louisiana State Penitentiary
                                        Angola, LA  70712

### AFFIDAVIT/CERTIFICATE OF SERVICE

I, Gregory Reaux, hereby swear and aver that the foregoing is true and correct to the best of my knowledge and belief.  I, Gregory Reaux, further swear and aver that a copy of the foregoing has been served upon counsel for the Respondent, District Attorney, Warren Montgomery – Justice Center, 701 N. Columbia St., Covington, LA  70433 by placing a copy of the same in the United States Mail, properly addressed and postage pre-paid.

Done this 7th day of January, 2016.

_____

Gregory Reaux #574124
Main Prison Walnut #1
Louisiana State Penitentiary
Angola, LA  70712

GREGORY REAUX

VERSUS

N. BURL CAIN, WARDEN

FILED:_____

22ND JUDICIAL DISTRICT COURT

PARISH OF ST. TAMMANY

STATE OF LOUISIANA

_____
CLERK OF COURT

*****************************
**MOTION REQUESTING RETURN DATE**
*****************************

**MAY IT PLEASE THE COURT:**

On January 4, 2016 Petitioner was denied his Application for Post-Conviction

Relief.  Petitioner has given his Notice of Intent to Appeal to the 1st Circuit Court of

Appeals and is requesting a return date.

Done this 7th day of January, 2016.

_____
Gregory Reaux #574124
Main Prison Walnut #1
Louisiana State Penitentiary
Angola, LA  70712

**ORDER**

Petitioner,   Gregory   Reaux   has   until   the   _____day   of

_____, 2016 to perfect a Supervisory Writ and have it filed in the

1st Circuit Court of Appeals.

_____
Judge, 22nd Judicial District Court

IN THE
FIRST CIRCUIT COURT OF APPEAL
STATE OF LOUISIANA

DOCKET NO._____

GREGORY REAUX

VERSUS

N. BURL CAIN, WARDEN
LOUISIANA STATE PRISON

*********************

APPLICATION FOR A
SUPERVISORY WRIT
*********************************

**************************************************************************
APPEALING THE DENIAL OF PETITIONER'S APPLICATION FOR POST-CONVICTION
RELIEF IN DIVISION "B", JUDGE AUGUST J. HAND, 22ND JUDICIAL DISTRICT
COURT, PARISH OF ST. TAMMANY, STATE OF LOUISIANA CASE NO. 471010

*******************************************************************

Gregory Reaux #574124
MPW  Walnut #1
Louisiana State Penitentiary
Angola, Louisiana  70712

## TABLE OF CONTENTS

Table of Contents……………………………………………………………………………(1)

Table of Authorities……………………………………………………………………(2),(3)

Jurisdiction………………………………………………………………………………………1

Procedural History……………………………………………………………………………1

Statement of the Facts………………………………………………………………………5

Claim for Relief………………………………………………………………………………12

Claim I……………………………………………………………………………………………12

Claim II…………………………………………………………………………………………15

Conclusion………………………………………………………………………………………22

Prayer for Relief………………………………………………………………………………22

Certificate of Service………………………………………………………………………23

## TABLE OF AUTHORITIES

**Constitution**

Article V, Section 10 of the Louisiana Constitution of 1974.................................2,14

6th Amendment of the United States Constitution.............................................2, 6,19

14th Amendment of the United States Constitution...........................................2, 6,19

Article 1 § 22 of the Louisiana Constitution of 1974..................................................13

**Statutes and Articles**

LSA-R.S. 14:64............................................................................................................2

C.Cr.P. Art. 531........................................................................................................15

**State Cases**

**City of Baton Rouge v. Short**, 345 So.2d 37, 40 (La. 1977)......................................14

**Compare In re Grand Jury Subpoenas Issued to Certain Members of Orleans Levee District**, 95-kk-0042, 648 So.2d 864 (La. 1995) (per curiam)....................................15

**Matter Under Investigation Grand Jury No. 1**, 875 So.2d 33, 36 (La. 5/14/04)....14

**Plaquemines Parish Commission Council v. Perez**, 379 So.2d 1373, (1980)... 13,15

**State v. Reaux**, 2011-0443  (La.App. 1 Cir. 9/14/11).....................................................4

**State v. Reaux**, 2014-0330 (La.App. 1 Cir. 9/14/14).....................................................4

**Federal Cases**

**Alexander v. McCotter**, 775 F.2d 595, 598 (5th Cir 1985)............................................13

**Branch v. Estelle**, 631 F.2d 1229, 1233 (5th Cir. 1980)................................................13

**Bowen v. Doyal**, 259 La. 839, 253 So.2d 200 (1971)....................................................14

**Liner v. Phelps**, 731 F.2d 1201, 1203 (5th Cir. 1984)....................................................13

**McKay v. Collins**, 12 F.3d 66, 69 (5th Cir.), reh'g granted on other grounds, 12 F.3d 70 (5th Cir.), cert. denied sub nom..................................................................................13

**Shaw v. Garrison**, 467 F.2d 113 (5th Cir. 1972).............................................................15

**Strickland v. Washington**, 466 U.S. 668, 694, 104 S.Ct. 2052, 2068, 80 L.Ed.2d 674 (1984)...............................................................................................................................13

**Williams v. Collins**, 16 F.3d 626, 637 (5th Cir.), cert. denied, 512 U.S. 1289, 115 S.Ct. 42, 129 L.Ed.2d 937 (1994)..............................................................................................13

<u>**Williams v. Scott**</u>, 513 U.S. 854, 115 S.Ct. 157, 130 L.Ed.2d 95 (1994)....................13

**MAY IT PLEASE THE COURT:**

**NOW INTO COURT** comes Petitioner, Gregory Reaux, respectfully submitting the following memorandum in support of his Application for Supervisory Writs.

**JURISDICTION**

Jurisdiction is vested in this Honorable Court pursuant to *Article 5 § 10* of the Louisiana Constitution of 1974, and the Louisiana Code of Criminal Procedure Article 912.(C)(2).

**PROCEDURAL HISTORY**

Mr. Reaux was arrested on April 20, 2009, and thereafter charged by separate Bills of Information with three Counts of Armed Robbery, and one Count of Attempted Armed Robbery, which were consolidated into one case by filing a Bill of Information on April 7, 2010.  R. p. 81.  The aforesaid offenses occurred in St. Tammany Parish but the Defendant was a suspect in similar cases pending in Tangipahoa and Jefferson Parish.  Defendant entered pleas of "Not Guilty" to the charges on multiple occasions prior to the commencement of his jury trial in St. Tammany Parish on June 14, 2011.

On September 22, 2009, the State filed an answer to Defendant's motion for discovery and inspections, and its own motions for discovery and notice of intent to introduce evidence of other offenses.  R. p. 73.  The motion stated: "The State give written notice of its intent to introduce evidence of other offenses admissible under L.C.E. Article 404 as described in the attached discovery.  Such evidence is admissible as proof of motive, opportunity, intent, preparation, plan knowledge, identity, absence of mistake or accident, or is an integral part of the act or transaction that is the subject of the current proceeding.  R. p. 74.

On June 4, 2010, John Hogue, Assistant Public Defender, filed a Motion to Continue Trial on behalf of Petitioner, which the Court heard and denied on the same date.  R. pp. 326-328.  Mr. Hogue filed contemporaneous, supervisory writs on this matter with the First Circuit Court of Appeal and the Louisiana Supreme Court, both of which were subsequently denied.  R. Pp. 148, 259, 326-328.

On June 14, 2010, the Court began a four-day hearing on Petitioner's Motions to Suppress Evidence and Confessions, which continued on June 14, 15, 16 and June 30, 2010, the State informed Defense counsel that a State witness, John Carroll, was arrested and fired by the Jefferson Parish Sheriff's Office and hearings on all of the four above-mentioned pre-trial motions were continued.  R. p. 20.

On July 15, 2010, the Court ruled on the outstanding pre-trial motions, denying the Defense's motions to suppress evidence, identification, and severance of offenses.  Similarly, the Court ruled against the defense by allowing the State to bring up prior offenses the defendant has committed into evidence, specifically evidence of five robberies occurring outside of St. Tammany Parish.  The State introduced a "list of all crimes with location, date, time and details of incidents." R. p. 663.

A seven-day jury trial commenced on July 21, 2010, and on July 30, 2010, the jury found Petitioner guilty on all four counts. R. p. 55.  Petitioner subsequently filed a motion for new trial and for post-verdict judgment of acquittal. R. p. 253.

On August 12, 2010, the Court denied Petitioner's motions for new trial and or post-verdict judgment of acquittal and then sentenced Petitioner to serve ten years at hard labor as to each court, without benefit of probation, parole, or

suspension of sentence, and to run consecutively with one another.  The Petitioner notified the Court of its intent to file a Motion to Reconsider Sentence and Motion for Appeal.  R. p. 57.

On August 23, 2010, Defense counsel filed a Motion to Reconsider Sentence and a Motion for Appeal and Designation of Record.  On August 24, 2010, the Court denied the motion to reconsider sentence without a hearing.  R. p. 255.

Finally, on September 3, 2010, the Court ordered that the Petitioner be granted an appeal to the First Circuit Court of Appeal and appointed the Louisiana Appellate Project to handle the appeal, with a return date of November 18, 2010. R. p. 256.

Petitioner appealed, raising one assignment of error in his counseled brief, wherein he argued that the sentencing was excessive and an abuse of the trial Court's discretion.  Petitioner raised four additional assignments of error in a pro se brief, namely: (1) the trial court's denial of motion to suppress; (2) the trial court's denial of motion to continue; (3) the trial court's admission of other crimes evidence; and (4) sufficiency of evidence based on the claim that the record is incomplete.  The Louisiana First Circuit of Appeal affirmed the convictions and sentences on September 14, 2011.  **State v. Reaux**, 2011-0443  (La.App. 1 Cir. 9/14/11).

Subsequently, the St. Tammany Parish District Attorney filed a habitual offender bill of information, alleging Mr. Reaux to be a second-felony habitual offender with respect to his armed robbery conviction on count one.   On September 12, 2013, the St. Tammany Parish Court vacated Petitioner's ten year sentence on count one, and resentenced Mr. Reaux to imprisonment for fifty years

at hard labor, without the benefit of parole, probation or suspension of sentence. The trial court ordered that this enhanced sentence would run concurrently with his sentences on counts two, three, and four, and with any other sentences Mr. Reaux is currently serving.

Mr. Reaux appealed his sentence to the Louisiana First Circuit Court of Appeal which was affirmed on September 19, 2014. **State v. Reaux**, 2014-0330 (La.App. 1 Cir. 9/14/14).

Petitioner filed an Application for Post-Conviction Relief on October 6, 2014 which was denied on November 6, 2014. Petitioner then filed Notice of Intent to seek Writs and a return date was set for January 22, 2015. Petitioner filed a Supervisory Writ to the 1st Circuit Court of Appeal which is now pending. No. 2014-_____.

Petitioner then obtained "Newly Discovered Facts" on March 26, 2015 and May 28, 2015. See Exhibit's "1," "2," "A," and Exhibit "B." Petitioner then filed a successive Application for Post-Conviction Relief under La.C.Cr.P. Art. 930.8(A)(1) on June 15, 2015.

After further investigations, petitioner obtained signatures from all the Judges in the 22nd Judicial District Court and had Mary Ann Sherry, CDE, a Certified Document Examiner look over the two affidavits for petitioner's arrest and she came to the conclusion that no Judge, nor Commissioner signed the affidavits for petitioner's arrest, which makes the arrest an illegal arrest, and all that followed illegal. Petitioner then filed a timely Successive Application for Post-Conviction Relief under La.C.Cr.P. Art. 930.8(A)(1) on November 6, 2015.

