**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF LOUISIANA**

| | |
|---|---|
| **GREGORY REAUX** | **CIVIL ACTION** |
| **VERSUS** | **NO. 17-8690** |
| **BURL CAIN** | **SECTION: "E"(1)** |

## REPORT AND RECOMMENDATION

This matter was referred to this United States Magistrate Judge for the purpose of conducting a hearing, including an evidentiary hearing, if necessary, and submission of proposed findings of fact and recommendations for disposition pursuant to 28 U.S.C. § 636(b)(1)(B) and (C) and, as applicable, Rule 8(b) of the Rules Governing Section 2254 Cases in the United States District Courts.  Upon review of the record, the Court has determined that this matter can be disposed of without an evidentiary hearing.  See 28 U.S.C. § 2254(e)(2).  Therefore, for all of the following reasons, **IT IS RECOMMENDED** that the petition be **DISMISSED**.

Petitioner, Gregory Reaux, is a state prisoner incarcerated at the Louisiana State Penitentiary in Angola, Louisiana.  On July 30, 2010, he was convicted of three counts of armed robbery and one count of attempted armed robbery.[1]  On August 12, 2010, he was sentenced on each count to a term of term of ten years imprisonment without benefit of probation, parole, or suspension of sentence, and it was ordered that those sentences run consecutively.[2]  On September 14, 2011, the Louisiana First Circuit Court of Appeal affirmed his convictions and sentences.[3]  The

---

[1] State Rec., Vol. 13 of 27, transcript of July 30, 2010, pp. 288-89; State Rec., Vol. 1 of 27, minute entry dated July 30, 2010; State Rec., Vols. 1 and 2 of 27, jury verdict forms.

[2] State Rec., Vol. 13 of 27, transcript of August 12, 2010, p. 19; State Rec., Vol. 1 of 27, minute entry dated August 12, 2010.

[3] State v. Reaux, No. 2011 KA 0443, 2011 WL 4484365 (La. App. 1st Cir. Sept. 14, 2011); State Rec., Vol. 14 of 27.

Louisiana Supreme Court then denied his related writ application on April 9, 2012,[4] and his request for reconsideration on June 22, 2012.[5]

On September 12, 2013, petitioner was found to be a second offender and was resentenced as such on the first count of armed robbery to a concurrent term of fifty years imprisonment without benefit of probation, parole, or suspension of sentence.[6]  On September 19, 2014, the Louisiana First Circuit Court of Appeal affirmed that habitual offender adjudication and sentence.[7]

On October 6, 2014, petitioner, with the assistance of counsel, filed an application for post-conviction relief with the state district court.[8]  That application was denied on November 6, 2014.[9] His related writ applications were then likewise denied by the Louisiana First Circuit Court of Appeal on February 9, 2015,[10] and June 2, 2015,[11] and by the Louisiana Supreme Court on September 6, 2016.[12]

In the interim, petitioner also sought state post-conviction relief on two additional occasions.  His second application, which he filed *pro se*,[13] was denied by the state district court on July 13, 2015,[14] and his related writ applications were then likewise denied by the Louisiana First Circuit Court of Appeal on November 18, 2015,[15] and by the Louisiana Supreme Court on

---

[4] State v. Reaux, 85 So. 3d 693 (La. 2012); State Rec., Vol. 14 of 27.
[5] State v. Reaux, 90 So. 3d 449 (La. 2012); State Rec., Vol. 14 of 27.
[6] State Rec., Vol. 14 of 27, minute entry dated September 12, 2013.
[7] State v. Reaux, No. 2014 KA 0330, 2014 WL 4667603 (La. App. 1st Cir. Sept. 19, 2014); State Rec., Vol. 17 of 27.
[8] State Rec., Vol. 18 of 27.
[9] State Rec., Vol. 18 of 27, Judgment dated November 6, 2014.
[10] State v. Reaux, No. 2014 KW 1782 (La. App. 1st Cir. Feb. 9, 2015); State Rec., Vol. 18 of 27.
[11] State v. Reaux, No. 2015 KW 0424 (La. App. 1st Cir. June 2, 2015); State Rec., Vol. 22 of 27.
[12] State *ex rel.* Reaux v. State, 204 So. 3d 200 (La. 2016); State Rec., Vol. 22 of 27.
[13] State Rec., Vol. 17 of 27.
[14] State Rec., Vol. 26 of 27, Judgment dated July 13, 2015.
[15] State v. Reaux, No. 2015 KW 1235 (La. App. 1st Cir. Nov. 18, 2015); State Rec., Vol. 26 of 27.

August 4, 2017.[16]  His third application, which he also filed *pro se*,[17] was denied by the state district court on January 4, 2016,[18] and his related writ applications were then denied by the Louisiana First Circuit Court of Appeal on March 21, 2016,[19] and by the Louisiana Supreme Court on September 6, 2017.[20]

While that final writ application was still pending before the Louisiana Supreme Court, petitioner filed the instant federal application seeking habeas corpus relief.[21]  The state has filed a response conceding that the application is timely but arguing that federal relief is not warranted.[22]

### **Facts**

On direct appeal, the Louisiana First Circuit Court of Appeal summarized the facts of this case as follows:

> In March and April of 2009, Jefferson and St. Tammany Parish police officers were investigating a string of robberies occurring near closing time at several Game Stop video game stores located in those areas.  The instant case involves charges arising from the St. Tammany Parish offenses.
>
> Specifically, on April 17, 2009, a robbery occurred at the Game Stop store located in Slidell, Louisiana, at approximately 9:00 p.m., just minutes before the store's closing time.  Store employees Adolfo Castro (the victim in count one) and Chris Jackson were present at the time of this robbery.  As Castro testified during the trial, the perpetrator was armed with a blue box cutter with the blade extended and his face was covered with a "sleeve cut-out of a T-shirt."  The perpetrator, a black male about six feet and six inches tall, was wearing blue jeans, a T-shirt, and a black cap.  Castro testified that he did not take the incident seriously until he saw the box cutter.  He complied with the perpetrator's demand that he put the money from both cash registers, about $813.00, into the perpetrator's black mesh bag.  The perpetrator also demanded that Castro check the store safe for more money, but it was empty.  He then demanded that Castro put Wii Point Cards in the bag and he complied.[FN1]  The perpetrator took the bag and exited the store.