On January 4, 2016 Judge Hand dismissed Petitioner's application for Post-Conviction Relief citing that the affidavit for his arrest was signed by Commissioner *Pro Tempore* Judge Donald Fendlason. Petitioner then filed a Motion for Appeal and Notice Requesting Return Date.

Petitioner also sent copies of Judge Donald Fendlason signatures and the two affidavits for probable cause to Mary Ann Sherry the Board Certified Document Examiner for examination and on January 19, 2016 she determined that neither of the signatures of Judge Donald Fendlason matched the signatures on the warrants for arrest for petitioner. See Exhibit "3".

The return date has not been sent back to petitioner as of this date and in the interest of timeliness petitioner submits this Supervisory Writ to the 1st Circuit Court of Appeal on January 25, 2016.

## STATEMENT OF THE FACTS

### A. Slidell

On April 17, 2009, Adolfo Castro was working at the Slidell Game Stop when a masked perpetrator robbed him, wielding a box cutter. R. p. 1362-1363, 1367. Mr. Castro stated that around closing time (9 p.m.) "somebody came into the store with what looked like a mask at that time and threw a black mesh bag at me and said, 'Put all the money in the bag.'" R. p. 1369. Castro described the perpetrator as a black male, approximately 6 foot and 6 inches in height, wearing a black baseball cap with a yellow bill, blue jeans, a long-sleeve shirt, and a mask that looked like a sleeve that was cut out of a t-shirt. R. pp. 1369-1370. The robber had what appeared to be a rag wrapped around his right arm. The perpetrator took approximately $813 cash and five Wii points cards. R. pp. 1334, 1379.

Mr. Castro explained the system Game Stop uses to price merchandise. The store receives merchandise in numbered boxes. The employee types the box number into a Game Stop Computer application, which provides an inventory of the items in that box and their respective prices and item numbers. R. p. 1363. Price stickers are generated, which include a description of the item, the date the price tag was printed, and the initials of the manager working on that date. R. pp. 1365-1366. The State introduced Exhibits No. 1 and 2—photographs of the Wii point cards that were recovered from Mr. Reaux's car. Exhibit 2 is a close up of the price tag on the card containing the following information: (1) the type of merchandise "Wii Points Card 2000," and item #79, (3) numbers 040309 and (4) the letters ACC. Recognizing the date and his own initials, Mr. Castro identified the Points cards depicted in Exhibit No. 1 and 2 as merchandise that he set out for display at the Slidell Game Stop and was subsequently stolen during the armed robbery. R. pp. 1366-1367.

State introduced Exhibit 3, which Mr. Castor described as a "Sleeve cut out of a t-shirt." The State showed Mr. Castro and introduced into evidence, Exhibit No. 4—Surveillance footage from an Academy Sports Store near the Game Stop which depicted an African American male, wearing a black backpack and a black baseball cap with a yellow bill getting into a white Monte Carlo vehicle. R. pp. 1379-1384. Although Mr. Castro indicated that the male in the surveillance footage was the same person who robbed the Game Stop, he never identified Mr. Reaux as the robber. R. p. 1396.

Officer McNulty of the Slidell Police Department was called to the scene of the April 17th Robbery in Slidell and interviewed Adolfo Castro, Chris Jackson, and Jack Douglas, a non-employee witness. Mr. Douglas described the perpetrator

leaving in a vehicle which was the same color but a different make and model type than the vehicle seen in the Academy Sport surveillance video that was introduced during Mr. Castro's testimony.  R. pp. 1422, 1425.

The Slidell Police Department gathered forensic evidence from the store including a partial fingerprint and a latent palm print. R. pp. 1431, 1435;  However, Sgt. Bobby Campbell, an expert in fingerprint analysis and crime scene investigation analyzed the three exhibit and found "no identifiable prints," meaning the prints were not of sufficient quality to render further testing for identification reliable. R. pp. 2519, 2525, 2529, 2535-2536.  The Slidell Police did not attempt to collect contact DNA swabs from the crime scene because there was no evidence that the perpetrator directly touched anything while in the store. R. p. 2538.

### B. Covington

Joel Vogt explained that the black fabric on the perpetrator's arms extended down his arm, covered his right hand, and that he was extremely cautious not to touch anything in the store.  R. p. 1547.  The District Attorney showed Mr. Vogt pictures, including Photograph No. 41, which depicted a person wearing a white shirt and "fabric that could have been coming out of his shirt, covering his face."  R. p. 1473.  Exhibit No. 40 depicted a person from the waist down holding a backpack which Mr. Vogt said was "very similar" to the backpack he described the perpetrator having during the robbery. R. p. 1473.

At trial, the State introduced evidence of five robberies, which occurred at Game Stop locations outside the jurisdiction of St. Tammany Parish in Walker, Denham Springs, Marrero, Harvey, and Hammond.  The "other crimes" evidence

was introduced through the Petitioner's audio-recorded statement to St. Tammany Parish law enforcement officers and through live testimony of police officers.

### C. Mandeville

David Vigo is the manager of the Game Stop in Mandeville, where he has worked since 2007.  R. p. 2162.  Mr. Vigo was handling the cash register on the night Mr. Reaux was arrested near the Mandeville store.  R. p. 2168.

### D. Testimony regarding the investigation

Sergeant Patrick McCormick of the St. Tammany Parish Sheriff's Office explained how Mr. Reaux was apprehended around 8 p.m. on April 20, 2009. Lieutenant McCormick was part of a multi-jurisdictional task force investigating a string of armed robberies that had occurred at Game Stop/EB Games in Slidell Covington, and other stores in Southeast Louisiana.  R. pp. 1578-1579.  McCormick learned from other law enforcement officers that the perpetrator was an extremely tall, black male, who wore a black baseball cap, carried a black backpack, which he used to carry his "loot," and wielded a box cutter or utility knife.  R. p. 1580.  The perpetrator carried out the robberies near the stores' closing time, which was 9 p.m. on all days except Sunday, when the stores closed at 6 p.m.  In one robbery, a white Chevy Monte Carlo was used.  R. p. 1580.

Sgt. McCormick determined that there were three EB Games/Game Stop stores in St. Tammany Parish, and the only store that had not been robbed was the Mandeville store.   R. pp. 1581-1582.   Consequently, McCormick conducted a surveillance operation across the street from the Mandeville Game Stop to try to catch the robber in the act.  R. p. 1582.  Using his personal binoculars, McCormick witnessed a tall black male wearing a dark hat and a white t-shirt emerge from an

area of trees and shrubbery between the Game Stop and an adjacent Business-Bippo's Dental Clinic.  As a young woman exited the Game Stop, McCormick saw the subject step back, then after that woman got in a car, the subject stepped back into the light and began looking around.  R. p. 1596.  The subject and the officer made eye contact from over 1000 feet away, and the subject began walking past the front of the businesses.  R. p. 1597.  Within minutes, another police officer, Noel Forrester stopped the subject, who turned out to be Mr. Reaux.  R. p. 1599. McCormick followed Reaux, observed him talking to Officer Forrester, and upon seeing him wearing a black backpack, and shifting his feet back and forth nervously, Lr. McCormick decided to restrain Mr. Reaux by handcuffing him from behind.  R. p. 1603.

The police soon determined that Mr. Reaux had arrived in a white Monte Carlo vehicle.  R. p. 1606.  McCormick and Forrester secured Mr. Reaux in Deputy Forrester's patrol unit and were standing outside the unit talking when McCormick noticed a "little black piece of plastic" under the left rear tire of the police nit. McCormick also observed a broken box cutter on the hood of Officer Forrester's unit and determined that the black piece of plastic was part of the box cutter.  R. p. 1610.  McCormick also saw a black knit cap lying on the hood of Forrester's police unit, which was found somewhere on Mr. Reaux's person.  R. p. 1613.

When Mr. Reaux was arrested he was wearing white t-shirt, gray sweatpants, a b lack Pittsburgh Pirates cap, and had a piece of light gray fabric wrapped around his neck, that was partially tucked under his t-shirt.  R. pp. 1618-1619.  Sgt. McCormick advised Mr. Reaux that he was under arrest for attempted armed robbery of the Mandeville Game Stop.  R. p. 1620.  He was also carrying a black

backpack.  Sgt. McCormick testified that Mr. Reaux did not have a knife or box cutter on him at the time.

Deputy William Noel Forrester of the St. Tammany Parish Sheriff's Office assisted Sgt. McCormick with surveillance of the Mandeville Game Stop on April 20, 2009, and initially stopped Mr. Reaux as he was walking away from the Game Stop towards his vehicle.  Deputy Forrester conducted a pat down frisk of Mr. Reaux and felt a hard object around his waistband, at which time Mr. Reaux moved his hands from behind his back to the front and grabbed his shirt.  Deputy Forrester got Mr. Reaux's hands back behind him and then as he attempted to raise his shirt, Mr. Reaux jerked his body and the item in his waistband fell to the ground.  R. p. 1744. During the pat down, Deputy Forrester also recovered a black or dark blue knit cap from the left pocket of Mr. Reaux's sweat pants.  R. p. 1746.  Mr. Reaux complied with the deputies every command during his stop and arrest.

Lt. George Cox of the St. Tammany Parish Sheriff's Office and Sgt. Sean McClain of the Slidell Police Department were the first law enforcement officers to interrogate Mr. Reaux after his arrest.  R. pp. 2362, 2366.  Mr. Reaux was orally advised of his Miranda rights and also signed a written waiver of rights form.  R. p. 2366.  The interrogation began at 9:27 p.m. on April 20, 2009.  R. p. 2369.  Lt. Cox explained that Mr. Reaux told them he was not involved in any robberies, and confirmed that detectives from Jefferson Parish spoke to Mr. Reaux for over an hour and a half with the same results.  R. pp. 2370-2372.

On the night of April 20, 2009, Detective Vermall of the Jefferson Parish Sheriff's Office (JPSO) learned that the St. Tammany Sheriff's Office had arrested a suspect for the robberies of multiple Game Stops in that parish.  Detective Vermall and former JPSO Detective John Carroll travelled to St. Tammany Parish to

interview the suspect, Mr. Reaux.  R. p. 1786.  Mr. Reaux was cooperative, and denied any involvement in the robberies during the hour-long interview with Jefferson Parish detectives.  As a result, the detectives stopped the interview and began to make preparations to search Mr. Reaux' residence, the dete4ctives were called back to the St. Tammany Sheriff's Office because the St. Tammany detectives claimed that Mr. Reaux had confessed to the robberies in Jefferson Parish.  R. p. 1790.  During their second encounter with Mr. Reaux, Detectives Vermall and Carroll showed Mr. Reaux a still photograph of the robbery suspect obtained from video surveillance of the Marrerro Game Stop and Mr. Reaux advised that was him in the photograph. R. p. 1790.

Lt. Cox, still not satisfied that he received his version of the "truth," continued to interrogate Mr. Reaux after the JPSO detectives had left.  R. p. 2372.  Lt. Cox showed Mr. Reaux a still image captured from the video surveillance in one of the Game Stop robberies from Jefferson Parish and informed him that he also had video surveillance from the Academy Sports near the Slidell Game Stop.  Mr. Reaux continued to deny any involvement. R. p. 2375.  Mr. Reaux was taken out of the interrogation room and was being brought to the jail to be booked when, according to Lt. Cox, he told the detectives, "Let's go back. I'll tell you everything." R. p. 2376.  Mr. Reaux then gave a recorded statement that began at 4:07 a.m. and ended at 5 a.m. on April 21, 2009.  R. p. 2417.