---

[16] <u>State *ex rel.* Reaux v. State</u>, 223 So. 3d 523 (La. 2017); State Rec., Vol. 26 of 27.
[17] State Rec., Vol. 17 of 27.
[18] State Rec., Vol. 27 of 27, Judgment dated January 4, 2016.
[19] <u>State v. Reaux</u>, No. 2016 KW 0158 (La. App. 1st Cir. Mar. 21, 2016); State Rec., Vol. 27 of 27.
[20] <u>State *ex rel.* Reaux v. State</u>, 225 So. 3d 1065 (La. 2017); State Rec., Vol. 27 of 27.
[21] Rec. Doc. 1.
[22] Rec. Doc. 9.

[FN 1]  Nintendo Points Cards are generally sold in the form of codes on scratch-cards providing 1000, 2000, or 3000 Nintendo Points.  Nintendo Points are used to purchase a variety of software on the Wii Shop Channel.

The next day, on April 18, employees of a Game Stop store in Covington, Louisiana, were robbed.  The employees, Ryan Bohn[FN 2] and Joel Vogt (the victims in counts two and three), described the perpetrator as a six-feet, two-to-three inches tall black male wearing light gray sweatpants, a white shirt, a scarf or fabric over his face, and armed with a blue box cutter with the blade extended.  Bohn observed the perpetrator as he pulled the cloth up from around his neck to cover part of his face just before he entered the store.  The perpetrator had a black mesh Jansport school bag and demanded that both employees place money from the cash registers in the bag, and they complied.  Two customers were present at the time and upon his entrance, the perpetrator raised the box cutter and told them to move back.  One of them offered the perpetrator his wallet, but he declined.  Vogt estimated that the perpetrator took a total of about $600.00.

[FN 2]  The record is inconsistent as to the spelling of the last name of this particular victim.  Specifically, the bill of information lists the victim's name as Ryan Bohne, while the spelling used herein is provided in the trial transcript.

On April 20, 2009, defendant, a former Game Stop employee, was arrested as a result of police surveillance at a Game Stop store in Mandeville, Louisiana, that had not yet been targeted during the string of robberies.  After his arrest, defendant confessed to the completed robberies and stated that he planned to also commit robbery at the Mandeville store, but had a change of heart just before he was approached by the police.[23]

## Petitioner's Claims

In this proceeding, petitioner asserts the five following claims:

1.    "Petitioner's Constitutional Rights were violated when the Affidavits were both

       forged on their face and not properly notarized."[24]

---

[23] State v. Reaux, No. 2011 KA 0443, 2011 WL 4484365, at *1-2 (La. App. 1st Cir. Sept. 14, 2011); State Rec., Vol. 14 of 27.
[24] Rec. Doc. 1, p. 30.

2.      "Petitioner's Fifth, Sixth and Fourteenth Amendment rights were violated when the evidence presented during the trial were [sic] contrary to federal and state law and do [sic] not support a criminal conviction."[25]

3.      "Petitioner's due process and the petitioners [sic] right to Self-Incrimination was violated under the Fifth and Sixth Amendment during custodial interrogation."[26]

4.      "Petitioner's constitutional rights of due process and rights to confrontation were violated when the jury heard inadmissible 'other crimes' evidence submitted by the State when the State failed to meet its burden of proof under Prieur and Art. 404(B)."[27]

5.      "Petitioner was denied the effective assistance of counsel guaranteed by the Sixth and Fourteenth Amendments to the United States Constitution when trial counsel failed to object or challenge the trial court's subject matter jurisdiction."[28]

## I.  Procedurally Barred Claims

### A.  Claims 1 and 5

The state argues that petitioner's first and fifth claims were expressly denied by the state courts on procedural grounds and are therefore barred from federal review.  The state is correct.

The United States Fifth Circuit Court of Appeals has held:

> A claim that a state has withheld a federal right from a person in its custody may not be reviewed by a federal court if the last state court to consider that claim expressly relied on a state ground for denial of relief that is both independent of the merits of the federal claim and an adequate basis for the court's decision.  To satisfy the "independent" and "adequate" requirements, the dismissal must "clearly and expressly" indicate that it rests on state grounds which bar relief, and the bar must

---

[25] Id. at p. 38.
[26] Id. at p. 44.
[27] Id. at p. 50.
[28] Id. at p. 60.

be strictly or regularly followed by state courts, and applied to the majority of similar claims. This rule applies to state court judgments on both substantive and procedural grounds.

Finley v. Johnson, 243 F.3d 215, 218 (5th Cir. 2001) (citations omitted).

Here, there is no question that petitioner's first and fifth claims were denied on state procedural grounds in the post-conviction proceedings. Those claims were first raised by petitioner in his second and third state post-conviction applications.[29] On both occasions, in the last reasoned state court opinions addressing those applications, the Louisiana Supreme Court denied relief because petitioner had already exhausted his right to state collateral review by filing the previous counseled state post-conviction application.[30] Although the Louisiana Supreme Court did not cite the provision of state law on which those decisions are based, the applicable provision is obviously La. Code Crim. P art. 930.4(E), which provides: "A successive application shall be dismissed if it raises a new or different claim that was inexcusably omitted from a prior application."