Lt. Cox explained that Mr. Reaux gave a second recorded statement on April 22, 2009, to Sergeant McLain of the Slidell Police Department.  Lt. Cox, however, characterized the second statement as "inaccurate" and explained how he had Mr. Reaux recant the second statement while in jail.  R. pp. 2379-2380.

Detective Corey Crowe of the St. Tammany Parish Sheriff's Office obtained and executed search warrants for Petitioner's home in Hammond and his vehicle, a two-door 2006 Chevrolet Monte Carlo. R. pp. 2454, 2458. At Mr. Reaux's home, Crowe recovered a play station gaming console, one or two box cutters from the mantel of the living room, and another box cutter in a bedroom. R. p. 2486. Detective Crowe did not determine whose room the box cutter was found in, nor did he inquire if the other occupants of the apartment used box cutters in their work. R. p. 2487. None of the box cutters were tested for fingerprints or DNA. R. p. 2496.

Detective Crowe seized the following items from Petitioner's car: (1) Wii points card; (2) a Wii video game disk with a price tag marked DAG 3-29-09 (R. p. 2467); (3) a box with USPS shipping label addressed to Game Stop located in Walker Louisiana (R. p. 2469); (4) a Rayman game (R. p. 2470); and (5) a skull cap type hat (R. p. 2473). Detective Crowe identified a USPS tacking statement, which showed that the package found in petitioner's car was received by Travis Bousquet on April 14, 2009. The State alluded to prior trial testimony that the Walker Game Stop had been robbed on April 14, 2009. R. p. 2470. Detective Crowe also recovered 8 Wii point car boxes, five of which contained a label reading "ACC 04/03/09." Crowe testified that this label was consistent with Game Stop practice wherein the employee who put the item for display as merchandise would sign their initials and the date and that the five particular labels would suggest that Adolfo Castro put them out for display on April 3, 2009. R. p. 2472. No fingerprints were found on the Wii point card boxes. R. p. 2473. Crowe also recovered an "Alpha s magnetic hand key," which he explained is used by Game Stop to remove security tags from merchandise. R. p. 2481.

Petitioner is now filing this second successive Application for Post-Conviction

Relief on _____, ____, 2015 under the exception of La.C.Cr.P. art. 930.8

A(1).

## CLAIMS FOR RELIEF

### #1.

### Petitioner was denied the a Fair Trial Due to Prosecutorial Misconduct in Violation of his Constitutional Right to Due Process.

### #2

**Petitioner was denied the effective assistance of counsel guaranteed by the Sixth and Fourteenth Amendments to the United States Constitution when trial counsel failed to object or challenge the trial court's subject matter jurisdiction.**

### CLAIM #1

### Petitioner was denied the a Fair Trial Due to Prosecutorial Misconduct in Violation of his Constitutional Right to Due Process.

In the present case Petitioner contends that his Constitutional Right to Due

Process was violated due to Prosecutorial Misconduct.  See Exhibit "A" (A copy of

the signatures of all the Judges, Commissioner, and even the City Court Judge in

Slidell.  It is a proven fact that none of these judges signed these two affidavits for

petitioner's arrest.

### Standard of Review

When presenting a claim of Prosecutorial Misconduct, a Petitioner must

show that the actions of the prosecutor so infected the trial with unfairness as to

make the resulting conviction a denial of Due Process, and the Prosecutorial

Misconduct must be of sufficient significance to result in the denial of the

defendant's right to a fair trial.  **Kutzner v. Johnson**, 242 F.3d 605, 609 (5th Cir. 2001).  **United States v. Bagley**, 473 U.S. 667, 676, 105 S.Ct. 3375, 87 L.Ed.2d 481 (1985).

To prevail on this claim Reaux must prove that: (1) the actual falsity of a witness's testimony, (2) that the testimony was material, and (3) that the prosecution knew the witness's testimony was false.  **Giglio v. United States**, 405 U.S. 150, 153-4, 92 S.Ct. 763, 31 L.Ed.2d 104 (1972); **Fuller v. Johnson**, 114 F.3d 491, 496 (5th Cir. 1997); **Koch v. Pucket**, 907 F.2d 524, 531 (5th Cir. 1990).

The falsity is the testimonies of Detective Corey Crowe and Sgt. Patrick McCormick's questionable accounts as to the circumstances surrounding the alleged attempted armed robbery.  The testimonies were material as it pertains to the illegal stop, search and arrest of petitioner.  The prosecution knew that the notaries were not certified with the state (as it was a standard practice in St. Tammany Parish) and the discrepancies in Crowe's and McCormick's testimonies compared to the basic information in the two affidavits for arrest.

Petitioner was prejudiced as to the illegal stop, arrest and all that followed which would be considered "fruit from the poisonous tree."

As explained in **United States v. Morena**, 547 F.3d 191, 193-94 (3rd Cir. 2008):

Improper prosecutorial conduct rises to the level of constitutional error "when the impact of the misconduct is to distract the trier of fact and thus raise doubts as to the fairness of the trial." **Marshall v. Hendricks**, 307 F.3d 36, 67 (3rd Cir. 2002). The test for prosecutorial misconduct is whether the conduct "so infected the trial with unfairness as to make the resulting conviction a denial of due process" in light of the entire proceeding. (quoting **Donnelly v. DeChristoforo**, 416 U.S. 637, 643, 94 S.Ct. 1868, 40 L.Ed.2d 431 (1974))

Similarly here, Petitioner's trial was infected with unfairness which makes his conviction a denial of due process.  The impact of the misconduct in petitioner's stop, arrest, search, and trial was totally illegal and thus warrants reversal.  The

police in this case should be sanctioned for their conduct in the way they handled this case.

See additionally, **United States v. Stanert**, 762 F.2d 775 where:

"[D]efendant was convicted of conspiracy to possess with intent to distribute a controlled substance, a violation of 21 U.S.C.S.§ 846, and he sought review. The court affirmed in part and vacated and remanded, finding that defendant was entitled to evidentiary hearing to challenge the validity of the search warrant. The court found that, under the totality of the circumstances as set forth in the affidavit, the district court had a substantial basis for concluding that probable cause existed to search defendant's residence. The court found, however, that defendant had made a sufficient showing with respect to four inaccuracies or omissions that negated the facial showing of probable cause. Defendant also showed that the affidavit purged of the inaccuracies and supplemented by the omissions would not be sufficient showing with respect to four inaccuracies or omissions that negated the facial showing of probable cause. Defendant also showed that the affidavit purged of the inaccuracies and supplement by the omissions would not be sufficient to support a finding of probable cause, which entitled him to a Franks hearing. The court found that defendant failed to make a sufficient preliminary showing that the affidavit misrepresented or invented information supplied by a confidential informant because it was reasonable that the affiant reported the informant's tip in good faith without any reckless disregard." "The Outcome was that the 9th Circuit affirmed in part but vacated defendant's conviction and remanded for an evidentiary hearing on the warrant affidavit because defendant had made a sufficient showing of inaccuracies or omissions that negated the facial showing of probable cause."

No district attorney would have **<u>not</u>** found these warrants questionable as stated in previous application concerning the Notaries who were not certified with the state, and the fact that no judge signed them.  At the very least, petitioner has made a substantial showing that these affidavits have inaccuracies and/or omissions concerning the validity of the certifications of the notaries and the signatures of the judge.  They also have several inconsistencies made by Officer Forrester and Detective McCormick.

Petitioner has made a substantial showing that cumulatively, these affidavits are misrepresented by the state and should have been quashed.

**#2**

Petitioner was denied the effective assistance of counsel guaranteed by the Sixth and Fourteenth Amendments to the United States Constitution when trial counsel failed to object or challenge the trial court's subject matter jurisdiction.

### CLAIM #2
### Ineffective Assistance of Counsel in failing to challenge trial court's subject matter jurisdiction.

Petitioner contends there was no jurisdiction of the subject matter for the trial court because the district attorney, in bad faith, arbitrarily and unreasonably filed a bill of information charging Petitioner with the offense of attempted armed robbery where there was no evidence to support any such charge. Trial Counsel's knowledge of there being no evidence to base the bill of information on was ineffective for failing to challenge or object to the jurisdiction.

#### Standard of Review

The Sixth Amendment to the United States Constitution guarantees the right to effective assistance of counsel. **Strickland v. Washington**, 466 U.S. 668, 694, 104 S.Ct. 2052, 2068, 80 L.Ed.2d 674 (1984). A defendant must show: (1) that trial counsel's performance was defective, and (2) a reasonable probability that but for the deficient performance, the outcome of the proceedings would have been different.

A prisoner's challenge to [the] indictment is not appropriate unless the indictment was so defective that the convicting court had no jurisdiction. **Williams v. Collins**, 16 F.3d 626, 637 (5th Cir.), cert. denied, 512 U.S. 1289, 115 S.Ct. 42, 129 L.Ed.2d 937 (1994); **Alexander v. McCotter**, 775 F.2d 595, 598 (5th Cir 1985); **Liner v. Phelps**, 731 F.2d 1201, 1203 (5th Cir. 1984); **Branch v. Estelle**, 631 F.2d 1229, 1233 (5th Cir. 1980). "Due deference [must be given] to the state court's interpretation of its own law that a defect of substance in an indictment [bill of

Page | 16

indictment] ...deprive a state trial court of jurisdiction."  **McKay v. Collins**, 12 F.3d 66, 69 (5th Cir.), reh'g granted on other grounds, 12 F.3d 70 (5th Cir.), cert. denied sub nom., **Williams v. Scott**, 513 U.S. 854, 115 S.Ct. 157, 130 L.Ed.2d 95 (1994). Louisiana courts have held that Article 1 § 2 of the Constitution provides that "no person shall be deprived of life, liberty, or property, except by due process of law," and that ... the essence of due process [is] "protection from an arbitrary and unreasonable action." **Plaquemines Parish Commission Council v. Perez**, 379 So.2d 1373, 1377 (La. 1980).  Due Process is also defined by the Constitution itself to require impartiality.  Article 1 § 22 provides: "All courts shall be open, and every person shall have an adequate remedy by due process of law and justice, administered without denial, partiality, or unreasonable delay, for injury to him in his person, property, reputation, or other rights."

Jurisdiction over the subject matter is defined by C.C.P. 2 as "the legal power and authority of a court to hear and determine a particular class of actions or proceedings..."  Article 5 § 10 of the Constitution confers upon the appellate courts "original jurisdiction of all civil and criminal matters, except as otherwise authorized by the Constitution."  See **Bowen v. Doyal**, 259 La. 839, 253 So.2d 200 (1971). A district attorney is granted his/her plenary powers by Article 5 § 26 of the Constitution, which provides: "(B) Powers. Except as otherwise provided by this Constitution, a district attorney, or his designated assistant, shall have charge of every criminal prosecution by the state in his district, be the representative of the state before the grand jury in his district, and be the legal advisor to the grand jury. He shall perform other duties provided by law."  A criminal prosecution is defined by C.Cr.P. 381 as a prosecution instituted "for the purpose of bringing to punishment one who has violated a criminal law."  Finally, the jurisdiction of the

district attorney to prosecute those who violate state criminal statutes is exclusive; it can only be constrained or curtailed when it operates to the prejudice of a contrary constitutional mandate, and even then only with due deference to the district attorney's constitutional prerogative.  **City of Baton Rouge v. Short**, 345 So.2d 37, 40 (La. 1977).