It is clear that La. Code Crim. P. art. 930.4(E) is an independent and adequate state procedural rule sufficient to procedurally bar a claim from federal habeas review. See, e.g., Ardison v. Cain, No. 00-30248, 2001 WL 822445, at *3-4 (5th Cir. June 18, 2001); Bordelon v. Terrell, Civ. Action No. 08-1931, 2010 WL 3325665, at *12 (W.D. La. Aug. 9, 2010), adopted, 2010 WL 3325693 (W.D. La. Aug. 23, 2010); Washington v. Cain, Civ. Action No. 98-0584, 2000 WL 863980, at *3-4 (E.D. La. June 27, 2000).

---

[29] State Rec., Vol. 17 of 27.
[30] State ex rel. Reaux v. State, 223 So. 3d 523 (La. 2017) ("Denied. Relator has previously exhausted his right to state collateral review. See State ex rel. Reaux v. State, 15-1292 (La. 9/6/16), 204 So.3d 200."); State ex rel. Reaux v. State, 225 So. 3d 1065 (La. 2017) ("Denied. Relator has previously exhausted his right to state collateral review. See State v. Reaux, 15-1292 (La. 9/6/16), 204 So.3d 200."); State Rec., Vols. 26 and 27 of 27.

Where, as here, the state courts have rejected a petitioner's claim based on an independent and adequate state procedural rule, "federal habeas review is barred unless the petitioner demonstrates either cause and prejudice or that a failure to address the claim will result in a fundamental miscarriage of justice." Hughes v. Johnson, 191 F.3d 607, 614 (5th Cir. 1999). In the instant case, petitioner has not made either showing.

"To establish cause for a procedural default, there must be something external to the petitioner, something that cannot fairly be attributed to him." Johnson v. Puckett, 176 F.3d 809, 816 (5th Cir. 1999) (quotation marks omitted). Here, petitioner has made no effort to establish cause for his default, and, "[a]bsent a showing of cause, it is not necessary for the court to consider whether there is actual prejudice." Martin v. Maxey, 98 F.3d 844, 849 (5th Cir. 1996).

Because petitioner has not met the "cause and prejudice" test, these claims are barred from federal review unless the application of the procedural bar would result in a "fundamental miscarriage of justice." In order to establish that there would be a "fundamental miscarriage of justice," a petitioner must "make a persuasive showing that he is actually innocent of the charges against him. Essentially, the petitioner must show that, as a factual matter, he did not commit the crime for which he was convicted." Finley v. Johnson, 243 F.3d 215, 220 (5th Cir. 2001) (citations omitted). However, the United States Supreme Court has cautioned:

> To be credible, such a claim [of actual innocence] requires petitioner to support his allegations of constitutional error with new reliable evidence – whether it be *exculpatory scientific evidence, trustworthy eyewitness accounts, or critical physical evidence* – that was not presented at trial. Because such evidence is obviously unavailable in the vast majority of cases, claims of actual innocence are rarely successful.

Schlup v. Delo, 513 U.S. 298, 324 (1995) (emphasis added). In this case, petitioner has presented no new evidence of innocence, much less any new evidence of the type or caliber referenced in

Schlup.  Moreover, overwhelming evidence of his guilt, including his confessions, was introduced at trial.  Therefore, he has not established that any miscarriage of justice will result from the application of the procedural bar.

Accordingly, for all of these reasons, petitioner's first and fifth claims are procedurally barred from federal review.

## B.  Claim 4

The state next argues that petitioner's fourth claim, which challenges the introduction of evidence of other crimes at trial, is unexhausted.  The state further argues that, because that claim would be procedurally defaulted if petitioner now attempted to assert it in the state courts, the claim is likewise procedurally barred from federal review.  Again, the state is correct.

"Before seeking a federal writ of habeas corpus, a state prisoner must exhaust available state remedies, 28 U.S.C. § 2254(b)(1), thereby giving the State the opportunity to pass upon and correct alleged violations of its prisoners' federal rights."  Baldwin v. Reese, 541 U.S. 27, 29 (2004) (quotation marks omitted).  The United States Supreme Court has explained:

> The exhaustion doctrine is principally designed to protect the state courts' role in the enforcement of federal law and prevent disruption of state judicial proceedings.  Under our federal system, the federal and state courts are equally bound to guard and protect rights secured by the Constitution.  Because it would be unseemly in our dual system of government for a federal district court to upset a state court conviction without an opportunity to the state courts to correct a constitutional violation, federal courts apply the doctrine of comity, which teaches that one court should defer action on causes properly within its jurisdiction until the courts of another sovereignty with concurrent powers, and already cognizant of the litigation, have had an opportunity to pass upon the matter.

Rose v. Lundy, 455 U.S. 509, 518 (1982) (citations, footnote, quotation marks, and brackets omitted).

"To exhaust, a petitioner must have fairly presented the substance of his claim to the state courts."  Wilder v. Cockrell, 274 F.3d 255, 259 (5th Cir. 2001) (quotation marks omitted).  That requirement applies to *all* levels of review in the state court system, meaning that a petitioner's federal claim must have been fairly presented to "each appropriate state court *(including a state supreme court with powers of discretionary review)*."  Baldwin, 541 U.S. at 29 (emphasis added).