A district attorney's investigation can be curtailed when the district attorney abuses the powers of his office by subjecting an individual to a harassing investigation without any good faith belief that the individual has committed any crime.  **Matter Under Investigation Grand Jury No. 1**, 875 So.2d 33, 36 (La. 5/14/04); **Compare In re Grand Jury Subpoenas Issued to Certain Members of Orleans Levee District**, 95-kk-0042, 648 So.2d 864 (La. 1995) (per curiam).  The issuance of an injunction is warranted in such cases because "there [is] a federal right to be free of a bad faith prosecution.  "**Plaquemines Parish Comm'n Council v. Perez**, 379 So.2d 1373, 1385 (La. 1980) (footnote omitted), discussing **Shaw v. Garrison**, 467 F.2d 113 (5th Cir. 1972).  A plaintiff who seeks to enjoin such "bad faith" investigation must show, at a minimum, that he is threatened with an investigation which is, unnecessarily abusive, harassing or illegal, and without any possibility of ultimate indictment supported by probable cause for prosecution.  **Perez**, supra, 379 So.2d at 1385.

In the present case, trial counsel failed to enjoin this state criminal prosecution before the institution of criminal proceedings by bill of information. Had counsel challenged the arbitrary and unreasonable prosecutorial misconduct, there would not have been a bill of information charging Petitioner with an attempt armed robbery for which there was no supporting evidence.  If by no other means, counsel should have raised the lack of subject matter jurisdiction prior to trial by

motion to quash. C.Cr.P. Art. 531. During a pretrial hearing, a record of evidence would have been had where Petitioner could have proved that the whole purpose of the district attorney's investigation was to harass Petitioner without any good faith belief that Petitioner had committed the offense of attempted armed robbery.

Prior to the filing of a bill of information, the district attorney was armed with Detective Corey Crowe and Sgt. Patrick McCormick's questionable accounts as to the circumstances surrounding the alleged attempted armed robbery. According to Sgt. McCormick, "on April 20, 2009, at approximately 1950 hours, [he] was conducting surveillance from Macaroni Grill parking lot on Highway 190 in Mandeville! The surveillance was a result of multiple armed robberies at Game Stop and EB Game locations throughout the area. Ibid. He had knowledge of the description of the alleged perpetrator. Ibid. At approximately 2006 hours [he] noted a subject matching the description … walk from between business. Ibid. Sgt. McCormick was spotted by the subject whom immediately fled to the rear of the building where [the subject] was detained by Detective Forester. Ibid. A pat down for weapons revealed items utilized in the crimes. Ibid. The vehicle hidden by the suspect also fit the vehicle description. Ibid. The suspect's claim of his business in the area were disproved." Ibid. (Exhibit "A" The report from Mary Ann Sherry, Certified Document Examiner who states that none of the Judges in the 22nd Judicial District Court, nor the Commissioner in the 22nd Judicial District Court, and not even the City Court judge in Slidell who is sometimes used, signed these two affidavits for arrest. Petitioner should never have been stopped, arrested, searched and most importantly, tried for these robberies.

According to Detective Crowe, however, "on Monday April 20, 2009, about 2007 hours, Sgt. Patrick McCormick of the St. Tammany Sheriff's Department observed a white Monte Carlo, parked in a nearby parking lot, near the Game Stop store on Highway 190 in Mandeville, Louisiana. (Exhibit "2" Affidavit for Arrest Signed by Detective Corey Crowe).  Sgt. McCormick observed the vehicle to be occupied by a black male driver.  Ibid.  Sgt. McCormick began surveillance of the suspect and observed him exit the vehicle and began walking towards the Game Stop Store.  Ibid.  The suspect was observed to fit the physical and clothing description given during the prior robberies.  Ibid.  Contact was made with the suspect, at which time he was observed to be evasive with deputies as he threw a box cutter to the ground away from him.  Ibid.  The suspect was also discovered to be in possession of a black mesh "Jansport" backpack and was also wearing grey sweat pants and a white tee shirt.  Ibid.

As the Court can observe from the face of the arrest warrants, both are in direct contrast.  While Sgt. McCormick alleged that Petitioner hid the vehicle, Detective Crowe alleged that they observed Petitioner occupying the vehicle in a nearby parking lot.  If Petitioner was first observed sitting in the vehicle, then why did Sgt. McCormick allege that Petitioner was observed walking from between businesses.  In another instance, Sgt. McCormick alleged that when Petitioner observed Sgt. McCormick, Petitioner "immediately fled to the rear of the building where [the subject] was detained by Detective Forrester; but Detective Crowe alleges that Petitioner only became evasive after contact was made and that being relative to throwing a box cutter to the ground away from Petitioner.  Sgt. McCormick, however, made no reference to Petitioner possessing or throwing a box cutter.  To add, Sgt. McCormick noted that Petitioner's claim of his business in

the area were disproved; but Detective Crowe's arrest warrant never mentioned that this instant discussion occurred, and there was no mention as to what Petitioner's business in the area was.

Moreover, when does it become unlawful to be in a business area or to patronize a particular business?

It is baffling in relation as to why there are two arrest warrants of one incident in the first place.  Both being written by two different officers who contradict each other's version of the facts. The only reasonably explanation is that the officers were trying to figure out a way to explain stopping and harassing Petitioner for these crimes, without probable cause, and pinning an attempt armed robbery on him in order to charge him for the rest of these crimes.  It is clear from the trial record that Petitioner never went inside of the Game Stop Store.

No district attorney would have not found these warrants questionable.  In fact, no reasonable minded district attorney would have, in good faith, pursued a prosecution of Petitioner for the crime of attempted armed robbery of a place of business under these circumstances.  Specifically, contradicting warrants of one incident. Petitioner not being in possession of any weapons.  Petitioner not being in possession of a mask which, as in the other robberies the perpetrator wore a mask.  Petitioner never even stepped foot on the Game Stop Store's property as both warrants clearly established this fact.  There was nothing presented in either warrant to justify a man of average knowledge that Petitioner had committed, was about to commit, or was in the process of committing an attempted armed robbery.

The sole purpose of the district attorney pursuing these charges against Petitioner was to harass him.  It is clear that the district attorney in bad faith, unnecessarily abused his authority.  The only question was whether counsel's deficient performance of not enjoining and/or not filing a motion to quash on the basis of Petitioner's due process rights of the 14th Amendment to the United States Constitution were violated when his right to be free of a bad faith prosecution was transgressed; prejudiced Petitioner.  Petitioner avers that it is clear from the face of the record that he was prejudiced as the district attorney lacked the evidence to support probable cause to file a bill of information with any possibility of ultimately obtaining a conviction.

Based on the pretense that Petitioner had committed the robberies of several Game Stop Stores in multiple Parishes in close geographical locations, the district attorney mislead a jury into obtaining a conviction for the crime of attempted armed robbery of the Game Stop Store located on Highway 190 in Mandeville, Louisiana.  There was absolutely no reliable evidence presented by the district attorney to slightly suggest that Petitioner committed an attempted armed robbery of this store.  The only evidence presented, suggested that at best, Petitioner was in the area of the Game Stop Store located in Mandeville, Louisiana.

Counsel's deficient performance prejudiced Petitioner as this matter could have been resolved pretrial, where the outcome of these proceedings would have been different, instead of having to be resolved in a post-conviction proceeding.

## CONCLUSION

Wherefore, Petitioner contends he has shown that his Constitutional Right to Due Process was violated and that his Constitutional Rights to Effective

Assistance of Counsel were violated.  Petitioner has shown that both of the affidavits used for arrest warrants were forged on the face of the documents by Detective's using notary numbers that belonged to others as argued in previous petition and that no Judge, nor Commissioner, signed the two affidavits that were used for his arrest which makes the arrest illegal and all that followed, illegal.

### PRAYER FOR RELIEF

Gregory Reaux prays that this Honorable Court grants his Application for Post-Conviction Relief, grants him a proper opportunity to have both of the Arrest Warrants quashed, grants him relief available due to the errors presented herein and any other relief this Honorable Court deems appropriate.

Respectfully Submitted on this 25th day of January, 2016.

Gregory Reaux #574124
Main Prison Walnut #1
Louisiana State Penitentiary
Angola, LA  70712

### AFFIDAVIT/CERTIFICATE OF SERVICE

I, Gregory Reaux, hereby swear and aver that the foregoing is true and correct to the best of my knowledge and belief.  I, Gregory Reaux, further swear and aver that a copy of the foregoing has been served upon counsel for the Respondent, District Attorney, Warren Montgomery – Justice Center, 701 N. Columbia St., Covington, LA  70433 by placing a copy of the same in the United States Mail, properly addressed and postage pre-paid.

Done this 25th day of January, 2016.

Gregory Reaux #574124
Main Prison Walnut #1
Louisiana State Penitentiary
Angola, LA  70712

# STATE OF LOUISIANA
# COURT OF APPEAL, FIRST CIRCUIT

STATE OF LOUISIANA

VERSUS

GREGORY J. REAUX

NO.   2016 KW 0158

MAR 2 1 2016

---

In Re:     Gregory J. Reaux, applying for supervisory writs, 22nd
           Judicial District Court, Parish of St. Tammany, No.
           471010.

---

**BEFORE:   PETTIGREW, HIGGINBOTHAM, AND CRAIN, JJ.**

**WRIT DENIED.**

                              JTP
                              TMH
                              WJC

COURT OF APPEAL, FIRST CIRCUIT

_____

DEPUTY CLERK OF COURT
        FOR THE COURT

**SUPREME COURT OF LOUISIANA**
**WRIT APPLICATION FILING SHEET**

NO._____

**TO BE COMPLETED BY COUNSEL or PRO SE LITIGANT FILING APPLICATION**

__TITLE__

__GREGORY REAUX_____
VS.

__BURL CAIN, WARDEN_____

Applicant: _Gregory Reaux_____
Have there been any other filings in this
Court in this matter? ___ Yes _X_ No

Are you seeking a Stay Order? _NO_____
Priority Treatment? _NO_____
If so you MUST complete & attach a Priority Form

**LEAD COUNSEL/PRO SE LITIGANT INFORMATION**

APPLICANT:

Name: _Gregory Reaux #574124___
Address: _MPW – Walnut #1 – La. State Prison_
_Angola, Louisiana 70712_
Phone No._____ Bar Roll No._____

RESPONDENT:

Name: _Warren Montgomery – District Attorney_
Address: _701 North Columbia Street_____
_Covington, La. 70433_____
Phone No._____ Bar Roll No._____

Pleading being filed: _X__ In proper person, ___ In Forma Pauperis
Attach a list of additional counsel/pro se litigants, their addresses, phone numbers and the parties they represent.