Here, petitioner has never presented his fourth claim to the Louisiana Supreme Court for review.   Although he raised the claim to the Louisiana First Circuit Court of Appeal on direct appeal, he thereafter abandoned the claim by failing to raise it in his related Louisiana Supreme Court writ application.[31]  Therefore, the claim is unexhausted.

Further, as the state correctly notes in its response, petitioner's failure to exhaust the claim in the state courts presents an additional problem and basis for denial, i.e. a technical procedural bar in federal court.  If, as is the case here, a "prisoner fail[ed] to exhaust available state remedies and the court to which the petitioner would be required to present his claims in order to meet the exhaustion requirement would now find the claims procedurally barred," then the claims are considered defaulted in federal court.  Nobles v. Johnson, 127 F.3d 409, 420 (5th Cir. 1997) (internal quotation marks omitted).

In denying petitioner's first state post-conviction application, the Louisiana Supreme Court expressly stated:

> Relator has now fully litigated his application for post-conviction relief in state court.  Similar to federal habeas relief, see 28 U.S.C. § 2244, Louisiana post-conviction procedure envisions the filing of a second or successive application only under the narrow circumstances provided in La.C.Cr.P. art. 930.4 and within the limitations period as set out in La.C.Cr.P. art. 930.8.  Notably, the Legislature in 2013 La. Acts 251 amended that article to make the procedural bars against

---

[31] See State Rec., Vol. 16 of 27, writ application in Case No. 2011-KO-2597.

> successive filings mandatory. Relator's claims have now been fully litigated in
> accord with La.C.Cr.P. art. 930.6, and this denial is final. Hereafter, unless he can
> show that one of the narrow exceptions authorizing the filing of a successive
> application applies, relator has exhausted his right to state collateral review.[32]

True to its word, the Louisiana Supreme Court then expressly denied petitioner's second and third

post-conviction applications as procedurally barred.[33] There is no reason whatsoever to believe

that a fourth state post-conviction application would meet a different fate.[34]

Therefore, again, federal review of this claim is barred unless petitioner demonstrates either

(1) the existence of "cause" for his default and resulting "prejudice" or (2) that the Court's failure

to address the claim would result in a "fundamental miscarriage of justice." See, e.g., Bagwell v.

Dretke, 372 F.3d 748, 756-57 (5th Cir. 2004). Petitioner has made no attempt to establish cause

and prejudice. Further, as already explained, he has not made the colorable showing of actual

innocence required to demonstrate a "fundamental miscarriage of justice." Accordingly, federal

review of his fourth claim is likewise procedurally barred.

## II.  Remaining Claims

### A.  Claim 2

Petitioner's second claim is that there was insufficient evidence to support his conviction

for the armed robbery of **Stephanie Ashley**.[35] Although the state argues that this claim is

---

[32] State ex rel. Reaux v. State, 204 So. 3d 200 (La. 2016); State Rec., Vol. 22 of 27.

[33] State ex rel. Reaux v. State, 223 So. 3d 523 (La. 2017) ("Denied. Relator has previously exhausted his right to state collateral review.  See State ex rel. Reaux v. State, 15-1292 (La. 9/6/16), 204 So.3d 200."); State ex rel. Reaux v. State, 225 So. 3d 1065 (La. 2017) ("Denied. Relator has previously exhausted his right to state collateral review.  See State v. Reaux, 15-1292 (La. 9/6/16), 204 So.3d 200."); State Rec., Vols. 26 and 27 of 27.

[34]  Moreover, it appears that any new application would additionally be untimely under La. Code Crim. P. art. 930.8. That article generally requires that a petitioner file his post-conviction within two years of the date on which his conviction and sentence became final. That deadline has passed, and, although there are exceptions provided in the article, those exceptions to do not appear to be applicable to petitioner's claim.

[35]  See Rec. Doc. 1, pp. 42-43.

procedurally barred, it actually fails for another reason:  it is wholly unrelated to the state court judgment challenged in this federal application.

The instant application challenges petitioner's **2010** convictions in the Louisiana **Twenty-Second** Judicial District Court for St. Tammany Parish.[36]  Although petitioner was in fact subsequently convicted of the armed robbery of Stephanie Ashley, that conviction was rendered in **2013** in a separate and distinct proceeding in the Louisiana **Twenty-Fourth** Judicial District Court for **Jefferson** Parish.  See State v. Reaux, 165 So.3d 944 (La. App. 5th Cir. 2014), writ denied, 178 So. 3d 1000 (La. 2015).  Therefore, petitioner's claim challenging the sufficiency of the evidence to support that conviction is not properly before this Court.  If he wishes to challenge that conviction, he must file a separate federal habeas corpus application.  See Rules Governing Section 2254 Cases in the United States District Courts, Rule 2(e) ("A petitioner who seeks relief from judgments of more than one state court must file a separate petition or petitions covering the judgment or judgments of each court."); see also Rice v. Warden, Case No. 1:14-cv-732, 2015 WL 5299421, at *1 n.2 (S.D. Ohio Sept. 9, 2015), adopted, 2015 WL 6104354 (S.D. Ohio Oct. 16, 2015); Phillips v. Bouchard, No. 2:15-CV-10893, 2015 WL 1275878, at *1 n.1 (E.D. Mich. Mar. 19, 2015); Jackson v. Sloane, No. 1:13 CV 1326, 2014 WL 4472623, at *3 and 10-11 (N.D. Ohio Sept. 10, 2014).[37]

## B.  Claim 3

Petitioner's third claim is that his self-incriminating statements were involuntary and, therefore, his rights were violated when evidence of those statements was presented to the jury.

---

[36] See Rec. Doc. 1, p. 1.