**TYPE OF PLEADING**

__ Civil, _X_ Criminal, __ R.S. 46:1844 protection, __ Bar, __ Civil Juvenile, __ Criminal Juvenile, __ Other
__ CINC, __ Termination, __ Surrender, __ Adoption, __ Child Custody

**ADMINISTRATIVE OR MUNICIPAL COURT INFORMATION**

Tribunal/Court:_____    Docket No._____
Judge/Commissioner/Hearing Officer:_____ Ruling Date:_____

**DISTRICT COURT INFORMATION**

Parish and Judicial District Court: _St. Tammany Parish – 22nd Judicial District Court_ Docket Number: _471010_
Judge and Section: Judge _August J. Hand, Division "B"_    Date of Ruling/Judgment: _June 13, 2015_

**APPELLATE COURT INFORMATION**

Circuit: _FIRST_ Docket No. _2016-KW-0158__ Action: ___Application for Supervisory Writs - Denied___
Applicant in Appellate Court: ___Gregory Reaux_____ Filing Date: __January 26, 2016_
Ruling Date: _March 21, 2016_ Panel of Judges:_Pettigrew, Higginbotham, & Crain_ En Banc: _____

**REHEARING INFORMATION**

Applicant:_____ Date Filed:_____ Action on Rehearing:_____
Ruling Date:_____ Panel of Judges:_____ En Banc: _____

**PRESENT STATUS**

__ Pre-Trial, Hearing/Trial Scheduled date:_____, __ Trial in Progress, __ Post Trial
Is there a stay now in effect? _NO___ Has this pleading been filed simultaneously in any other court? _NO__
If so, explain briefly_____
_____
_____.

**VERIFICATION**

I certify that the above information and all of the information contained in this application is true and correct to the best of my knowledge and that all relevant pleadings and rulings, as required by Supreme Court Rule X, are attached to this filing. I further certify that a copy of this application has been mailed or delivered to the appropriate court of appeal (if required), to the respondent judge in the case of a remedial writ, and to all other counsel and unrepresented parties.

_April 12, 2016_
DATE

_Gregory Reaux_
SIGNATURE

IN THE
LOUISIANA SUPREME COURT
STATE OF LOUISIANA


DOCKET NO._____


GREGORY REAUX

VERSUS

N. BURL CAIN, WARDEN
LOUISIANA STATE PRISON


********************

APPLICATION FOR A
SUPERVISORY WRIT OF REVIEW
*******************************


*********************************************************************
APPEALING THE DENIAL OF PETITIONER'S APPLICATION FOR POST-CONVICTION
RELIEF IN DIVISION "B", JUDGE AUGUST J. HAND, 22ND JUDICIAL DISTRICT
COURT, PARISH OF ST. TAMMANY, STATE OF LOUISIANA CASE NO. 471010

*******************************************************************


Gregory Reaux #574124
MPW  Walnut #1
Louisiana State Penitentiary
Angola, Louisiana  70712

## TABLE OF CONTENTS

Table of Contents.............................................................................................................(1)

Table of Authorities..................................................................................................(2),(3)

Rule X Statement.............................................................................................................1

Jurisdiction........................................................................................................................1

Procedural History..........................................................................................................1

Statement of the Facts....................................................................................................5

Claim for Relief..............................................................................................................12

Claim I............................................................................................................................12

Conclusion......................................................................................................................19

Prayer for Relief.............................................................................................................20

Certificate of Service.....................................................................................................20

## TABLE OF AUTHORITIES

**Constitution**

Article V, Section 10 of the Louisiana Constitution of 1974...................................2,14

6th Amendment of the United States Constitution.............................................2, 6,19

14th Amendment of the United States Constitution...........................................2, 6,19

Article 1 § 22 of the Louisiana Constitution of 1974....................................................13

**Statutes and Articles**

LSA-R.S. 14:64.................................................................................................................2

C.Cr.P. Art. 531.............................................................................................................15

**State Cases**

**City of Baton Rouge v. Short**, 345 So.2d 37, 40 (La. 1977)......................................14

**Compare In re Grand Jury Subpoenas Issued to Certain Members of Orleans Levee District**, 95-kk-0042, 648 So.2d 864 (La. 1995) (per curiam).....................................15

**Matter Under Investigation Grand Jury No. 1**, 875 So.2d 33, 36 (La. 5/14/04)....14

**Plaquemines Parish Commission Council v. Perez**, 379 So.2d 1373, (1980)... 13,15

**State v. Reaux**, 2011-0443  (La.App. 1 Cir. 9/14/11)....................................................4

**State v. Reaux**, 2014-0330 (La.App. 1 Cir. 9/14/14)....................................................4

**Federal Cases**

**Alexander v. McCotter**, 775 F.2d 595, 598 (5th Cir 1985).........................................13

**Branch v. Estelle**, 631 F.2d 1229, 1233 (5th Cir. 1980)...............................................13

**Bowen v. Doyal**, 259 La. 839, 253 So.2d 200 (1971).....................................................14

**Liner v. Phelps**, 731 F.2d 1201, 1203 (5th Cir. 1984)...................................................13

**McKay v. Collins**, 12 F.3d 66, 69 (5th Cir.), reh'g granted on other grounds, 12 F.3d 70 (5th Cir.), cert. denied sub nom....................................................................................13

**Shaw v. Garrison**, 467 F.2d 113 (5th Cir. 1972)............................................................15

**Strickland v. Washington**, 466 U.S. 668, 694, 104 S.Ct. 2052, 2068, 80 L.Ed.2d 674 (1984)..............................................................................................................................13

**Williams v. Collins**, 16 F.3d 626, 637 (5th Cir.), cert. denied, 512 U.S. 1289, 115 S.Ct. 42, 129 L.Ed.2d 937 (1994)..............................................................................................13

**Williams v. Scott**, 513 U.S. 854, 115 S.Ct. 157, 130 L.Ed.2d 95 (1994)....................13

**MAY IT PLEASE THE COURT:**

**NOW INTO COURT** comes Petitioner, Gregory Reaux, respectfully submitting the following memorandum in support of his Application for Supervisory Writ of Review.

### JURISDICTION

Jurisdiction is vested in this Honorable Court pursuant to *Article 5 § 5* of the Louisiana Constitution of 1974, and the Louisiana Code of Criminal Procedure Article 912.(C)(2).

### RULE X STATEMENT

Erroneous Interpretation or Application of Constitution or Laws.  In that the Trial Court, and the Court of Appeal for the 1st Circuit denied petitioner's writ application, misapplying the laws and Constitution governing.  The State, through the Sheriff's Department, and Office of the District Attorney allowed "Fraud", "Misrepresentation" and/or "Misconduct by an Opposing Party" in the Affidavits for Petitioner's arrest, thereby making everything that occurred after that illegal arrest moot and should be applied to the "Fruit from the Poisonous Tree" doctrine.

**PROCEDURAL HISTORY**

Mr. Reaux was arrested on April 20, 2009, and thereafter charged by separate Bills of Information with three Counts of Armed Robbery, and one Count of Attempted Armed Robbery, which were consolidated into one case by filing a Bill of Information on April 7, 2010.  R. p. 81.  The aforesaid offenses occurred in St. Tammany Parish but the Defendant was a suspect in similar cases pending in Tangipahoa and Jefferson Parish.  Defendant entered pleas of "Not Guilty" to the

charges on multiple occasions prior to the commencement of his jury trial in St. Tammany Parish on June 14, 2011.

On September 22, 2009, the State filed an answer to Defendant's motion for discovery and inspections, and its own motions for discovery and notice of intent to introduce evidence of other offenses. R. p. 73. The motion stated: "The State give written notice of its intent to introduce evidence of other offenses admissible under L.C.E. Article 404 as described in the attached discovery. Such evidence is admissible as proof of motive, opportunity, intent, preparation, plan knowledge, identity, absence of mistake or accident, or is an integral part of the act or transaction that is the subject of the current proceeding. R. p. 74.

On June 4, 2010, John Hogue, Assistant Public Defender, filed a Motion to Continue Trial on behalf of Petitioner, which the Court heard and denied on the same date. R. pp. 326-328. Mr. Hogue filed contemporaneous, supervisory writs on this matter with the First Circuit Court of Appeal and the Louisiana Supreme Court, both of which were subsequently denied. R. Pp. 148, 259, 326-328.

On June 14, 2010, the Court began a four-day hearing on Petitioner's Motions to Suppress Evidence and Confessions, which continued on June 14, 15, 16 and June 30, 2010, the State informed Defense counsel that a State witness, John Carroll, was arrested and fired by the Jefferson Parish Sheriff's Office and hearings on all of the four above-mentioned pre-trial motions were continued. R. p. 20.

On July 15, 2010, the Court ruled on the outstanding pre-trial motions, denying the Defense's motions to suppress evidence, identification, and severance of offenses. Similarly, the Court ruled against the defense by allowing the State to

bring up prior offenses the defendant has committed into evidence, specifically evidence of five robberies occurring outside of St. Tammany Parish.  The State introduced a "list of all crimes with location, date, time and details of incidents." R. p. 663.

A seven-day jury trial commenced on July 21, 2010, and on July 30, 2010, the jury found Petitioner guilty on all four counts. R. p. 55.  Petitioner subsequently filed a motion for new trial and for post-verdict judgment of acquittal. R. p. 253.

On August 12, 2010, the Court denied Petitioner's motions for new trial and or post-verdict judgment of acquittal and then sentenced Petitioner to serve ten years at hard labor as to each court, without benefit of probation, parole, or suspension of sentence, and to run consecutively with one another.  The Petitioner notified the Court of its intent to file a Motion to Reconsider Sentence and Motion for Appeal.  R. p. 57.

On August 23, 2010, Defense counsel filed a Motion to Reconsider Sentence and a Motion for Appeal and Designation of Record. On August 24, 2010, the Court denied the motion to reconsider sentence without a hearing.  R. p. 255.

Finally, on September 3, 2010, the Court ordered that the Petitioner be granted an appeal to the First Circuit Court of Appeal and appointed the Louisiana Appellate Project to handle the appeal, with a return date of November 18, 2010. R. p. 256.

Petitioner appealed, raising one assignment of error in his counseled brief, wherein he argued that the sentencing was excessive and an abuse of the trial Court's discretion.  Petitioner raised four additional assignments of error in a pro se brief, namely: (1) the trial court's denial of motion to suppress; (2) the trial

court's denial of motion to continue; (3) the trial court's admission of other crimes evidence; and (4) sufficiency of evidence based on the claim that the record is incomplete.  The Louisiana First Circuit of Appeal affirmed the convictions and sentences on September 14, 2011.  **State v. Reaux**, 2011-0443  (La.App. 1 Cir. 9/14/11).

Subsequently, the St. Tammany Parish District Attorney filed a habitual offender bill of information, alleging Mr. Reaux to be a second-felony habitual offender with respect to his armed robbery conviction on count one.  On September 12, 2013, the St. Tammany Parish Court vacated Petitioner's ten year sentence on count one, and resentenced Mr. Reaux to imprisonment for fifty years at hard labor, without the benefit of parole, probation or suspension of sentence. The trial court ordered that this enhanced sentence would run concurrently with his sentences on counts two, three, and four, and with any other sentences Mr. Reaux is currently serving.

Mr. Reaux appealed his sentence to the Louisiana First Circuit Court of Appeal which was affirmed on September 19, 2014.  **State v. Reaux**, 2014-0330 (La.App. 1 Cir. 9/14/14).

Petitioner filed an Application for Post-Conviction Relief on October 6, 2014 which was denied on November 6, 2014.  Petitioner then filed Notice of Intent to seek Writs and a return date was set for January 22, 2015.  Petitioner filed a Supervisory Writ to the 1st Circuit Court of Appeal which is now pending.  No. 2014-_____.

Petitioner then obtained "Newly Discovered Facts" on March 26, 2015 and May 28, 2015.  See Exhibit's "1," "2," "A," and Exhibit "B."  Petitioner then filed a

successive Application for Post-Conviction Relief under La.C.Cr.P. Art. 930.8(A)(1) on June 15, 2015.