[37] **Nothing herein should be construed as an indication that this Court has determined that a new application challenging that separate and district state court judgment would be timely under federal law.  The Court does not have sufficient information to make that determination.**

The state argues that, although that claim is properly before this Court for review, it should be denied on the merits.  Again, the state is correct.

The rule that an accused person's confession must be voluntary in order to be admissible at his criminal trial is well established.  On that point, the United States Supreme Court has explained:

> This Court has long held that certain interrogation techniques, either in isolation or as applied to the unique characteristics of a particular suspect, are so offensive to a civilized system of justice that they must be condemned under the Due Process Clause of the Fourteenth Amendment. … On numerous … occasions the Court has set aside convictions secured through the admission of an improperly obtained confession.  Although these decisions framed the legal inquiry in a variety of different ways, usually through the "convenient shorthand" of asking whether the confession was "involuntary," Blackburn v. Alabama, 361 U.S. 199, 207, 80 S.Ct. 274, 280, 4 L.Ed.2d 242 (1960), the Court's analysis has consistently been animated by the view that "ours is an accusatorial and not an inquisitorial system," Rogers v. Richmond, 365 U.S. 534, 541, 81 S.Ct. 735, 739, 5 L.Ed.2d 760 (1961), and that, accordingly, tactics for eliciting inculpatory statements must fall within the broad constitutional boundaries imposed by the Fourteenth Amendment's guarantee of fundamental fairness.  Indeed, even after holding that the Fifth Amendment privilege against compulsory self-incrimination applies in the context of custodial interrogations, Miranda v. Arizona, 384 U.S. 436, 478, 86 S.Ct. 1602, 1629, 16 L.Ed.2d 694 (1966), and is binding on the States, Malloy v. Hogan, 378 U.S. 1, 6, 84 S.Ct. 1489, 1492, 12 L.Ed.2d 653 (1964), the Court has continued to measure confessions against the requirements of due process.

Miller v. Fenton, 474 U.S. 104, 109-10 (1985) (citations omitted).  Further, the Supreme Court has noted:

> The Due Process Clause does not mandate that the police forgo all questioning, or that they be given carte blanche to extract what they can from a suspect.  The ultimate test remains that which has been the only clearly established test in Anglo-American courts for two hundred years:  the test of voluntariness.  Is the confession the product of an essentially free and unconstrained choice by its maker?  If it is, if he has willed to confess, it may be used against him.  If it is not, if his will has been overborne and his capacity for self-determination critically impaired, the use of his confession offends due process.
>
> In determining whether a defendant's will was overborne in a particular case, the Court has assessed the totality of all the surrounding circumstances – both

the characteristics of the accused and the details of the interrogation.  Some of the factors taken into account have included the youth of the accused, his lack of education or his low intelligence, the lack of any advice to the accused of his constitutional rights, the length of detention, the repeated and prolonged nature of the questioning, and the use of physical punishment such as the deprivation of food or sleep.

Schneckloth v. Bustamonte, 412 U.S. 218, 225-26 (1973) (citations and quotation marks omitted).

In the instant case, the state courts examined the totality of the circumstances surrounding petitioner's statements and found that the statements were voluntary.  On direct appeal, the Louisiana First Circuit Court of Appeal held:

Defendant … argues that his first statement was not voluntary as the officers made promises in order to obtain the statement, and that the Miranda[FN 3] warnings given prior to his third statement were insufficient because he was not informed of his right to stop answering questions.

[FN 3]  Miranda v. Arizona, 384 U.S. 436, 444, 86 S.Ct. 1602, 1612, 16 L.Ed.2d 694 (1966).

….
Louisiana Revised Statute 15:451 provides that before a purported confession can be introduced in evidence, it must be affirmatively shown to be free and voluntary and not made under the influence of fear, duress, intimidation, menaces, threats, inducements, or promises.  It must also be established that an accused who makes a confession during custodial interrogation was first advised of his/her Miranda rights.  State v. Plain, 99-1112 (La.App. 1 Cir. 2/18/00), 752 So.2d 337, 342.  The State must specifically rebut a defendant's specific allegations of police misconduct in eliciting a confession.  State v. Thomas, 461 So.2d 1253, 1256 (La.App. 1 Cir. 1984), writ denied, 464 So.2d 1375 (La. 1985).

The admissibility of a confession is, in the first instance, a question for the trial court; its conclusions on the credibility and weight of the testimony relating to the voluntary nature of the confession are accorded great weight and will not be overturned unless they are not supported by the evidence.  State v. Sanford, 569 So.2d 147, 150 (La.App. 1 Cir. 1990), writ denied, 623 So.2d 1299 (La. 1993).  Whether a showing of voluntariness has been made is analyzed on a case-by-case basis with regard to the facts and circumstances of each case.  State v. Benoit, 440 So.2d 129, 131 (La. 1983).  The trial court must consider the totality of the circumstances in deciding whether a confession is admissible.  State v. Hernandez, 432 So.2d 350, 352 (La.App. 1 Cir. 1983).  Testimony of the interviewing police officer alone may be sufficient to prove a defendant's statements were freely and

voluntarily given.  State v. Maten, 04-1718 (La.App. 1 Cir. 3/24/05), 899 So.2d 711, 721, writ denied, 05-1570 (La. 1/27/06), 922 So.2d 544.

The following circumstances were presented at the hearing on the motions to suppress. …

….