After further investigations, petitioner obtained signatures from all the Judges in the 22nd Judicial District Court and had Mary Ann Sherry, CDE, a Certified Document Examiner look over the two affidavits for petitioner's arrest and she came to the conclusion that no Judge, nor Commissioner signed the affidavits for petitioner's arrest, which makes the arrest an illegal arrest, and all that followed illegal. Petitioner then filed a timely Successive Application for Post-Conviction Relief under La.C.Cr.P. Art. 930.8(A)(1) on November 6, 2015.

On January 4, 2016 Judge Hand dismissed Petitioner's application for Post-Conviction Relief citing that the affidavit for his arrest was signed by Commissioner *Pro Tempore* Judge Donald Fendlason. Petitioner then filed a Motion for Appeal and Notice Requesting Return Date.

Petitioner also sent copies of Judge Donald Fendlason signatures and the two affidavits for probable cause to Mary Ann Sherry the Board Certified Document Examiner for examination and on January 19, 2016 she determined that neither of the signatures of Judge Donald Fendlason matched the signatures on the warrants for arrest for petitioner. See Exhibit "3".

The return date has not been sent back to petitioner as of this date and in the interest of timeliness petitioner submitted his Supervisory Writ to the 1st Circuit Court of Appeal on January 25, 2016 which was denied on March 21, 2016.

Petitioner now timely submits this Supervisory Writ of Review on April 12, 2016.

**STATEMENT OF THE FACTS**

### A. Slidell

On April 17, 2009, Adolfo Castro was working at the Slidell Game Stop when a masked perpetrator robbed him, wielding a box cutter.  R. p. 1362-1363, 1367.  Mr. Castro stated that around closing time (9 p.m.) "somebody came into the store with what looked like a mask at that time and threw a black mesh bag at me and said, 'Put all the money in the bag.'" R. p. 1369.  Castro described the perpetrator as a black male, approximately 6 foot and 6 inches in height, wearing a black baseball cap with a yellow bill, blue jeans, a long-sleeve shirt, and a mask that looked like a sleeve that was cut out of a t-shirt.  R. pp. 1369-1370.  The robber had what appeared to be a rag wrapped around his right arm.  The perpetrator took approximately $813 cash and five Wii points cards.  R. pp. 1334, 1379.

Mr. Castro explained the system Game Stop uses to price merchandise.  The store receives merchandise in numbered boxes.  The employee types the box number into a Game Stop Computer application, which provides an inventory of the items in that box and their respective prices and item numbers.  R. p. 1363.  Price stickers are generated, which include a description of the item, the date the price tag was printed, and the initials of the manager working on that date.  R. pp. 1365-1366.  The State introduced Exhibits No. 1 and 2—photographs of the Wii point cards that were recovered from Mr. Reaux's car.  Exhibit 2 is a close up of the price tag on the card containing the following information: (1) the type of merchandise "Wii Points Card 2000," and item #79, (3) numbers 040309 and (4) the letters ACC.  Recognizing the date and his own initials, Mr. Castro identified the Points cards depicted in Exhibit No. 1 and 2 as merchandise that he set out for

display at the Slidell Game Stop and was subsequently stolen during the armed robbery. R. pp. 1366-1367.

State introduced Exhibit 3, which Mr. Castor described as a "Sleeve cut out of a t-shirt." The State showed Mr. Castro and introduced into evidence, Exhibit No. 4—Surveillance footage from an Academy Sports Store near the Game Stop which depicted an African American male, wearing a black backpack and a black baseball cap with a yellow bill getting into a white Monte Carlo vehicle. R. pp. 1379-1384. Although Mr. Castro indicated that the male in the surveillance footage was the same person who robbed the Game Stop, he never identified Mr. Reaux as the robber. R. p. 1396.

Officer McNulty of the Slidell Police Department was called to the scene of the April 17th Robbery in Slidell and interviewed Adolfo Castro, Chris Jackson, and Jack Douglas, a non-employee witness. Mr. Douglas described the perpetrator leaving in a vehicle which was the same color but a different make and model type than the vehicle seen in the Academy Sport surveillance video that was introduced during Mr. Castro's testimony. R. pp. 1422, 1425.

The Slidell Police Department gathered forensic evidence from the store including a partial fingerprint and a latent palm print. R. pp. 1431, 1435; However, Sgt. Bobby Campbell, an expert in fingerprint analysis and crime scene investigation analyzed the three exhibit and found "no identifiable prints," meaning the prints were not of sufficient quality to render further testing for identification reliable. R. pp. 2519, 2525, 2529, 2535-2536. The Slidell Police did not attempt to collect contact DNA swabs from the crime scene because there was no evidence that the perpetrator directly touched anything while in the store. R. p. 2538.

### B. Covington

Joel Vogt explained that the black fabric on the perpetrator's arms extended down his arm, covered his right hand, and that he was extremely cautious not to touch anything in the store.  R. p. 1547.  The District Attorney showed Mr. Vogt pictures, including Photograph No. 41, which depicted a person wearing a white shirt and "fabric that could have been coming out of his shirt, covering his face."  R. p. 1473.  Exhibit No. 40 depicted a person from the waist down holding a backpack which Mr. Vogt said was "very similar" to the backpack he described the perpetrator having during the robbery.  R. p. 1473.

At trial, the State introduced evidence of five robberies, which occurred at Game Stop locations outside the jurisdiction of St. Tammany Parish in Walker, Denham Springs, Marrero, Harvey, and Hammond.  The "other crimes" evidence was introduced through the Petitioner's audio-recorded statement to St. Tammany Parish law enforcement officers and through live testimony of police officers.

### C. Mandeville

David Vigo is the manager of the Game Stop in Mandeville, where he has worked since 2007.  R. p. 2162.  Mr. Vigo was handling the cash register on the night Mr. Reaux was arrested near the Mandeville store.  R. p. 2168.

### D. Testimony regarding the investigation

Sergeant Patrick McCormick of the St. Tammany Parish Sheriff's Office explained how Mr. Reaux was apprehended around 8 p.m. on April 20, 2009.  Lieutenant McCormick was part of a multi-jurisdictional task force investigating a string of armed robberies that had occurred at Game Stop/EB Games in Slidell Covington, and other stores in Southeast Louisiana.  R. pp. 1578-1579.  McCormick

learned from other law enforcement officers that the perpetrator was an extremely tall, black male, who wore a black baseball cap, carried a black backpack, which he used to carry his "loot," and wielded a box cutter or utility knife.  R. p. 1580.  The perpetrator carried out the robberies near the stores' closing time, which was 9 p.m. on all days except Sunday, when the stores closed at 6 p.m.  In one robbery, a white Chevy Monte Carlo was used.  R. p. 1580.

Sgt. McCormick determined that there were three EB Games/Game Stop stores in St. Tammany Parish, and the only store that had not been robbed was the Mandeville store.  R. pp. 1581-1582.  Consequently, McCormick conducted a surveillance operation across the street from the Mandeville Game Stop to try to catch the robber in the act.  R. p. 1582.  Using his personal binoculars, McCormick witnessed a tall black male wearing a dark hat and a white t-shirt emerge from an area of trees and shrubbery between the Game Stop and an adjacent Business-Bippo's Dental Clinic.  As a young woman exited the Game Stop, McCormick saw the subject step back, then after that woman got in a car, the subject stepped back into the light and began looking around.  R. p. 1596.  The subject and the officer made eye contact from over 1000 feet away, and the subject began walking past the front of the businesses.  R. p. 1597.  Within minutes, another police officer, Noel Forrester stopped the subject, who turned out to be Mr. Reaux.  R. p. 1599.  McCormick followed Reaux, observed him talking to Officer Forrester, and upon seeing him wearing a black backpack, and shifting his feet back and forth nervously, Lr. McCormick decided to restrain Mr. Reaux by handcuffing him from behind.  R. p. 1603.

The police soon determined that Mr. Reaux had arrived in a white Monte Carlo vehicle.  R. p. 1606.  McCormick and Forrester secured Mr. Reaux in Deputy

Forrester's patrol unit and were standing outside the unit talking when McCormick noticed a "little black piece of plastic" under the left rear tire of the police nit. McCormick also observed a broken box cutter on the hood of Officer Forrester's unit and determined that the black piece of plastic was part of the box cutter. R. p. 1610. McCormick also saw a black knit cap lying on the hood of Forrester's police unit, which was found somewhere on Mr. Reaux's person. R. p. 1613.

When Mr. Reaux was arrested he was wearing white t-shirt, gray sweatpants, a b lack Pittsburgh Pirates cap, and had a piece of light gray fabric wrapped around his neck, that was partially tucked under his t-shirt. R. pp. 1618-1619. Sgt. McCormick advised Mr. Reaux that he was under arrest for attempted armed robbery of the Mandeville Game Stop. R. p. 1620. He was also carrying a black backpack. Sgt. McCormick testified that Mr. Reaux did not have a knife or box cutter on him at the time.

Deputy William Noel Forrester of the St. Tammany Parish Sheriff's Office assisted Sgt. McCormick with surveillance of the Mandeville Game Stop on April 20, 2009, and initially stopped Mr. Reaux as he was walking away from the Game Stop towards his vehicle. Deputy Forrester conducted a pat down frisk of Mr. Reaux and felt a hard object around his waistband, at which time Mr. Reaux moved his hands from behind his back to the front and grabbed his shirt. Deputy Forrester got Mr. Reaux's hands back behind him and then as he attempted to raise his shirt, Mr. Reaux jerked his body and the item in his waistband fell to the ground. R. p. 1744. During the pat down, Deputy Forrester also recovered a black or dark blue knit cap from the left pocket of Mr. Reaux's sweat pants. R. p. 1746. Mr. Reaux complied with the deputies every command during his stop and arrest.

Lt. George Cox of the St. Tammany Parish Sheriff's Office and Sgt. Sean McClain of the Slidell Police Department were the first law enforcement officers to interrogate Mr. Reaux after his arrest.  R. pp. 2362, 2366.  Mr. Reaux was orally advised of his Miranda rights and also signed a written waiver of rights form.  R. p. 2366.  The interrogation began at 9:27 p.m. on April 20, 2009.  R. p. 2369.  Lt. Cox explained that Mr. Reaux told them he was not involved in any robberies, and confirmed that detectives from Jefferson Parish spoke to Mr. Reaux for over an hour and a half with the same results.  R. pp. 2370-2372.

On the night of April 20, 2009, Detective Vermall of the Jefferson Parish Sheriff's Office (JPSO) learned that the St. Tammany Sheriff's Office had arrested a suspect for the robberies of multiple Game Stops in that parish.  Detective Vermall and former JPSO Detective John Carroll travelled to St. Tammany Parish to interview the suspect, Mr. Reaux.  R. p. 1786.  Mr. Reaux was cooperative, and denied any involvement in the robberies during the hour-long interview with Jefferson Parish detectives.  As a result, the detectives stopped the interview and began to make preparations to search Mr. Reaux' residence, the dete4ctives were called back to the St. Tammany Sheriff's Office because the St. Tammany detectives claimed that Mr. Reaux had confessed to the robberies in Jefferson Parish.  R. p. 1790.  During their second encounter with Mr. Reaux, Detectives Vermall and Carroll showed Mr. Reaux a still photograph of the robbery suspect obtained from video surveillance of the Marrerro Game Stop and Mr. Reaux advised that was him in the photograph.  R. p. 1790.