…    [After defendant was arrested,] Lieutenant McCormick placed defendant in the unit, and he was transported to the sheriff's office and again read his Miranda rights. Separate written advice and waiver of rights forms were executed by the Slidell Police Department and the sheriff's office. Sergeant Shawn McClain of the Slidell Police Department and Sergeant George Cox of the St. Tammany Parish Sheriff's Office testified that detectives of the Jefferson Parish Sheriff's Office arrived in the midst of their initial interview of the defendant. Sergeant McClain and Sergeant Cox stepped in and out of the room while officers of the Jefferson Parish Sheriff's Office questioned defendant. Detective Russell Varmall of the Jefferson Parish Sheriff's Office was one of the officers from that parish who questioned defendant and was present during their entire interview. He testified that defendant did not make any admissions to the Jefferson Parish Sheriff's Office detectives, and they concluded their interview of defendant. Detective Varmall further testified that there were no threats, pressure, coercion or any promises of leniency, and a possible sentence was not discussed.

….

According to Sergeant McClain and Sergeant Cox, defendant did not make any admissions during the initial interview.  As the officers were walking defendant to the jail, he stopped and said he wanted to tell them everything, and a recorded interview was conducted at 4:07 a.m., April 21.  Defendant's Miranda rights were reviewed at the beginning of the recording wherein defendant indicated that he understood and waived those rights.  Defendant admitted to committing seven robberies at Game Stop video game stores, including the instant offenses and four prior robberies at Game Stop video game stores in other parishes, and confirmed that he wore the same attire during the robberies, specifically jeans or sweatpants, a white shirt, a gray cloth to cover his face, and a black baseball cap.  Defendant also admitted to having a blue box cutter, though he did not admit to brandishing it in each robbery, to using a black bag to collect the money, and to driving the same vehicle, the white Monte Carlo, to commit the offenses.  As to the final offense, defendant denied seeing any police officer observing him and stated that he abandoned the attempt on his own after reflection.  The officers of the Jefferson Parish Sheriff's Office, who had left, returned when contacted and were informed that defendant confessed to the offenses to the Slidell police officers.  Upon their return, said officers presented a still photograph from the surveillance footage of one of the Jefferson Parish robberies to defendant, and defendant confirmed that he was depicted in the photograph and signed and dated the photograph.

That evening, when defendant was being transported from Covington to the Slidell Police Department, he indicated that he wanted to speak to Sergeant McClain.  A Miranda advice of rights form and waiver of rights form were again

executed. Defendant's <u>Miranda</u> rights were again reviewed at the beginning of the second recording wherein defendant indicated that he understood and waived those rights. During the second recorded statement, defendant contended that he was not completely truthful during the initial confession, and minimized his involvement by specifying that he was the driver while a co-perpetrator entered the store during the first three robberies and during the April 19 instant offense, wearing the same attire that defendant admitted to wearing during the initial confession. On the recording, defendant responded positively when asked to confirm that he was told before the interview that implicating someone else would not result in lesser charges. Defendant indicated that before he spoke to Sergeant McClain regarding a second statement, other officers who he could not name misled him by indicating that he would only be sentenced to probation, restitution, and community service for the offenses. However, defendant confirmed that Sergeant McClain explained to him before the second interview that such an indication was incorrect, that he was not being promised anything in exchange for a statement, and that any sentence was possible and would probably include imprisonment.

On April 22, 2009, Sergeant McClain and Sergeant Cox listened to defendant's second recorded statement, noticed inconsistencies, and visited defendant in the Slidell facility to discuss the inconsistencies. According to the officers, defendant admitted that he changed his statement because his uncle advised him to do so. Defendant gave a third recording stating that his initial confession was completely accurate and truthful, specifically admitting that he acted alone on each offense. During the third recording, defendant stated that he decided to tell the truth when the officers pointed out inconsistencies between his two prior-recorded statements. Advice of rights and waiver of rights forms were executed again prior to the third recording. Sergeant McClain and Sergeant Cox testified that again no threats, promises, or coercion were used to induce the third statement, and during the third recording defendant confirmed there was no abuse, threats, promises, or rewards, and that he was making the statement of his own free will. Defendant's rights were reviewed at the beginning of the third recording, including his right to remain silent, that anything he said would be used against him, and his right to an attorney.

At the hearing on defendant's motion to suppress, Detective Corey Crowe of the St. Tammany Parish Major Crimes Unit testified for the defense that he was in and out of the monitoring room while defendant was being interviewed by Sergeant McClain and Sergeant Cox on the night of his arrest. Detective Crowe testified that he had no knowledge of any threats or coercion. The defense also called as a witness Sergeant Lance Vitter of the St. Tammany Parish Sheriff's Office, who assisted in the execution of the search warrant for defendant's residence and had brief contact with defendant after his arrest. Sergeant Vitter denied ever discussing the case with defendant, and specifically denied discussing possible charges or promises of leniency with defendant.

In pertinent part, defendant testified that Sergeant McClain and Sergeant Vitter discussed possible charges with him before his confession, indicating that he

would be charged with simple robbery and further stating that it would be up to his attorney and the district attorney to "work out the deal." Defendant further testified that Detective John Carroll told him that all of the offenses would be combined and "ran through St. Tammany" so defendant could "get a fine" and move on with his life. Defendant also stated that Detective Russell Varmall told him that if he cooperated he would recommend that defendant be sentenced to a two-hundred-fifty-dollar fine, community service, and restitution, with the charges being dropped to simple robbery. Defendant further testified that during the initial interview, before his recorded confession, he stood up and told Sergeant McClain that he wanted to end the interview, saying, "No, man, the conversation's over." According to defendant, Sergeant McClain responded, "Sit your ass down. This conversation is over when I say it's over." Defendant further testified that as he was being escorted to jail (just before he decided to give the recorded confession), Detective Cox said, "This is your last chance. You in St. Tammany Parish. You're a black man. I'm going to give you all white jury, they going to start you at 60 years." Defendant added that Sergeant McClain was also saying that they could help by telling the district attorney that he cooperated. Defendant further testified that he was coerced into giving the third recorded statement, specifying that Sergeant McClain and Detective Cox entered his small L-shaped cell and told him that he needed to give another statement to "fix this," indicating that he backed out of the deal when he gave the second recorded statement limiting his participation in the robberies.