Lt. Cox, still not satisfied that he received his version of the "truth," continued to interrogate Mr. Reaux after the JPSO detectives had left.  R. p. 2372.  Lt. Cox showed Mr. Reaux a still image captured from the video surveillance in one

of the Game Stop robberies from Jefferson Parish and informed him that he also had video surveillance from the Academy Sports near the Slidell Game Stop.  Mr. Reaux continued to deny any involvement.  R. p. 2375.  Mr. Reaux was taken out of the interrogation room and was being brought to the jail to be booked when, according to Lt. Cox, he told the detectives, "Let's go back. I'll tell you everything." R. p. 2376.  Mr. Reaux then gave a recorded statement that began at 4:07 a.m. and ended at 5 a.m. on April 21, 2009.  R. p. 2417.

Lt. Cox explained that Mr. Reaux gave a second recorded statement on April 22, 2009, to Sergeant McLain of the Slidell Police Department.  Lt. Cox, however, characterized the second statement as "inaccurate" and explained how he had Mr. Reaux recant the second statement while in jail.  R. pp. 2379-2380.

Detective Corey Crowe of the St. Tammany Parish Sheriff's Office obtained and executed search warrants for Petitioner's home in Hammond and his vehicle, a two-door 2006 Chevrolet Monte Carlo.  R. pp. 2454, 2458.  At Mr. Reaux's home, Crowe recovered a play station gaming console, one or two box cutters from the mantel of the living room, and another box cutter in a bedroom.  R. p. 2486. Detective Crowe did not determine whose room the box cutter was found in, nor did he inquire if the other occupants of the apartment used box cutters in their work.  R. p. 2487.  None of the box cutters were tested for fingerprints or DNA.  R. p. 2496.

Detective Crowe seized the following items from Petitioner's car: (1) Wii points card; (2) a Wii video game disk with a price tag marked DAG 3-29-09 (R. p. 2467); (3) a box with USPS shipping label addressed to Game Stop located in Walker Louisiana (R. p. 2469); (4) a Rayman game (R. p. 2470); and (5) a skull cap type hat (R. p. 2473).  Detective Crowe identified a USPS tacking statement, which showed

that the package found in petitioner's car was received by Travis Bousquet on April 14, 2009.  The State alluded to prior trial testimony that the Walker Game Stop had been robbed on April 14, 2009.  R. p. 2470.  Detective Crowe also recovered 8 Wii point car boxes, five of which contained a label reading "ACC 04/03/09."  Crowe testified that this label was consistent with Game Stop practice wherein the employee who put the item for display as merchandise would sign their initials and the date and that the five particular labels would suggest that Adolfo Castro put them out for display on April 3, 2009.  R. p. 2472.  No fingerprints were found on the Wii point card boxes.  R. p. 2473.  Crowe also recovered an "Alpha s magnetic hand key," which he explained is used by Game Stop to remove security tags from merchandise.  R. p. 2481.

## CLAIMS FOR RELIEF

### #1.

**Petitioner was denied the a Fair Trial Due to Prosecutorial Misconduct in Violation of his Constitutional Right to Due Process.**

### #2

**Petitioner was denied the effective assistance of counsel guaranteed by the Sixth and Fourteenth Amendments to the United States Constitution when trial counsel failed to object or challenge the trial court's subject matter jurisdiction.**

## CLAIM #1

**Petitioner was denied the a Fair Trial Due to Prosecutorial Misconduct in Violation of his Constitutional Right to Due Process.**

In the present case Petitioner contends that his Constitutional Right to Due Process was violated due to Prosecutorial Misconduct.  See Exhibit "A" (A copy of the signatures of all the Judges, Commissioner, and even the City Court Judge in Slidell.  It is a proven fact that none of these judges signed these two affidavits for petitioner's arrest.

**Standard of Review**

When presenting a claim of Prosecutorial Misconduct, a Petitioner must show that the actions of the prosecutor so infected the trial with unfairness as to make the resulting conviction a denial of Due Process, and the Prosecutorial Misconduct must be of sufficient significance to result in the denial of the defendant's right to a fair trial. **Kutzner v. Johnson**, 242 F.3d 605, 609 (5th Cir. 2001). **United States v. Bagley**, 473 U.S. 667, 676, 105 S.Ct. 3375, 87 L.Ed.2d 481 (1985).

To prevail on this claim Reaux must prove that: (1) the actual falsity of a witness's testimony, (2) that the testimony was material, and (3) that the prosecution knew the witness's testimony was false. **Giglio v. United States**, 405 U.S. 150, 153-4, 92 S.Ct. 763, 31 L.Ed.2d 104 (1972); **Fuller v. Johnson**, 114 F.3d 491, 496 (5th Cir. 1997); **Koch v. Pucket**, 907 F.2d 524, 531 (5th Cir. 1990).

The falsity is the testimonies of Detective Corey Crowe and Sgt. Patrick McCormick's questionable accounts as to the circumstances surrounding the alleged attempted armed robbery. The testimonies were material as it pertains to the illegal stop, search and arrest of petitioner. The prosecution knew that the notaries were not certified with the state (as it was a standard practice in St. Tammany Parish) and the discrepancies in Crowe's and McCormick's testimonies compared to the basic information in the two affidavits for arrest.

Petitioner was prejudiced as to the illegal stop, arrest and all that followed which would be considered "fruit from the poisonous tree."

As explained in **United States v. Morena**, 547 F.3d 191, 193-94 (3rd Cir. 2008):

Improper prosecutorial conduct rises to the level of constitutional error "when the impact of the misconduct is to distract the trier of fact and thus raise doubts as to the fairness of the trial." **Marshall v. Hendricks**, 307 F.3d 36, 67 (3rd Cir. 2002). The test for prosecutorial misconduct is whether the conduct "so

infected the trial with unfairness as to make the resulting conviction a denial of due process" in light of the entire proceeding. (quoting **Donnelly v. DeChristoforo**, 416 U.S. 637, 643, 94 S.Ct. 1868, 40 L.Ed.2d 431 (1974))

Similarly here, Petitioner's trial was infected with unfairness which makes his

conviction a denial of due process. The impact of the misconduct in petitioner's

stop, arrest, search, and trial was totally illegal and thus warrants reversal. The

police in this case should be sanctioned for their conduct in the way they handled

this case.

See additionally, **United States v. Stanert**, 762 F.2d 775 where:

"[D]efendant was convicted of conspiracy to possess with intent to distribute a controlled substance, a violation of 21 U.S.C.S.§ 846, and he sought review. The court affirmed in part and vacated and remanded, finding that defendant was entitled to evidentiary hearing to challenge the validity of the search warrant. The court found that, under the totality of the circumstances as set forth in the affidavit, the district court had a substantial basis for concluding that probable cause existed to search defendant's residence. The court found, however, that defendant had made a sufficient showing with respect to four inaccuracies or omissions that negated the facial showing of probable cause. Defendant also showed that the affidavit purged of the inaccuracies and supplemented by the omissions would not be sufficient showing with respect to four inaccuracies or omissions that negated the facial showing of probable cause. Defendant also showed that the affidavit purged of the inaccuracies and supplement by the omissions would not be sufficient to support a finding of probable cause, which entitled him to a Franks hearing. The court found that defendant failed to make a sufficient preliminary showing that the affidavit misrepresented or invented information supplied by a confidential informant because it was reasonable that the affiant reported the informant's tip in good faith without any reckless disregard." "The Outcome was that the 9th Circuit affirmed in part but vacated defendant's conviction and remanded for an evidentiary hearing on the warrant affidavit because defendant had made a sufficient showing of inaccuracies or omissions that negated the facial showing of probable cause."

No district attorney would have **not** found these warrants questionable as

stated in previous application concerning the Notaries who were not certified with

the state, and the fact that no judge signed them. At the very least, petitioner has

made a substantial showing that these affidavits have inaccuracies and/or

omissions concerning the validity of the certifications of the notaries and the

signatures of the judge.  They also have several inconsistencies made by Officer Forrester and Detective McCormick.

Petitioner has made a substantial showing that cumulatively, these affidavits are misrepresented by the state and should have been quashed.

**#2**

**Petitioner was denied the effective assistance of counsel guaranteed by the Sixth and Fourteenth Amendments to the United States Constitution when trial counsel failed to object or challenge the trial court's subject matter jurisdiction.**

### CLAIM #2
### Ineffective Assistance of Counsel in failing to
### challenge trial court's subject matter jurisdiction.

Petitioner contends there was no jurisdiction of the subject matter for the trial court because the district attorney, in bad faith, arbitrarily and unreasonably filed a bill of information charging Petitioner with the offense of attempted armed robbery where there was no evidence to support any such charge.  Trial Counsel's knowledge of there being no evidence to base the bill of information on was ineffective for failing to challenge or object to the jurisdiction.

**Standard of Review**

The Sixth Amendment to the United States Constitution guarantees the right to effective assistance of counsel.   **Strickland v. Washington**, 466 U.S. 668, 694, 104 S.Ct. 2052, 2068, 80 L.Ed.2d 674 (1984).  A defendant must show: (1) that trial counsel's performance was defective, and (2) a reasonable probability that but for the deficient performance, the outcome of the proceedings would have been different.

A prisoner's challenge to [the] indictment is not appropriate unless the indictment was so defective that the convicting court had no jurisdiction.  **Williams**

**v. Collins**, 16 F.3d 626, 637 (5th Cir.), cert. denied, 512 U.S. 1289, 115 S.Ct. 42, 129 L.Ed.2d 937 (1994); **Alexander v. McCotter**, 775 F.2d 595, 598 (5th Cir 1985);  **Liner v. Phelps**, 731 F.2d 1201, 1203 (5th Cir. 1984); **Branch v. Estelle**, 631 F.2d 1229, 1233 (5th Cir. 1980).   "Due deference [must be given] to the state court's interpretation of its own law that a defect of substance in an indictment [bill of indictment] …deprive a state trial court of jurisdiction." **McKay v. Collins**, 12 F.3d 66, 69 (5th Cir.), reh'g granted on other grounds, 12 F.3d 70 (5th Cir.), cert. denied sub nom., **Williams v. Scott**, 513 U.S. 854, 115 S.Ct. 157, 130 L.Ed.2d 95 (1994). Louisiana courts have held that Article 1 § 2 of the Constitution provides that "no person shall be deprived of life, liberty, or property, except by due process of law," and that … the essence of due process [is] "protection from an arbitrary and unreasonable action." **Plaquemines Parish Commission Council v. Perez**, 379 So.2d 1373, 1377 (La. 1980).  Due Process is also defined by the Constitution itself to require impartiality.  Article 1 § 22 provides: "All courts shall be open, and every person shall have an adequate remedy by due process of law and justice, administered without denial, partiality, or unreasonable delay, for injury to him in his person, property, reputation, or other rights."

Jurisdiction over the subject matter is defined by C.C.P. 2 as "the legal power and authority of a court to hear and determine a particular class of actions or proceedings…"  Article 5 § 10 of the Constitution confers upon the appellate courts "original jurisdiction of all civil and criminal matters, except as otherwise authorized by the Constitution."  See **Bowen v. Doyal**, 259 La. 839, 253 So.2d 200 (1971).  A district attorney is granted his/her plenary powers by Article 5 § 26 of the Constitution, which provides: "(B) Powers. Except as otherwise provided by this Constitution, a district attorney, or his designated assistant, shall have charge of

every criminal prosecution by the state in his district, be the representative of the state before the grand jury in his district, and be the legal advisor to the grand jury. He shall perform other duties provided by law."  A criminal prosecution is defined by C.Cr.P. 381 as a prosecution instituted "for the purpose of bringing to punishment one who has violated a criminal law."  Finally, the jurisdiction of the district attorney to prosecute those who violate state criminal statutes is exclusive; it can only be constrained or curtailed when it operates to the prejudice of a contrary constitutional mandate, and even then only with due deference to the district attorney's constitutional prerogative.  **City of Baton Rouge v. Short**, 345 So.2d 37, 40 (La. 1977).