During cross-examination, defendant admitted to speaking to a relative, specifically his uncle, by telephone before giving the second statement. Defendant denied that a box cutter fell from his waistband at the time of the pat-down search. Defendant admitted having the dark bag on his person at the time of the detention and the piece of cloth around his head under his hat, initially indicating that the officer pulled it down to his neck but later stating that it fell down to his neck when he got in the backseat of the police unit. Defendant agreed that he never asked to cease the interview during any of the recordings.

During the State's rebuttal at the hearing on the motions to suppress, the State recalled Sergeant McClain and Sergeant Cox. Both sergeants testified that they never heard Sergeant Vitter tell defendant that his charges could be dropped to simple robbery or promise him probation, or anything similar to that. Further they did not recall Sergeant Vitter having any conversations with defendant. Sergeant McClain also did not hear defendant state that he wanted to cease the interview, or any negative response or reaction in that regard. Sergeant McClain and Sergeant Cox also denied that any statements were made to defendant, prior to the first recorded confession when he was being transported to jail, regarding it being his last chance or him being black with an all-white jury or an imprisonment term or anything remotely close to that claim. Sergeant Cox denied making any coercive statements to defendant regarding a need to "fix" the situation after his second recorded statement. Sergeant Cox stated that he discussed honesty with defendant, specifically telling him that if he is honest and remorseful it was a factor

that would help him as he is processed through the system. Sergeant Cox did not provide any specific information as to how defendant's cooperation would help him.

John Carroll, former detective of the Jefferson Parish Sheriff's Office, accompanied Detective Russell Varmall to St. Tammany Parish to question defendant after his arrest and after his first recorded statement when they had defendant sign and date a surveillance still photograph. Carroll testified, in pertinent part, that defendant did not ask to exercise his right to remain silent or display any signs of abuse and that there were no promises, threats, coercion, or pressure used to induce cooperation. Carroll was with Detective Varmall the entire time they were there. During the trial, Detective Varmall's testimony was consistent with Carroll's hearing testimony.

… The trial court … noted that during the recordings, defendant denied that there was any impropriety during the course of interrogation to indicate that he was forced, coerced, or intimidated. The trial court further stated that the fact that an officer might point out that he is facing a significant penalty is not an impermissible threat and found no merit in defendant's argument that promises were used to induce a confession.

….

As to the voluntariness of defendant's confession, we note that all of the officers involved testified that there were no promises or abuse to induce defendant's cooperation. Defendant's pro se brief notes that the taped statement form executed prior to his third recorded statement does not include advice of the right to at any time exercise his rights and not answer any questions or make any statement. However, all of the rights forms used by the officers, including the taped statement forms, include defendant's <u>Miranda</u> rights specifically, his right to remain silent, that anything he says can and will be used against him in a court of law, and his right to an attorney, appointed if necessary. Also, the Statement of <u>Miranda</u> Rights Forms executed on April 20, prior to any statement, and again on April 21, additionally advised defendant of his right to exercise his rights at any time and not answer questions or make any statements. Thus, defendant was fully advised of his rights on several occasions and executed several waiver of rights forms. Defendant is highly educated, having a bachelor's degree and pursuing a master's degree at the time of the arrest and worked in law enforcement as a part-time deputy monitoring inmates for two months while in school. At the beginning of the first recording, defendant said there were no threats or promises and stated that he was informed of his rights and agreed to waive them. Although defendant stated during the second recording that he was misled by an officer and told that he would get probation, restitution, and community service, he did not provide the name of any such officer (unlike during the hearing wherein officers specified by defendant denied making any such promise). The recording clearly conveys Sergeant McClain's subsequent and repeated confirmation that the statement was not being made according to any promises and including defendant's verbal agreement.

> Based on defendant's responses during the recorded interviews, and the fact that he was repeatedly advised of his rights, including the right to remain silent, we find that defendant's confessions were free and voluntary. Considering the above, we further find that the trial court did not err or abuse its discretion in denying the motions to suppress. This pro se assignment of error … is without merit.[38]

The Louisiana Supreme Court thereafter likewise denied relief without assigning additional reasons.[39]

Where, as here, the state courts adjudicated a petitioner's claim on the merits, a federal habeas court must evaluate that decision in light of the deferential standards of review mandated by 28 U.S.C. § 2254. Those standards are clear: As to pure questions of law and mixed questions of law and fact, the federal court must defer to the state court's decision on the merits of such a claim unless that decision "was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States." 28 U.S.C. § 2254(d)(1). As to pure questions of fact, the federal court defer to the state court's decision on such matters unless it "was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d)(2).

Claims challenging the voluntariness of a confession implicate both of those standards. Specifically, the standards of § 2254(d)(1) are applicable to the federal court's review of the ultimate issue of the voluntariness of the confession; however, the standards of § 2254(d)(2) are applicable to the federal court's review of the state court's findings on the "subsidiary factual questions" pertinent to that issue. See ShisInday v. Quarterman, 511 F.3d 514, 522 (5th Cir. 2007);

---

[38] State v. Reaux, No. 2011 KA 0443, 2011 WL 4484365, at *3-11 (La. App. 1st Cir. Sept. 14, 2011); State Rec., Vol. 14 of 27.