A district attorney's investigation can be curtailed when the district attorney abuses the powers of his office by subjecting an individual to a harassing investigation without any good faith belief that the individual has committed any crime.  **Matter Under Investigation Grand Jury No. 1**, 875 So.2d 33, 36 (La. 5/14/04); **Compare In re Grand Jury Subpoenas Issued to Certain Members of Orleans Levee District**, 95-kk-0042, 648 So.2d 864 (La. 1995) (per curiam).  The issuance of an injunction is warranted in such cases because "there [is] a federal right to be free of a bad faith prosecution.  "**Plaquemines Parish Comm'n Council v. Perez**, 379 So.2d 1373, 1385 (La. 1980) (footnote omitted), discussing **Shaw v. Garrison**, 467 F.2d 113 (5th Cir. 1972).  A plaintiff who seeks to enjoin such "bad faith" investigation must show, at a minimum, that he is threatened with an investigation which is, unnecessarily abusive, harassing or illegal, and without any possibility of ultimate indictment supported by probable cause for prosecution.  **Perez**, supra, 379 So.2d at 1385.

In the present case, trial counsel failed to enjoin this state criminal prosecution before the institution of criminal proceedings by bill of information. Had counsel challenged the arbitrary and unreasonable prosecutorial misconduct, there would not have been a bill of information charging Petitioner with an attempt armed robbery for which there was no supporting evidence. If by no other means, counsel should have raised the lack of subject matter jurisdiction prior to trial by motion to quash. C.Cr.P. Art. 531. During a pretrial hearing, a record of evidence would have been had where Petitioner could have proved that the whole purpose of the district attorney's investigation was to harass Petitioner without any good faith belief that Petitioner had committed the offense of attempted armed robbery.

Prior to the filing of a bill of information, the district attorney was armed with Detective Corey Crowe and Sgt. Patrick McCormick's questionable accounts as to the circumstances surrounding the alleged attempted armed robbery. According to Sgt. McCormick, "on April 20, 2009, at approximately 1950 hours, [he] was conducting surveillance from Macaroni Grill parking lot on Highway 190 in Mandeville! The surveillance was a result of multiple armed robberies at Game Stop and EB Game locations throughout the area. Ibid. He had knowledge of the description of the alleged perpetrator. Ibid. At approximately 2006 hours [he] noted a subject matching the description ... walk from between business. Ibid. Sgt. McCormick was spotted by the subject whom immediately fled to the rear of the building where [the subject] was detained by Detective Forester. Ibid. A pat down for weapons revealed items utilized in the crimes. Ibid. The vehicle hidden by the suspect also fit the vehicle description. Ibid. The suspect's claim of his business in the area were disproved." Ibid. (Exhibit "A" The report from Mary Ann Sherry,

Certified Document Examiner who states that none of the Judges in the 22nd Judicial District Court, nor the Commissioner in the 22nd Judicial District Court, and not even the City Court judge in Slidell who is sometimes used, signed these two affidavits for arrest.  Petitioner should never have been stopped, arrested, searched and most importantly, tried for these robberies.

According to Detective Crowe, however, "on Monday April 20, 2009, about 2007 hours, Sgt. Patrick McCormick of the St. Tammany Sheriff's Department observed a white Monte Carlo, parked in a nearby parking lot, near the Game Stop store on Highway 190 in Mandeville, Louisiana. (Exhibit "2" Affidavit for Arrest Signed by Detective Corey Crowe).  Sgt. McCormick observed the vehicle to be occupied by a black male driver.  Ibid.  Sgt. McCormick began surveillance of the suspect and observed him exit the vehicle and began walking towards the Game Stop Store.  Ibid.  The suspect was observed to fit the physical and clothing description given during the prior robberies.  Ibid.  Contact was made with the suspect, at which time he was observed to be evasive with deputies as he threw a box cutter to the ground away from him.  Ibid.  The suspect was also discovered to be in possession of a black mesh "Jansport" backpack and was also wearing grey sweat pants and a white tee shirt.  Ibid.

As the Court can observe from the face of the arrest warrants, both are in direct contrast.  While Sgt. McCormick alleged that Petitioner hid the vehicle, Detective Crowe alleged that they observed Petitioner occupying the vehicle in a nearby parking lot.  If Petitioner was first observed sitting in the vehicle, then why did Sgt. McCormick allege that Petitioner was observed walking from between businesses.  In another instance, Sgt. McCormick alleged that when Petitioner observed Sgt. McCormick, Petitioner "immediately fled to the rear of the building

where [the subject] was detained by Detective Forrester; but Detective Crowe alleges that Petitioner only became evasive after contact was made and that being relative to throwing a box cutter to the ground away from Petitioner.   Sgt. McCormick, however, made no reference to Petitioner possessing or throwing a box cutter.   To add, Sgt. McCormick noted that Petitioner's claim of his business in the area were disproved; but Detective Crowe's arrest warrant never mentioned that this instant discussion occurred, and there was no mention as to what Petitioner's business in the area was.

Moreover, when does it become unlawful to be in a business area or to patronize a particular business?

It is baffling in relation as to why there are two arrest warrants of one incident in the first place.   Both being written by two different officers who contradict each other's version of the facts.   The only reasonably explanation is that the officers were trying to figure out a way to explain stopping and harassing Petitioner for these crimes, without probable cause, and pinning an attempt armed robbery on him in order to charge him for the rest of these crimes.   It is clear from the trial record that Petitioner never went inside of the Game Stop Store.

No district attorney would have not found these warrants questionable.   In fact, no reasonable minded district attorney would have, in good faith, pursued a prosecution of Petitioner for the crime of attempted armed robbery of a place of business under these circumstances.   Specifically, contradicting warrants of one incident.   Petitioner not being in possession of any weapons.   Petitioner not being in possession of a mask which, as in the other robberies the perpetrator wore a mask.   Petitioner never even stepped foot on the Game Stop Store's property as both warrants clearly established this fact.   There was nothing presented in either

warrant to justify a man of average knowledge that Petitioner had committed, was about to commit, or was in the process of committing an attempted armed robbery.

The sole purpose of the district attorney pursuing these charges against Petitioner was to harass him.  It is clear that the district attorney in bad faith, unnecessarily abused his authority.  The only question was whether counsel's deficient performance of not enjoining and/or not filing a motion to quash on the basis of Petitioner's due process rights of the 14th Amendment to the United States Constitution were violated when his right to be free of a bad faith prosecution was transgressed; prejudiced Petitioner.  Petitioner avers that it is clear from the face of the record that he was prejudiced as the district attorney lacked the evidence to support probable cause to file a bill of information with any possibility of ultimately obtaining a conviction.

Based on the pretense that Petitioner had committed the robberies of several Game Stop Stores in multiple Parishes in close geographical locations, the district attorney mislead a jury into obtaining a conviction for the crime of attempted armed robbery of the Game Stop Store located on Highway 190 in Mandeville, Louisiana.  There was absolutely no reliable evidence presented by the district attorney to slightly suggest that Petitioner committed an attempted armed robbery of this store.  The only evidence presented, suggested that at best, Petitioner was in the area of the Game Stop Store located in Mandeville, Louisiana.

Counsel's deficient performance prejudiced Petitioner as this matter could have been resolved pretrial, where the outcome of these proceedings would have been different, instead of having to be resolved in a post-conviction proceeding.

## CONCLUSION

Wherefore, Petitioner contends he has shown that his Constitutional Right to Due Process was violated and that his Constitutional Rights to Effective Assistance of Counsel were violated. Petitioner has shown that both of the affidavits used for arrest warrants were forged on the face of the documents by Detective's using notary numbers that belonged to others as argued in previous petition and that no Judge, nor Commissioner, signed the two affidavits that were used for his arrest which makes the arrest illegal and all that followed, illegal.

## PRAYER FOR RELIEF

Gregory Reaux prays that this Honorable Court grants his Application for Post-Conviction Relief, grants him a proper opportunity to have both of the Arrest Warrants quashed, grants him relief available due to the errors presented herein and any other relief this Honorable Court deems appropriate.

Respectfully Submitted on this 12th day of April, 2016.

Gregory Reaux #574124
Main Prison Walnut #1
Louisiana State Penitentiary
Angola, LA 70712

## AFFIDAVIT/CERTIFICATE OF SERVICE

I, Gregory Reaux, hereby swear and aver that the foregoing is true and correct to the best of my knowledge and belief. I, Gregory Reaux, further swear and aver that a copy of the foregoing has been served upon counsel for the

Respondent, District Attorney, Warren Montgomery — Justice Center, 701 N. Columbia St., Covington, LA  70433 by placing a copy of the same in the United States Mail, properly addressed and postage pre-paid.

Done this 12th day of April, 2016.

Gregory Reaux #574124
Main Prison Walnut #1
Louisiana State Penitentiary
Angola, LA  70712

# State ex rel. Reaux v. State, 2017 La. LEXIS 1668

## Copy Citation

Supreme Court of Louisiana

August 4, 2017, Decided

NO. 2015-KH-2243

**Reporter**

**2017 La. LEXIS 1668** * | 2015-2243 (La. 08/04/17);

STATE EX REL. **GREGORY REAUX** VS. STATE OF LOUISIANA

**Notice:** THIS DECISION IS NOT FINAL UNTIL EXPIRATION OF THE FOURTEEN DAY REHEARING PERIOD.

**Prior History:  [*1]** IN RE: **Gregory Reaux**; - Plaintiff; Applying For Supervisory and/or Remedial Writs, Parish of St. Tammany, 22nd Judicial District Court Div. B, No. 471,010; to the Court of Appeal, First Circuit, No. 2015 KW 1235. ON SUPERVISORY WRITS TO THE TWENTY-SECOND JUDICIAL DISTRICT COURT, PARISH OF ST. TAMMANY.

State v. **Reaux**, 2014 La. App. Unpub. LEXIS 527 (La.App. 1 Cir., Sept. 19, 2014)

**Judges:** Marcus R. Clark, John L. Weimer, Greg G. Guidry, Jefferson D. Hughes, III, Scott J. Crichton, James T. Genovese. Johnson, C.J., n.s.

## Opinion

**PER CURIAM**:

Denied. Relator has previously exhausted his right to state collateral review. *See State ex rel* **_Reaux_** _v. State_, 15-1292 (La. 9/6/16), 204 So.3d 200.

Johnson, C.J., n.s.

PRIORITY
★ MAIL ★

PRIORITY ®

★ MAIL ★

FOR DOMESTIC AND INTERNATIONAL USE

VISIT US AT USPS.COM
Label 106A, Jan 2015

Label 228, July 2013

FROM: Gregory Redeaux #5 741224
Main Prison Pine-4
Main Prison Pine-4
Louisiana State Pen
Angola LA
70712
of LA.
TO: Eastern District Court
New Orleans LA 70130
500 Poydras St RmC-151
New Orleans LA, 70130

United States Postal Service ®
SIGNATURE CONFIRMATION™

2308 3250 0000 1973 8667

MEDIUM FLAT RATE BOX
FOR DOMESTIC AND INTERNATIONAL USE