[39] State ex rel. Reaux v. State, 204 So. 3d 200 (La. 2016); State Rec., Vol. 22 of 27. Where there has been one reasoned state judgment denying a federal claim on the merits, federal habeas courts employ a rebuttable presumption that later unexplained orders upholding that judgment or rejecting the same claim rest upon the same reasons. Wilson v. Sellers, 138 S. Ct. 1188 (2018). That presumption has not been rebutted in the instant case.

Kott v. Cain, Civ. Action No. 14-953, 2015 WL 10766762, at *6 (E.D. La. Oct. 26, 2015) (North, M.J.), adopted, 2017 WL 4269537 (E.D. La. Sept. 26, 2017) (Morgan, J.); McClain v. Cain, Civ. Action No. 14-1452, 2015 WL 4509666, at *9 (E.D. La. July 24, 2015 ) (Morgan, J., adopting report and recommendation of Wilkison, M.J.).

"Subsidiary factual questions" concern such issues as "the length and circumstances of the interrogation, the defendant's prior experience with the legal process, and familiarity with the Miranda warnings." Miller v. Fenton, 474 U.S. 104, 117 (1985). Those and similar issues "often require the resolution of conflicting testimony of police and defendant," and the state-court findings on such matters are "conclusive on the habeas court" if fairly supported in the record. Id.; see McClain, 2015 WL 4509666, at *9-10 ("[A] federal habeas court must afford a presumption of correctness to state courts' findings of fact if they are fairly supported by the record. … The habeas corpus statute obliges federal judges to respect credibility determinations made by the state court trier of fact."). Here, as noted, the state courts expressly resolved the subsidiary factual questions in the state's favor, finding that petitioner is a highly educated individual who was fully advised of his rights on several occasions both orally and in writing. The state court also expressly rejected petitioner's allegation that his statements were coerced by threats or induced by promises.

Because those factual findings are fairly supported by the record in this case, petitioner must present clear and convincing evidence to rebut the presumption of correctness accorded the state court decision. See 28 U.S.C. § 2254(e)(1) ("In a proceeding instituted by an application for a writ of habeas corpus by a person in custody pursuant to the judgment of a State court, a determination of a factual issue made by a State court shall be presumed to be correct. The applicant shall have the burden of rebutting the presumption of correctness by clear and convincing

evidence."). He has presented no such evidence[40] and, therefore, the state court's factual findings are binding on this Court.

Moreover, in light of those factual findings, this Court has no basis whatsoever for concluding that the state court's legal conclusion that petitioner's statements were voluntary "was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States."  28 U.S.C. § 2254(d)(1).

For all of these reasons, petitioner's third claim fails on the merits and should be denied.

## RECOMMENDATION

It is therefore **RECOMMENDED** that the federal application for habeas corpus relief filed by Gregory Reaux be **DISMISSED**.

It is **RECOMMENDED** that petitioner's claim challenging the sufficiency of the evidence to support his conviction for the armed robbery of Stephanie Ashley (Claim 2) be **DISMISSED WITHOUT PREJUDICE** to the filing of a proper federal application challenging that separate and distinct state court judgment.

---

[40] In his federal application, petitioner focuses primarily on the **length** of his interrogation.  He alleges that questioning started at 9:27 p.m. on the day of his arrest and then continued until 4:07 a.m. the following morning, a period of almost seven hours.  See Rec. Doc. 1, pp. 46-48.  While that allegation is perhaps technically accurate, it is nevertheless misleading.  The transcript from the suppression hearing reflects that petitioner was not interrogated nonstop concerning the instant crimes during that entire period.  Rather, breaks were taken during the interrogation.  State Rec., Vol. 2 of 27, transcript of June 15, 2010, p. 446.  In addition, the interrogation concerning these crimes, which occurred in St. Tammany Parish, was interrupted for a period of approximately one and a half to two hours to allow officers from Jefferson Parish to conduct their own **separate** interrogation concerning the crimes which occurred in their parish.  Id. at pp. 448-49.  Further, in any event, it must be remembered that petitioner's first incriminating statement was not even made **during** the interrogation.  Instead, petitioner volunteered his statement as he was being taken to the jail **after the interrogation had already ended**.  State Rec., Vol. 3 of 27, transcript of June 15, 2010, pp. 450-51.

However, even putting aside these clarifications and accepting as true petitioner's basic allegation that he was interrogated for almost seven hours, it must be noted that courts have found that an interrogation of that duration does not in and of itself render a resulting confession involuntary.  See, e.g., Davila v. Davis, 650 Fed. App'x 860, 870-71 (5th Cir. 2016) (seven-hour interrogation), aff'd, 137 S. Ct. 2058 (2017).

It is **RECOMMENDED** that petitioner's remaining claims (Claims 1, 3, 4, and 5) be **DISMISSED WITH PREJUDICE**.

A party's failure to file written objections to the proposed findings, conclusions, and recommendation in a magistrate judge's report and recommendation within fourteen (14) days after being served with a copy shall bar that party, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings and legal conclusions accepted by the district court, provided that the party has been served with notice that such consequences will result from a failure to object.  28 U.S.C. § 636(b)(1); Douglass v. United Services Auto. Ass'n, 79 F.3d 1415, 1430 (5th Cir. 1996) (en banc).[41]

New Orleans, Louisiana, this third day of July, 2018.


**JANIS VAN MEERVELD**
**UNITED STATES MAGISTRATE JUDGE**

---

[41] Douglass referenced the previously applicable ten-day period for the filing of objections.  Effective December 1, 2009, 28 U.S.C. § 636(b)(1) was amended to extend that period to fourteen days.